# EXHIBIT A

2020 WL 5235005
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

MAYUKO HOLWILL, Individually
and on Behalf of All Others
Similarly Situated, Plaintiff,
v.
ABBVIE INC., RICHARD A. GONZALEZ,
and WILLIAM J. CHASE, Defendants.

Case No. 1:18-cv-06790
|
Filed: 09/01/2020

Hon. Charles R. Norgle

**ORDER**

CHARLES RONALD NORGLE, Judge United States
District Court

**\*1**  Defendants' motion to dismiss [79] is denied.

**MEMORANDUM OPINION**

Plaintiffs'[1] Consolidated Class Action Complaint for
Violations of the Federal Securities Laws against Defendants
AbbVie Inc., Richard A. Gonzalez (AbbVie's CEO), and
William J. Chase (AbbVie's CFO) asserts claims for
violations of §§ 10(b) (against all Defendants) and 20(a)
(against Gonzalez and Chase) of the Securities Exchange Act
of 1934. Dkt. 74. Defendants move to dismiss the complaint
under Federal Rule of Civil Procedure 12(b)(6). For the
following reasons, Defendants' motion is denied.

[1]    As the caption indicates, this action was initiated by
Mayuko Holwill. Dkt. 1. But soon after, the Court
granted Metzler Asset Management GmbH's eventually
unopposed motion to be appointed as lead plaintiff under
the Private Securities Litigation Reform Act, 15 U.S.C. §
78u-4, because of Metzler's large financial interest in the
outcome of this case. Dkt. 64. Metzler, as lead plaintiff,
and National Shopmen Pension Fund, as an additional

named plaintiff, then filed the current Consolidated Class
Action Complaint. Dkt. 74.

**I. BACKGROUND**

Plaintiffs' claims are premised on alleged false and misleading
statements made by Defendants regarding the basis for the
success of AbbVie's sales of its flagship drug, Humira, which
has accounted for more than half and as much as two-
thirds of AbbVie's yearly net revenues. Dkt. 74 at ¶¶ 3,
50-51. Between 2013 and 2018, Defendants made numerous
statements on corporate conference calls, at health care
conferences, in SEC filings, in AbbVie's Code of Business
Conduct, and on AbbVie's website, in which Defendants
attributed the growth and success of AbbVie's sales of
Humira to its sales and marketing practices and programs
and represented that those practices and programs complied
with laws regulating sales and marketing of prescription
medication. Dkt. 74 at ¶¶ 123-263. According to Plaintiffs,
Defendants' statements were false or misleading because
AbbVie's sales and marketing practices included an unlawful
kickback scheme to bribe and influence physicians to
prescribe Humira, which Defendants failed to disclose. Dkt.
74 at ¶¶ 1, 14. AbbVie's alleged unlawful sales and marketing
scheme involved providing physicians with classic kickbacks
like cash, meals, drinks, gifts, trips, and patient referrals to
induce and reward Humira prescriptions. Dkt. 74 at ¶¶ 20-21,
109, 111. AbbVie also allegedly provided more sophisticated
forms of kickbacks to physicians, including through AbbVie's
Nurse Ambassador program, that encompassed assistance
with marketing physicians' practices, proprietary medical
practice management software, administrative support on
insurance and fulfillment issues, administration of Humira
injections to patients, and training on self-administration. Dkt.
74 at ¶¶ 14-15, 20-21, 84-86, 89, 109-111.

The details of AbbVie's alleged kickback scheme became
public starting in early 2018. Specifically, a federal *qui tam*
action under the False Claims Act against AbbVie focused
on the Nurse Ambassador program was unsealed in March
2018 after the government declined to intervene. Dkt. 74 at
¶¶ 101, 103. A similar *qui tam* action in California state court
initiated by the same relator became public on September 18,
2018 when the California Department of Insurance intervened
and filed a publicly available superseding complaint alleging
AbbVie's unlawful kickback scheme as alleged in this case.
Dkt. 74 at ¶¶ 105-07, 109-11, 314. AbbVie's stock price
declined about 5% by the following day, September 19, 2018,

Dkt. 74 at ¶¶ 313-15, including a 3% decline on September 18, 2018, Dkt. 74 at ¶ 317.

## II. STANDARD OF REVIEW

**\*2** Defendants move to dismiss Plaintiffs' complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). Dkt. 79, 80. Under Rule 12(b)(6), " '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face.' " Toulon v. Continental Cas. Co., 877 F.3d 725, 734 (7th Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding the motion to dismiss, the Court accepts "all well-pleaded allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 934 (7th Cir. 2012). However, legal conclusions and " '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " Toulon, 877 F.3d at 734 (quoting Iqbal, 556 U.S. at 678).

