# Exhibit G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |
|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION |

Civil Action No. 3:20-cv-112-JAG

DECLARATION

PROFESSOR STEVEN P. FEINSTEIN, PH.D., CFA

I, Steven P. Feinstein, declare:

## I.     I. INTRODUCTION

1.    I am an Associate Professor of Finance at Babson College, and the founder and president of Crowninshield Financial Research, Inc., a financial economics consulting firm.

2.    I hold a Ph.D. in Economics from Yale University, a Master of Philosophy degree in Economics from Yale University, a Master of Arts in Economics from Yale University, and a Bachelor of Arts degree in Economics from Pomona College. I also hold the Chartered Financial Analyst ("CFA") designation, granted by the CFA Institute.

3.    My credentials and compensation are presented in my expert report dated 4 January 2021 ("Feinstein Report"), as is a list of testimony within the four years preceding that report. Testimony I have provided since the submission of the Feinstein Report is identified in Exhibit-1 of this declaration.

## II.     SCOPE OF PROJECT AND DECLARATION

4.    In the Feinstein Report, I examined the common stock of JELD-WEN Holding, Inc. ("JELD-WEN" or the "Company") and the market in which it trades. In particular, I analyzed the factors that are generally accepted as indicative of the efficiency of the market in which a security trades. Based on my analysis of those factors, I concluded that the common stock of JELD-WEN traded in an efficient market during the period from 26 January 2017 through 15 October 2018, inclusive (the "Class Period").

5.    In the Feinstein Report, I showed that each of the *Cammer* and *Krogman* factors supports a finding that JELD-WEN stock traded in an efficient market.[1] Event study analysis showed that JELD-WEN stock demonstrated market efficiency by reacting promptly to new, Company-specific information as the information entered the market.[2] Reacting promptly to new, material information is the hallmark of an efficient market.

---

[1] Feinstein Report, ¶¶18-20.

[2] Feinstein Report, ¶19.

1

6.      Contrary to Defendants' incorrect assertion in their Opposition to Plaintiffs' Motion for Class Certification,[3] I did analyze the *Cammer* and *Krogman* factors during the so called "quiet period," and I explained that I did so in my deposition testimony.[4] My analysis found, and I explained, that the *Cammer* and *Krogman* factors were not uniquely different at the start of the Class Period.[5] The *Cammer* and *Krogman* factors at the time of the IPO and during the initial days thereafter were of such levels as to compel a conclusion of market efficiency, the same as for the rest of the Class Period.

7.      In particular, with respect to analyst coverage, as shown in the Feinstein Report, there were two *Seeking Alpha* analyst reports published the day before the IPO, analyst coverage of JELD-WEN by Canaccord in their Onex stock report published on 26 January 2017, the day of the IPO, and additional reports published by *Seeking Alpha*, Canaccord, and Wedbush within the period Defendants contend was the quiet period.[6]

8.      Similarly, as I pointed out in my deposition, Exhibit-4 of the Feinstein Report shows that there was very active trading in JELD-WEN stock over the 10 and 25 days after the IPO, as well as throughout the rest of the Class Period.  Exhibit-4 also presents the bid-ask spreads, which were narrow and not unusual during this initial period of trading.

9.      My report and deposition testimony noted that market capitalization and float were very large for JELD-WEN stock as of the IPO, immediately thereafter, and throughout the rest of the Class Period. The high trading volume, disclaimers in analyst reports, and data I examined all indicate that there were numerous market makers for JELD-WEN stock at the time of the IPO, immediately thereafter, and subsequently throughout the Class Period.

10.     In the Feinstein Report, I specifically pointed out that on the first day of the Class Period, three years of financial data were available to investors and the float was far above the S-3 eligibility requirement.[7] Therefore, while JELD-WEN was not technically eligible for

---

[3] JELD-WEN Defendants' Opposition To Plaintiffs' Motion For Class Certification, dated 2 February 2021.

[4] See, e.g., Deposition of Steven P. Feinstein, dated 30 January 2021, at 52:7-53:22 ("Feinstein Market Efficiency Deposition").

[5] Feinstein Market Efficiency Deposition, at 61:4-62:16.

[6] Feinstein Report, ¶¶175-183.

[7] Feinstein Report, ¶¶201-207.

S-3 registration, the salient features of S-3 eligibility were present in the market for JELD-WEN stock at the time of the IPO and thereafter, such that according to the *Cammer* court, the S-3 factor was satisfied.[8]

11. Not only are Defendants wrong to suggest that I did not examine the *Cammer* and *Krogman* factors at the start of the Class Period, but they would be wrong to suggest that these factors do not support a finding of market efficiency both at and after the IPO.

