**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112-JAG |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | **REDACTED** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE SECTIONS V, VI and VII.D OF THE EXPERT REPORT AND TESTIMONY OF JOHN H. JOHNSON, IV**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Jeld-Wen's Anticompetitive Conduct ........ 2

B. Summary of Lamb's Opinions Regarding Jeld-Wen's Anticompetitive Behavior ........ 4

C. Dr. Johnson's Rebuttal Opinions ........ 5

III. LEGAL STANDARD ........ 6

IV. PORTIONS OF DR. JOHNSON'S PROFFERED EXPERT TESTIMONY SHOULD BE EXCLUDED ........ 7

A. Dr. Johnson's Reframing of the Allegations to Suit His Criticisms of Dr. Lamb's Regression Models Does Not Fit the Facts of the Case ........ 7

B. Dr. Johnson's Failure to Address the Doorskins Market Renders his Criticisms of Dr. Lamb's Market Analyses Confusing and Unhelpful ........ 10

V. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews ex rel. Tuggle v. Woody*,
2018 WL 2452177 (E.D. Va. May 31, 2018) (Lauck, J.) ....10

*AngioScore, Inc. v. TriReme Medical, Inc.*,
2015 WL 5258786 (N.D. Cal. Sept. 8, 2015) ....11

*In re Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.*,
2009 WL 2750462 (D.S.C. Aug. 26, 2009) ....9, 12

*Cambridge Retirement System v. Jeld-Wen Holding, Inc.*,
2020 WL 6270482 (E.D. Va. Oct. 26, 2020) (Gibney, J.) ....11

*Cooper v. Smith & Nephew, Inc.*,
259 F.3d 194 (4th Cir. 2001) ....6, 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ....6

*Estate of Anthony Anderson v. Strohman*,
2016 WL 4013638 (D. Md. July 27, 2016) ....9, 11, 12

*James River Mgmt. Co., Inc. v. Kehoe*,
2010 WL 431477 (E.D. Va. Feb. 5, 2010) (Payne, J.) ....6, 7, 9, 12

*Limelight Networks, Inc. v. XO Communications, LLC*,
2018 WL 678245 (E.D. Va. Feb. 2, 2018) (Gibney, J.) ....9, 11

*Sardis ex rel. Sardis v. Overhead Door Corp.*,
2019 WL 560273 (E.D. Va. Feb. 12, 2019) (Gibney, J.) ....6

*Sempowich v. Tactile Systems Technology, Inc.*,
2020 WL 6265076 (E.D.N.C. Oct. 23, 2020),
*appeal filed*, No. 20-2245 (4th Cir. Nov. 20, 2020) ....7, 9, 12

*Silicon Knights, Inc. v. Epic Games, Inc.*,
2011 WL 6748518 (E.D.N.C. Dec. 22, 2011) ....9, 10, 12

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
2021 WL 630521 (4th Cir. Feb. 18, 2021) ....4

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999) ....6, 7

**Statutes and Rules**

Fed. R. Evid. 702 ....................................................................................................................6

# I. INTRODUCTION

Defendants Jeld-Wen, several of Jeld-Wen's senior executives—former President and CEO Mark A. Beck, former EVP and CFO L. Brooks Mallard, former Interim CEO Kirk S. Hachigian, current President and CEO Gary S. Michel—and controlling shareholder Onex, (altogether, "Defendants") have proffered Dr. John H. Johnson, IV ("Dr. Johnson") as their rebuttal expert to Plaintiffs' antitrust and economics expert Dr. Russell Lamb ("Dr. Lamb").[1] However, Dr. Johnson's report and testimony contain two fatal errors that render portions of his opinion irrelevant, misleading, and unhelpful to a jury, requiring portions of his opinion to be excluded.

