# EXHIBIT 8



Deposition of:
## Russell Lamb

*July 16, 2020*

In the Matter of:

## Interior Molded Doors Antitrust

Veritext Legal Solutions
888.777.6690 | cs-midatlantic@veritext.com | 215-241-1000

CONFIDENTIAL

JW-SEC-01101577

Page 1

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

- - -

IN RE:  INTERIOR MOLDED    : Lead Civil

DOORS ANTITRUST            : Action No.

LITIGATION                 : 3:18-cv-00718-JAG

- - - - - - - - - - - - - - - - - - - - -    :

IN RE:  INTERIOR MOLDED    : Lead Civil

DOORS INDIRECT PURCHASER   : Action No.

ANTITRUST LITIGATION       : 3:18-cv-00850-JAG

- - -

July 16, 2020

- - -


Videotaped deposition of

DR. RUSSELL LAMB, taken remotely via Zoom,

beginning at 10:06 a.m., before LINDA

ROSSI-RIOS, a Federally Approved RPR, CCR and

Notary Public.



- - -


VERITEXT LEGAL SOLUTIONS

MID-ATLANTIC REGION

1801 Market Street - Suite 1800

Philadelphia, PA  19103

CONFIDENTIAL                                          JW-SEC-01101578

DR. RUSSELL LAMB

Page 51

those could be problematic.  There are a number of topics which to an economist one firm that is competing against the other would have no incentive to share with the other firm unless they were part of an agreement -- unless they had an agreement with each other about what price an output would be in the market.

Q.    Let's talk for a few minutes about IMD price increase announcements.  In your initial report you say that there were at least seven IMD price increase announcements set during the putative class period.  Is that right?

A.    That's correct.  I think that's the right number.

Q.    Do you agree that the announced percentage increases in those price increase announcements were perfectly transparent?

MR. CORRIGAN:  Object to the form.

THE WITNESS:  The announced, the announced price increases by the virtue of the fact that they were

CONFIDENTIAL

JW-SEC-01101628

DR. RUSSELL LAMB

Page 52

announced are transparent, that's correct.

BY MS. BRYANT:

Q. In paragraph 18 of your report you discuss Dr. Carlton's gas station example, this is starting on the bottom of page 20, going onto page 21 of your reply report. Just let me know when you're there.

A. Right.

Q. You say here that, reading from the top of page 21, "Dr. Carlton's gas station example is not analogous to the IMD industry, for at least two obvious reasons: (1) gas station prices are perfectly transparent, and (2) gas buyers do not negotiate prices, while he claims that IMD buyers do."

Do you see that?

A. I do.

Q. In (2) the prices that you're referring to in the IMD industry, those are IMD transaction prices that are negotiated. Right?

A. Well, I think that's correct

CONFIDENTIAL

JW-SEC-01101629

DR. RUSSELL LAMB

Page 53

that both Dr. Carlton and Dr. Johnson and I, all of us agree that transaction prices are negotiated prices here.

Q.   You're not referring to the percentages that were announced in the price increase letters.  Right?

A.   No.  The price increase announcements, as I've said, are -- by virtue of the announcements, they're transparent. Therefore, any market participant can understand what they are.  That's really not -- the problem with Dr. Carlton's example here is the confluence of the two factors --

Q.   Okay.

A.   -- that he ignores.

Q.   Okay.  Let me turn you forward to paragraph 28 of your report.  In the first sentence of paragraph 28 you write, "Other evidence in the record also suggests that Defendants may have shared information."  Do you see that?

A.   I do.

Q.   By "information" in this paragraph you're referring to information

CONFIDENTIAL

JW-SEC-01101630

DR. RUSSELL LAMB

Page 54

about pricing or output.  Is that right?

A.    Or I would say, and I just note I cite in Footnote 107 to the first report I wrote here, paragraph 126, so I misincorporate by reference that discussion. But I would say what they shared might include information about price increase announcements, might include information about strategic pricing behavior.  It might have been -- go look at the specific example, the quote that I believe I'm citing in paragraph 126 of the first report here from a Masonite document, it could cover a number of things that affect one firm's understanding of its rival or would-be rival firm's response to the first firm's announcements or changes or pricing behavior in the marketplace.

Q.    What's your basis for your opinion that certain record evidence suggests that defendants shared pricing information, is it is what you pointed to in paragraph 126 of your initial report?

A.    I cite to paragraph 126.  Let

CONFIDENTIAL

JW-SEC-01101631

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

CONFIDENTIAL

JW-SEC-01101855