**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112 <br><br> Judge John A. Gibney, Jr. |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR AN EXPEDITED HEARING REGARDING**
**DEFENDANTS' PRIVILEGE ASSERTIONS AND**
**WITHHOLDING OF RELEVANT DOCUMENTS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

DISCOVERY PROCESS BACKGROUND .......................................................................... 1

ARGUMENT ...................................................................................................................... 4

I.     JELD-WEN'S PRIVILEGE CLAIMS ARE PROPER. ........................................... 4

II.    PLAINTIFFS' DEMAND FOR DATA THAT NEVER EXISTED SHOULD BE REJECTED. ........................................................................................................... 7

CONCLUSION ................................................................................................................... 8

i

**PRELIMINARY STATEMENT**

Plaintiffs' motion raises two discovery disputes.  First, Plaintiffs challenge JELD-WEN Defendants' clawback of two categories of documents, which were prepared for the purpose of providing legal advice and in furtherance of JELD-WEN's legal strategy, because Plaintiffs claim they are business documents.  Second, Plaintiffs demand JELD-WEN produce data that does not— and has never—existed.  JELD-WEN Defendants have already informed Plaintiffs that this data does not exist, but Plaintiffs chose to file this motion instead of following up to request any more information.  Neither of Plaintiffs' positions has merit and the Court should reject their effort to interject properly clawed-back privileged documents into this action.

Contrary to Plaintiffs' unsupported claims, JELD-WEN Defendants have, at every turn, worked diligently to move the discovery process forward in this highly expedited case.  By contrast, Plaintiffs have repeatedly delayed when JELD-WEN Defendants have attempted to reach key agreements on the scope of discovery and the protocols that would govern it.  Plaintiffs have also repeatedly sought to needlessly expand the scope of discovery, despite the fact that JELD-WEN Defendants, at the outset, agreed to reproduce over 1 million pages of material JELD-WEN had previously produced in *In re: Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-718 (E.D. Va.), *In re: Interior Molded Doors Indirect Purchaser Antitrust Litig.*, No. 3:18-cv-850 (E.D. Va.) (the "IMD Litigation"), and *Steves and Sons, Inc. v. JELD-WEN, Inc.,* No. 3:16-cv-545-REP (E.D. Va.) (the "Steves Litigation") (collectively, the "Prior Litigation").

**DISCOVERY PROCESS BACKGROUND**

JELD-WEN Defendants provide necessary context below to demonstrate why Plaintiffs' allegations that JELD-WEN Defendants have delayed the discovery process or otherwise withheld discovery are utterly baseless.

- **October 26, 2010**:  Discovery "commenced" on October 26, 2020.  Dkt. No. 184 at 3 ("Mot.").

- **October 29, 2020**:  Plaintiffs served their first set of requests for production, which called *only* for the production of discovery materials that had been produced or created in the Prior Litigation.  Ex. 1.

- **November 13, 2020**:  In an effort to expedite the discovery process, JELD-WEN Defendants issued both their responses and their objections within 15 days.  Ex. 2.  This same day, Plaintiffs served a second set of requests for production that demanded expansive discovery that largely duplicated the categories of information they had already requested and JELD-WEN Defendants had already agreed to produce.  Ex. 4.

- **November 21, 2020**: JELD-WEN Defendants provided a draft ESI Protocol modeled on the ESI Protocol that had been agreed to and used in the IMD Litigation.  *See* Ex. 10 at 2.

- **November 24, 2020**:  JELD-WEN Defendants produced *over one million pages* of discovery material responsive to Plaintiffs first set of requests.  Ex. 3.

- **November 25th & December 1, 2020**:  The parties exchanged drafts of the ESI Protocol, with the primary area of disagreement being Plaintiffs' insistence that email threading not be used as a tool to make the discovery process more efficient.  Ex. 10 at 1-2.

- **November 30, 2020**:  Plaintiffs served timely objections to Plaintiffs' second set of document requests.  Ex. 5.

