# EXHIBIT 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

|  |  |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112 Judge John A. Gibney, Jr. |

### STIPULATION REGARDING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

It is hereby stipulated and agreed, by and between Lead Plaintiffs Public Employees' Retirement System of Mississippi ("Mississippi PERS") and the Plumbers and Pipefitters National Pension Fund ("P&P Pension Fund") (collectively, "Lead Plaintiffs") and additional Plaintiff Wisconsin Laborers' Pension Fund, and Defendants JELD-WEN Holding Inc. ("JELD-WEN"), Kirk S. Hachigian, Mark A. Beck, L. Brooks Mallard, Gary S. Michel (the "Individual Defendants") (together with JELD-WEN, the "JELD-WEN Defendants"), Onex Corporation, Onex Partners Manager LP, Onex Partners III LP, Onex Partners III GP LP, Onex US Principals LP, Onex Partners III PV LP, Onex Partners III Select LP, Onex BP Co-Invest LP, Onex Advisor III LLC, Onex American Holdings II LLC, and Onex BP Finance LP (Onex-related entities collectively referred to as "Onex Defendants") (all Defendants collectively "Defendants," and together with Lead Plaintiffs, the "Parties"), by and through their undersigned counsel, as follows:

### A. DEFINITIONS

1. "Custodian" shall mean any individual of a Producing Party that may have possession, custody, or control of potentially relevant information, Documents, or ESI.

2.   "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 26 and 34 and includes Electronically Stored Information.

3.   "E-mail" means electronic messages drafted, sent or received asynchronously, including any documents incorporated as attachments, via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail or Lotus Notes.

4.   "ESI" is an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in the Federal Rules of Civil Procedure, including in Federal Rules of Civil Procedure 26 and 34.

5.   "Extracted Text" means the text extracted from a Document file and includes at least all header, footer and document body information when reasonably available.

6.   "Load File" means an electronic file that is used to import all required production information into a document database, including document images, extracted and/or OCR text, native files where required, and metadata, as well as information indicating document and page breaks, and document relationships such as those between an email and its attachments and a document and information related to embedded content.

7.   "Metadata" means structured information about ESI that is created by the file system or application, embedded in the document or email and sometimes modified through ordinary business use. Metadata of the ESI describes, inter alia, the characteristics, origins, usage and validity of the collected ESI.

8.   "Native Format" means the format of ESI in the application in which such ESI was originally created.

2

9.  "OCR" means the optical character recognition technology used to read paper documents or electronic images of documents and output such documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

10. "Producing Party" means a party in the action that produces documents.

11. "Receiving Party" means a party in the action to whom documents are produced.

12. "Responsive Document" means any document that is responsive to any discovery requests served on the Producing Party in the action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure or Order of the Court.

13. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or documents.

**B.  LIAISON**

1.  The Parties shall identify discovery liaisons who are knowledgeable about and responsible for conferring about their respective documents and ESI, in order to resolve disputes without court intervention.  Each liaison will be someone who is (or who will have access to those who are) knowledgeable about the technical aspects of document and ESI discovery, including but not limited to the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this action.

**C.  SCOPE**

1.  The procedures and protocols set forth in this Stipulated Order shall govern the production of all documents and ESI between the Parties in the action.  Any protocol or procedure set forth herein may be modified by written agreement of the Parties or by the Court.

2. The Parties do not waive any objections to the production, discoverability, or confidentiality of Documents, including, without limitation, objections regarding the burden, overbreadth or relevance of document requests related to Documents. Nothing in this Stipulated Order shall supersede the provisions of any subsequent Stipulated Protective Order.

3. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulated Order and will meet-and-confer in good faith regarding any issues that arise under this Order before submitting disputes to the Court for resolution.

4. Counsel executing this Stipulated Order warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

5. In an effort to expedite the discovery process, the Parties shall meet and confer to reach an agreement concerning a date range within which the Parties may limit their ESI searching and production obligations. The Parties agree to meet and confer in order to establish a production schedule on a rolling basis.

