# Exhibit H

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

----------------------------------x

IN RE: JELD-WEN HOLDING, INC.

SECURITIES LITIGATION

Civil Action No.:

3:20-cv-00112-JAG

----------------------------------x

February 5, 2021

9:59 a.m.

VIDEOTAPED REMOTE DEPOSITION of JASON STEPHEN FLEMMONS, held at the above-mentioned date and time, before Judith Castore, a Certified Livenote Reporter and Notary Public of the State of New York.

FLEMMONS

A    I did not perform any statistical analysis.

Q    And I'm also correct in understanding that apart from referencing the -- and reviewing the materials that you described, that you didn't apply any economic valuation principals to determine what the market understood the information from the company to be; is that right?

MS. FRITZLER:    Objection to form.

A    I don't believe I applied any economic or valuation principles in new analysis.

Q    Okay.  I think that you also cite to one more paragraph in Dr. Feinstein's report, which is paragraph 343, which is on page 114 of his report.  If you could please turn there.

A    I'm there.

Q    Okay.  Paragraph 343 in Dr. Feinstein's report says:  From the

Page 67

FLEMMONS

significance of the loss contingency.

So my opinions are not limited to the portion that you were focused on in your question.

Q    Right.  So the first opinion that we've been talking about is that the loss contingency was not a correction under GAAP, right?

A    Can you repeat that, please.

Q    Sure.

So pursuant to the first opinion that we've been talking about here, your opinion is limited to whether or not the loss contingency announcement was a correction under GAAP, correct?

A    Well, with regard to the first portion of my second opinion as listed on page 5 of my report, where I say Jeld-Wen's recognition of the loss contingency did not constitute a correction of an error, that portion of the opinion is based on my expertise as an accountant.

FLEMMONS

Q    It has nothing to do with whatsoever with any kind of economic analysis, economic valuation principles, statistical analysis, or market analysis that you undertook?

MS. FRITZLER:  Objection.

A    Again, I did not perform any economic analysis as part of my opinions.

MS. WYMAN:  Okay.  Rachel, I'm getting ready to transition, so it might be a good time for a 10-minute break.

MS. FRITZLER:  Sounds good.

MS. WYMAN:  Okay.  Let's go off the record for about 10 minutes or so.

VIDEOGRAPHER:  Thank you. This is the videographer.  The time is 11:07.  We are going off the record.  This is the end of Media File 1.

(Whereupon, a brief recess was taken.)

FLEMMONS

the court in the Steves matter had made during October of 2018?

A    Yes, I believe so.

Q    And the very last sentence of this paragraph reads:  Based on these rulings, the company believes a loss on this contingency is now probable, and if estimable, should be recorded.

Is that right?

A    That's what it says.

Q    And why did the company do an evaluation after the receiving of these rulings in October of 2018, if you know?

MS. FRITZLER:  Objection to form.

A    I don't know specifically, but I would say that based on the company's prior disclosures in its earlier filings leading up to this particular ruling, the company had disclosed, as we went through, that they had assessed whether or not a loss contingency was probable and estimable

FLEMMONS

and concluded that it was not.

So I would infer, based on that, that they were performing ongoing assessments of the probability and estimability of a loss.  And this ruling that occurred in October of 2018 provided additional information that led to a different conclusion based on a refreshed assessment.

Q    So then the information from these court rulings in October of 2018 that this paragraph describes was new information to the company that it needed to use in its assessment of whether a loss contingency was appropriate on a GAAP, at this point in time, correct?

MS. FRITZLER:  Objection.

A    Well, I think the ruling that occurred in October of 2018 was new, if that's what you are asking.

Q    Right.  And so because there was new information to the company, GAAP required that they reassess

FLEMMONS

whether or not a loss contingency was appropriate; is that right?

MS. FRITZLER:  Objection.

A    Well, I think the company was exercising their judgment here based on the issuance of the ruling in October of 2018 and assessing its impact on the company's considerations of whether a loss contingency was probable and estimable.

Q    So the -- prior to October 15, 2018, the company had made an assessment that there was no loss contingency that was probable and estimable based on the information it had, right?

MS. FRITZLER:  Objection to form.

A    I think as we went over before in the prior filings and disclosures, the company had performed assessments and concluded that a loss contingency was deemed not to be probable or estimable.

FLEMMONS

Q    And GAAP is a company required to change its assessments if it gets new information that bear upon its assessment whether a loss is probable or estimable?

MS. FRITZLER:  Objection.

A    Bear with me one minute, please.

Q    Sure.

A    Yeah.  So we went over this a little bit earlier.  But in paragraph 29 of my report, I identify the specific considerations that ASC 450 lays out with regard to litigation contingencies, and some of the factors that should be considered in assessing whether or not a litigation contingency should be recognized.

And one of those relates to the progress of the case, which is the second item on that list.  So I think that would subsume, as the case is progressing and there are rulings and new information that is coming out,

**FLEMMONS**

that companies would assess those items in assessing whether or not a loss contingency should be recorded.

