UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | | |
|---|---|---|
| In re JELD-WEN HOLDING, INC. SECURITIES LITIGATION | ) ) ) ) | Civil Action No. 3:20-cv-00112-JAG <u>CLASS ACTION</u> |
| This Document Relates To: ALL ACTIONS. | ) ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN EXPEDITED HEARING REGARDING DEFENDANTS' PRIVILEGE ASSERTIONS AND WITHHOLDING OF RELEVANT DOCUMENTS**

## I.    INTRODUCTION

Lead Plaintiffs Public Employees' Retirement System of Mississippi and Plumbers & Pipefitters National Pension Fund, along with Additional Plaintiff Wisconsin Laborers' Pension Fund (collectively, "Plaintiffs"), by their counsel, respectfully submit this memorandum of law in support of their motion to request an expedited hearing regarding several discovery issues that have arisen in the past few days.

The first issue relates to privilege assertions made by the Jeld-Wen Defendants[1] concerning documents that they recently produced, but subsequently clawed-back.  Because the Jeld-Wen Defendants have *still* not provided Plaintiffs with a privilege log as required by the Federal Rules of Civil Procedure (the "Rules"), Plaintiffs are unable to determine how many other documents the Jeld-Wen Defendants may have improperly withheld under the guise of privilege.  However, as shown below, with respect to the six documents in question, the Jeld-Wen Defendants have not met their burden to establish that any of them are privileged, and they have otherwise waived their ability to do so by failing to timely produce a privilege log as required by the Rules.  Importantly, and creating the exigent need for Court intervention, many of the documents discussed in this Motion further support Plaintiffs' outstanding Motion for Class Certification (defined below), which has been argued and is currently *sub judice*, and will also have a direct impact on Plaintiffs' upcoming Opposition to the Motion to Exclude the Reports and Testimony of Dr. Steven P. Feinstein, Ph.D., CFA ("Dr. Feinstein"), as well Dr. Feinstein's reports and testimony themselves.

The Jeld-Wen Defendants conduct cannot be viewed as a mere oversight.  Instead, it is part of a pattern and practice of waiting until after expert reports have been prepared, before providing documents that are relevant to the experts' opinion.  In essence, the Jeld-Wen playbook is to

---

[1]    The "Jeld-Wen Defendants" are: Jeld-Wen Holding, Inc. ("Jeld-Wen"), former President and Chief Executive Officer ("CEO") Mark A. Beck, former Executive Vice President and Chief Financial Officer ("CFO") L. Brooks Mallard, former Interim Chief Executive Officer Kirk S. Hachigian, and current President and Chief Executive Officer Gary S. Michel.

withhold documents from the plaintiffs' experts, claim that the expert had no evidence to support his opinion, and after the expert tenders his report, produce documents that directly support his opinion, requiring the expert to supplement his analysis and report.  This exact story unfolded during the *Steves* litigation[2] before Judge Payne, where the Jeld-Wen Defendants produced documents after Steves' experts had already provided their reports.  *See* Declaration of Debra J. Wyman in Support of this Motion, dated March 15, 2021 (the "Wyman Decl.," submitted herewith), Ex. A at 1249-50, 1257-58, 1260-61.  In that case, Jeld-Wen consented to Steves' expert submitting supplemental reports that incorporated the additional information.  *Id.* at 1257-1258.  Here, however, the Jeld-Wen Defendants have not consented to the filing of a supplemental expert report.

Unrelated to the privilege issues previewed above, but also requiring a similar urgency, the Jeld-Wen Defendants have failed to timely or otherwise produce documents relevant to both expert and fact discovery.  For example, during a recent deposition, Plaintiffs learned that Jeld-Wen used an internal social media-type platform where Jeld-Wen employees would post, share, and communicate relevant business-related information with one another that bears directly on Plaintiffs' claims.  Plaintiffs have been unable to locate any such documents in the Jeld-Wen Defendants' productions, and have requested the immediate production of such documents, as depositions are well underway and the discovery deadline is just two weeks away.  The failure to produce such highly relevant and responsive documents has prejudiced Plaintiffs, and will continue to do so absent their immediate production.  Alternatively, if the Jeld-Wen Defendants' position is that such materials no longer exist or are inaccessible, the Jeld-Wen Defendants should provide the Court and Plaintiffs with a detailed explanation for why such relevant ESI was not preserved – indeed, the Jeld-Wen Defendants knew

---

[2]   The *"Steves"* litigation refers to *Steves and Sons, Inc. v. Jeld-Wen, Inc.*, No. 3:16-cv-545 (E.D. Va.).

no later than June 2016, when Steves filed its lawsuit against Jeld-Wen, that litigation was pending and therefore Jeld-Wen was required to preserve relevant documents and information.

