# EXHIBIT B

COURT DECISION COULD CHILL M&A ACTIVITY IN US

(Commentary for Forbes or WSJ)

The most consistent plea of the business [and investor?] community is for certainty.  When elected officials alternately add to and then reduce tax and regulatory burdens or simply put pressing policy matters on hold depending on the election calendar, it makes short- and long-term planning all but impossible. Court decisions can also add to the unpredictability, as evidenced by a pending decision in an antitrust dispute between two door manufacturers.

> **Commented [JL1]:** I feel like we need a stronger sentence here to wrap up the intro.  Something to keep people reading.  "Unpredictability" is not very exciting?  How about "court decisions can be very disruptive to business operations and capital markets, as evidenced by…." (or dramatic impacts on businesses and shareholders) Or How about – "Overreaching court decisions can also impede capitalism and destroy shareholder value as evidenced by…."

Wading into uncharted waters, a federal court in Richmond, Virginia will soon decide whether or not to effectively invalidate the U.S. Justice Department's 2012 clearance of a merger between JELD-WEN, Inc. and Craftmaster Manufacturing, Inc., (CMI) in response to complaints by a third company, Steves and Sons, Inc.  If the court orders divestiture of the acquired entity – six years after the merger – JELD-WEN's investments to grow the company and its strategic plans could be upended.  This would be an ominous development for other recent mergers and could put a stinging chill on many potential merger and acquisition transactions.  It's safe to assume this ruling could force companies to shy away from beneficial mergers and acquisitions for fear of endless litigation driven by disgruntled competitors.

The case concerns a battle between between Steves and Sons, a San Antonio company that makes doors commonly used in home interiors, and its supplier/partner and JELD-WEN (should we describe who JELD-WEN is?  Ie. – a $4 billion public company traded on the NYSE), a company that makes doors as well as door skins, the pre-formed moldings that create a decorative surface that looks like a hand carved door but at a fraction of the cost.  In 2012 JELD-WEN announced plans to acquire CMI, one of the three remaining door skin makers in the United States.  The Justice Department's antitrust division took a look at the proposed deal and concluded there was no reason to block it.

Almost four years later, Steves claimed JELD-WEN violated the terms of a long-term contract between them after acquiring CMI.  Steves prevailed in federal court in Richmond, Virginia earlier this year when a jury awarded them $12.15 million in damages and $46.5 million for the loss of future profits.  In a related matter, JELD-WEN later successfully sued Steves for misappropriating its trade secrets.  But now Steves seeks to compel JELD-WEN to divestiture of the assets acquired from CMI.  In other words, after obtaining a jury verdict for tens of millions of dollars, Steves [and the court] wants to void a Justice Department-approved deal and damage punitively dismantle a public company. its long-term supplier, which is a public company.  JELD-WEN's shareholders have already seen millions of dollars of losses due to the threat of the potential divestiture.

> **Commented [JL2]:** I feel like "dismantle" is too strong here

> **Commented [JL3]:** This may be too much but would like to introduce that concept that the Steves and court have already done significant damage to shareholders

If the court goes along with such a sweeping remedy, JELD-WEN says it is ready to appeal all the way to the U.S. Supreme Court, as it should.  After six years, JELD-WEN and CMI have become a single entity.  Divestiture, specifically unloading a major production facility in Towanda, Pennsylvania that JELD-WEN invested millions of dollars in to modernize the facility and enhance its productivity, would reverse the company's painstaking effort to prepare for long-term success.  If the court allows this, it would cast a shadow of uncertainty on other mergers.

CONFIDENTIAL

JW-SEC-01153076

It would also signal for the first time that Justice Department antitrust clearances can be ignored and provide a powerful new weapon to potential plaintiffs having an axe to grind.  No U.S. court has ever signed off on divestiture as a remedy in private litigation for a merger that has already closed.  In this case, the DOJ cleared the merger twice - when it was proposed in 2012 and again in 2015 in response to Steves' complaints.  If courts are willing to disregard the authority of Justice Department antitrust clearance reviews, the plaintiffs' bar will be handed a powerful new weapon to challenge merger transactions years after the integration of acquired businesses have been completed.  It is not hard to imagine plaintiffs misusing the antitrust laws as a sword to threaten their competitors to extort unjustified concessions.

Steves will continue to cast this a David v. Goliath fight.  That analogy does not hold up.  Steves has bested dozens of rivals over the years and remains one of only a handful of door manufacturers in the United States.  It is a big company itself, supplying millions of doors to Home Depot and other large customers.  This is a fight between two formidable players.

> **Commented [JL4]:** Not sure what this paragraph adds.  I don't think we want to cast Steves as "formidable"

Too often the political calculations of elected officials add to the inherent uncertainty of the marketplace.  If the court orders divestiture in this case, it will be a blow not only to JELD-WEN but to all businesses involved in mergers and acquisitions. Companies and their shareholders would no longer take comfort that a past acquisition is final, no matter how long ago it occurred, how integrated the companies become, or how successful the new company has been in terms of generating revenues and creating jobs. Lawsuits, many of them intended merely to distract and bleed rivals, would flourish. In this unsettled environment, businesses, workers, and consumers will all lose.

CONFIDENTIAL

JW-SEC-01153077