**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112-JAG<br><br>Judge John A. Gibney, Jr. |

**JELD-WEN DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE SECTIONS V, VI, AND VII.D OF THE EXPERT REPORT AND TESTIMONY OF JOHN H. JOHNSON, IV**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 1

      A.    Allegations ......................................................................................... 1

      B.    Report of Plaintiffs' Expert, Dr. Lamb ...................................................... 2

      C.    Opposition Report of Defendants' Expert, Dr. Johnson ............................ 3

      D.    Plaintiffs' Motion to Exclude Johnson ...................................................... 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ....................................................................................................................... 6

      I.    **Dr. Johnson's Opinions Fit the Facts of the Case** ............................................. 7

      II.    **Dr. Johnson's Analysis of the IMD Market Should Not Be Precluded** .......... 11

CONCLUSION ................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Source Bank v. First Res. Fed. Credit Union*,
    167 F.R.D. 61 (N.D. Ind. 1996) ...................................................................................................13

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
    829 F. Supp. 2d 802 (D. Minn. 2011) .........................................................................................13

*In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*,
    2009 WL 2750462 (D.S.C. Aug. 26, 2009) .................................................................................10

*Belville v. Ford Motor Co.*,
    919 F.3d 224 (4th Cir. 2019) ......................................................................................................10

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.*,
    2009 WL 1649773 (D. Kan. June 9, 2009) ..................................................................................13

*Coleman v. Tyson Farms, Inc.*,
    2011 WL 1833301 (E.D. Va. Apr. 13, 2011) .................................................................................7

*Cunningham v. Rendezvous, Inc.*,
    699 F.2d 676 (4th Cir. 1983) .........................................................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .......................................................................................................................6

*De Reyes v. Waples Mobile Home Park LP*,
    2017 WL 4509869 (E.D. Va. Apr. 17, 2017) .................................................... 6, 10, 12, 13-14

*E. W., LLC v. Rahman*,
    2012 WL 4105128 (E.D. Va. Sept. 17, 2012) ..............................................................................13

*Emami v. Bolden*,
    2016 WL 8232235 (E.D. Va. Dec. 20, 2016) ........................................................................12, 13

*Est. of Anthony Anderson v. Strohman*,
    2016 WL 4013638 (D. Md. July 27, 2016) ..................................................................................10

*Ford v. Torres*,
    2009 WL 10687787 (E.D. Va. Oct. 16, 2009) .........................................................................10, 12

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ....................................................................................................................7, 9

ii

*Hughes v. Ester C Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016) .................................................................................10

*In re Interior Molded Doors Antitrust Litig.*,
  No. 3:18-cv-00718-JAG (E.D. Va.) ...............................................................................2

*James River Mgmt. Co., Inc. v. Kehoe*,
  2010 WL 431477 (E.D. Va. Feb. 5, 2010) ...................................................................11

*Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc.*,
  2019 WL 1770162 (W.D. Va. Apr. 22, 2019) ...................................................... *passim*

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)........................................................................................................6

*Limelight Networks, Inc. v. XO Commc'ns., LLC*,
  2018 WL 678245 (E.D. Va. Feb. 2, 2018).....................................................................10

*Nationwide Mut. Fire Ins. Co. v. Bryant Thomas Heating & Cooling, Inc.*,
  2020 WL 5415659 (E.D. Va. June 26, 2020) ...............................................................12

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
  2011 WL 2295269 (S.D. Fla. June 8, 2011) .................................................................13

*Quality Plus Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  2020 WL 239598 (E.D. Va. Jan. 15, 2020) ..................................................................13

*Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*,
  2007 WL 831613 (S.D. Ind. Mar. 5, 2007)...................................................................13

*Sempowich v. Tactile Sys. Tech., Inc.*,
  2020 WL 6265076 (E.D.N.C. Oct. 23, 2020).............................................................11

*Silicon Knights, Inc. v. Epic Games, Inc.*,
  2011 WL 6748518 (E.D.N.C. Dec. 22, 2011) .............................................................11

*Smith v. Officer R. R. Ray*,
  2015 WL 13855539 (E.D. Va. Aug. 5, 2015)................................................................13

