**FIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112 |
| | Judge John A. Gibney, Jr. |

**MEMORANDUM OF LAW IN SUPPORT OF
JELD-WEN DEFENDANTS' MOTION TO STRIKE THE
NEW REPORT OF DR. STEVEN FEINSTEIN**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

      A.    The Corrective Disclosures Alleged in the Complaint .......................................... 2

      B.    Discovery Exposes Defects in Plaintiffs' Theories .............................................. 3

      C.    Plaintiffs Seek Defendants' Permission to Submit a Supplemental Report;
           When Defendants Refuse, Plaintiffs Improperly File a New Report
           Without the Court's Permission............................................................................ 5

LEGAL STANDARD.............................................................................................................. 6

ARGUMENT ......................................................................................................................... 7

I.      FEINSTEIN'S NEW REPORT SHOULD BE STRICKEN BECAUSE IT
        VIOLATES RULE 26 AND IS BASED ON DOCUMENTS PLAINTIFFS
        HAVE HAD FOR MONTHS .......................................................................................... 7

II.     FEINSTEIN'S NEW REPORT SHOULD BE EXCLUDED BECAUSE IT
        WOULD SIGNIFICANTLY PREJUDICE JELD-WEN DEFENDANTS,
        WASTE JUDICIAL RESOURCES, AND DELAY RESOLUTION OF THIS
        CASE ............................................................................................................................. 9

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akeva L.L.C. v. Mizuno Corp.*,
212 F.R.D. 306 (M.D.N.C. 2002) ...............................................................................7, 9

*Brownlee v. W. Fraser, Inc.*,
2015 WL 628179 (D.S.C. Feb. 12, 2015) ......................................................................11

*Campbell v. United States*,
470 Fed. Appx. 153 (4th Cir. 2012) ...........................................................................7, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ..........................................................................................................5

*Fairchild v. Forma Sci., Inc.*,
147 F.3d 567 (7th Cir. 1998) ...........................................................................................13

*Faulconer v. Centra Health, Inc.*,
808 F. App'x 148 (4th Cir. 2020) ...................................................................................12

*Johnson v. Oroweat Foods Co.*,
785 F.2d 503 (4th Cir. 1986) ...........................................................................................12

*McCray v. Maryland Dep't of Transp.*,
662 F. App'x 221 (4th Cir. 2016) ...................................................................................13

*Okoro v. Ocwen Loan Servicing, LLC*,
2016 WL 1721183 (D. Md. Apr. 29, 2016) ...................................................................12

*Rambus, Inc. v. Infineon Techs. AG*,
145 F. Supp. 2d 721 (E.D. Va. 2001) .............................................................................10

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
318 F.3d 592 (4th Cir. 2003) ...............................................................................7, 10, 15

*Sharpe v. United States*,
230 F.R.D. 452 (E.D. Va. 2005) .............................................................................7, 9, 10, 11

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) .....................................................................................13

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F.3d 311 (4th Cir. 2006) ...........................................................................................13

*Wilkins v. Wells Fargo Bank, N.A.*,
   320 F.R.D. 125 (E.D. Va. 2017) ...........................................................................................12

**Rules**

Fed. R. Civ. P. 15(a)(2).........................................................................................................11

Fed. R. Civ. P. 16(b)(4)...........................................................................................................9

Fed. R. Civ. P. 26(e) ...................................................................................... *passim*

Fed. R. Evid. 702 ....................................................................................................................5

## PRELIMINARY STATEMENT

Discovery has confirmed that Plaintiffs cannot prove their case as pled. So under the guise of a "supplemental" expert report by their loss causation and damages expert, Dr. Steven Feinstein, Plaintiffs have tried to add a third corrective disclosure to this case—one that Plaintiffs did not plead, and that Feinstein says would *more than double* their purported damages. That report should be stricken and Feinstein's new opinions excluded.

