# EXHIBIT 9

| | |
|---|---|
| **From:** | John Linker |
| **Sent:** | Friday, August 10, 2018 1:07 PM |
| **To:** | jrapaport@seaviewlp.com |
| **Subject:** | FW: JELD: Takeaways from Oral Argument on Steves' Request to Divest Towanda Plant |

Jeff, attached is the research report that came out on Wednesday.

**From:** Thomas Claps <Tom.Claps@sig.com>
**Sent:** Wednesday, August 08, 2018 2:47 PM
**Subject:** JELD: Takeaways from Oral Argument on Steves' Request to Divest Towanda Plant

Last Thursday and Friday (August 2-3), the Court held oral argument on Steves' request to have JELD divest/unwind its Towanda plant. We did not attend the August 2-3 argument in Court, but have obtained and reviewed a copy of the transcript. The following are the key takeaways from the transcript.

- **As stated below, we still believe the most likely outcome is a Settlement between the parties. If the case does not settle, given Judge Payne's comments at the August 2-3 hearing, we believe the odds of the Court awarding divestiture have increased.**

1. **Judge Payne's Earlier Commentary Critical of Divestiture Has Softened**: At the end of the previous April 10-12 hearing, Judge Payne stated that Steves faced an "uphill skate" to obtain a divestiture order and that "right now I have difficulty seeing how the Court could impose divestiture and enforce it." Judge Payne emphasized that he needed to understand how divestiture would be accomplished and how the whole market would be taken into consideration. **However**, near the end of last week's hearing, Judge Payne seemed more receptive to Steves' divestiture request, stating that "there's forceful evidence for divestiture here . . . the fact of the matter is Jeld-Wen has been adjudged guilty of violating the antitrust law, and the law calls for some kind of remedy . . . ." Judge Payne also noted that Steves had alleviated some of his concerns about how a divestiture could be imposed. For example, Judge Payne stated that he "originally thought that there wasn't any merit to the notion that there could be a competitive buyer. . . . I now believe that probably the evidence is sufficient to permit me to conclude that [there could be one]." Judge Payne also stated that the potential loss of Steves' business can constitute irreparable injury. Finally, in response to JELD's argument that no Court has ever ordered unwinding of a consummated merger following a lawsuit brought by a private Plaintiff (as opposed to the DOJ filing a lawsuit), Judge Payne replied "there's a first case for everything… so the fact that it's unprecedented doesn't necessarily carry any weight." **Therefore, while we still believe the most likely outcome is Settlement (see point #3 below), given Judge Payne's comments at the hearing, we believe the risk of divestiture has increased.**

  - **Judge Payne also sounded skeptical of some of the DOJ's criticisms of Steves' Divestiture Request**: On June 6, the DOJ filed a brief that criticized several aspects of Steves' divestiture request. While we still think the DOJ's brief strengthens JELD's arguments against divestiture, Judge Payne did not seem particularly convinced that he must credit all of the DOJ's concerns. Judge Payne stated "just so you understand, [the DOJ] presented a position in the paper. They didn't submit a brief in support of it, they didn't explain what they were doing and why. It's good to have that information,

1

CONFIDENTIAL

JW-SEC-01150366

what they think, but I don't have the rationale for why they reached that view, and in at least one instance they're wrong about what the picture would look like. They got wrong that CMI was not a vertically integrated operation. . . . You know, it makes me wonder how much credence I need to pay to the views they expressed. I certainly think they're entitled to some, but they're not the Bible."  Judge Payne further appeared skeptical of the following specific points that the DOJ raised:

- **Regarding the DOJ's statement that appropriate buyers must be identified before divestiture**: "Where did they get that rule? Where did that come from? Because the Department of Justice does something doesn't mean that the law requires it to be done."

- **Regarding the DOJ's position that Steves is not an appropriate buyer**:  "They did [say that], but it was interesting that they said [it] for a reason that didn't make much sense to me and didn't seem to be very well-considered. I understand what they said, but, you know, what the Justice Department . . . says . . . isn't always right."