## III. ANALYSIS

The basic elements of Plaintiffs' claim against Defendants under § 10(b) of the Securities Exchange Act include: (1) a material misrepresentation or omission; (2) scienter (deceptive intent); (3) a connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. Dura Pharmaceuticals. Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).[2] Defendants argue that Plaintiffs have failed to plead that Defendants violated § 10(a) of the Securities Exchange Act for three reasons: (1) Plaintiffs fail to sufficiently plead that Defendants made any false or misleading statement; (2) Plaintiffs fail to sufficiently plead scienter—that Defendants made any alleged false or misleading statements with deceptive intent; and (3) Plaintiffs fail to adequately plead loss causation. For the reasons that follow, the Court finds that Plaintiffs' complaint sufficiently pleads each of those elements and, accordingly, denies Defendants' motion.

[2]     Plaintiffs' claim against Gonzalez and Chase for "control person" liability under § 20(a) requires a primary violation of § 10(b) as well as allegations that each individual defendant exercised general control over the primary violator's operations and "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 881 (7th Cir. 1992). But Defendants seek dismissal of Plaintiffs' control person liability claim under § 20(a) only for Plaintiffs' purported failure to sufficiently plead a primary violation of § 10(b). Dkt. 80 at 30 n. 13.

### A. Plaintiffs' complaint sufficiently alleges plausibly false or misleading statements.

Under the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b), Plaintiffs must plead with particularity the statements alleged to be material misrepresentations or omissions and explain the reason why the statements were misleading. 15 U.S.C. § 78u-4(b)(1); Fed. R. Civ. P. 9(b). In other words, Plaintiffs must "plead the circumstances showing fraud in detail—the 'who, what, where, when, and how' '—to allow courts to distinguish valid claims from those of disgruntled investors. Arazie v. Mullane, 2 F.3d 1456, 1458 (7th Cir. 1993) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 628 (7th Cir. 1990)). Plaintiffs' complaint satisfies that standard.

First, contrary to Defendants' argument, the Court finds that Plaintiffs have alleged facts with sufficient particularity to support their claim that Abb Vie provided unlawful kickbacks to physicians who prescribed Humira. Defendants focus on AbbVie's Nurse Ambassador program, contending that Plaintiffs have failed to allege facts with sufficient particularity to support their claim that AbbVie's Nurse Ambassador program is unlawful. But the Court finds that Plaintiffs have plausibly alleged that AbbVie's Nurse Ambassador program is unlawful, if not inherently so. To be sure, product support services like AbbVie's Nurse Ambassador program are likely lawful to the extent they include, for example, services provided directly to educate patients how to self-administer Humira, or even to help patients obtain insurance coverage for Humira or negotiate insurance coverage gaps. U.S. ex rel. Suarez v. AbbVie Inc., No. 15-cv-8928, 2019 WL 4749967, \*5-\*10 (Sept. 30, 2019). This is so because such support services offered in connection with the sale of a company's own pharmaceuticals "do not, on their own, 'implicate the anti-kickback statute.' " Id. at \*8 (quoting OFFICE OF INSPECTOR GEN., U.S. DEP'T OF HEALTH & HUMAN SERVS., OIG COMPLIANCE PROGRAM GUIDANCE FOR PHARMACEUTICAL MANUFACTURERS, 68 Fed. Reg. 23731-01, 2003 WL 2010428, at \*23735 (May 5, 2003) ("OIG May 2003 Notice")). But the anti-kickback statute is violated when a company provides product

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

support services integrally related to a pharmaceutical " 'in tandem with another service or program that confers a benefit on a referring provider," ' id. at *7 (quoting OFFICE OF INSPECTOR GEN., U.S. DEP'T OF HEALTH & HUMAN SERVS., MEDICARE & STATE HEALTH CARE PROGRAMS: FRAUD & ABUSE; ELECTRONIC HEALTH RECORDS SAFE HARBOR UNDER THE ANTI-KICKBACK STATUTE, 78 Fed. Reg. 7902-01, 2013 WL 6814651, at *79210 (Dec. 27, 2013)), and when pharmaceutical-related " 'goods or services ... eliminate an expense that the physician would have otherwise incurred (i.e., have independent value to the physician),' " id. at *7 (quoting OIG May 2003 Notice, 68 Fed. Reg. 23731-01, 2003 WL 2010428, at *23737).