12. In their Opposition to Plaintiffs' Motion For Class Certification, Defendants misrepresent my testimony regarding the $3 discount in JELD-WEN's IPO price.[9] I specifically explained that this discount was not an inefficient disregard of available information. I explained that the IPO price did reflect all available information and alleged misinformation. I explained that, consistent with findings and principles presented in the finance literature, the $3 IPO discount was in line with the typical discount that issuers and underwriters intentionally apply to IPO prices in order to compensate IPO investors for providing liquidity, and for other purposes of value to issuers and underwriters.[10] The discount was not the result of an informational inefficiency.

13. In my deposition testimony, I noted that the characteristics of JELD-WEN and its stock, including the availability of financial data and the participation of sophisticated institutional investors in the IPO, made it "unfathomable" that material, valuation relevant information (and misinformation) was ignored by the market and disregarded in the agreement on the IPO price.[11] I stated that had there been full and correct disclosure to the marketplace, the IPO price would have been lower to reflect the adverse information allegedly concealed by defendants.[12]

---

[8] Feinstein Report, ¶¶201-207.

[9] Opposition To Plaintiffs' Motion For Class Certification, pp. 23-25.

[10] Feinstein Market Efficiency Deposition, at 65:20-67:6.

[11] Feinstein Market Efficiency Deposition, at 49:2-17.

[12] Feinstein Market Efficiency Deposition, at 65:20-67:6.

14. In the Feinstein Report, I also concluded that the evidence supports a conclusion that the misrepresentations and omissions artificially inflated the price of JELD-WEN stock and caused a price decline when corrected.[13] These components of my loss causation analysis are affirmative proof of price impact.

15. In the Feinstein Report, I explained that while the partially corrective disclosure on 8 October 2018 reasonably impacted the stock price negatively that day, the magnitude of the effect was not large enough to register as a statistically significant decline, which indisputably must be attributed to the newly disclosed information.[14] The non-significance may have been due to the countervailing impact of the Company's denials, which would have maintained inflation in the stock price and kept the stock price from falling as much as it otherwise would have.

16. Contrary to Defendants' assertion in their Opposition to Plaintiffs' Motion For Class Certification, I did not state that investors suffered no damages precipitated by the 5 October 2018 corrective disclosure. The price movement on 8 October 2018, following the partially corrective disclosure event and the Company's vehement denials over the weekend, was a decline in the stock price. That the decline was not statistically significant is not proof that no drop occurred, nor that the drop was not caused by the corrective disclosure. The drop caused by the corrective disclosure was muted by the Company's denials, which buffered the price impact until the Company's "Liability Admission" on 15 October 2018.

17. Defendants incorrectly assert that I stated that I could not prove any damages were suffered on 5-8 October 2018. My understanding is that for price impact purposes, Defendants bear the burden to prove that there was no impact. Defendants have not proved that the partially corrective disclosure on 5 October 2018 did not cause the stock price decline that occurred the next trading day, 8 October 2018. Defendants have not provided any evidence that that stock price decline was caused by anything other than the partially corrective disclosure.

---

[13] Feinstein Report, ¶¶21-26.

[14] Feinstein Report, ¶¶292-296.

4

18. To set the record straight, I did not state that I could not prove there were damages suffered on 5-8 October 2018. Rather, I stated that to provide a conservative quantification of damages, I would exclude the price decline and losses suffered on 8 October 2018 from the quantification in the damages section of my combined market efficiency, loss causation, and damages report.

19. In the Feinstein Report and in my deposition testimony, I explained how the Company retreated from its denials that it would suffer adverse consequences from the *Steves* litigation when it effectively acknowledged liability and negative repercussions on 15 October 2018, after the close of trading.[15] That day, the JELD-WEN stock price declined a statistically significant 20.96% (on a logarithmic return basis). Controlling for unrelated market and sector effects, and considering the possible role of volatility, the price movement attributable to Company news was -23.25%, or -$4.42 per share. This result is statistically significant at over the 99.99% confidence level. The statistical analysis proves that the steep stock price decline was caused by the Company's announcements, which constituted a corrective disclosure.

20. As explained in the Feinstein Report, based on the nature of the information disclosed on these event dates, which corrected prior alleged misrepresentations and omissions, and based on financial valuation principles, analyst commentary and valuations, and the statistical significance of the stock price decline on 16 October 2018, I conclude that the alleged misrepresentations and omissions had price impact.[16]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on information available to me as of the date of this declaration. Executed this 8th day of February 2021.

Steven P. Feinstein, Ph.D., CFA

---

[15] Feinstein Report, ¶¶297-300.

[16] Feinstein Report, ¶¶297-300.