First, Dr. Johnson's report and testimony misconstrue the Complaint's allegations and completely ignore key, relevant facts to suit his criticisms of Dr. Lamb's opinion. For instance, in critiquing and opining on Dr. Lamb's decision to begin the "anticompetitive period" in 2014 when performing his multiple regression analysis, Dr. Johnson improperly bases his opinion on the flawed premise that the Complaint alleges that the anticompetitive behavior began in 2012. However, in doing so, Dr. Johnson ignores the Complaint's substantive allegations, which explicitly state that Jeld-Wen's anticompetitive behavior did not begin until 2014 following Defendant Hachigian's appointment as Jeld-Wen's CEO, his explicit communications with Masonite's CEO Fred Lynch, and Masonite's subsequent exit from the doorskins market. Ignoring such critical facts is not only improper on its own, but it renders Dr. Johnson's opinions irrelevant and unhelpful and will inevitably mislead the jury.

Second, Dr. Johnson's report and testimony entirely fail to address and analyze critical aspects of this case, such as Jeld-Wen's unilateral anticompetitive conduct in the doorskins market

[1] Unless otherwise stated, all: (i) capitalized terms shall have the meanings ascribed in the Complaint; (ii) internal citations and quotations are omitted; and (iii) emphasis is added.

and the *Steves and Sons* litigation. Failing to address such pertinent aspects of this case—while simultaneously criticizing the entirety of Dr. Lamb's opinions, which address ***both*** the doorskins and interior molded doors ("IMD") markets—will lead a jury to believe that such facts are irrelevant and unimportant, which even the Court itself determined is not the case.

As a result, Dr. Johnson's opinions do not "fit" the allegations in the Complaint but instead address an alternate reality that suit the criticisms he attempts to advance. Dr. Johnson's opinions are not tethered to the facts of this case and would thus be misleading and unhelpful to the jury as they are not tethered to the facts of this case. Accordingly, the Court should exclude Sections V, VI and VII.D of Dr. Johnson's report and testimony that are based upon these fatal errors.

## II. <u>BACKGROUND</u>

### A. Jeld-Wen's Anticompetitive Conduct

As set forth in Plaintiffs' Consolidated Class Action Complaint, (the "Complaint," ECF No. 73), beginning in 2014, Jeld-Wen engaged in anticompetitive behavior in order to "kill off" competition and raise the prices of IMDs and doorskins—thereby increasing the Company's revenue and profitability.[2] ¶¶1, 9–13. Jeld-Wen then misled investors as to the source of its financial success by attributing it to, *inter alia*, "pricing discipline," and "pricing optimization," while failing to disclose that their financial success was actually the result of Jeld-Wen's anticompetitive actions including: (1) unilaterally raising the prices of doorskins in violation of long-term supply agreements it had entered into with independent interior door manufacturers (*see, e.g.*, ¶¶12, 253, 260, 268) and (2) issuing parallel price increases for IMDs along with its primary competitor, Masonite, that were untethered to market fundamentals *See e.g.,* ¶¶16, 109, 198, 202–205.

[2] References to the Complaint are hereinafter referred to as "¶__".

Jeld-Wen was only able to engage in this anticompetitive behavior because the markets for IMDs and doorskins in North America were highly concentrated. In 2012, Jeld-Wen acquired Craftmaster Manufacturing, Inc. ("CMI"), which included a facility in Towanda, Pennsylvania where it manufactured doorskins and IMDs. ¶¶5–6. Following the acquisition, Jeld-Wen and Masonite were the only two vertically integrated IMD manufacturers in North America and the only viable suppliers of doorskins to independent IMD manufacturers. ¶¶4–5, 9, 79, 82. Critically, however, in June 2014, Masonite announced it would no longer sell doorskins to independent manufacturers, leaving Jeld-Wen as the only supplier of doorskins in North America. ¶¶10, 83.

In 2014, Jeld-Wen began using its increased market power to unilaterally raise the prices of doorskins in violation of long-term supply agreements into which it had entered prior to the CMI acquisition. ¶¶11, 84–88. Specifically, after Masonite's announcement that it would no longer sell doorskins to IMD manufacturers, Jeld-Wen began systematically breaking these long-term supply agreements by raising prices in violation of the contractually set formula for doing so. ¶¶9–11. This included adding a "capital charge" as well as refusing to issue rebates for doorskins that were defective. ¶¶84–88, 90–91.