- **December 14, 2020**:  JELD-WEN Defendants served timely responses to Plaintiffs' second set of document requests.  Ex. 6.  On top of the extensive discovery that already occurred in the Prior Litigation, JELD-WEN Defendants proposed a set of 11 individual custodians, 4 centralized file locations, 113 search terms, and a relevant time period related to the purported class period.  Ex. 7.

- **December 28, 2020**:   After two weeks of silence, Plaintiffs responded to JELD-WEN Defendants' proposal by proposing 7 additional custodians, 20 additional—but layered and expansive—search terms, and a modest expansion of the relevant time period.  Ex. 8; *see* Ex. 9 at 17-18 (December 28, 2020 email from James Christie).   JELD-WEN Defendants immediately set about assessing the impact of Plaintiffs' counterproposals.

- **January 4, 2021:**  JELD-WEN Defendants informed Plaintiffs that the revised search terms would result in the review of "over a hundred thousand additional documents--the majority of which have little or no connection to this litigation" and provided specific examples.  Ex. 9 at 16-17.  Nevertheless, JELD-WEN Defendants did agree to Plaintiffs' expanded time period, as well as eight of their twenty proposed search terms, and offered to meet and confer on the remaining issues.  *Id.* at 17.  JELD-WEN Defendants further indicated a willingness to meet and confer on Plaintiffs' demand that the ESI Protocol prohibit the use of threading, which would make JELD-WEN Defendants' review more efficient.  *Id.*  That same day, Plaintiffs submitted their expert reports, as required by the Court's scheduling order.  Dkt. No. 112 at 1.

  **January 15, 2021**:  After meeting and conferring multiple times between January 5 and January 15, 2021, Plaintiffs proposed only extraordinarily minor changes to their proposed

terms, reducing the total hit count on their proposal by less than two percent. *Id.* at 12; Ex. 9 at 12. Nonetheless, in an effort to move discovery forward and avoid wasting judicial resources, JELD-WEN Defendants ultimately agreed to Plaintiffs' revised terms on January 15, 2021, over its objections. Although Plaintiffs ultimately agreed to allow JELD-WEN Defendants to use email threading to expedite their review and production of documents, they insisted JELD-WEN Defendants' privilege logs would need to contain log entries for every single email in a chain as a unique entry. Ex. 11 at 2. JELD-WEN Defendants had previously explained that this would slow down the process of providing a privilege log, and had proposed a metadata-based solution that would allow the generation of a log to proceed more efficiently while providing Plaintiffs with the information they purported to seek. *See id.* at 1. When Plaintiffs declined to agree, JELD-WEN Defendants again reminded them their refusal would "mean you won't get the privilege log as quickly as you otherwise would" but that "[i]f you'd prefer to get it faster, we are willing to consider the option discussed today wherein defendants would produce privilege log entries for the last-in-time email in an entirely privileged thread, along with metadata for authors, recipients, and date/time information for earlier-in-time emails in the same thread." *Id.*

- **January 18, 2021**: JELD-WEN Defendants followed up on the status of the ESI Protocol. Ex. 9 at 3. Plaintiffs' reiterated their position, and the parties agreed that, despite the delay that would be caused by doing so, JELD-WEN Defendants would produce privilege logs consistent with Plaintiffs' demands. *See* Ex. 9 at 1-2; Ex. 11 at 1; Ex. 12.

- **January 19, 2021**: Plaintiffs filed their motion for class certification, pursuant to the Court's scheduling order. Dkt. No. 120; Dkt. No. 112 at 2.

- **January 22, 2021**: The parties agreed to the final form of the ESI Protocol.

- **January 27, 2021**: The parties executed the ESI Protocol.

- **January 30, 2021-March 5, 2021**: After JELD-WEN Defendants gave in to Plaintiffs' demands on custodians, search terms and privilege logging, they expeditiously reviewed over 175,000 documents, and made productions on a rolling basis, the first of which occurred just three days after executing the ESI Protocol, and just two weeks after agreeing to search terms and custodians, on Saturday, January 30, 2021. JELD-WEN Defendants produced additional documents on February 6 February 12, February 15, and March 5, 2021 of a total of over 29,000 documents and over 270,000 pages. *See* Ex. 13; Ex. 14; Ex. 15; Ex. 16; Ex. 17. All but one of these productions occurred on or before the date Plaintiffs served their reply expert reports on February 15, 2021, as required by the Court's scheduling order. Dkt. No. 112.