### D.  IDENTIFICATION, SEARCH, FILTERING AND REVIEW

1. The Parties shall meet and confer to the extent necessary regarding electronic discovery, document collection, and production issues to develop an efficient and effective process for collecting, reviewing, and producing documents. Within 30 days after service of a request for the production of documents, each responding party shall disclose in writing: (a) if the responding Party is not a natural person, the identity of Custodians, custodial and non-custodial sources of ESI, and hard copy documents likely to have relevant information, and (b) any search terms, date ranges, or other search parameters or search methodologies the Party proposes to use. The Parties will then meet and confer regarding (a) and (b) within 7 days, and will also confer, at that time, regarding the actions the Producing Party will use to ensure completeness and quality control, and

whether the Party proposes to use any other technology-assisted filtering criteria or technology at the collection, processing or review stage, including predictive coding.

### E. PRODUCTION FORMAT

1. This Stipulated Order shall govern the production format of documents and ESI, as described in Federal Rule of Civil Procedure 34, to the extent available.

2. The Parties shall produce paper documents and ESI according to the specifications provided in this Stipulated Order and in Exhibit A.

3. To the extent a Receiving Party requests productions of documents or ESI that were previously collected and processed or produced by the Producing Party in another litigation, the Producing Party, subject to its objections to the request, may produce the previously-produced documents or ESI in the same form in which they originally were produced or prepared for production, even if such form is different from the specifications in this ESI Protocol. The Producing Party shall also furnish to the Receiving Party documents sufficient to show the parameters used to identify potentially responsive documents in the other litigation, including document requests, responses and objections, search terms, custodians and any other culling processes. Each Party reserves the right to request corrections to remedy any material failure to meet the production requirements of this Stipulated Order (*e.g.*, missing metadata), and the Parties shall meet and confer in good faith in response in an attempt to resolve such requests. If the Parties are unable to agree as to resolve such requests, the Parties may submit the matter to the Court.

4. **De-Duplication**. A Party is only required to produce a single copy of a responsive document. A Party may remove exact duplicate ESI according to the MD5/SHA-1 hashing method specified in Exhibit A and shall provide the additional information about Custodians, FileNameAll and FilePathAll of de-duplicated documents specified in Exhibit A. However,

5

(i) de-duplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa, although each family member shall not be hashed separately for purposes of populating the Document Hash field in Exhibit A; (ii) attachments to e-mails or other documents shall not be disassociated from the parent e-mail or document even if they are exact duplicates of another document in the production, and (iii) paper documents shall not be eliminated as duplicates of responsive ESI or documents.  The Parties shall make every effort to reach agreement on any culling criteria to be used, including but not limited to de-NIST criteria, date ranges, and file type inclusion/exclusion.

5.    **Email Thread Analysis**.  Email thread analysis may be used by either Party to reduce the volume of emails reviewed and produced.  The produced emails must include all of the responsive ESI and documents from a thread, including attachments and associated metadata for each email within the thread.  A Party may request the production of less inclusive versions of documents that have been produced via thread analysis if the Party reasonably concludes that such production is necessary.  The Parties agree to meet and confer in good faith with respect to any such request.

6.  **Unsearchable Documents**.  The Parties will make reasonable efforts to ensure that ESI and document images are OCR-ed, container files (such as PST or ZIP files) are successfully extracted, and encrypted or password-protected documents are successfully accessed, in order to ensure effective search, review and production under the requirements of this Stipulated Order. The Producing Party agrees to produce a database record of any such files that are not successfully OCR-ed, extracted, or accessed.  Each Party may request a written description of the efforts

undertaken by the Producing Party to OCR, extract, decrypt or otherwise access the unsearchable files, according to the following procedure, and such requests will not be unreasonably denied:

a.  The requesting Party shall make any such request (i) within sixty (60) days after the close of discovery, or (ii) if a production is made after the close of discovery, within sixty (60) days after any such production is made.

b.  Within fourteen (14) days of receiving this request, the producing Party will provide a written description of the efforts undertaken by the Producing Party to OCR, extract, decrypt or otherwise access the file.

c.  If the Party is not satisfied with the response of the Producing Party or the efforts of a Producing Party to access potentially relevant files, it may submit the matter to the Court.