Q    If you look at paragraph 31 of your report, it says:  GAAP acknowledges that estimate are, by nature, expected to change as new information is obtained and updated assessments are performed; is that right?

A    Correct.

Q    And you have got a block quote that has some bolded and underlined text in it toward the top of the page.

And the last line that is bolded and underlined, says:  Changes in accounting estimates result from new information.

Is that your understanding of what GAAP requires?

MS. FRITZLER:  Objection to form.

A    So this paragraph is an

FLEMMONS

results of its updated assessment in light of the October 2018 ruling that resulted in the company recording the $76.5 million litigation contingency.

Q    So then this October 15, 2018, announcement provided new information to investors concerning the company's belief on whether or not a loss contingency regarding the Steves matter was probable and estimable, right?

MS. FRITZLER:  Objection to form.

A    The company's determination at this time to record a loss contingency effectively constituted a change in estimate, which by virtue of being a change in estimate was new because previously the company had determined that such a loss contingency was not probable nor estimable.

Q    Okay.  And you didn't do any statistical analysis to determine whether or not this new estimate, this

FLEMMONS

new information that Jeld-Wen provided to the market on October 15, 2018, impacted the price of its stock, right?

MS. FRITZLER:  Objection to form.

A    I did not evaluate the impact of this announcement on the company's stock price.

Q    Okay.  You can close Feinstein Exhibit 4.

And if you would please turn back to your report and look at paragraph 69.

A    Okay.

Q    In paragraph 69, you make mention of an October 5, 2018, ruling right?

A    Yes.  It's the same ruling that we've been talking about.

Q    Okay.  And I'm going to bring up tab 5, please which is Schmitt Exhibit 9.

I'm bring up a previously marked exhibit called Schmitt

FLEMMONS

Exhibit 9, which is a copy of the October 5, 2018 order.

It should be there.

A    I have it.

Q    Okay.  And you refer to this ruling as making a number of factual findings that further supported the basis for the unfavorable jury verdict and concluded that divestiture of CMI was an appropriate remedy; is that right?

A    Yes, I state that in paragraph 69.

Q    And you reviewed this October 5, 2018, order in formulating and arriving at the opinions that you have offered in this case, right?

A    I did review the ruling.  I'm not sure if it was in exactly this same format.  The version I had was many pages, if not close to 200 pages, but the content hopefully is the same.

Q    Okay.  That was my next question was.  It's a rather long and

Page 114

FLEMMONS

dense document; is that right?

A    Yes.

Q    Contains a lot of information, correct?

A    Yes.

Q    You can close this document. I'm going to mark as our next exhibit, which is Exhibit 7, a October 6, 2018, press release made by Jeld-Wen.  That's tab 16.

(October 6, 2018, Jeld-Wen press release, was marked Flemmons Exhibit 7, for identification, as of this date.)

A    Which tab?

Q    It should be Exhibit 7.  It says tab 16, Exhibit 7, I guess.

A    I have it.

Q    Okay.  You have that open?

A    Yes.

Q    And is this a copy of the October 6, 2018, Jeld-Wen press release that you refer to in paragraph 70 in your report?

FLEMMONS

A    Yes.

Q    And this is a document that you reviewed and considered as part of the formulation of your opinions in this case, right?

A    Yes.

Q    And in this press release Jeld-Wen does not inform investors that it is taking a loss contingency concerning the Steves matter, right?

A    That's correct.  This press release appears to have been issued the day after the October 2018 ruling that I described in my report, and appears to be providing just an update on some of the aspects of that ruling.

Q    Why didn't the company announce the loss contingency accrual in this press release?

MS. FRITZLER:  Objection to form.

A    Well, given the timing of when the company recorded and disclosed the loss contingency, which was on

FLEMMONS

October 15 of 2018, it appears that the company had not made that determination yet.  Again, this press release we're looking at here was within a day of the ruling itself and which, as we discussed, contained a lot of information and was very lengthy.  And I would imagine it took some time to work through and assess the impact on the company's accounting determinations.

Q    So in other words, the company needed time to digest it and do the analysis under ASC 450 that we've been talking about today; is that right?

MS. FRITZLER:  Objection to form.

A    Well, I would say it's customary in the accounting industry for the need to have time to perform accounting analyses and evaluate the facts, particularly new facts that occur.  And it could inform and serve

FLEMMONS

as the basis for either additional disclosure or recognition of a loss contingency.

Again, as I said before, I have not spoken to anyone at the company. So I don't know for a fact that that was why there was a -- that there was -- that the loss contingency was not disclosed in this press release. But it stands to reason given how those determinations are assessed in practice.

MS. WYMAN: You can close this one up.

Why don't we a take about a five-minute break or so? I think I'm getting close to being done. I just want to go over my notes. Okay?

VIDEOGRAPHER: Thank you. This is the videographer.

The time is 12:17. We're going off the record. This is the end of Media File 2.