For all the reasons set forth below, Plaintiffs request that the Court hold an expedited hearing on these issues on or before March 17, 2021, and deny the Jeld-Wen Defendants' attempted claw-back of these documents, to give Plaintiffs a full and fair opportunity to oppose the Jeld-Wen Defendants' Motions to Exclude – before the March 19, 2021 deadline.  Plaintiffs also request that the Court order the immediate production of any documents related to Jeld-Wen's internal social media type platforms, or explain why such documents were destroyed or otherwise do not exist.

## II.    PROCEDURAL HISTORY AND BACKGROUND

This exigent Motion arises, in part, following the production and claw-back of six documents[3] produced by the Jeld-Wen Defendants, that they contend to be attorney-client privileged and inadvertently produced.  Discovery commenced in this Action following the Court's Opinion on the Motion to Dismiss, issued on October 26, 2020.  ECF No. 103.  Starting on November 24, 2020, the Jeld-Wen Defendants began producing documents to Plaintiffs pursuant to their discovery requests.

Since discovery has commenced, and relevant to this Motion, the parties have engaged in: (1) expert discovery, including expert reports and depositions; (2) a Motion for Class Certification; and (3) Motions to Exclude Experts pursuant to *Daubert*.  To this end, Plaintiffs served the opening report of their Market Efficiency, Loss Causation and Damages expert, Dr. Feinstein, on January 4, 2021.  Two weeks later, on January 19, 2021, Plaintiffs filed their Motion for Class Certification and Appointment of Class Representatives and Class Counsel (the "Motion for Class Certification").  ECF Nos. 120-125.  Thereafter, Dr. Feinstein sat for two depositions: the first, regarding class

---

[3]    The six documents at issue are bates-stamped: JW-SEC-01153076; JW-SEC-01119077; JW-SEC-01362332; JW-SEC-01372218; JW-SEC-01372221; and JW-SEC-01372224.  *See* Wyman Decl. Exs. B-G, respectively.

certification issues, on January 30, 2021; and the second, regarding the Action's merits, on February 22, 2021.

It was following this January 30, 2021 deposition that the Jeld-Wen Defendants produced JW-SEC-01153076 and JW-SEC-01119077, among 30,794 pages of other documents. These two documents concern a *Seeking Alpha* article that appears to have been ghost-written or edited by Jeld-Wen's Senior Vice President of Investor Relations (and current CFO), but published in *Seeking Alpha* under the name of a third-party who claimed sole authorship of the article and who did not disclose any ties to Jeld-Wen (hereinafter, the "Seeking Alpha Documents"). Briefly, the Seeking Alpha Documents are relevant, as they indicate that Jeld-Wen may have been utilizing third-parties to claim authorship over positive articles about the Company to impact the price of Jeld-Wen stock – in this instance after a steep decline in price – without disclosing the Company's involvement in the articles.[4] The Securities Exchange Commission has recently cracked down on these alleged stock promotion schemes, which leave investors with the false impression they are reading independent, unbiased analyses on investing websites, while writers are being secretly compensated for touting company stocks, all in violation of federal law. *See* Wyman Decl. Ex. I (*SEC: Payments for Bullish Articles on Stocks Must Be Disclosed to Investors*, U.S. SECURITIES & EXCHANGE COMMISSION (Apr. 10, 2017), https://www.sec.gov/news/press-release/2017-79).

On February 15, 2021, Plaintiffs served Dr. Feinstein's Reply Report on Loss Causation and Damages, which responded to and critiqued conclusions made by the Jeld Wen Defendants' expert, Daniel R. Fischel. On March 4, 2021, the Court heard oral argument on Plaintiff's Motion for Class Certification. ECF No. 157; *see* Wyman Decl. Ex. J. The following day, the parties served their

---

[4]  Although a draft of the text of the article in question was contained in the Jeld-Wen Defendants' files, they failed to produce the published article itself, despite the fact it contained a virtually verbatim version of what the Jeld-Wen Defendants appeared to write. *Compare* Wyman Decl. Ex. C and Ex. H.