*TecSec, Inc. v. Adobe Sys. Inc.*,
  2018 WL 3649615 (E.D. Va. June 14, 2018) ..........................................................10, 12

*United States v. Stitt*,
  250 F.3d 878 (4th Cir. 2001) ........................................................................................12

*Whitaker v. Hyundai Motor Co.*,
  2018 WL 4926309 (W.D. Va. Oct. 10, 2018)................................................................14

**Rules**

Fed. R. Evid. 702 ...........................................................................................................6

**Other Authorities**

BLACK'S LAW DICTIONARY (6th ed. 1990) ......................................................................12

**INTRODUCTION**

Plaintiffs' motion to exclude the JELD-WEN Defendants' rebuttal expert, Dr. John H. Johnson IV, should be denied.  According to Plaintiffs, Dr. Johnson's two great sins are (1) taking their Complaint at face value when it says JELD-WEN's alleged anticompetitive conduct began in 2012, and (2) failing to offer his own economic analysis of the doorskins market— ███████

███████████████████████████████████████████████████ .  Neither of those criticisms has any merit.  If the Court chooses to admit Dr. Lamb's analysis, the JELD-WEN Defendants are entitled to present to the jury Dr. Johnson's methodologically unchallenged criticisms of Dr. Lamb's opinions.

**BACKGROUND**

**A.    Allegations**

In this securities case, Plaintiffs allege that JELD-WEN misled investors in two ways.  First, they say JELD-WEN made misleading statements when it said that a Clayton Act lawsuit brought by Steves & Sons, Inc. ("Steves") challenging JELD-WEN's 2012 acquisition of fellow doorskins manufacturer CraftMaster Manufacturing, Inc. ("CMI") lacked merit.  Am. Compl. ¶¶ 1, 113–20.  Second, Plaintiffs say JELD-WEN falsely attributed its commercial success to its pricing and market competitiveness rather than anticompetitive conduct, including allegedly consolidating the market for doorskins and then conspiring with Masonite Corporation to fix the prices of interior molded doors ("IMDs"), which are made with doorskins.  *Id.* ¶¶ 1, 102–10.

Plaintiffs further claim that two events connected with the Steves litigation revealed the underlying truth to the market.  First, they say Judge Payne's October 5, 2018 opinion related to the *doorskins* market revealed the truth and corrected statements that JELD-WEN had made about its pricing practices and the competitiveness of the separate *doors* and *windows* markets.  *Id.* ¶¶ 127–31.  Second, they say that JELD-WEN's October 15, 2018 announcement that it was booking

1

a litigation contingency from the Steves litigation revealed the truth and corrected statements that

JELD-WEN had made about the merits of that litigation. *Id.* ¶¶ 136–38.

### B.    Report of Plaintiffs' Expert, Dr. Lamb

In support of their claims, Plaintiffs proffered an expert report by Dr. Russell Lamb.[1]

Dr. Lamb's assignment was to " ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ " Ex. 2, Jan. 4, 2021 Decl. of

Russell L. Lamb ("Lamb Rpt.") ¶ 8.[2]

Dr. Lamb's report consists of two primary parts. ***First***, ████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████ *Id.* ¶ 26. ***Second***, ████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████ . *Id.* at 61, Table 3. ███████

███████████████████████████████████████████████ Ex. 10, Feb. 26, 2021

Dep. of Russell Lamb ("Lamb Dep.") 307:10–18; Mot. at 10 n.6.  In other words, ████████

---

[1]    Dr. Lamb previously served as plaintiffs' expert in the IMD price-fixing litigation also pending in this Court.  *See In re Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-00718-JAG (E.D. Va.).

[2]    References to Ex. 2, Ex. 3, and Ex. 10 refer to exhibits to the Declaration of Matthew S. Owen in Support of JELD-WEN Defendants' Motion to Exclude Report and Testimony of Dr. Russell Lamb (Dkt. 174-1 (Sealed), Dkt. 176-1 (Public)).  References to Ex. A refer to the exhibit to the Declaration of Matthew S. Owen dated March 19, 2021, submitted herewith. References to "Mot." refer to the Memorandum in Support of Plaintiffs' Motion to Exclude Sections V, VI, and VII.D of the Expert Report and Testimony of John H. Johnson, IV.