Feinstein's report is untimely. In his new report, Feinstein claims an email from a firm called Susquehanna sent on August 8, 2018 caused JELD-WEN's stock to decline. But the Susquehanna email is *not new*. The investment advisor to the Lead Plaintiffs—the people Lead Plaintiffs hired to manage their investments, including purchasing and selling JELD-WEN stock, and to whom Lead Plaintiffs delegated complete authority over their investment decisions—received this email the day it was sent. That advisor produced that email in this case on January 15, 2021, more than two months before Plaintiffs filed Feinstein's new report. Not only that, the JELD-WEN Defendants introduced the Susquehanna email *as an exhibit at the investment advisor's deposition on January 27, 2021*, which Plaintiffs' counsel participated in, including by conducting their own examination of that investment advisor. And if that were not enough, JELD-WEN Defendants produced their own versions of the Susquehanna email on February 8, 2021—before Feinstein submitted his reply report, before his deposition on loss causation and damages, and nearly six weeks before Plaintiffs filed and served Feinstein's new report. Rule 26(e) does not permit experts to supplement their reports to cure a party's failure to provide its own expert with evidence on a timely basis.

Feinstein's new report is not only procedurally improper, its admission would be highly prejudicial. Feinstein's new theory of recovery has not been pled, has not been briefed, and has not been tested through discovery. For Plaintiffs to proceed on this new theory, they must seek

1

the Court's permission to amend the Complaint (which they have not done). If granted (which it should not be), Defendants must have the opportunity to move to dismiss the new allegations, the parties must re-brief class certification based on the new allegations, Defendants must have the opportunity to conduct discovery to permit them to develop defenses to the new allegations, and Defendants must have the opportunity to submit a new expert report on loss causation and damages, as well as conduct a new deposition of Feinstein. Plaintiffs' attempt to fundamentally change the claims in this lawsuit less than two weeks before the close of discovery through an untimely expert report prejudices the JELD-WEN Defendants. For these reasons, and those discussed below, the report attached as Exhibit G to Plaintiffs' opposition to JELD-WEN Defendants' motion to exclude Feinstein should be stricken and the Court should exclude Feinstein's new report.

## BACKGROUND

### A.    The Corrective Disclosures Alleged in the Complaint

The Amended Complaint alleges JELD-WEN misled investors through two categories of misrepresentations. First, Plaintiffs allege that JELD-WEN's statements about its pricing and competitiveness concealed the fact that anticompetitive behavior was "the true source of the Company's success." Complaint, Dkt. No. 73 ¶ 101. Second, Plaintiffs claim that following an adverse jury verdict in favor of Steves & Sons, Inc. ("Steves"), JELD-WEN misleadingly stated that it had not violated any antitrust laws and would appeal, despite supposedly knowing that the lawsuit (the "Steves Litigation") had merit and that JELD-WEN would ultimately face liability. *Id.* ¶¶ 207–08, 280–85.

Plaintiffs contend these alleged misrepresentations were corrected by two disclosures. First, on October 5, 2018, Judge Payne issued a detailed opinion in the Steves Litigation holding that divestiture was an appropriate remedy for Steves' antitrust claims and clarifying the amount

2

of damages likely to be awarded (the "Divestiture Decision"). *Id.* ¶¶ 127–32; Dkt. No. 79-32 at 4, 148. Plaintiffs allege the Divestiture Decision revealed "previously undisclosed facts about Jeld-Wen's anticompetitive conduct." Dkt. No. 73 ¶¶ 21–22, 254; *see also id.* ¶¶ 127–31. Second, on October 15, 2018, JELD-WEN issued a Pre-Earnings press release (the "Pre-Earnings Release") announcing, among other things, it would take a loss contingency of $76.5 million based on recent rulings in the Steves Litigation (the "Litigation Contingency"). *Id.* ¶¶24, 136–37. Plaintiffs allege that, by announcing the Litigation Contingency, JELD-WEN "shockingly admitted that the Company would likely face a significant judgment" in the Steves Litigation. *Id.* ¶ 136.