2. **JELD's Best Defense is "Laches" -  e.g., Steves Waited Too Long to File its Antitrust Lawsuit**: JELD argues that Steves waited 4 years post-merger to file its lawsuit, and therefore should be barred from seeking divestiture. Steves asserts that when JELD acquired CraftMaster in 2012, JELD entered into a long-term supply agreement with Steves that convinced Steves to not challenge the merger.  Then, when Steves saw the negative competitive impact from the merger beginning in ~2014, Steves waited until 2016 to bring its antitrust lawsuit while working through the dispute resolution procedures laid out in the JELD-Steves supply agreement.  Judge Payne emphasized that laches "stands as the principle defense" that JELD has. "In my Judgment, what stands between [JELD] and the [divestiture] remedy is the laches question." JELD has other defenses as well, as Judge Payne stated that "there are a lot of impediments that have been fairly and reasonably raised about why divestiture shouldn't occur, the most important of which is the laches question."

- **Judge Payne sounded skeptical about whether Steves unreasonably delayed by not bringing the lawsuit in 2014**:  Towards the end of argument on the laches point, Judge Payne told JELD  "You think where a contract requires you to talk about your disputes, and you do what the contract requires, and each party says we want to keep talking and even enter into extensions of standstill agreements saying we want to keep talking, both sides sign on and say that, that that period of time that is involved is an unreasonable delay?"  While JELD's counsel responded that he believes there was unreasonable delay, Judge Payne then asked "Do you have any cases that say something like that is an unreasonable delay? . . . **The answer is, you don't have any case law to meet that situation."** (emphasis added).

- **Judge Payne will also need to find that JELD detrimentally relied on Steves' delay in filing the lawsuit:**  Judge Payne stated that **"**it's pretty well-settled law that you have to prove detrimental reliance."  JELD responded its "detrimental reliance" was consummating the CraftMaster merger and closing other doorskin plants.

3. **Judge Payne Continued to Urge Both Sides to Reach a Settlement**: Judge Payne urged both parties to resume Settlement negotiations, stating that "businesspeople ought to settle this case." He encouraged both sides to work on Settlement with the Magistrate Judge over the next week, and these Settlement negotiations are currently ongoing. **This indicates that Judge Payne may not want to order a divestiture, and is urging the parties to resolve this issue on their own.** Judge Payne also criticized both JELD's and Steves' settlement behavior:

CONFIDENTIAL

JW-SEC-01150367

- JELD: Judge Payne stated that JELD should remove Kirk Hachigian (JELD's current Chairman of the Board and former CEO) from Settlement negotiations and give a non-inside Director authority to Settle. Judge Payne stated that Hachigian's prior conduct "has been adjudicated as a violation of the law" and that made it "impossible" for him to settle the case - "in my judgment, the reason this case hasn't settled is because the principal architect [Hachigian] of some of the conduct that's at the heart of the case is in charge of the settlement discussion in the case."

- Steves: Judge Payne stated "I want the emotion out of the case from the side of the Steves. They're running the business, so somebody has to be there, but emotion can't dictate this." He also warned Steves that while it won the case at trial, it would be years before Steves could "collect" on its win, and could still "lose the divestiture part of the case."

4. **We Expect the Court to Issue its Decision Within the Next Month or So – After Which JELD Will Appeal**: Even if the Court does not order divestiture, we expect JELD to appeal.  In one of its briefs, Steves stated that the appellate process "will take at least two years, and Steves assumes for purposes of this brief that the Court will stay the divestiture of assets pending appeal."

**JELD's Potential Damages Scenarios**

- **Damages Scenarios**:  While JELD will appeal the overall verdict and all of the damages, here are the current damages scenarios.

    A. **Judge Rules "NO UNWINDING/DIVESTITURE"**:  Steves is entitled to $175M.

    - OR -

    B. **Judge Rules "UNWINDING/DIVESTITURE IS ALLOWED":**  Steves must choose between (i) Unwinding/Divestiture of Towanda, PLUS $37M in past damages; or (ii) No Unwinding/Divestiture of Towanda – full award of $175M.

Thomas E. Claps, Esq.
**Susquehanna Financial Group, LLLP**
140 Broadway, 47th Floor
New York, NY 10005
Direct: 212-701-7189
Cell:   917-584-8048
tom.claps@sig.com



CONFIDENTIAL                                                                 JW-SEC-01150368