 **\*3** The Court finds that Plaintiffs have sufficiently alleged that AbbVie plausibly provided classic kickbacks to physicians that are not integrally related to Humira like cash, meals, drinks, gifts, trips, patient referrals, assistance with marketing physicians' practices, proprietary medical practice management software to induce and reward Humira prescriptions. Dkt. 74 at ¶¶ 20-21, 109-111. The Court also finds that Plaintiffs have sufficiently alleged that AbbVie's Nurse Ambassador program plausibly provided independent value to physicians who prescribed Humira by eliminating expenses that physicians would have otherwise incurred. The patient services allegedly provided by the Nurse Ambassador program like assistance with pharmacy and insurance authorization and coverage, providing open enrollment resources, helping with paperwork, instruction on self-injection, answering questions, and conducting follow-ups ordinarily would have been provided by the prescribing physician's office. Dkt. 74 at ¶¶ 14-15, 84-86. Nurse Ambassadors were allegedly evaluated based on prescription metrics, accompanied AbbVie sales representatives on visits to physicians' offices, represented themselves to patients as extensions of the prescribing physician's office, and were instructed to deflect patient questions regarding Humira's risks in favor of offering help to reduce the cost of the prescription. Dkt. 74 at ¶¶ 16, 18, 87, 103, 111, 115, 119, 121. And AbbVie allegedly emphasized the value of the Nurse Ambassador program to physicians to generate interest and overcome hesitancy to prescribe Humira by explaining those benefits to physicians who prescribe Humira and touting Nurse Ambassadors as extensions of the prescribing physician's office. Dkt. 74 at ¶¶ 103, 111.

Plaintiffs' securities fraud claims are founded on various statements Defendants made on corporate conference calls,

at health care conferences, in SEC filings, in AbbVie's Code of Business Conduct, and on AbbVie's website attributing the growth and success of AbbVie's sales of Humira to AbbVie's sales and marketing practices and programs and representing that those practices and programs complied with laws regulating sales and marketing of prescription medication. Defendants contend that their alleged statements are not actionable, are not false or misleading, and did not create an affirmative duty to disclose details of AbbVie's sales and marketing practices and programs, including the Nurse Ambassador program. Plaintiffs, on the other hand, insist that Defendants' alleged statements attributing Humira's success to AbbVie's sales and marketing practices and programs materially omitted the details of AbbVie's unlawful kickback scheme. Similarly, Plaintiffs contend that Defendants' alleged statements that AbbVie's sales and marketing practices complied with applicable laws materially misrepresented that those practices and programs were lawful when in fact they were not.

True, Defendants do not have "an affirmative duty to disclose any and all material information." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011). Rather, disclosure is required "only when necessary 'to make ... statements made, in light of the circumstances under which they were made, not misleading.' " Id. (quoting 17 C.F.R. § 240.10b-5(b)). Further, the materiality requirement is satisfied as to an omission "when there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " Id. at 38 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (internal quotations omitted)).

The Court finds that Defendants' alleged statements attributing Mumira's success to AbbVie's sales and marketing practices and programs implicated AbbVie's allegedly unlawful kickback scheme, including AbbVie's alleged use of classic kickbacks and the Nurse Ambassador program, and were thus misleading to the extent that they omitted material information regarding the details of the allegedly unlawful kickback scheme. For example, Plaintiffs allege Chase stated at a healthcare conference on March 5, 2014, "What we have been able to establish over the last couple years is that Humira is indeed promotionally responsive.... I don't want to get specifically on what our marketing programs are but they are geared primarily at the penetration in the marketplace." Dkt. 74 at ¶ 145. Similarly, Plaintiffs allege Chase stated at a healthcare conference on May 23, 2016 that "it's been

pretty clear that over the last couple of years volume has increased in the market and that is exclusively, in the case of Humira, due to the promotional programs we have in place." Dkt. 74 at ¶ 11. Likewise, Plaintiffs allege Gonzalez stated on AbbVie's Third Quarter 2015 Earnings Call on October 30, 2015 that "AbbVie's strong commercial execution has made Humira the number-one prescribed biologic; with the highest commercial prescription market share, including the highest percentage of new patient starts." Dkt. 74 at ¶ 208. Those alleged statements, among others, are particularized and were plausibly misleading by Defendants' omission of the details of AbbVie's sales and marketing practices, particularly the details of AbbVie's alleged unlawful kickback scheme. And Defendants' omission was plausibly material because there is a substantial likelihood that disclosure of the omitted facts regarding AbbVie's alleged unlawful kickback scheme would have been viewed by the reasonable investor as having significantly altered the total mix of information available.