Also in 2014, Kirk Hachigian replaced Philip Orsino as Jeld-Wen's CEO. Jeld-Wen and Masonite began using their dominant market position in the highly concentrated market to coordinate price increases on IMDs. ¶¶11, 97–98. From 2014 through the end of the Class Period, the two companies issued parallel price increases, often announced within days of each other. ¶¶13, 95. Further, in June 2014, Jeld-Wen and Masonite implemented the single largest price increases in the history of the IMD market, raising prices 9.5% and 8% respectively. ¶95. And even after this historic price increase, Jeld-Wen and Masonite continued to systematically raise prices in parallel throughout the Class Period. *Id.*

As a result of some of these anticompetitive practices, Steves and Sons brought an action against Jeld-Wen in the United States District Court for the Eastern District of Virginia alleging that Jeld-Wen's acquisition of CMI and its subsequent conduct violated federal antitrust laws. ¶¶14, 100. On February 5, 2018, a jury returned a verdict in favor of Steves and Sons and the district court released an opinion detailing Jeld-Wen's anticompetitive conduct and ordering the divestiture of the Towanda facility. ¶17. A decision that the Fourth Circuit recently affirmed. *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2021 WL 630521, at *1 (4th Cir. Feb. 18, 2021).

### B. Summary of Dr. Lamb's Opinions Regarding Jeld-Wen's Anticompetitive Behavior

Plaintiffs retained Dr. Russell Lamb, an antitrust and economics expert, who rendered opinions concerning Jeld-Wen's anticompetitive conduct from 2014 through the end of the Class Period. Specifically, Dr. Lamb was asked to evaluate: (i) whether the structure of the molded doorskins and IMD markets were conducive to anticompetitive behavior; (ii) whether Jeld-Wen's acquisition of CMI gave Jeld-Wen increased market power in the molded doorskins and IMD markets such that it could harm its competitors via unilateral and coordinated actions; (iii) whether Jeld-Wen's conduct in the IMD and molded doorskins markets following its acquisition of CMI was consistent with a firm operating in a highly competitive environment free of anticompetitive conduct; and (iv) whether Jeld-Wen's economic performance in the molded doorskins and IMD markets is consistent with Jeld-Wen operating in a competitive marketplace free of anticompetitive conduct. Ex. A ("Lamb Rpt."), ¶8.

Based on Dr. Lamb's knowledge and expertise in antitrust economics and his review of documents produced in discovery, Dr. Lamb concluded that: (i) the structural characteristics of the molded doorskins and IMD markets facilitated anticompetitive conduct; (ii) the molded doorskins and IMD markets became more concentrated following Jeld-Wen's acquisition of CMI

such that Jeld-Wen was able to exercise market power to increase profitability; (iii) Jeld-Wen's conduct following the acquisition of CMI is consistent with a firm exercising both unilateral and coordinated market power; and (iv) Jeld-Wen's economic performance in the molded doorskins and IMD markets, both before and during the Class Period, is consistent with the alleged anticompetitive conduct and inconsistent with a firm unilaterally maximizing profits in a competitive market free of anticompetitive conduct. *Id.* ¶10. Specifically, with respect to economic performance attributable to anticompetitive conduct, [REDACTED]

### C. Dr. Johnson's Rebuttal Opinions

Defendants designated Dr. John H. Johnson IV as a rebuttal expert. Dr. Johnson was "asked by counsel for JELD-WEN to provide an economic assessment of the opinions set forth in the Declaration of Dr. Russell L. Lamb in *In re JELD-WEN Holding Inc., Securities Litigation*." Ex. B ("Johnson Rpt."), ¶5. Dr. Johnson's Report sets forth the following opinions, which he intends to offer at trial: (i) that [REDACTED] (ii) that [REDACTED] and (iii) that Dr. Lamb's [REDACTED].