- **February 26, 2021**: Plaintiffs served 16 new discovery requests (beyond the scope of the custodians, search terms and time period previously agreed by the parties) on JELD-WEN Defendants, effectively seeking to restart the discovery process all over again. Ex. 18.

- **March 15, 2021:** JELD-WEN Defendants served objections to Plaintiffs' third set of discovery requests, served four months after discovery in this matter commenced. Ex. 19.

As set forth above, given the schedule ordered by the Court, and Plaintiffs failure to promptly respond to JELD-WEN Defendants' proposals, the parties had not even agreed to custodians or search terms at the time Plaintiffs submitted their expert report on January 4, 2021, nor had they reached agreement on ESI when Plaintiffs filed their class certification motion on January 19, 2021. Plaintiffs' claim that JELD-WEN somehow intentionally withheld discovery of any sort, Mot. at 1-2, is therefore misleading. As demonstrated by the exhibits cited above, JELD-WEN has acted expeditiously to move discovery forward in this highly expedited action. Plaintiffs' motion is an effort to generate a smokescreen to mask their actual aim—to extend discovery, and the burden on JELD-WEN Defendants, and to delay this action.

## ARGUMENT

### I.    JELD-WEN'S PRIVILEGE CLAIMS ARE PROPER.

Plaintiffs' privilege challenges are limited to two types of documents. *See* Mot. at 6-7; Wyman Decl. Exs. B-C (tracked changes and clean versions of the same privileged draft documents); *id.* Exs. D-G (four variations of the same privileged presentations slides). Contrary to Plaintiffs' claim that "Jeld-Wen Defendants have provided *no evidence* that the six documents in question are privileged," Mot. at 6-7, JELD-WEN Defendants provided Plaintiffs a privilege log focused on these very documents the morning of March 15, 2021, *before* Plaintiffs' filed their motion. *See* Ex. 18 (highlighting the six challenged documents and providing a full privilege log entry for all such documents and their family).[1]

---

[1]    Plaintiffs broader challenge to the timing of JELD-WEN's production of a privilege log, Mot. 7, is meritless. As is discussed above, JELD-WEN Defendants repeatedly warned Plaintiffs that the form of privilege log they demanded would take additional time to produce. JELD-WEN Defendants have been working diligently to prepare that privilege log, which will contain thousands of entries, and will be providing it later this week. Thus, Plaintiffs have no basis to claim JELD-WEN Defendants have "refuse[d] to provide a privilege log." Mot. at 8 (citations omitted). Moreover, regarding the Prior Litigation, Plaintiffs raise this issue for the first time in this motion. JELD-WEN Defendants agreed to reproduce documents that were

JELD-WEN Defendants have met their burden with regard to all of the documents at issue. With respect to Exhibits B and C, those documents are drafts Mr. Linker commented on at the request of Laura Doerre, JELD-WEN's General Counsel, to facilitate her ability to provide legal advice to the Company regarding JELD-WEN's public relations and litigation strategy in connection with the ongoing Steves Litigation. *See* Ex. 18 (entries for JW-SEC-01119077 and JW-SEC-01153076).[2]  The provision of legal advice regarding public relations and litigation strategy is a subject matter over which a claim of privilege is proper. *See In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 329 (S.D.N.Y. 2003).  That is particularly true where the public relations firm is hired by attorneys for the purpose of assisting the attorneys in addressing a legal issue or problem. *See id.* at 330-31.  That is exactly what took place here, where Latham & Watkins, LLP, JELD-WEN's counsel during the Steves Litigation trial and remedies phases, directed the public relations and litigation strategy to which Exhibits B and C relate.[3]  Accordingly, Exhibits B and C were properly clawed back as privileged.