7.  **Documents to Be Produced Natively**.  Microsoft Excel and other spreadsheet files, Microsoft Access and other personal (non-enterprise) database files, video and audio files, animation files, PowerPoint and other presentation files, and any other ESI that is not accurately represented in TIFF format shall be produced in Native Format.  If a document to be produced in Native Format contains privileged information, the document will be produced by producing the document in TIFF format with redactions, with the exception of spreadsheets which shall be redacted using a native redaction tool and produced in native format. The parties shall meet and confer regarding the redaction of audio and video files.  To the extent documents that fall under this paragraph contain privileged information and cannot be redacted or produced in TIFF format, the parties will meet and confer regarding the production of the responsive non-privileged information and logging of the protected information, pursuant to Section H.  The production load

7

files shall contain a link to the produced Native Files as specified in the "Native Link" metadata field described in Exhibit A.

    a. To the extent a response to discovery requires production of discoverable electronic information contained in an enterprise database (as opposed to Microsoft Access and similar personal database files), the Parties shall discuss the production scope and format prior to production.

    b. Each electronic file produced in Native Format shall be assigned a unique Document Number, and the database record for that file shall include a single-page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates number with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Protective Order must appear on the associated TIFF placeholder on the lower left-hand corner in no less than 10-point font.

8. **Request for Additional Documents in Native Format**.  If a Party reasonably concludes that production in Native Format of any documents(s) initially produced in TIFF format is necessary (*e.g.*, to decipher the complete meaning, context, or content, to determine if there is any relevant "hidden text" in the document, to determine if there is any important use of color in the document, etc.), such Party may request production of the original document in Native Format.  The Parties agree to meet and confer in good faith with respect to any such request.  If the Parties are unable to agree as to the production of the requested documents in Native Format, the Parties may submit the matter to the Court.

8

9.  **Non-Responsive Members of Document Families**.  The Parties agree that all non-privileged non-responsive members of a document family – whether an email with attachments, or a document containing other embedded documents, etc. – must be produced along with the entire family, if any member of the family is responsive, except that the Parties agree that fully non-responsive attachments to non-responsive parent documents need not be produced; however, non-responsive parent documents must be produced if they contain any responsive attachments, and non-responsive attachments to responsive parent documents will also be produced.  Non-responsive attachments will only be withheld if they contain highly sensitive commercial information.  Where the Parties withhold a fully non-responsive attachment, they will produce a Bates numbered TIFF slip sheet in place of the attachment, along with all metadata for that attachment as specified in Exhibit A, except that the "ExtractedText" metadata field need not be populated.  The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Non-Responsive" and, to the extent technologically reasonable, identify each withheld attachment's FileName and ParentBates.  If a Producing Party does not believe it is technologically reasonable to identify a withheld attachment's FileName and ParentBates on the TIFF slip sheet, the Producing Party will consult in good faith with the Receiving Party prior to its initial production of ESI containing non-responsive attachments.  Moreover, the "Non-Responsive" metadata field specified in Exhibit A shall be marked "Yes" for any attachment that is withheld on the grounds of non-responsiveness.  The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

10. **Unitization**.  In scanning paper documents, each page of paper should be output to a single-page TIFF file.  Distinct, logical document breaks should be defined as such in a standard Opticon load file as described in Exhibit A.  In the case of an organized compilation of separate documents

9

– for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but any document or family relationship among the scanned documents in the compilation should be reflected in the data load file at the appropriate standard fields as specified in Exhibit A.  Pages containing Post-it notes or other detachable notes that obscure the underlying document should be scanned once with the detachable note intact, and then again without it, and made part of the same document.  The Parties will make their best efforts to unitize the documents correctly.

11. **Document Numbers and Confidentiality Designations for TIFF Images**.  Each page of a document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") electronically "burned" onto the image in no less than 10-point font.  Unless it would obscure, conceal or interfere with any information originally appearing on the document, the Document Number shall be burned on the lower right-hand corner of the document. Unless it would obscure, conceal or interfere with any information originally appearing on the document, any confidentiality designation pursuant to the Stipulated Protective Order filed with the Court will appear on the lower left-hand side of each page of a document produced, in no less than 10-point font. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "US-0000000000") and may contain a dash between the prefix and the Document Number. Each Party's document numbering scheme shall use the unique identifying name agreed upon by the Parties.