Motions to Exclude each other's experts pursuant to *Daubert*.  ECF Nos. 159-177.  It was only ***after*** these events, on March 5, 2021, however, that the Jeld-Wen Defendants produced JW-SEC-01362332, JW-SEC-01372218, JW-SEC-01372221, and JW-SEC-01372224, among 78,160 pages of other documents.  These four documents in question relate to Jeld-Wen's internal consideration of whether or not to take the litigation contingency announced on October 15, 2018 (the "Litigation Contingency") and, importantly, the market's expected reaction to any such Litigation Contingency (hereinafter, the "Litigation Contingency Documents").[5]

Thereafter, on March 10, 2021, the Jeld-Wen Defendants, via email, indicated that both the Litigation Contingency and Seeking Alpha Documents were "subject to the attorney-client privilege and were inadvertently produced" and that they should be destroyed pursuant to the Stipulated Protective Order (*see* ECF No. 112-1) in this Action.  Wyman Decl. Ex. K.  Moreover, at two recent fact depositions, on March 9 and 11, 2021, counsel for the Jeld-Wen Defendants instructed the witnesses not to answer questions regarding the Litigation Contingency and Seeking Alpha Documents based on this same assertion of privilege.  The following day, on March 11, 2021, Plaintiffs responded to the Jeld-Wen Defendants' March 10th email, stating that, "[p]ursuant to Paragraph 2.4 of the Stipulated Protective Order, we have sequestered the below documents and intend to challenge your assertions of attorney-client privilege."  *See id*.  On March 12, 2021, the parties met and conferred and concerning the issues raised herein but were unable to resolve the dispute.[6]

---

[5]   The Litigation Contingency Documents are also indisputably relevant.  *See infra* §III.B.

[6]   Specifically, during that meet and confer, the Jeld-Wen Defendants represented that the Seeking Alpha Documents were privileged because they were saved locally and sent to Jeld-Wen's General Counsel at her request, and related to work being done by Latham and Watkins.  The Jeld-Wen Defendants represented that the Litigation Contingency Documents were privileged because the executives that reviewed the document later transmitted them in connection with legal advice.  As explained herein, neither explanation is sufficient to withstand this Motion.

Regarding the second issue, Jeld-Wen's failure to produce responsive documents and ESI, on November 13, 2020, Plaintiffs issued their second set of requests for production of documents on the Jeld-Wen Defendants. *See* Wyman Decl. Ex. L ("Plaintiffs' Second RFPs"). On November 30, 2020, the Jeld-Wen Defendants served objections to the requests and on December 14, 2020, served their responses. *See* Wyman Decl. Ex. M. The Jeld-Wen Defendants first produced documents responsive to Plaintiffs' Second RFPs on January 30, 2021. Plaintiffs began taking fact depositions on March 2, 2021 and have taken seven depositions to date with at least eight additional depositions scheduled to occur in the next two weeks.

On March 9, 2021, Plaintiffs deposed Jeld-Wen's former Senior Director of Sales Operations from 2014-2019, Tim Kirk. During the deposition, Plaintiffs learned for the first time of the existence of documents from Jeld-Wen's internal Salesforce.com ("SFDC") platform and an employee communication function of SFDC known as "Chatter," when Mr. Kirk testified that SFDC and Chatter were platforms he and other Jeld-Wen employees used to communicate and store relevant documents during his time at Jeld-Wen. To the best of Plaintiffs' knowledge, no documents from Jeld-Wen's SFDC or Chatter platform have been produced in this Action to date.

This Motion follows.

## III.   ARGUMENT

### A.   The Jeld-Wen Defendants' Have Not Met Their Burden of Establishing Any Privilege Exists

As the Fourth Circuit has recognized, "the party claiming privilege . . . bear[s] the burden of demonstrating the applicability of the privilege to specific documents." *Solis v. Food Emps. Lab. Rels. Ass'n*, 644 F.3d 221, 233 (4th Cir. 2011); *see also United States v. Cassidy*, 48 F. App'x 428, 441 (4th Cir. 2002) (same). With the exception of the Jeld-Wen Defendants' March 10, 2021 email to Plaintiffs, which tersely states that the "documents are subject to the attorney-client privilege," and their contentions during the March 12th meet and confer, the Jeld-Wen Defendants have

provided *no evidence* that the six documents in question are privileged. A facial review of the documents and their metadata plainly establish that the documents are business documents produced by the Company and in no way concern any legal advice. Further, Plaintiffs' attempts to question witnesses about the Litigation Contingency and Seeking Alpha Documents during recent depositions were prevented under the guise that the documents were privileged, although the Jeld-Wen Defendants provided no further information in support of their assertion.[7] Thus, the Jeld-Wen Defendants have failed to carry their burden regarding the nature of the six documents, which alone requires that the Court deny their attempts to claw-back the documents.