████████████████████████████████████████████████████████████████████████████

████████████ .

Based on this analysis, Dr. Lamb offered four opinions.  His report contended that:  (1) ██

████████████████████████████████████████████████████████████████████████████ ;

(2) ███████████████████████████████████████████████████████████████████████████

███████ ; (3) ███████████████████████████████████████████████████████████████

███████████████████████████████████████████ ;  and  (4) ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Ex. 2, Lamb Rpt.

¶ 10.

### C.    Opposition Report of Defendants' Expert, Dr. Johnson

In response, Defendants proffered the opposition report of their expert, Dr. John H. Johnson

IV.  Dr. Johnson's assignment was ████████████████████████████████████████

Ex. 3, Feb. 1, 2021 Expert Report of Dr. John H. Johnson, IV in Opp'n to Decl. of Dr. Russell L.

Lamb ("Johnson Rpt.") ¶ 5.

*First*, Dr. Johnson explained that ██████████████████████████████████████

████████████████████████████████████████████████████████ *Id.* ¶ 14.

For example, ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 2, Lamb Rpt. ¶ 10, ████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████ , Ex. 3, Johnson Rpt. ¶ 39.  In particular, ████████████████

3

(i) ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████, *id.* ¶ 45; (ii) ████████████████████████████████████

████████████████████████████████, *id.* ¶ 46; (iii) █████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████, *id.* ¶ 47;

(iv) █████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████, *id.* ¶ 54.   Dr. Johnson opined ████████████████████████

███████████████████████████████████████████████████████

██████████████.

  ***Second***, Dr. Johnson explained that █████████████████████████

████████████████████ *Id.* ¶ 18.   ██████████████████████████████

████████████████████ Ex. 2, Lamb Rpt. ¶ 36, but ████████████████████

████████████████████ Ex. 3, Johnson Rpt. ¶ 57.   ████████████████████████ (i) ███

███████████████████████████████████████████████████████

██████, *id.* ¶ 61; (ii) ████████████████████████████████████

██████, *id.* ¶¶ 62–63; and (iii) ███████████████████████████████

████████████████████████ *id.* ¶¶ 69–70.

  ***Third***, Dr. Johnson opined that ██████████████████████████

███████████████████████████████████████████████████████

██████████████ *Id.* ¶ 19.   ███████████████████████████████████

4

 Ex. 2, Lamb Rpt. ¶ 91. ██████████████████████████████████████

██████████████████████████████████████████████████████ :

   1.   ███████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████. Ex. 3, Johnson Rpt. ¶ 83.

   2.   ███████████████████████████████████████████

█████████████████████████████████. *Id.* ¶ 93. ██████████████████████

████████████████████████████████. *Id.* ¶ 95.

   3.   ███████████████████████████████████████████

██████████████████████████████████████████, *id.* ¶¶ 98–99,

████████████████████████████████████████████████████████

████████████████████████████████, Am. Compl. Section I.A. ██████████

████████████████████████████████████████████████████████

██████████. *Id.* ¶ 99.

**D.   Plaintiffs' Motion to Exclude Johnson**

Plaintiffs now move to exclude a portion of Dr. Johnson's opinions for two reasons.[3]  First, they contend that portions of Dr. Johnson's opinions do not fit the facts of the case. ██████████

████████████████████████████████████████████████████████

---

[3]   Plaintiffs do not challenge Dr. Johnson's qualifications.  Nor could they.  Dr. Johnson holds a Ph.D. in economics from the Massachusetts Institute of Technology, where his areas of specialization were econometrics and labor economics.  Ex. 3, Johnson Rpt. ¶ 2.  He has been a professional economist for more than two decades and is routinely admitted by courts around the country as an expert in the field of economics and econometrics.  Johnson Rpt., App. A.

. Mot. at 7–10.

Second, ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████. Mot. at 10–12.