Plaintiffs subsequently confirmed these two corrective disclosures are the only ones in this case. JELD-WEN Defendants served an interrogatory on each Plaintiff requesting identification of "each disclosure that Plaintiffs claim represented a corrective disclosure and/or materialization of an undisclosed risk, whether complete or partial, related to any JELD-WEN Security and for which Plaintiffs are seeking, or intends to seek, any monetary recovery in this Action." *See* Ex. 1 at 5 (Interrogatory No. 7).[1] Each Plaintiff responded by referring JELD-WEN Defendants to the Complaint, which alleges only the October 5, 2018 and October 15, 2018 corrective disclosures. Ex. 2 at 11–12 (Interrogatory No. 7); Ex. 3 at 11–12 (Interrogatory No. 7). To date Plaintiffs have not supplemented their responses, as required by Rule 26(e)(1)(A), nor have they sought permission to amend the Complaint, as required by Rules 15(a)(2) and 16(b)(4).

**B.      Discovery Exposes Defects in Plaintiffs' Theories**

The Court designed and entered its own Scheduling Order in this case, Dkt. No. 112, as modified by a stipulated order altering the *Daubert* motion deadlines, Dkt. No. 152. The Court's

---

[1] References to "Ex. _" are to exhibits accompanying the declaration of Jacob M. Rae.

schedule contemplates that expert disclosures, depositions, and *Daubert* briefing would occur before the close of fact discovery:

- January 4, 2021:  Opening Expert Reports

- January 19, 2021:  Motion for Class Certification

- February 1, 2021:  Opposing Expert Reports[2]

- February 15, 2021:  Reply Expert Reports

- March 5, 2021:  *Daubert* Motions

- March 19, 2021:  *Daubert* Oppositions

- March 26, 2021:  *Daubert* Replies

- March 29, 2021:  Completion of All Discovery

- April 26, 2021:  Motions for Summary Judgment

- July 12, 2021:  Trial

Discovery has shown Plaintiffs' loss causation and damages allegations regarding their two pled corrective disclosures are meritless.  Most notably, Feinstein himself conceded he could not show that the October 5, 2018 Divestiture Decision impacted JELD-WEN's stock price. Dkt. No. 122-01 at ¶ 296.  Despite agreeing it was a corrective disclosure, Feinstein concluded that he could not prove "the 8 October 2018 JELD-WEN stock price decline was caused by the" Divestiture Decision.  *Id.* ¶¶ 291, 293–94.  As a result, he concluded he must "exclude this stock

---

[2] JELD-WEN Defendants served (but have not filed) a proper Supplemental Expert Report by Daniel R. Fischel on February 24, 2021.  As required by Rule 26(e), Fischel's supplemental report was made in light of *new facts*, namely the market's reaction to the Fourth Circuit's decision on JELD-WEN's appeal in the Steves litigation issued on ***February 18, 2021***.  Fischel's five-page supplement addressed events that occurred after the submission of his original report.  And JELD-WEN Defendants served the report less than a week after those events, ***before*** Fischel's deposition on February 26, 2021, and ***before*** the *Daubert* motion deadline.  Ironically, at the time, Plaintiffs still tried to argue Fischel's brief supplement—which did not change his opinions but addressed new information that did not exist at the time of his original report—was improper.  Ex. 13 at 2.

4

price decline from damages," *id.* ¶ 296, meaning Plaintiffs cannot seek damages purportedly caused by any misrepresentations that were allegedly corrected by the Divestiture Decision.

As for the other corrective disclosure alleged in this case, Feinstein opined that JELD-WEN's October 15, 2018 announcement of a litigation contingency caused JELD-WEN's stock to drop by $1.99, but the JELD-WEN Defendants have demonstrated that his opinion should be excluded.  *See* Dkt. No. 170.  As set forth in JELD-WEN Defendants' motion to exclude Feinstein's opinions and testimony on loss causation and damages, Feinstein's opinions and testimony are not based on sufficient facts, do not use reliable principles and methods, and fail to reliably apply those principles and methods to the facts of the case.  *Id.*; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–94 (1993); Fed. R. Evid. 702.  In addition, Feinstein's speculative conclusions are undermined by the testimony of Plaintiffs' own investment advisors, who testified they did not believe JELD-WEN admitted antitrust liability by disclosing the Litigation Contingency.  *See* Ex. 4, Segall Dep. 157:21–159:8; Ex. 5, Wellington Dep. 140:6–14. As a result, Plaintiffs find themselves without any reliable, admissible damages model for *either* of the alleged corrective disclosures in this case.