 **\*4** Defendants also contend that statements in AbbVie's Code of Business Conduct are not actionable because they are inherently aspirational and do not imply that all of AbbVie's officers and directors are in compliance with the code. The non-binding caselaw that Defendants cite does not support blindly applying a *per se* rule that statements in a business's ethics code cannot be actionable under § 10(b). Instead, those cases at most support the more modest approach that statements in a business's ethics code are not actionable *when* they are inherently aspirational or do not imply compliance. See Silverman v. Motorola, Inc., 772 F. Supp. 2d 923, 932 (N.D. Ill. 2011) (business's ethics code requiring Executive Vice President to "diligently look for indications that unethical or illegal conduct has occurred and report it" is inherently aspirational and does not constitute evidence supporting a finding that an individual subject to the code had specific control over transactions at issue); Desai v. General Growth Properties, 654 F. Supp. 2d 836, 857-59 (N.D. Ill. 2009) (business's ethics code that prohibited officers and directors from making loans to other officers and directors to avoid potential conflicts of interest, violations of which could result in discipline, did not imply that all directors and officers were in fact in compliance with that prohibition). However, AbbVie's Code of Business Conduct contained statements that, viewed in the light most favorable to Plaintiffs, are not inherently aspirational but are unqualified statements regarding AbbVie's conduct including, for example, "We never offer or provide anything of value to healthcare professionals or other individuals to inappropriately influence their medical judgment or purchasing or prescribing practices

in favor of an AbbVie product." Dkt. 74 at ¶¶ 13, 76. That Court finds that statement in particular, among others that Plaintiffs allege in the complaint, contains a plausibly material misrepresentation regarding AbbVie's sales and marketing practices and programs based on Plaintiffs' plausible allegations that AbbVie engaged in an unlawful kickback scheme to induce and reward Humira prescriptions.

Defendants' arguments that Plaintiffs fail to state a claim under § 10(b) as to Defendants' purported failure to comply with Items 105, 303, and 307 of the SEC's Regulation S-K are similarly unavailing. As to Item 105, which requires disclosure of "the most significant factors that make an investment in the registrant or offering speculative or risky," 17 C.F.R. § 229.105, the Court agrees with Plaintiffs that the complaint plausibly alleges that Defendants failed to disclose the risks posed by AbbVie's sales and marketing practices and programs, particularly AbbVie's alleged kickback scheme including the Nurse Ambassador program, and that Defendants' failure to disclose those risks constitutes a plausibly material omission. On Item 303, which requires the disclosure of "known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations," 17 C.F.R. § 229.303(a)(3)(ii), the Court finds that Plaintiffs' complaint plausibly pleads a strong inference that Defendants knew of and materially omitted the details of AbbVie's alleged kickback scheme. And on Item 307, which requires certain officers to present conclusions about the effectiveness of internal controls and procedures, 17 C.F.R. § 229.307, the Court agrees with Plaintiff that Gonzalez and Chase could not have truthfully certified that AbbVie's disclosure controls were effective given the above allegedly material misleading statements contained in AbbVie's SEC filings. In coming to these conclusions, the Court reiterates that in adjudicating a motion under Rule 12(b)(6), all well-pled allegations must be taken as true and inferences must be drawn in Plaintiffs' favor, and that these issues may be revisited after discovery on a motion for summary judgment or at trial.

**B. Plaintiffs' complaint plausibly alleges that Defendants made the alleged false or misleading statements with deceptive intent.**

Like the particularity requirement for false or misleading statements, the Private Securities Litigation Reform Act requires Plaintiffs to plead Defendants' deceptive intent with particularity by alleging "facts giving rise to a strong inference" that Defendants acted with the required state of

mind. 15 U.S.C. § 78u-4(b)(2)(A). "That 'required state of mind' " is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." Higginbotham v. Baxter Intern., Inc., 495 F.3d 753, 756 (7th Cir. 2007). Under that standard, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007).

 **\*5** Defendants argue that Plaintiffs' complaint fails to allege facts that give rise to a strong inference that Defendants knew the Nurse Ambassador program was unlawful or that any of the alleged misleading statements were made with deceptive intent. Rather, Defendants claim that the most compelling inference from the allegations in Plaintiffs' complaint is that Defendants did not make any misleading statements with deceptive intent.