However, as set forth in detail below, Dr. Johnson's opinions are nothing more than an attempt to recast Plaintiffs' allegations to fit his own unsupported version of events, which are directly contradicted by the allegations in the Complaint and the evidentiary record.[3]

## III. LEGAL STANDARD

The Federal Rules of Evidence require an expert witness to be sufficiently qualified, base his or her opinions on sufficient facts or data, and ensure that expert testimony is derived from "reliable principles and methods" that are applied to the facts of the case. Fed. R. Evid. 702; *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 n.1 (4th Cir. 2001). When "considering the admissibility of expert testimony," district courts must exercise "a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

"The requirement that the evidence of testimony will assist the trier of the fact to either understand the evidence or to determine a fact in issue are conditions that go to the question of relevance." *James River Mgmt. Co., Inc. v. Kehoe*, 2010 WL 431477, at *2 (E.D. Va. Feb. 5, 2010) (Payne, J.). As courts, including this one, have observed, testimony is relevant only if it connects to the pertinent inquiry at issue. *See*, *e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993) (for expert testimony to be helpful, Rule 702 requires a valid "connection to the pertinent inquiry as a precondition to admissibility"); *Sardis ex rel. Sardis v. Overhead Door Corp.*, 2019 WL 560273, at *2 (E.D. Va. Feb. 12, 2019) (Gibney, J.) ("Under the second *Daubert* prong, courts determine whether the expert's reasoning is 'relevant to the task at hand.'"). In determining whether certain expert evidence is helpful to the jury and thus

[3] On February 15, 2021, Dr. Lamb issued a reply declaration responding to Dr. Johnson's criticisms. *See* Ex. C.

relevant, courts must consider "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *James River Mgmt.*, 2010 WL 431477, at *2. This "relevancy requirement has been described as a question of '***fit***.'" *Sempowich v. Tactile Sys. Tech., Inc.*, 2020 WL 6265076, at *12 (E.D.N.C. Oct. 23, 2020), *appeal filed*, No. 20-2245 (4th Cir. Nov. 20, 2020).

"While Rule 702 was intended to liberalize the introduction of relevant expert evidence, courts must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be 'both powerful and quite misleading.'" *Cooper*, 259 F.3d at 199. Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry*, 178 F.3d at 261.

## IV. <u>PORTIONS OF DR. JOHNSON'S PROFFERED EXPERT TESTIMONY SHOULD BE EXCLUDED</u>

### A. Dr. Johnson's Reframing of the Allegations to Suit His Criticisms of Dr. Lamb's Regression Models Does Not Fit the Facts of the Case

Dr. Johnson's attempts to reframe the Complaint's allegations and ignore critical facts in order to criticize Dr. Lamb's multiple regression models renders Dr. Johnson's expert opinions irrelevant, misleading, and unhelpful to the fact-finder. Specifically, Dr. Johnson incorrectly opines that Dr. Lamb's regression analysis is unreliable because his [REDACTED]. Specifically, Section VII.D. of Dr. Johnson's report claims that Dr. Lamb's regression analyses are flawed because his analysis uses a [REDACTED] Dr. Johnson's criticism, however, is based on his unfounded assertion that [REDACTED]

[redacted] Thus, Dr. Johnson erroneously concludes, [redacted]

But Dr. Johnson's criticisms first ignore, then misconstrue, the facts in this case. The Complaint's substantive allegations unequivocally state that "Jeld-Wen and then CEO, Defendant Hachigian ***began*** to engage in anticompetitive conduct" "following the CMI Acquisition ***and*** Masonite's exit from the doorskins market"—which the Complaint makes clear did not happen until "2014." ¶¶9–11, 83–84. Consistent with the Complaint, Dr. Lamb's report and testimony set forth that while Jeld-Wen had the ***ability*** to exercise increased market power beginning in 2012 after the CMI acquisition, the Company did not begin ***exercising*** that power to anticompetitive ends until 2014, after Defendant Kirk Hachigian was named CEO and Masonite announced that it would no longer sell doorskins to independent door manufacturers. Lamb Rpt. ¶¶68–69, 81–84, 100–101; Ex. D ("Lamb Dep.") 205:3–206:9, 207:24–208:10.[4] Yet, Dr. Johnson's opinions ignore and misconstrue these facts, instead relying entirely on a single, unnumbered sub-heading in the Complaint entitled, "Beginning in 2012, Jeld-Wen Has Been Engaging in Anticompetitive Conduct" as the sole basis for his assertion that Plaintiffs are alleging that the anticompetitive conduct actually began in 2012. Notably, however, Dr. Johnson's report and testimony did not cite to the heading, but instead to paragraphs 9–11 of the

[4] [redacted]

Complaint, which clearly set forth that the anticompetitive behavior began in 2014. *See* Johnson Dep. 50:11–16; Johnson Rpt. ¶12 n.24, ¶22 n.32.