Plaintiffs' privilege challenge regarding Exhibits D-G of their motion is similarly meritless. As the privilege log JELD-WEN Defendants provided demonstrates, the documents at issue are

---

*produced* in the Prior Litigations, which they have.  Plaintiffs could have, but never did, request the Prior Litigation privilege logs.  If they had, JELD-WEN Defendants would have produced them, just as they have complied with Plaintiffs' other requests for discovery material from the Prior Litigation.  This is yet another example of Plaintiffs running to the Court rather than meeting and conferring in good faith, as required by the local rules.

[2]  JELD-WEN Defendants are also submitting the remaining documents that were not inadvertently produced from the privilege log in Exhibit 18 for in camera review.  Those documents demonstrate that the challenged materials were prepared at the request of counsel and for the purpose of providing legal advice.

[3]  Given the expedited nature of Plaintiffs' motion, JELD-WEN Defendants have not had time to secure a declaration from Latham regarding its involvement in this process, but can provide one at the Court's convenience if doing so would aid the Court in its consideration of this matter.

drafts of slides to be used to provide legal advice to JELD-WEN's board of directors, which were circulated between JELD-WEN's General Counsel, CFO and Chief Accounting Officer.  *See* Ex. 18.  These documents were attached to emails with the subject line "Privileged and Confidential." The slides themselves discussed the legal implications of various accounting treatments, including the potential impact of JELD-WEN's legal strategy in the Steves Litigation, and were prepared for the purpose of advising JELD-WEN's Board of Directors on the same.  *See* Ex. 18.  While the cover emails, which JELD-WEN Defendants are submitting *in camera* along with this letter, were originally and properly withheld as privileged, the slides themselves were inadvertently produced. *See id.*[4]  Plaintiffs are trying to capitalize on that mistake, which occurred because of the great effort JELD-WEN Defendants expended reviewing over 170,000 documents in a matter of weeks so that Plaintiffs could have the discovery they requested..

Presentations made by a company's general counsel to its board of directors are privileged. *Jones v. Nat. Council of Young Men's Christian Assocs. of the U.S.*, 2011 WL 1740122, at *1 (N.D. Ill. May 3, 2011); *see also Upjohn Co. v. United States*, 449 U.S. 383, 390-93 (1981).  Especially when the advice of the general counsel relates to active or potential litigation.  *See Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131, 139 (W.D. Pa. 1993).  That is the case here.  The challenged slide decks are draft materials prepared in consultation with Ms. Doerre, in her capacity as general counsel, for the express purpose of advising JELD-WEN's board of directors on legal risks and litigation strategy.  *See* Wyman Decl. Exs. D-G.  These documents are plainly subject to the attorney-client privilege and work product privileges.

---

[4]   JELD-WEN Defendants have submitted those cover emails for the Court's *in camera* review to facilitate a prompt resolution of this dispute.

For the foregoing reasons, Plaintiffs motion to compel the production of the clawed back documents Plaintiffs attached to their Motion as Exhibits B-G to the Declaration of Debrah J. Wyman should be denied.

## II.   PLAINTIFFS' DEMAND FOR DATA THAT NEVER EXISTED SHOULD BE REJECTED.

Finally, Plaintiffs motion requests that the Court compel JELD-WEN Defendants to search for and produce data from JELD-WEN's Salesforce platform, including a chat function within it known as Chatter.  Mot. at 11.  As set forth in the attached affidavit of Ravi Ramaraj, JELD-WEN's Vice President, Global IT Infrastructure & Security, Ex. 21, and as JELD-WEN Defendants informed Plaintiffs before they filed this motion, *see* Ex. 20, this is a moot issue because the data Plaintiffs seek does not—and has never—existed.

Plaintiffs claim such data should exist by misconstruing the testimony of Tim Kirk, JELD-WEN's Senior Director of Sales Operations from 2014-2019.  Mr. Kirk testified that the pricing data on Saleforce related to "the window side of the business."  Wyman Decl. Ex. Q 37:9-15.  Mr. Kirk also testified that there may have been unspecified times when "price increase letters" were communicated via Chatter.  *Id.* 37:16-38:19.  Plaintiffs did not ask Mr. Kirk ***when*** those price increase letters were communicated on Chatter or for what products.