12. **Embedded Files**.  If a document has information from another file embedded in it (*e.g.*, a Word document that has a spreadsheet embedded in it), the Producing Party shall produce the parent document and embedded children documents together in both TIFF and native formats, and all members of the document family (both parent and embedded documents) shall be produced

individually in TIFF (except for files that need not be produced in TIFF format as set forth in paragraph E.7, above, which need only be produced individually in native format), with all metadata required to maintain the family relationship as specified in Exhibit A. The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field. The Receiving Party may request the production of the parent document and embedded children documents together and individually in native format in accordance with paragraph E.8, above. The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

13. **Production Media**.  The Producing Party shall produce document images, native files, load files and metadata via secure FTP, or other mutually agreeable media ("Production Media"), provided that the Parties shall agree to the most cost-effective and expeditious manner of transfer to the Receiving Party.  Each piece of Production Media (including SFTP container files) shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media and the Document Number ranges of the documents in that production (*e.g.*, "USG Production February 1, 2019, US-0000000123-US-0000000456").  To the extent that the Production Media includes any confidential information protected under any Stipulated Protective Order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Stipulated Protective Order.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Document Number range that is being replaced.  All Production Media that are capable of write

protection should be write-protected before production.  All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.

14. **Original Documents**.  Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain all original source ESI preserved for and produced in the action, and original versions of all hard copy documents preserved for and produced in the action.  Nothing in this section alters a Party's obligation to preserve documents and ESI pursuant to the Federal Rules of Civil Procedure or Court Order.

15. **Metadata Fields and Processing**.  Each of the metadata and coding fields set forth in Exhibit A that can reasonably be extracted from a document shall be produced for that document. The Parties are not obligated to populate manually any of the fields in Exhibit A if such fields cannot be extracted from a document and its context in the source data, with the exception of the following: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach fields, (e) Custodian, (t) Paper (Y/N), (g) Redacted (Y/N), (h) Confidentiality, (i) NativeFile (YIN), (j) ProdVolume, (k) ParentBates, (l) AttachBates, and (m) SourceFormat.

16. This Stipulated Order shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI nor shall it be construed to authorize the reimbursement of any such costs.

17. Nothing in this Stipulated Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

18. Documents produced pursuant to this order shall be deemed to have been produced in the usual course of business under Federal Rule of Civil Procedure 34(b)(2)(E).

### F. PROCESSING SPECIFICATIONS

1. The Producing Party shall preserve, collect and process documents using forensically sound methods that avoid spoliation of data. The Producing Party will generate and preserve the MD5/SHA-1 hash values of all ESI collected and processed for review based on the non-spoliated source native file.

2. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

    a. All ESI shall be processed with a single time zone (UTC time standard) and a date and time setting that is consistent across all Defendant productions, and across all Plaintiff productions. The time zone used for a production shall be populated in the metadata fields required in Exhibit A.

    b. All TIFF images shall display tracked changes, comments, highlighter marks, hidden text, hidden rows and columns, and all other display elements that are relevant to the document requests, regardless of the display setting for this information as last saved by the custodian, to the extent technically possible.

### G. PROTECTIVE ORDER

1. The terms of the Stipulated Protective Order approved by the Court (Dkt. No. 112-1) governing the inadvertent production of privileged information, as well as Fed. R. Civ. P. 26(b)(5)(B), apply to all productions made pursuant to this Stipulated Order.

### H. PRIVILEGE LOG

1. Pursuant to Fed. R. Civ. P. 26, the Parties agree to exchange Privilege Logs that describe the nature of the documents, communications, or tangible things that have been withheld on the basis of attorney-client privilege, work product protection, or other privilege and do so in a manner

13

that—without revealing the information itself that is asserted to be privileged or protected—will enable other Parties to assess the claim.

2.  The Parties agree that all Privilege Logs shall include, but not be limited to, the following information: subject or filename; the date of the document; the identity of the author(s) of the document; the identity of all persons designated as addressees, copies or blind copies (indicating whether a person was an addressee, copy or blind copy); the custodian(s) of the document; the Bates number of the document (for redacted documents only); the type or nature of the privilege or immunity asserted; and a brief description of the subject matter of the document, sufficient to enable another Party's evaluation of the claim of privilege or immunity.  For the fields indicated above, any attorneys named will be identified by the Producing Party.