Further, and even more damning to their cause, the Jeld-Wen Defendants have failed to provide a privilege log regarding the documents they have: (i) withheld entirely from production to Plaintiffs; or (ii) produced to Plaintiffs in redacted form, which has been determined by courts in this Circuit to be a waiver of any privilege claim. Under Federal Rule of Civil Procedure 26(b)(5)(A), any party seeking to withhold discoverable information on the ground that the information is privileged "must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." This detailed description, required by the Rule, typically takes the form of a privilege log.

---

[7] Counsel for Plaintiffs' attempted to use these documents at the depositions of Scott Vining, Jeld-Wen's current Chief Accounting Officer and SVP Finance, and John Linker, Jeld-Wen's current CFO. During the Linker deposition, Counsel for the Jeld-Wen Defendants merely stated, when referring to JW-SEC-01153076 (a Seeking Alpha Document), that "[w]e believe this document is privileged and shouldn't have been produced. So we will send you a written note confirming that we're clawing it back. And I just direct Mr. Linker not to answer any questions about his communications with counsel regarding this document or regarding anyone acting at the direction of counsel." Wyman Decl. Ex. N (Linker Tr. at 212:9-19). Similarly, at the Vining deposition, counsel for the Jeld-Wen Defendants, when referring to JW-SEC-01372218 (a Litigation Contingency Document), indicated that, "I'm going to object to this exhibit. I believe we sent a clawback notice yesterday informing Plaintiff's counsel that we were clawing this document back." Wyman Decl. Ex. O (Vining Tr. at 95:17-22).

*Oppenheimer v. Episcopal Communicators, Inc.*, 2020 U.S. Dist. LEXIS 146398, at \*13 (W.D.N.C. Aug. 14, 2020). Indeed, a "party simply cannot claim privilege and refuse to provide a privilege log; indeed, some courts have found that doing so results in waiver of the privilege." *Id.* (citing cases); *see also Jones v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 52214, at \*14-\*15 (S.D. W. Va. Apr. 21, 2015) ("BANA's objections based on privilege and work product protection are equally without basis given that BANA has—or soon will—waive its privilege objections by failing to provide Plaintiffs with a privilege log."). Other than in connection with the documents at issue in this Motion, the Jeld-Wen Defendants have not produced one privilege log entry in this Action, despite the fact that many of the documents to be included were also likely withheld in the other actions against Jeld-Wen concerning its alleged anticompetitive behavior. And the log that Jeld-Wen sent this morning regarding the documents at issue does not support the assertion of privilege, especially in light of a plain reading of the documents and the related testimony of Jeld-Wen witnesses concerning their subject matter.[8] Thus, "[b]ecause the [Defendants] did not produce a privilege log as required by Rule 26, the [Defendants have] waived [their] privilege claims." *Oppenheimer*, 2020 U.S. Dist. LEXIS 146398, at \*13.

### B.   Plaintiffs' Request for an Expedited Hearing Is Well-Founded Based on the Current Status of the Action

Plaintiffs are requesting an expedited hearing because the six documents in question have meaningful and substantial impacts for various proceedings that are currently occurring in this Action. As discussed below, the documents undoubtedly: (1) bolster Plaintiffs' outstanding Motion for Class Certification; (2) support Plaintiffs' upcoming Opposition to the Motion to Exclude the Testimony and Report of Dr. Feinstein; and (3) impact the conclusions found in Dr. Feinstein's

---

[8]   During the March 12, 2021 meet and confer, the Jeld-Wen Defendants represented that they would be providing a limited privilege log for the Seeking Alpha and Litigation Contingency Documents on Monday, March 15, 2021. The ***only*** documents included on that log were related to the six challenged documents.

Opening and Reply Reports on damages and causation, as well as his testimony. These issues are more troubling due to the fact that the Jeld-Wen Defendants waited to produce certain relevant documents until after Plaintiffs' experts provided their reports and testified.