## LEGAL STANDARD

To be admissible, expert opinion testimony must be both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (Supreme Court "assign[ed] to the trial judge the task of ensuring that an expert's testimony both rests on reliable foundation and is relevant to the task at hand"); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); Fed. R. Evid. 702. The goal of the court's gate keeping function is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

## ARGUMENT

Dr. Johnson's opinions easily meet the *Daubert* standard. Dr. Johnson's critiques of Dr. Lamb are proper rebuttal opinions and will aid the jury. There are no grounds to exclude them; at most, Plaintiffs' arguments regarding the limits of Dr. Johnson's arguments are concerns that can be fully addressed on cross-examination. *De Reyes v. Waples Mobile Home Park LP*, 2017 WL 4509869, at *1–2 (E.D. Va. Apr. 17, 2017) (denying motion to exclude expert testimony where expert was qualified, had specialized knowledge, utilized reliable methodology, and proffered opinions "that could help the trier of fact understand the evidence or determine a fact in issue");

6

*Coleman v. Tyson Farms, Inc.*, 2011 WL 1833301, at \*1 (E.D. Va. Apr. 13, 2011) (denying motion to exclude expert testimony where moving party challenged the expert's factual assumptions); *Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc.*, 2019 WL 1770162, at \*3 (W.D. Va. Apr. 22, 2019) (denying motion to exclude testimony from an expert that was qualified and utilized reliable methodology in rendering opinions).

## I.    DR. JOHNSON'S OPINIONS FIT THE FACTS OF THE CASE

Expert opinions must fit the facts of the case. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 152 (1997); *see also Cunningham v. Rendezvous, Inc.*, 699 F.2d 676, 678 (4th Cir. 1983). Plaintiffs contend that Dr. Johnson's opinions do not fit this case because he supposedly "attempts to reframe the Complaint's allegations and ignore[s] critical facts." Mot. at 7. Plaintiffs' quarrel with Dr. Johnson's opinion █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, *see, e.g.*, Am. Compl. ¶¶ 5, 8, 13, 68, 71, 81, 92, 95, ████████████████████████████████████████████████████████████████. Ex. 3, Johnson Rpt. ¶ 99. Instead, ██████████████████████████████████████████████, *id.* ¶ 98. Plaintiffs now claim that it is Dr. Johnson who is misreading the complaint, but they are wrong.

Plaintiffs have repeatedly alleged that JELD-WEN began to engage in anticompetitive conduct when it acquired CMI in 2012. Indeed, the heading immediately prior to the complaint's first allegation states "***Beginning in 2012***, Jeld-Wen Has Been Engaging in Anticompetitive Conduct." Am. Compl., Section I.A (emphasis added). The complaint contains numerous

7

allegations about how JELD-WEN's alleged anticompetitive conduct began in 2012. *See, e.g.*, *id.* ¶¶ 5, 8, 13, 68, 71, 81, 92, 95.  Plaintiffs have said the same thing, repeatedly, in their briefs.  In their opposition to JELD-WEN's motion to dismiss, Plaintiffs wrote that "Jeld-Wen Has Been Engaging in Anticompetitive Conduct *Since 2012*[,]" Dkt. 86 at 4 (emphasis added), and continued to recount their allegations of anticompetitive conduct ***beginning in 2012***, *id.* at 4–6 (emphasis added).  They said the same thing in their brief in support of class certification:  "Jeld-Wen Has Been Engaging in Anticompetitive Conduct *Since 2012*."  Dkt. 121 at 4 (emphasis added).  And, of course, the whole theory of this securities litigation is that two events related to the Steves litigation, which challenges the *2012* CMI acquisition, were the "corrective disclosures" that revealed fraudulently concealed anticompetitive conduct.  Am. Compl. ¶ 245.

In any case, ███████████████████████████████████



████ Ex. 2, Lamb Rpt. ¶ 8 (emphasis added), ██████████████████

████████████████████████████████████ *id.* ¶ 107;

Ex. A, Lamb Dep. 204:22–206:9, 207:20–208:10. ████████████

███████████████████████████████████████.