> **C.    Plaintiffs Seek Defendants' Permission to Submit a Supplemental Report; When Defendants Refuse, Plaintiffs Improperly File a New Report Without the Court's Permission**

On Friday, March 12, 2021—a week after JELD-WEN Defendants moved to exclude Feinstein's opinions and testimony—the parties met and conferred regarding an unrelated discovery dispute.  On that call, Plaintiffs requested permission to serve a supplemental report by Feinstein.  *See* Ex. 6 at 1–2 (email chain regarding this issue).  Plaintiffs claimed supplementation was necessary based on documents produced by Defendants on February 8, 2021.  In exchange for agreeing to allow Feinstein to supplement his report, Plaintiffs offered JELD-WEN Defendants' expert the opportunity to respond to Feinstein's supplement, reciprocal one-hour supplemental

5

depositions of each expert, and a suspension of *Daubert* briefing to allow for Plaintiffs' proposed do-over of expert discovery.  The JELD-WEN Defendants declined Plaintiffs' offer.  On Monday, March 15, 2021, the JELD-WEN Defendants informed Plaintiffs they did "not consent to any additional report from Feinstein, because his original report was not 'incomplete' under Fed. R. Civ. P. 26(e)(1), as the purported new information on which we understand he will rely was available to Plaintiffs in advance of the relevant deadline."  *Id.* at 1.

Undeterred, without either the Defendants' consent or the Court's leave, Plaintiffs filed a new "supplemental" expert report by Feinstein on the docket on March 19, 2021.  Dkt. No. 199, Ex. G.  Feinstein's new report runs 21 pages and expresses expansive new opinions based on documents Plaintiffs have had for months, if not longer.  Most glaringly, Feinstein purported to identify a ***new, unpled*** corrective disclosure on August 8, 2018 that he claimed ***more than doubled*** Plaintiffs' alleged damages.  *See* Dkt. No. 199, Ex. G at ¶¶ 14–16, 33–41; Dkt. No. 73.  To justify the eleventh-hour nature of his new report, Feinstein also claimed that recently produced documents support his prior expert opinions.  *See, e.g.*, Dkt. No. 199, Ex. G at ¶ 13.  Feinstein's new opinions regarding a new purported corrective disclosure are based on an email from Thomas Claps of Susquehanna that was sent on August 8, 2018 (the "Susquehanna Email").  *Id.* ¶ 35 & nn.49–53 (citing that email, which is attached hereto as Exhibit 9); *see also id.* ¶ 35 & nn.54–57 (citing discussion of that same email).  Plaintiffs' email serving the new report offered only a single hour of additional deposition time to question Feinstein on his new 21-page report.  *See* Ex. 7.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(e) permits the supplementation of expert opinions "in a timely manner if the party learns that in some material respect" the report "is incomplete or incorrect."  Fed. R. Civ. P. 26(e).  The timeliness requirement is significant.  "Rule 26(e)(1) requires a party to supplement its experts' reports and deposition testimony ***when the party learns***

6

*of new information*." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595–96 (4th Cir. 2003) (emphasis added). "If the party fails to do so, the court may exclude any new opinion offered by the expert." *Id.* That is because "Rule 26(e) envisions supplementation 'to add additional or corrective information.' 'To construe [Rule 26(e)] supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc on docket control and amount to unlimited expert opinion preparation.'" *Campbell v. United States*, 470 Fed. Appx. 153, 157 (4th Cir. 2012) (quoting *Sharpe v. United States*, 230 F.R.D. 452, 462 (E.D. Va. 2005)) (alterations in original) (internal citations omitted). Significantly, Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). Where, as here, the deadlines for expert discovery, "including all depositions" have already passed, "permit[ting] the plaintiff additional time to amend . . . expert disclosures would work unjustifiable hardship upon the defendant in attempting to complete discovery and prepare for trial within the confines of the court's scheduling order." *Sharpe*, 230 F.R.D. at 462.