The Court agrees with Plaintiffs that the complaint alleges facts with sufficient particularity to give rise to a strong inference that Defendants' alleged false or misleading statements were made with knowledge of their falsity or with reckless disregard of a substantial risk that the statements were false or misleading. Defendants made at least one false or allegedly misleading statement regarding AbbVie's sales and marketing practices and programs months after AbbVie's allegedly unlawful kickback scheme became public. Dkt. 74 at ¶ 250. More generally, Defendants' numerous statements regarding AbbVie's sales and marketing practices and programs, and the importance that Defendants placed on those practices and programs to AbbVie's and Humira's growth and success constitute strong circumstantial evidence that Defendants had detailed information regarding AbbVie's sales and marketing practices and programs, especially given Defendants' reluctance to delve into the details. See, e.g., Dkt. 74 at ¶ 145 ("I don't want to get specifically on what our marketing programs are but they are geared primarily at the penetration in the marketplace."). This is especially so because sales of Humira constituted a majority or even supermajority of AbbVie's yearly net revenues. Dkt. 74 at ¶ 3. So too with the statement in AbbVie's Code of Business Conduct, "We never offer or provide anything of value to healthcare professionals or other individuals to inappropriately influence their medical judgment or purchasing or prescribing practices in favor of an AbbVie product," Dkt. 74 at ¶ 13, despite numerous allegations in Plaintiffs' complaint that AbbVie's sales and marketing

practices and programs repeatedly violated that requirement by engaging in the alleged unlawful kickback scheme, Dkt. 74 at ¶¶ 20-21. Defendants object to Plaintiffs' allegations that AbbVie engaged in other wrongdoing as improper allegations of Defendants' character. Plaintiffs' allegations regarding AbbVie's "pay-for-delay" and unfair competition practices may be of little value to provide an inference of Defendants' deceptive intent with regard to AbbVie's alleged unlawful kickback scheme. But Plaintiffs' allegation that AbbVie settled a claim in October 2018 that it engaged in an unlawful kickback scheme to increase sales of another drug, Tri Cor, Dkt. 74 at ¶ 291, is plainly relevant to support an inference that Defendants' alleged materially misleading statements were made with deceptive intent. The Court also agrees that Plaintiffs' allegations regarding Defendants' motive for AbbVie to engage in the alleged unlawful kickback scheme further support an inference of Defendants' deceptive intent. Defendants had an incentive to maximize sales of Humira before competitors entered the market. Dkt. 74 at ¶ 93. So too with Gonzalez and Chase, who had a similar incentive since their compensation was tied directly to AbbVie's Humira sales. Dkt. 74 at ¶¶ 98, 281.

The opposing inference offered by Defendants—that Defendants did not make any alleged misleading statement with deceptive intent because Defendants had no reason to believe AbbVie's Nurse Ambassador program was unlawful and acted as if it was lawful by advertising it to the public—is not more compelling or cogent at this stage of the case, where the allegations of Plaintiffs' complaint must be taken as true and viewed in the light most favorable to Plaintiffs. Plaintiffs' complaint alleges AbbVie's unlawful kickback scheme was not limited to the alleged benefits conferred on Humira-prescribing physicians through the Nurse Ambassador program, but also included classic kickbacks. And even focusing on the Nurse Ambassador program, while it may not have been unlawful in every respect, according to Plaintiffs' complaint it was tied to AbbVie's sales and marketing of Humira and plausibly provided independent value to physicians who prescribed Humira by eliminating expenses that physicians would have otherwise incurred. Dkt. 74 at ¶¶ 16, 18, 87, 103, 111, 115, 119, 121.

### C. Plaintiffs' complaint plausibly alleges loss causation.

 **\*6** To allege loss causation, Plaintiffs must plead "a causal connection between the material misrepresentation and the loss." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005). Defendants contend that Plaintiffs rely on a "fraud-

on-the-market" theory that forecloses their ability to plead loss causation because the loss Plaintiffs claim did not occur until months after allegations of AbbVie's alleged unlawful kickback scheme first became public when the federal *qui tam* action was unsealed in March 2018. Defendants insist that when the federal *qui tam* action was unsealed in March 2018, the market must have incorporated that information into AbbVie's stock price such that the drop in AbbVie's stock price in September 2018 could not have resulted from the California Department of Insurance's contemporaneous intervention and filing of its publicly available complaint in the California state court *qui tam* action. But Plaintiffs allege a direct causal connection between the filing of the California Department of Insurance's publicly available complaint and an accompanying press release on September 18, 2018, and the immediate and significant drop in AbbVie's stock price over the following two days. Dkt. 74 at ¶¶ 313-15. While

Defendants may attempt to prove that AbbVie's stock price incorporated the information from information previously available and that the drop in AbbVie's stock price was in fact caused by some factor other than the publicity afforded to the filing of the California Department of Insurance's publicly available complaint, that is a proper subject for discovery and a motion for summary judgment or trial, not a motion to dismiss.

IT IS SO ORDERED.

ENTER:

**All Citations**

Slip Copy, 2020 WL 5235005

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.