As this Court, and others within the Fourth Circuit, have held, because Dr. Johnson decided to ignore these allegations when issuing his opinions, his expert opinion and testimony related to Section VII.D of his report should be excluded. *Limelight Networks, Inc. v. XO Commc'ns, LLC*, 2018 WL 678245, at *7 (E.D. Va. Feb. 2, 2018) (Gibney, J.) (excluding expert opinion based on the fact that four patents had equal values because "it simply ***ignores facts in this case*** that [the expert] himself recognizes—that different patents have different values"); *Estate of Anthony Anderson v. Strohman*, 2016 WL 4013638, at *8 (D. Md. July 27, 2016) (excluding expert opinion in part because it "ignore[d] other facts in the record"); *In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*, 2009 WL 2750462, at *14 (D.S.C. Aug. 26, 2009) ("failure to address [] contrary data render[ed]" expert opinion "inherently unreliable").

At bottom, Dr. Johnson erroneously misconstrues the facts of the case to suit his criticism of Dr. Lamb's regression analysis and make it seem as though it is flawed even though it is entirely consistent with the allegations in the Complaint. Allowing Dr. Johnson to offer opinions based on an alternative and inaccurate set of "facts" unsupported by the Complaint's substantive allegations would be irrelevant, unhelpful, and will undoubtedly mislead the jury. *Sempowich*, 2020 WL 6265076, at *13 (excluding expert opinion because it "does not address a fact in issue" and would thus "not help the fact-finder"); *James River Mgmt.*, 2010 WL 431477, at *4 ("[T]he opinion also ***fails the 'fit' requirement*** because the theory posited by [the expert] is not tethered to the facts of th[e] case."); *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 6748518, at *16–

17 (E.D.N.C. Dec. 22, 2011) (where expert testimony is "inconsistent with the facts of the case" or "not supported by the evidence," such "testimony is not relevant and inadmissible").[5]

Accordingly, Dr. Johnson's opinions in Section VII.D of his report criticizing Dr. Lamb's regression analyses based on the unfounded conclusion that the Complaint alleges that the anticompetitive behavior began in 2012 must be excluded.

**B. Dr. Johnson's Failure to Address the Doorskins Market Renders his Criticisms of Dr. Lamb's Market Analyses Confusing and Unhelpful**

Dr. Johnson's expert opinions and testimony in Sections V and VI of his report regarding Dr. Lamb's analysis of the doorskins and IMD markets should also be excluded because they fail to address and analyze one of the most critical aspects of this case—Jeld-Wen's unilateral anticompetitive conduct in the doorskins market. Despite acknowledging that the doorskins market and IMD market are two distinct markets, Dr. Johnson himself conceded that his report does not contain any analysis of: (1) the structure of the doorskins market; (2) whether or not the doorskins market was susceptible to anticompetitive behavior; or (3) whether Jeld-Wen's unliteral conduct in the doorskins market was anticompetitive. Johnson Dep. 31:3–32:19. Indeed, Dr. Johnson acknowledged that his report [redacted].[6]

[5] Furthermore, to the extent Dr. Johnson is weighing the meaning of the various allegations of the Complaint and thus taking it upon himself to make "comparisons and evaluations of evidence—something solely within the province of the jury"—such expert opinions should be excluded because the opinions "invade the province of the jury, are unhelpful, irrelevant, and potentially confusing." *Andrews ex rel. Tuggle v. Woody*, 2018 WL 2452177, at *5–6 (E.D. Va. May 31, 2018) (Lauck, J.).

[6] [redacted] Dr. Lamb's multiple regression analyses do not measure the increase in doorskin prices except to the extent doorskins, the primary component of IMDs, are reflected in the market price of IMDs.