Moreover, to the extent Plaintiffs identified a price increase letter that was posted to Chatter, it is one from December 2014 (outside the agreed-upon time period for discovery in this litigation) that has ***already been produced*** to Plaintiffs as part of the extensive discovery efforts JELD-WEN undertook in the Prior Litigation.  *See id.* at 149:18-25 ("Q [The email referenced] ***attaches the final approved letter in generic form*** with Bob [Merrill]'s signature [and then indicates] 'I will be posting to the SFDC Chatter Product Marketing Doors shortly.'") (emphasis added).  "[U]nreasonably cumulative or duplicative" discovery is not within the scope of discovery

permitted by the Federal Rules.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs motion to compel should be denied.

Plaintiffs' motion itself makes clear the absurdity of this request.  On March 12, 2021, JELD-WEN Defendants informed Plaintiffs that "JELD-WEN does not have data from Salesforce or Chatter for Tim Kirk during the agreed-upon time period."  Mot. at 11 n.11 (purporting to quote Wyman Decl. Ex. T, an exhibit that was not filed); *see also* Ex 18 at 3-4.  JELD-WEN Defendants further informed Plaintiffs that they had no reason to believe any other custodians have Salesforce or Chatter data during the agreed-upon time period—November 1, 2016 to November 15, 2018, Ex. 8—but that they would look into it and have an answer by Monday, March 15, 2021.  Mot. at 11 n.11; Ex. 20 at 3-4.  As promised, on Monday, March 15, 2021, ELD-WEN Defendants confirmed "JELD-WEN does not have any Salesforce data for any of the custodians during the relevant period."  Ex. 20 at 1.  Rather than following up to request more information on JELD-WEN data retention policies regarding Salesforce data, Plaintiffs filed this motion to compel.

Had Plaintiffs asked, JELD-WEN Defendants would have informed them that of the sixteen agreed-upon custodians, only three had Chatter accounts during the agreed-upon time period. Ex. 21 ¶¶ 2-3.  "As a matter of course, data from Chatter accounts is preserved for 9 years." *Id.* ¶ 4.  Thus, if any of those three custodians had used Chatter during the agreed timeframe, the data related to their usage would be preserved.  *Id.*  No such data exists because "none of [the three custodians with Chatter accounts] sent or received messages on Chatter during the Relevant Time Period."  *Id.* ¶ 5.  As a result, Plaintiffs motion to compel the production of Salesforce and Chatter data should be denied as moot.

## CONCLUSION

For the above reasons, the Court should deny the relief Plaintiffs seek and uphold JELD-WEN Defendants' assertions of privilege.

8

Dated: March 16, 2021

Respectfully submitted,

 /s/ *Brian C. Riopelle*
Brian C. Riopelle (Va. Bar No. 36454)
Brian E. Pumphrey (Va. Bar No. 47312)
Brian D. Schmalzbach (Va. Bar No. 88544)
Garrett H. Hooe (Va. Bar No. 83983)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com
ghooe@mcguirewoods.com

Sandra C. Goldstein, P.C. (*pro hac vice*)
Rachel M. Fritzler (*pro hac vice*)
Lindsey Weiss Harris (*pro hac vice*)
Jeehyeon Jenny Lee (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
lindsey.harris@kirkland.com
jenny.lee@kirkland.com
jacob.rae@kirkland.com

Matthew S. Owen (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 389-5000
Fax: (202) 389-5200
matt.owen@kirkland.com

*Attorneys for Defendants JELD-WEN
Holding, Inc., Mark A. Beck, L. Brooks
Mallard, Kirk S. Hachigian, and Gary S.
Michel*

9

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 16th day of March, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all

counsel of record in this case.

 /s/ Brian C. Riopelle             
Brian C. Riopelle (Va. Bar No. 36454)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com

10