3.  Any e-mail chain (*i.e.*, a single document containing a series of e-mails linked together by email responses and forwarding) may only be withheld if all e-mails in the chain are covered by a privilege or immunity.  If only a portion of the e-mail chain is privileged or immune, the e-mail chain shall be produced in redacted form.  For any e-mail chain that is withheld on the grounds of privilege or immunity, each e-mail within the chain that is available to the producing party must be logged as a separate entry on the Privilege Log and each such log entry shall include the information described in paragraph H.2, above.

4.  In the case of a family of documents, only the member or members that are privileged may be withheld.  All other members of the family must be produced.  Where the parties withhold a privileged family member, they will produce a Bates numbered TIFF slip sheet in place of the document but will not be required to produce metadata for that attachment.  The TIFF slip sheet for each withheld attachment will state "Family Member Withheld as Privileged."  The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

5.  Each member of a family of documents (*i.e.*, each member of a set of documents in a parent-child relationship to each other) that is withheld or redacted on the grounds of privilege or immunity shall be logged as a single entry (*e.g.*, e-mail attaching memorandum) on the Privilege Log, with sufficient information to link it to its family members.

6.  The Parties need not log: (1) communications with counsel in connection with the action—or the actions captioned *Steves and Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545-REP (E.D. Va.), *In re Interior Molded Doors Antitrust Litigation*, No. 3:18-cv-00718-JAG (E.D. Va.), and *In re Interior Molded Doors Indirect Purchaser Antitrust Litigation*, 3:18-cv-00850-JAG (E.D. Va.)—created after the commencement of the action to which the communication relates, (2) work product created by counsel in connection with the action, or the actions captioned *Steves and Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545-REP (E.D. Va.), *In re Interior Molded Doors Antitrust Litigation*, No. 3:18-cv-00718-JAG (E.D. Va.), and *In re Interior Molded Doors Indirect Purchaser Antitrust Litigation*, 3:18-cv-00850-JAG (E.D. Va.), or (3) internal communications between the Parties' outside counsel concerning the action, or the actions captioned *Steves and Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545-REP (E.D. Va.), *In re Interior Molded Doors Antitrust Litigation*, No. 3:18-cv-00718-JAG (E.D. Va.), and *In re Interior Molded Doors Indirect Purchaser Antitrust Litigation*, 3:18-cv-00850-JAG (E.D. Va.).

15

DATED:  January 27, 2021

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (DC Bar only)


_/s/ Steven J. Toll_
STEVEN J. TOLL

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstien.com
jhandelsman@cohenmilstein.com

_Liaison Counsel for Lead Plaintiffs_

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROBERT M. ROTHMAN (Admitted _pro hac vice_)
MARK T. MILLKEY (Admitted _pro hac vice_)
WILLIAM J. GEDDISH (Admitted _pro hac vice_)
VINCENT M. SERRA (New York Bar only)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
wgeddish@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dwyman@rgrdlaw.com

_Counsel for Co-Lead Plaintiff Plumbers and Pipefitters National Pension Fund, Additional Plaintiff Wisconsin Laborers' Pension Fund and the Class_

16

LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY  10005
Telephone: 212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Counsel for Lead Plaintiff Public Employees'
Retirement System of Mississippi and the Class*

DATED:  January 27, 2021

MCGUIREWOODS LLP
BRIAN C. RIOPELLE (Va. Bar No. 36454)
BRIAN E. PUMPHREY (Va. Bar No.47312)
BRIAN D. SCHMALZBACK (Va. Bar No. 88544)
GARRETT H. HOOE (Va. Bar No. 89383)

_____
            */s/ Brian C. Riopelle*
                Brian C. Riopelle

Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Telephone:  804/775-1084
804/698-2150 (fax)
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzback@mcguirewoods.com
ghooe@mcguirewoods.com

KIRKLAND & ELLIS LLP
SANDRA C. GOLDSTEIN, P.C. (*pro hac vice*)
RACHEL M. FRITZLER (*pro hac vice*)
JACOB M. RAE (*pro hac vice*)
601 Lexington Avenue
New York, NY  10022
Telephone:  212/446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
jacob.rae@kirkland.com