      **1.**      **The Documents Bolster Plaintiffs' Motion for Class Certification, Which Is Currently *Sub Judice*, and Affect Plaintiffs' Opposition to the Jeld-Wen Defendants' Motion to Exclude the Testimony of Dr. Feinstein as Well as Dr. Feinstein's Reports and Testimony Concerning Causation and Damages**

In Defendants' Opposition to Plaintiffs' Motion for Class Certification, Defendants relied upon the expert report of an accountant to rebut Dr. Feinstein's conclusion that, by announcing the Litigation Contingency, the market determined that Jeld-Wen was conceding the "allegations of illegal anticompetitive behavior had merit and that there would be negative repercussions from that behavior." *See, e.g.*, ECF No. 136 at 12 (Jeld-Wen Defendants Opposition to Plaintiffs' Motion for Class Certification). Similarly, in Defendants' Motion to Exclude the Reports and Testimony of Dr. Feinstein, Defendants argue that Dr. Feinstein has no support for his opinion that the Litigation Contingency informed the market that the allegations of illegal anti-competitive conduct had merit. ECF No. 170 at 18-20 (Memorandum of Law in Support of Jeld-Wen Defendants' Motion to Exclude the Reports and Testimony of Dr. Steven Feinstein).

Leaving aside that Dr. Feinstein has provided support for his conclusion (which will be explained in Plaintiffs' opposition to the Motion to Exclude Dr. Feinstein's Reports and Testimony), and also leaving aside that the Court has implicitly recognized that the conclusion had merit when the Court characterized the Jeld-Wen Defendants' disclosure of the Litigation Contingency as the "Liability Announcement" (*see, e.g.*, ECF No. 103 at 18), the belatedly produced Litigation Contingency Documents establish that the Jeld-Wen Defendants ***themselves*** understood that the market would view the disclosure of the Litigation Contingency as an admission of liability.

Directly contradicting the story the Jeld-Wen Defendants are now trying to sell to the Court, the Litigation Contingency Documents conclusively establish that Jeld-Wen, itself, ***internally*** believed that disclosing the Litigation Contingency "may" be seen as "an admission of guilt" by "investors." Wyman Decl. Ex. E. This is the same conclusion reached by Dr. Feinstein that the Jeld-Wen Defendants are now moving to exclude. For example, in their Motion to Exclude, the Jeld-Wen Defendants argue that Dr. Feinstein's opinion "that when JELD-WEN announced the Litigation Contingency, 'investors and analysts were now informed that the allegations of illegal anticompetitive behavior had merit and that there would be negative repercussions from that behavior'" was without basis because it "mischaracterized the nature of a litigation contingency." ECF No. 170 at 18-19. The Jeld-Wen Defendants attempt to support this argument, as they similarly did in opposing class certification, by asserting that the booking of the Litigation Contingency did not correct anything, but was simply based on information already in the market. *Id*. at 19. The Jeld-Wen Defendants then conclude that because Dr. Feinstein misidentified the announcement of the Litigation Contingency as a corrective disclosure and the market's reaction to it, his opinion should be excluded. However, the Jeld-Wen Defendants' own documents directly refute the arguments they make to the Court. For example, in the Litigation Contingency Documents, prepared by Scott Vining, he states: "Investors may see this as an admission of guilt."[9]

Because the Jeld-Wen Defendants are unable to reconcile the admission in their document with their argument that Dr. Feinstein was wrong when he reached the same exact conclusion as the Jeld-Wen Defendants themselves, the Jeld-Wen Defendants attempt to prevent Plaintiffs from utilizing the document by claiming it is privileged. But, it is not. It contains nothing even remotely resembling legal advice. It is a business document, prepared by a Jeld-Wen accountant, that concerns the Defendants' views about how investors would view the Litigation Contingency. If the

---

[9]    *See, e.g.*, Wyman Decl. Ex. E.

Court were to deny the Jeld-Wen Defendants' unfounded assertions of privilege, Plaintiffs would be able to consider providing additional support for Dr. Feinstein's conclusions regarding how investors viewed the Litigation Contingency – the Jeld-Wen Defendants' own words.