Ex. 10, Lamb Dep. 57:10–18, 185:20–24, 207:20–208:6; Ex. 6, Feb. 15, 2021 Reply Decl. of Russell L. Lamb ¶¶ 82–83.  Dr. Lamb himself described ██████████

████████████████████████████████████

████████████ Ex. 2, Lamb Rpt. ¶ 102 (emphasis added).

8

Dr. Johnson did not stray into irrelevancy by pointing out that Dr. Lamb's regression did

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████ Ex. 3, Johnson Rpt. ¶¶ 98–99. ██████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████. *Id.* at ¶ 99.  Dr. Lamb

has not challenged Dr. Johnson's analysis on this point, Plaintiffs have pointed to no basis to

exclude it.

Plaintiffs now say Dr. Johnson's criticisms fail the "fit requirement," Mot. at 7–9, because

they really did allege that JELD-WEN's anticompetitive conduct did not begin until March 2014,

when Kirk Hachigian took over as CEO.  As just explained, that is wrong; Plaintiffs' submissions

speak for themselves.  Instead, Plaintiffs have attempted to backtrack on their complaint's

allegations that JELD-WEN's anticompetitive conduct began in 2012, in order to save themselves

from their own expert's failure to find an overcharge beginning in 2012.

Dr. Johnson's report offers proper rebuttal opinions that critique Dr. Lamb's analysis on

its own terms.  *Keystone*, 2019 WL 1770162, at *6 ("Rebuttal evidence is defined as evidence

given to explain, repel, counteract, or disprove facts given in evidence by the opposing party.")

(internal quotations and citation omitted).  Dr. Lamb may well have flunked the "fit the facts"

requirement by failing to test Plaintiffs' allegations, *see General Electric Co.*, 522 U.S. at 152

(expert's opinions are inadmissible when they "manifestly do[] not fit the facts of this case");

*Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (expert's opinion must be "relevant

to the task at hand"), and Defendants have moved to exclude him on that basis, ECF 171.  But if

the Court rules that Dr. Lamb's opinions are admissible, then Dr. Johnson's critiques of those opinions will be admissible too. *See Keystone*, 2019 WL 1770162, at \*6; *Hughes v. Ester C Co.*, 317 F.R.D. 333, 341 (E.D.N.Y. 2016) ("Deference to experts is particularly appropriate when expert testimony concerns soft sciences like economics. Because these disciplines require the use of professional judgment, expert testimony is less likely to be excluded because challenges may ultimately be viewed as matters in which reasonable experts may differ.") (citation omitted). If the Court thinks the soundness of Dr. Lamb's analysis is an issue for the jury, it follows that Defendants' expert should be permitted to criticize that analysis on the ground that it is disconnected from the central allegations of Plaintiffs' case (*i.e.*, the 2012 CMI acquisition). *See TecSec, Inc. v. Adobe Sys. Inc.*, 2018 WL 3649615, at \*1 (E.D. Va. June 14, 2018) (factual disputes go to weight, not admissibility); *De Reyes*, 2017 WL 4509869, at \*2; *Ford v. Torres*, 2009 WL 10687787, at \*4 (E.D. Va. Oct. 16, 2009).

The cited authority on which Plaintiffs rely in support of their motion, *see* Mot. at 9–12, does not help them. In those cases, experts were excluded for traditional reasons inapplicable here. *See Limelight Networks, Inc. v. XO Commc'ns., LLC*, 2018 WL 678245, at \*8 (E.D. Va. Feb. 2, 2018) (excluding expert testimony where expert's methodology in valuing patents ignored that patents have different values); *Est. of Anthony Anderson v. Strohman*, 2016 WL 4013638, at \*8 (D. Md. July 27, 2016) (excluding expert testimony where experts had no specialized training and therefore their opinions were "nothing more than their subjective beliefs"); *In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*, 2009 WL 2750462, at \*10 (D.S.C. Aug. 26, 2009) (excluding expert opinion where methodology had not been tested, peer reviewed, could not be analyzed for any rate of error, and was not generally accepted in the relevant community); *James River Mgmt. Co., Inc. v. Kehoe*, 2010 WL 431477, at \*3 (E.D. Va. Feb. 5, 2010) (similar);