## ARGUMENT

### I. FEINSTEIN'S NEW REPORT SHOULD BE STRICKEN BECAUSE IT VIOLATES RULE 26 AND IS BASED ON DOCUMENTS PLAINTIFFS HAVE HAD FOR MONTHS

Feinstein's new report violates this Court's Scheduling Order and is improper under Federal Rule of Civil Procedure 26(e). That Rule "envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading." *Akeva*, 212 F.R.D. at 310. Feinstein's new report is "not supplementation, but merely an out-of-time disclosure." *Id.* Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation." *Id.*

7

Feinstein's new report is based on information that has been available to Plaintiffs since before they filed this action. Again, Feinstein justifies his untimely submission on the ground that Plaintiffs just discovered the Susquehanna Email. But Plaintiffs have had access to that email all along. Although Feinstein cited only a version of that email that JELD-WEN Defendants produced on February 8, 2021, Dkt. No. 199, Ex. G at ¶ 14 & nn.21–23; Ex. 8 (February 8, 2021 JELD-WEN Defendants' production letter); Ex. 9, Lead Plaintiffs' investment advisor, Wellington Management Company LLP ("Wellington") received the Susquehanna Email on August 8, *2018*, the day it was sent. Had Plaintiffs conducted an adequate investigation prior to filing this action, they would have likely learned of this email in the possession of their own representative before filing the Complaint. *See* Dkt. No. 73 at 2. In any case, Wellington produced it in this action on January 15, 2021, in response to the JELD-WEN Defendants' document subpoena. *See* Ex. 10 (January 15, 2021 Wellington production letter); Ex. 11. That was a month before Feinstein served his Reply Report on February 15, 2021, Dkt. No. 170-12; well before Feinstein's February 22, 2021 deposition on loss causation and damages issues; and over two months before Plaintiffs filed Feinstein's new "supplemental" report supposedly based on "Defendants' newly produced documents." Dkt. No. 199, Ex. G at ¶ 34.

Worse, the Susquehanna Email was *an exhibit at Wellington's deposition* on January 27, 2021, which Plaintiffs' counsel participated in, including by conducting their own examination. *See* Ex. 11; Ex. 5 at 122:5–124:19. And even after that, Defendants *still* produced a different version of the same email—the version Feinstein cited—on February 8, 2021, *see* Ex. 8 (February 8, 2021 production letter); Ex. 9. These disclosures occurred before the deadlines for expert reply reports, before expert depositions on loss causation and damages, before oral argument on class certification, and before the *Daubert* motion deadline. *See* Scheduling Order; Ex. 12. Despite all

8

that, Plaintiffs waited until March 19, 2021, when expert discovery was completed and only ten calendar days before the close of all discovery, to file a new expert report. In short, Feinstein's new report is not based on newly produced or discovered evidence, but based on Feinstein's (and Plaintiffs') "inadequate or incomplete preparation." *Akeva*, 212 F.R.D. at 310.

The obvious purpose of Feinstein's new report is not to respond to newly emerging facts, but to try to fix Plaintiffs' case. Faced with potential exclusion for his prior unreliable analysis of the two purported corrective disclosures Plaintiffs pled, Feinstein has now added a ***new, unpled*** corrective disclosure that he claimed ***more than doubles*** Plaintiffs' purported damages. Feinstein himself admitted he submitted this new report to "bolster the loss causation opinions" he previously offered and offer a new expert opinion on what he claimed is a new "corrective disclosure" date. Dkt. No. 199, Ex. G at ¶¶ 11, 16. But Rule 26 does not entitle Feinstein to a do-over. "To construe [Rule 26(e)] supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc on docket control and amount to unlimited expert opinion preparation." *Campbell*, 470 Fed. Appx. at 157 (quoting *Sharpe*, 230 F.R.D. at 462) (alterations in original); *accord Akeva*, 212 F.R.D. at 310 (Rule 26(e) does not permit "unlimited bolstering of expert opinions"). Feinstein's new report should therefore be stricken and excluded.