Additionally, Dr. Johnson performed no analysis nor assessment of the *Steves and Sons* litigation and the related allegations in the Complaint. For example, when asked whether he was familiar with the *Steves* litigation and the [REDACTED] Dr. Johnson responded that while he was aware of those allegations in the Complaint, [REDACTED]. Accordingly, Dr. Johnson's opinions and testimony simply do not address critical aspects of Dr. Lamb's analyses and conclusions regarding Jeld-Wen's anticompetitive conduct with respect to the doorskin market.[7]

Because Dr. Johnson's opinion ignores such crucial facts while simultaneously making broad, conclusory, criticisms about Dr. Lamb's opinions, which address both the doorskins and IMD markets, his analysis in Sections V and VI of his report will mislead the jury about pertinent facts of this case and should be excluded. *Limelight Networks, Inc.*, 2018 WL 678245, at *7 (excluding expert opinion because expert "ignore[d] facts in th[e] case"); *Estate of Anthony Anderson*, 2016 WL 4013638, at *8 (excluding expert opinion in part because it "ignore[d] other

[7] Even the Court's Order denying Defendants' Motions to Dismiss recognized the significance of the doorskins market and *Steves* Litigation. Indeed, the Court stated: "[T]he Court gives no weight to the [D]efendants' semantic argument about the competitiveness statements not referring specifically to the *doorskins* market because a reasonable investor would have assumed that (1) any statements about market competitiveness referred to all the markets in which JELD-WEN competed, including the *doorskin* market, and (2) references to the door and window market include the doorskins market." *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 2020 WL 6270482, *5 (E.D. Va. Oct. 26, 2020) (Gibney, J.) (emphasis in original). The Court further explained, "[i]ndeed, doorskins comprise the most important part of IMDs, representing up to 70% of the overall cost of IMDs." *Id.* at *5 n.10. *See AngioScore, Inc. v. TriReme Med., Inc.*, 2015 WL 5258786, at *2 (N.D. Cal. Sept. 8, 2015) (excluding portions of expert report that "misconstrue the [c]ourt's earlier findings in an attempt to rebut plaintiff's expert").

facts in the record"); *Bausch & Lomb, Inc.*, 2009 WL 2750462, at *14 ("failure to address [] contrary data render[ed]" expert opinion "inherently unreliable").

For example, Dr. Johnson's failure to address the doorskins market and the *Steves* litigation will undoubtedly lead a jury to believe that the doorskins allegations are irrelevant or unimportant to this action when the opposite is true. Likewise, jurors may be misled to believe that Dr. Johnson's criticisms (which are entirely limited to the IMD market) apply to Dr. Lamb's assessment of the doorskins industry, when, by his own admission, they do not. Accordingly, Dr. Johnson's opinions would not help the fact-finder as they are not tethered to the facts of this case. *Sempowich*, 2020 WL 6265076, at *13 (excluding expert opinion because it "does not address a fact in issue" and would thus "not help the fact-finder"); *James River Mgmt.*, 2010 WL 431477, at *4 (excluding expert opinion because the "theory posited by [the expert] is not tethered to the facts of th[e] case"); *Silicon Knights, Inc.*, 2011 WL 6748518, at *16–17 (finding expert "testimony is not relevant and inadmissible" when it is "inconsistent with the facts of the case" or "not supported by the evidence").

Therefore, Dr. Johnson's opinions and testimony related to the opinions contained in Sections V and VI of his expert report should be excluded.

## V. CONCLUSION

For the reasons stated above, the Court should exclude all opinions and testimony related to Sections V, VI, and VII.D of the report of Dr. John H. Johnson, IV.

DATED: March 5, 2021

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (Admitted *pro hac vice*)

*/s/ Steven J. Toll*

Steven J. Toll

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstien.com
jhandelsman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Counsel for Co-Lead Plaintiff Public Employees' Retirement System of Mississippi and the Class*

ROBBINS GELLER RUDMAN &
DOWD LLP
ROBERT M. ROTHMAN (Admitted *pro hac vice*)
MARK T. MILLKEY (Admitted *pro hac vice*)
WILLIAM J. GEDDISH (Admitted *pro hac vice*)
VINCENT M. SERRA (New York Bar only)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
wgeddish@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DEBRA J. WYMAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com

*Counsel for Co-Lead Plaintiff Plumbers and Pipefitters National Pension Fund and additional Plaintiff Wisconsin Laborers' Pension Fund, and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2021, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

*/s/ Steven J. Toll*

Steven J. Toll
VA Bar No. 15300
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005

*Liaison Counsel for Lead Plaintiffs*