Attorneys for Defendants JELD-WEN Holding,
Inc. Mark A. Beck, L. Brooks Mallard, Kirk S.
Hachigian, and Gary S. Michel

DATED:  January 27, 2021

CHRISTIAN & BARTON LLP
WARREN DAVID HARLESS (VSB #20816)
ROMAN LIFSON (VSB #43714)
SHANNAN M. FITZGERALD (VSB #90712)

_____
            */s/ Warren David Harless*
            Warren David Harless

909 East Main Street, Suite 1200
Richmond, VA  23219-3095
Telephone:  804/697-4100
804/697-4112 (fax)
wharless@cblaw.com
rlifson@cblaw.com
sfitzgerald@cblaw.com

FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP
PETER L. SIMMONS (*pro hac vice*)
MICHAEL KEATS  (*pro hac vice*)
COREY F. BARON (NY Bar only)
One New York Plaza
New York, NY  10004-1980
Telephone:  212/859-8000
212/859-4000 (fax)
peter.simmons@friedfrank.com
michael.keats@friedfrand.com
corey.baron@friedfrank.com

18

Attorneys for Defendants Onex Corporation, Onex Partners Manager LP, Onex Partners III LP, Onex Partners III GP LP, Onex US Principals LP, Onex Partners III PV LP, Onex Partners III Select LP, Onex BP Co-Invest LP, Onex Advisor Subco III LLC, Onex American Holdings II LLC, OAH Wind LLC, BP EI LLC, and BP EI II LLC

19

## EXHIBIT A

1. **IMAGES:**

   - Produce documents in Single-page CCITT Group Group IV black and white TIFF files (except as noted below).

   - Image Resolution of at least 300 DPI.

   - Black and White. However, paper documents or ESI items that a producing party has converted to color for its own review must be produced in color. For all other paper documents or ESI items containing color, a producing party need not initially produce such items in color. However, if an original document or ESI item contains color text, markings or graphics, and it is necessary to see those items in their original color to understand the full meaning or content of the document, then the Receiving Party may, in good faith, request that the document or ESI item be produced in color format. The producing party will not unreasonably deny such a request. The production of such documents and/or ESI in color shall be made in single-page JPEG format, provided JPEG format offers sufficient quality for the review of these documents and/or ESI. If either party deems the quality of the document produced in JPEG format to be insufficient, the parties will meet and confer as to the best production format.

   - File Naming Convention: Must match the Bates Number of the page.

   - Insert placeholder image for files that are only produced in Native Format (*see* Paragraph E.6.b.).

   - Original document orientation shall be retained.

2. **FULL TEXT EXTRACTION/OCR:**

20

- Produce full extracted text for all file types (Redacted text will not be produced) including text of embedded content.

- Produce OCR text for any scanned or redacted document.

- Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF, PDF, etc.), using industry standard OCR technology. (Redacted text will not be produced.)

- Production format: Single text file for each document, not one text file per page.

- File Naming Convention: Match Beg Bates Number.

3. **ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS:**

- BegBates: Beginning Bates Number

- EndBates: Ending Bates Number

- BegAttach: Beginning Bates number of the first document in a document family range. Documents that are part of document families, *i.e.*, containing parents or attachments should receive a value.

- EndAttach: Ending Bates number of the last document in a document family range. Documents that are part of document families, *i.e.*, containing parents or attachments, should receive a value.

- PgCount: Page Count

- Custodian: Name of the Custodian of the Document Produced – Last Name, First Name format or a brief, uniform description of the non-custodial data source (*e.g.*, "central accounting database") if the document is not of the type that can be identified as being in the custody of an individual Custodian.

- CustodianAll: Names of all Custodians, including any blind copy (BCC)

21

recipients, of any documents that were not produced because they are MD5 or SHA-1 hash duplicates of the produced version of the given document. Names separated by semicolons.

- FileName: Filename of the original source ESI as stored by the Custodian of the document produced.

- FileNameAll: Filenames of any documents that were not produced for a custodian because they are MD5 or SHA-1 duplicates of the produced document. Filenames separated by semicolons.