**C.      The Jeld-Wen Defendants Failed to Produce a Critical Source of Responsive Documents that Must Be Produced**

Plaintiffs further respectfully request that the Court compel the Jeld-Wen Defendants to immediately search for and produce responsive documents from additional sources of information that they failed to produce.  Specifically, during the deposition of Tim Kirk, Jeld-Wen's Senior Director of Sales Operations from 2014-2019, on March 9, 2021, Plaintiffs learned for the first time of the existence of documents from Jeld-Wen's SFDC platform and an employee communication function of SFDC known as "Chatter."[10]  The documents and information contained on SFDC and Chatter are highly relevant to Plaintiffs' claims.  Mr. Kirk specifically testified that Jeld-Wen employees posted information related to, *inter alia*, interior molded doors and related price increase letters on SFDC and Chatter.  However, Plaintiffs have reviewed the Jeld-Wen Defendants' production to date and it appears that the Jeld-Wen Defendants have not produced any documents from this source of documents whatsoever.[11]

---

[10]  That same evening following Mr. Kirk's deposition, Plaintiffs requested that the Jeld-Wen Defendants provide the relevant bates numbers of Chatter documents if such communications had been searched for and produced, or, if not, that the Jeld-Wen Defendants search for and produce responsive Chatter documents immediately.  Wyman Decl. Ex. P.  When the Jeld-Wen Defendants did not respond, Plaintiffs followed up the next day, again requesting that the Jeld-Wen Defendants produce the requested documents immediately or provide the relevant bates numbers.  *Id.*

[11]  On March 12, 2021, the Jeld-Wen Defendants represented that "We have confirmed JELD-WEN does not have data from Salesforce or Chatter for Tim Kirk during the agreed-upon time period.  We do not have any reason to believe the Company has data from Salesforce or Chatter for the other custodians during this time period, but we are in the process of confirming.  We understand the Salesforce platform is in the middle of a data migration process that makes it impossible to get you a response by the end of the day, but we should have confirmation by Monday."  Wyman Decl. Ex. T.  The Jeld-Wen Defendants confirmed their understanding on Monday.

The Jeld-Wen Defendants were required to produce relevant information from SFDC and Chatter because it was a critical source of relevant information and contained highly relevant information responsive to Plaintiffs' document requests.  According to Mr. Kirk, the SFDC platform is Jeld-Wen's customer relationship management ("CRM") software, where they "keep track of our customer accounts, contacts, interactions with the customers[,] . . . [d]ifferent processes, workflows, approvals and communication tools."  Wyman Decl. Ex. Q at 35:14-36:8.  Mr. Kirk further explained that Chatter is "a communication tool that's part of the Salesforce.com platform and it's essentially like a social media of sorts for business" and "a business communication tool on the Salesforce.com platform."  *Id*. at 38:23-39:3.  Mr. Kirk also stated that "you could message somebody on the system" and likened the Chatter platform to a "Twitter account or . . . a Facebook account where you can post something and you can use the @ symbol to call somebody out and it will ping them and get their attention and they can respond to it, or you can have just a general post."  *Id*. at 41:16–24.[12]

Jeld-Wen's SFDC and Chatter platforms are therefore exactly the types of sources Plaintiffs requested the Jeld-Wen Defendants to search for when searching for responsive documents.  Indeed, Plaintiffs' document requests specifically sought documents, communications, and ESI from any of Defendants' "social media posts," including "Facebook messages, Facebook Posts, tweets," or "similar social media message logs" and "other messaging applications and platforms."  Wyman Decl. Ex. L at ¶¶8, 14-15.  The sought-after documents likewise include "internal Communications undertaken between Company personnel."  *Id.* ¶¶8, 14.

---

[12]   Mr. Kirk also explained that not only is there "a general place that you can post," but "there are also groups that you can create different groups."  *Id*. at 42:12-14.  For example, Mr. Kirk testified that there may have been a specific group for "doors" and perhaps even a group for "interior molded doors."  *Id*. at 43:7-17.  Similarly, Mr. Kirk later stated that there was a group labeled, "Product Marketing Doors" on Chatter, and that at another point in time there would have been groups with respect to different product lines.  *Id*. at 152:4-14.

Critically, the Jeld-Wen Defendants did not object to producing such documents and information. Indeed, the only objection the Jeld-Wen Defendants raised with respect to the request to search these sources of information was "to the extent they purport to require JELD-WEN Defendants to produce materials outside the scope of Fed. R. Civ. P. 34(a)(1)." Wyman Decl. Ex. M at ¶¶4-5. But the scope of Rule 34(a)(1) of the Federal Rules of Civil Procedure expressly includes "*any designated documents or electronically stored information—including writings,* drawings, graphs, charts, photographs, sound recordings, images, *and other data or data compilations—stored in any medium* from which information can be obtained." Accordingly, the Jeld-Wen Defendants failed to object to producing documents on the SFDC and Chatter platforms.