10

*Sempowich v. Tactile Sys. Tech., Inc.*, 2020 WL 6265076, at \*13 (E.D.N.C. Oct. 23, 2020) (excluding expert opinion where the facts on which the expert opined could not be considered by the fact-finder in analyzing the claim at issue); *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 6748518, at \*16 (E.D.N.C. Dec. 22, 2011) (excluding expert opinion where the only factual support for conclusions offered was the expert's speculation).  None of these cases supports preventing Dr. Johnson from opining that Dr. Lamb's analysis is unsound because he studied the wrong time period.

## II.    DR. JOHNSON'S ANALYSIS OF THE IMD MARKET SHOULD NOT BE PRECLUDED

Plaintiffs also seek to preclude portions of Dr. Johnson's opinions because they say he does not analyze the doorskins market.  Mot. at 10–12.  Plaintiffs contend that Dr. Johnson's failure to analyze the Steves litigation or the doorskins market—while at the same time opining on the IMD market—will confuse the jury as to the relevance of the doorskins, lead the jury to believe that their doorskins allegations are unimportant, and cause the jury to believe that Dr. Johnson's criticisms apply to Dr. Lamb's assessment of the doorskins industry.  *Id.* at 11–12.  That argument lacks merit.

At the outset, Plaintiffs do not take issue with Dr. Johnson's methodology.  They do not argue that his IMD-market analysis is unreliable or based on insufficient facts or data.  They are merely concerned that Dr. Johnson's analysis of the IMD industry will confuse the jury.  But that confusion is classic fodder for cross-examination, and at trial Plaintiffs will have ample opportunity to highlight what Dr. Johnson did and did not study.

Plaintiffs' attempt to exclude Dr. Johnson's analysis of the IMD market fails even facial scrutiny.  Although Plaintiffs complain that the jury will be confused by analysis of the IMD market unless it is accompanied by analysis of the doorskins market, their own expert, Dr. Lamb,

admitted at his deposition that ████████████████████████████████████

████████. Ex. 10, Lamb Dep. 307:10–18.  If Plaintiffs are serious about their position, they

should withdraw (or the Court should exclude) Dr. Lamb's proffered regression analysis.

In any case, even setting aside the fact that Plaintiffs' argument would equally condemn

part of Dr. Lamb's analysis, Plaintiffs have not advanced any basis to exclude Dr. Johnson.  Dr.

Johnson is a rebuttal expert.  *See* Ex. 3, Johnson Rpt. ¶ 5.  Rebuttal evidence is defined as "evidence

given to explain, repel, counteract, or disprove facts given in evidence by the opposing

party."  *Keystone*, 2019 WL 1770162, at *5 (citing *United States v. Stitt*, 250 F.3d 878, 897 (4th

Cir. 2001) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990))).  "In assessing the reliability of

an expert witness' opinion, courts may not evaluate the expert witness' conclusion itself, but only

the opinion's underlying methodology."  *Nationwide Mut. Fire Ins. Co. v. Bryant Thomas Heating*

*& Cooling, Inc.*, 2020 WL 5415659, at *2 (E.D. Va. June 26, 2020) (citation omitted); *see also De*

*Reyes*, 2017 WL 4509869, at *2 (expert not excluded because methodology was reliable); *TecSec,*

*Inc.*, 2018 WL 3649615, at *1 (same); *Emami v. Bolden*, 2016 WL 8232235, at *6 (E.D. Va. Dec.

20, 2016) (same), *report & recommendation adopted*, 241 F. Supp. 3d 673 (E.D. Va. 2017); *Ford*,

2009 WL 10687787, at *4 (same).

In offering rebuttal opinions, Dr. Johnson utilized proper methodology and offered reliable

conclusions.  Dr. Johnson explained ████████████████████████████████████

████████████████████████████████████████████████, Ex. 3,

Johnson Rpt. ¶¶ 33–54, ████████████████████████████████

████████████████████████████ *id.* ¶¶ 55–71.  There is nothing inherently

improper about Dr. Johnson's criticisms of Dr. Lamb, and they will aid the jury.