## II.     FEINSTEIN'S NEW REPORT SHOULD BE EXCLUDED BECAUSE IT WOULD SIGNIFICANTLY PREJUDICE JELD-WEN DEFENDANTS, WASTE JUDICIAL RESOURCES, AND DELAY RESOLUTION OF THIS CASE

Feinstein's report is also untimely because Plaintiffs did not seek the Court's permission to modify the Scheduling Order to authorize Feinstein's new report based on a showing of good cause, as they were required to do. Fed. R. Civ. P. 16(b)(4); *Akeva*, 212 F.R.D. at 309. Instead, Plaintiffs filed Feinstein's additional expert report, without permission, as an attachment to their

opposition of JELD-WEN Defendants' motion to exclude Feinstein's unreliable opinions and testimony.

Nor could Plaintiffs have established good cause if they had tried.  Under the Fourth Circuit's decision in *Southern States*, exclusion is appropriate unless an improper and untimely disclosure is either "substantially justified" or "harmless."  318 F.3d at 596; *see also Sharpe*, 230 F.R.D. at 456.  Whether nondisclosure is substantially justified or harmless is determined by reference to the five-factor test set out in *Southern States*:  "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony."  318 F.3d at 596 (quoting *Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 726 (E.D. Va. 2001)).  Here, Plaintiffs' failure to timely disclose Feinstein's new expert opinions is neither substantially justified nor harmless, so exclusion is warranted.

***First***, it came as a serious surprise to Defendants that Plaintiffs submitted a new expert report, after expert discovery has been completed and as all discovery is ending, which includes a new and unpled theory of damages based on a new "corrective disclosure" that purportedly ***more than doubles*** Plaintiffs' damages.  Plaintiffs filed Feinstein's new report with the Court, without the Court's permission, and without seeking leave to amend their Complaint to allege their new theory of loss causation and damages.  *See* Dkt. No. 199, Ex. G.  Specifically for the purpose of avoiding this type of surprise, and so that JELD-WEN Defendants could conduct discovery to permit them to develop defenses to Plaintiffs' loss causation allegations, JELD-WEN Defendants served an interrogatory on each Plaintiff requesting identification of "each disclosure that Plaintiffs claim represented a corrective disclosure and/or materialization of an undisclosed risk, whether

10

complete or partial, related to any JELD-WEN Security and for which Plaintiffs are seeking, or intends to seek, any monetary recovery in this Action." *See* Ex. 1 at 5 (Interrogatory No. 7). Each Plaintiff responded by referring JELD-WEN Defendants to the Complaint, which alleges only the purported corrective disclosures on October 5 and October 15, 2018. Ex. 2 at 11–12 (Interrogatory No. 7); Ex. 3 at 11–12 (Interrogatory No. 7). To date, Plaintiffs have not supplemented their responses or sought the Court's permission to amend their Complaint.

*Second*, the surprise cannot be cured without restarting each stage of this litigation. The parties completed expert discovery more than a month ago, *Daubert* briefing will be completed tomorrow, and discovery ends on Monday, March 29, 2021. Scheduling Order ¶ 2. Where, as here, the deadlines for expert discovery, "including all depositions" have already passed, "permit[ting] the plaintiff additional time to amend . . . expert disclosures would work unjustifiable hardship upon the defendant in attempting to complete discovery and prepare for trial within the confines of the court's scheduling order." *Sharpe*, 230 F.R.D. at 462. Nor can this surprise be cured by allowing JELD-WEN Defendants the opportunity to submit a short opposition from our expert, Professor Daniel R. Fischel, or conduct a limited deposition of Feinstein, as Plaintiffs have proposed. Feinstein does not *merely* bolster his prior opinions with new evidence (which would in and of itself be improper), he alleges an entirely new corrective disclosure that he claims more than doubles Plaintiffs' purported damages.