- FilePath: Full path of the original source ESI as stored by the Custodian of the document produced.

- FilePathAll: Full path of any documents that were not produced for a custodian because they are MD5 or SHA-1 hash duplicates of the produced document. File paths separated by semicolons.

- NativeLink: Path and filename to any produced Native file (*see* Paragraph E.6.).

- TIFFformat: "No" for any documents that are not produced in TIFF format, otherwise blank.

- EmailSubject: Subject line extracted from an email message

- Title: Title field extracted from the metadata of a non-email document

- Author: Author field extracted from the metadata of a non-email document

- From: From field extracted from an email message

- To: To or Recipient field extracted from an email message

- Cc: CC or Carbon Copy field extracted from an email message

- BCC: BCC or Blind Carbon Copy field extracted from an email message

22

- DateRcvd: Received date of an email message (mm/dd/yyyy format)

- TimeRcvd: Received time of an email message

- DateSent: Sent date of an email message (mm/dd/yyyy format)

- TimeSent: Sent time of an email message

- DateCreated: Date that a file was created (mm/dd/yyyy format)

- DateLastModified: Last modification date

- TimeZone: Time zone used for displaying dates and times on the associated TIFF image

- Document Hash: MD5 or SHA-1 hash value of the file generated at the document or family level as appropriate in accordance with paragraph E.4 (including hash values for any stand-alone documents)

- FileType: File type description of the source file (Excel, Word, PowerPoint, etc.)

- FileExtension: File extension of the source file (doc, docx, docm, etc.)

- ProdVolume: Identifies production media deliverable

- ExtractedText: File path to Extracted Text/OCR File

- Redacted: "Yes," for redacted documents; otherwise, blank

- Privileged: "Yes" for any document that is withheld as privileged pursuant to Paragraph H.4.

- Confidentiality: "Confidential" or "Highly Confidential," if a document has been so designated under the Protective Order; otherwise, blank.

- AttachCount: Number of attached files

- AttachName: The file name(s) of the attached items delimited with a semicolon

- Importance Ranking: Level of importance/sensitivity of messages or calendar items

23

- AttachBates: First Bates number of each "child" attachment. –**Can be more than one Bates number listed depending on the number of attachments. Should be populated in each record representing a "parent" document.

4. Is Embedded:  The yes/no indicator of whether a file is embedded in another document.**DE-DUPLICATION:**

- De-duplication method: Parties must de-duplicate stand-alone documents and document families using MD5 or SHA-1 Hash value matching.

5. **DE-NIST**

- Common program and system files defined by the NIST library (http://www.nsrl.nist.gov/) shall not be produced.

6. **IMAGE LOAD FILES**

- The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (*i.e.*, ABC001.OPT)

- The volume names should be consecutive (*i.e.,* ABC001, ABC002, et. seq.)

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as Bates number of the page.

- The Opticon OPT image load file (.OPT) configuration shall be a page level comma-delimited file containing seven fields per line: PageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount

  o PageID: PageID of the item being loaded. This field must be identical to the image name (less the file extension).

24

- o VolumeLabel: This field should match the Volume Name assigned in the corresponding metadata load file.

- o ImageFilePath: The path to the image from the root of the delivery media.

- o DocumentBreak: The letter "Y" denotes the first page of a document. If this field is blank, the page is not the first page of a document.

- o FolderBreak: Leave empty.

- o BoxBreak: Leave empty.

- o PageCount: Optional.

  - • Example Opticon Delimited File:

MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002. TIF, Y,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003 .TIF, Y,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,,

  - • Concordance Delimited Files:

    þBegDocþþEndDocþþBegAttachþþEndAttachþþCustodianþ

    - o The data load file should use standard Concordance delimiters:

      - ▪ Comma - (ASCII 20)

      - ▪ Quote - þ (ASCII 254)

      - ▪ Newline - ® (ASCII174)

        - • The first record should contain the field names in the order of the data;

        - • All date fields should be produced in mm/dd/yyyy format;

25

- Use carriage-return line-feed to indicate the start of the next record;

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (*i.e.*, ABC00l.DAT);

- The volume names should be consecutive (*i.e.*, ABC00l, ABC002, et. seq.)

26