Moreover, Mr. Kirk confirmed that documents posted on Chatter are plainly relevant and responsive to Plaintiffs' document requests. For example, Mr. Kirk testified that Jeld-Wen employees "would post the price increase letters . . . on Salesforce.com in something called Chatter." Wyman Decl. Ex. Q at 37:22-25. Mr. Kirk further stated that "when we instituted a price increase, we would typically put something in Chatter for the product group that the price increase was related to." *Id*. at 38:10-13; *see also id*. at 42:20-43:6 and 146:21-150:5; Wyman Decl. Ex. R (12/3/2014 email stating: "I will be posting to [the] SFDC Chatter Product Marketing Doors shortly," referring to the price increase letter). Therefore, these documents are undoubtedly responsive to Plaintiffs' document requests and are highly relevant to Plaintiffs' claim.

Such documents and information are directly responsive to Plaintiffs' document requests. For instance, Request No. 6 specifically seeks "[a]ll Documents concerning any price increases for interior molded doors or doorskins implemented by Jeld-Wen." Wyman Decl. Ex. L. And Request No. 11 seeks "[a]ll Documents concerning Jeld-Wen's pricing strategies related to interior molded doors and doorskins." *Id.* As Mr. Kirk testified, Jeld-Wen in fact stored such documents on its SFDC and Chatter platforms. Moreover, the documents described above relate directly to falsity and

scienter. Notably, Mr. Kirk testified that Defendant Mark A. Beck, Jeld-Wen's former President and CEO, was among the individuals who would log on and use the SFDC Chatter function. Wyman Decl. Ex. Q at 40:16-41:7.

The Jeld-Wen Defendants therefore should have produced all relevant documents and information contained on the SFDC and Chatter platforms. The Jeld-Wen Defendants' failure to produce such documents has and will continue to prejudice Plaintiffs. Plaintiffs have already deposed seven fact witnesses and will be deposing multiple other deponents over the next two weeks. Accordingly, the Court should compel the Jeld-Wen Defendants to immediately produce all relevant documents contained on the SFDC and Chatter platforms. In the event that the Jeld-Wen Defendants later represent to Plaintiffs and/or the Court that no SFDC or Chatter electronically stored information exists, Plaintiffs reserve all rights to inquire via motion, discovery, or otherwise why Jeld-Wen has not retained these sources of relevant electronically stored information in light of the *Steves* litigation, which put them on notice of pending litigation no later than June 2016.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) hold a hearing on or before March 17, 2021, to determine whether the Jeld-Wen Defendants' assertions of privilege on the six documents they attempted to claw back on March 10, 2021; (ii) deny the Jeld-Wen Defendants' assertions of privilege on the six documents they attempted to claw back on March 10, 2021; (iii) require the Jeld-Wen Defendants to immediately produce documents related to Chatter and SFDC, their internal social media-type platforms, or explain why such documents were destroyed or otherwise do not exist; (iv) require the Jeld-Wen Defendants to immediately produce a privilege log for all withheld and redacted documents; and (v) grant any other relief that is just and proper.

- 14 -

DATED:  March 15, 2021

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (Admitted *pro hac vice*)


*/s/ Steven J. Toll*
STEVEN J. TOLL

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
jhandelsman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

ROBBINS GELLER RUDMAN & DOWD LLP
DEBRA J. WYMAN (Admitted *pro hac vice*)
JOHN R. RIGBY (Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
jrigby@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
ROBERT M. ROTHMAN (Admitted *pro hac vice*)
WILLIAM J. GEDDISH (Admitted *pro hac vice*)
FRANCIS P. KARAM (Admitted *pro hac vice*)
MAGDALENE ECONOMOU (Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
wgeddish@rgrdlaw.com
fkaram@rgrdlaw.com
meconomou@rgrdlaw.com

*Co-Lead Counsel for Plaintiff Plumbers and Pipefitters
National Pension Fund, Additional Plaintiff Wisconsin
Laborers' Pension Fund, and the Class*

- 15 -

LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Co-Lead Counsel for Plaintiff Public Employees'*
*Retirement System of Mississippi and the Class*

## CERTIFICATE OF SERVICE

I, Steven J. Toll, hereby certify that on March 19, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.



*/s/ Steven J. Toll*
STEVEN J. TOLL