12

Dr. Johnson was under no obligation to undertake his own independent economic analysis of the doorskins market or the Steves merger, or to respond to every sentence in Dr. Lamb's report that mentions those subjects. Courts across the nation routinely permit rebuttal expert testimony even when they do not "offer [their] own independent theories or conclusions." *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 2009 WL 1649773, at *1 (D. Kan. June 9, 2009); *see also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011) ("[R]ebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives."); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *5 (S.D. Fla. June 8, 2011) (economist's opinion that plaintiff's expert "failed to account for four factors" in an attribution analysis without having "provide[d] what percentage [was] attributable to each of these factors" is a "well-accepted way to criticize damage estimates"); *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 2007 WL 831613, at *4–5 (S.D. Ind. Mar. 5, 2007) (expert could opine on opposing expert's "failure to qualify his 8 percent pre-judgment interest rate" without offering an opinion that "some other percentage is more accurate"); *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996) ("rebuttal expert . . . may criticize . . . damages theories and calculations without offering alternatives").

Nor will Dr. Johnson's opinions mislead the jury into thinking that the doorskins market is irrelevant to this case. *See* Mot. at 11–12. If Plaintiffs are concerned about that speculative problem, they can remedy it themselves through cross-examination, presentation of contrary evidence, or appropriate jury instructions. *Quality Plus Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2020 WL 239598, at *16 (E.D. Va. Jan. 15, 2020); *E. W., LLC v. Rahman*, 2012 WL 4105128, at *5 (E.D. Va. Sept. 17, 2012); *Smith v. Officer R. R. Ray*, 2015 WL 13855539, at *3 (E.D. Va. Aug. 5, 2015); *Emami*, 2016 WL 8232235, at *6; *De Reyes*, 2017 WL

13

4509869, at \*2; *Keystone*, 2019 WL 1770162, at \*5; *Whitaker v. Hyundai Motor Co.*, 2018 WL 4926309, at \*3 (W.D. Va. Oct. 10, 2018).[4]

In short, Plaintiffs' motion to exclude Dr. Johnson attempts to rewrite Dr. Johnson's assignment, which was to provide an economic assessment of ***Dr. Lamb's*** opinions in this action. Dr. Johnson's criticisms of Dr. Lamb's analysis are relevant and admissible.

## CONCLUSION

The Court should deny Plaintiffs' motion.

March 19, 2021

Respectfully submitted,

JELD-WEN Holding, Inc.
By counsel
*/s/ Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
Brian E. Pumphrey (VSB #47312)
Brian D. Schmalzbach (VSB #88544)
Garrett H. Hooe (VSB #83983)
MCGUIREWOODS, LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com
ghooe@mcguirewoods.com

Sandra Goldstein (*pro hac vice*)
Rachel Fritzler (*pro hac vice*)
Lindsey Weiss Harris (*pro hac vice*)
Jeehyeon Jenny Lee (*pro hac vice*)

---

[4] In support of their jury-confusion argument, Plaintiffs rely on the same set of inapposite cases discussed in Section I, *supra.* Mot. at 9–12. None of those authorities suggests that Dr. Johnson's opinions are not proper rebuttal expert testimony.

14

Jacob Rae (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
lindsey.harris@kirkland.com
jenny.lee@kirkland.com
jacob.rae@kirkland.com

Matthew S. Owen (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 389-5000
Fax: (202) 389-5200
matt.owen@kirkland.com

*Attorneys for Defendants JELD-WEN
Holding, Inc., Mark A. Beck, L. Brooks
Mallard, Kirk S. Hachigian, and
Gary S. Michel*

**CERTIFICATE OF SERVICE**

I certify that on the 19th day of March, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to the following counsel of record in this case.

> /s/ Brian C. Riopelle
> Brian C. Riopelle (Va. Bar No. 36454)
> MCGUIREWOODS LLP
> Gateway Plaza
> 800 East Canal Street
> Richmond, VA 23219
> Tel.: (804) 775-1084
> Fax: (804) 698-2150
> briopelle@mcguirewoods.com

16