*Third*, allowing Feinstein's new report would completely disrupt this litigation. If Feinstein's new report is not stricken:

- **Amendment of Complaint**: Plaintiffs should be required to seek Court permission to file a second amended complaint. Fed. R. Civ. P. 15(a)(2); *Brownlee v. W. Fraser, Inc.,* 2015 WL 628179, at *4 (D.S.C. Feb. 12, 2015) (holding that "[n]ew theories of recovery" that are

11

asserted for the first time in opposition briefing—there, at summary judgment—required amendment of the pleadings); *see also Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 155 (4th Cir. 2020) (affirming denial of "new theory and new factual allegations"); *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 127 (E.D. Va. 2017) ("[W]hen a proposed amended pleading 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party,' it may be prejudicial.") (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986)); *Okoro v. Ocwen Loan Servicing, LLC*, 2016 WL 1721183, at *4 (D. Md. Apr. 29, 2016) (denying leave to amend based on the "discovery burdens imposed by adding this new theory of liability only days before the . . . discovery deadline").

- **Re-Briefing of Motions to Dismiss**:  If a motion to file a second amended complaint is granted, Defendants should have the opportunity to renew their motion to dismiss.  Based on Feinstein's new opinion, it appears JELD-WEN Defendants would have multiple viable arguments.  For example, the Susquehanna Email cannot be a corrective disclosure because it did not reveal any facts allegedly concealed by Defendants.  To the contrary, the email merely offers one market observer's conjecture regarding Judge Payne's views of the law, and how he might rule.  *See* Ex. 11 at WMC-JELD-0002436 (noting, for example, that "Judge Payne also sounded skeptical of some of the DOJ's criticisms of Steves' Divestiture Request").  Similarly, JELD-WEN Defendants would have new statute of limitations defenses to Plaintiffs' new purported corrective disclosure.  It has been more than 2 years since the date by which the Court held a reasonably diligent plaintiff would have discovered Plaintiffs' claims. Dkt. No. 103 at 22.  And Plaintiffs' new allegations would not relate back to the original filing of the Complaint because "an amendment alleging a new theory of

12

recovery generally will not relate back to the original filing date." *McCray v. Maryland Dep't of Transp.*, 662 F. App'x 221, 225 (4th Cir. 2016); *see also Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 575 (7th Cir. 1998) ("[A]n untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge.").

- **Re-Briefing of Class Certification**:  If Defendants' motions to dismiss were denied, the parties would then need to re-brief class certification because Plaintiffs' new purported corrective disclosure would introduce several new class certification issues.  For example, the Susquehanna Email would introduce new predominance and typicality problems for Plaintiffs, whose investment advisors received the Susquehanna Email, which was not publicly available. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320–21, 332 (4th Cir. 2006) (statute of limitations defense based on actual knowledge created predominance problem that prevented certification); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007) ("[W]here, as here, a plaintiff relies on the fraud-on-the-market doctrine to establish typicality, any reliance on non-market information means that [the plaintiff is atypical].").

- **Additional Fact Discovery**:  To address Plaintiffs' new theory of loss causation and damages, JELD-WEN Defendants would need substantial additional fact discovery, including discovery from Susquehanna regarding who received the Susquehanna Email; discovery from Susquehanna regarding how it received the sealed transcript of the August 2 and 3, 2018 hearing; discovery regarding who else received the sealed transcript; discovery regarding the relationships of recipients of the Susquehanna Email to putative class members; a deposition of Thomas Claps, the author of the Susquehanna Email; a deposition of the individual who

13

provided Susquehanna with the sealed transcript; and supplemental depositions of Plaintiffs and their investment advisors to ask them about the Susquehanna Email.[3]

● **Additional Expert Discovery**:  To address Feinstein's new opinions, the parties would also need to redo expert discovery, including an additional deposition of Feinstein on his new opinions and an additional opposition expert report by Fischel, whom Plaintiffs would presumably also seek to depose again.

● **Re-Briefing of *Daubert* Motions**:  The parties would also need the opportunity to move to exclude one another's experts based on these new reports.  Even setting aside the flaws in Feinstein's new report, Feinstein's identification of a new corrective disclosure, which occurred prior to the corrective disclosures pled by Plaintiffs, conflicts with his prior loss causation and damages opinions, and further demonstrates why those opinions should be excluded.

Plaintiffs may not like how discovery has shaken out for them, but they are not entitled to start over and delay this case for many months.  Allowing Plaintiffs to hit the reset button on this case as discovery ends would also be highly prejudicial to Defendants, who would have to expend significant resources re-litigating this case all over again because Plaintiffs realized their original theories do not work.

*Fourth*, Plaintiffs offer no explanation for their failure to timely disclose Feinstein's new loss causation and damages opinions, or their failure to amend the Complaint and their interrogatory responses, as required by Rules 15(a)(2) and 26(e)(1)(A).  Plaintiffs had years to investigate their claims before filing the Complaint, and the information that forms the basis of

---

[3] At Wellington's prior deposition, the JELD-WEN Defendants did not ask detailed questions about the Susquehanna Email because it was not alleged to be a corrective disclosure at that time. *See id.* 124:6–16.

14

Feinstein's new opinion was in the possession of Lead Plaintiffs' own representative *the entire time*. *See* Ex. 11. Even setting that aside, Plaintiffs offer no explanation why they failed to supplement Feinstein's opinions and amend the Complaint when Wellington first produced the Susquehanna Email on January 15, 2021, when Wellington testified about the Susquehanna Email on January 27, 2021, or when JELD-WEN Defendants produced their own versions of the Susquehanna Email on February 8, 2021.

*Fifth*, Feinstein's new opinions are not important to the resolution of Plaintiffs' claims because they relate to unpled claims that are not properly part of this Action. To date, Plaintiffs have not sought the Court's permission to amend the Complaint, as required by Rules 15(a)(2) and 16(b)(4). Nor have they supplemented their interrogatory responses, as required by Rule 26(e)(1)(A).

Because all of the *Southern States* factors weigh in favor of excluding Plaintiffs' untimely disclosure of Feinstein's new opinions, Feinstein's new report was neither substantially justified nor harmless. 318 F.3d at 596, 598–99. As a result, Exhibit G to Dkt. Nos. 198 and 199 should be stricken from the record, and Feinstein should be barred from offering any of the opinions contained therein at trial.

## CONCLUSION

For the foregoing reasons, the Court should strike the untimely and improper new expert report from Feinstein from the record, exclude the new opinions contained therein, and grant such other and further relief as the Court deems just and proper.

Dated: March 25, 2021

Respectfully submitted,

/s/ Brian C. Riopelle

Brian C. Riopelle (Va. Bar No. 36454)
Brian E. Pumphrey (Va. Bar No. 47312)
Brian D. Schmalzbach (Va. Bar No. 88544)
Garrett H. Hooe (Va. Bar No. 83983)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com
ghooe@mcguirewoods.com

Sandra C. Goldstein, P.C. (*pro hac vice*)
Rachel M. Fritzler (*pro hac vice*)
Lindsey Weiss Harris (*pro hac vice*)
Jeehyeon Jenny Lee (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
lindsey.harris@kirkland.com
jenny.lee@kirkland.com
jacob.rae@kirkland.com

Matthew S. Owen (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 389-5000
Fax: (202) 389-5200
matt.owen@kirkland.com

*Attorneys for Defendants JELD-WEN
Holding, Inc., Mark A. Beck, L. Brooks
Mallard, Kirk S. Hachigian, and Gary S.
Michel*

16

## CERTIFICATE OF SERVICE

I certify that on the 25th day of March, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all

counsel of record in this case.

 /s/ Brian C. Riopelle
Brian C. Riopelle (Va. Bar No. 36454)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com

17