**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112-JAG<br><br>Judge John A. Gibney, Jr. |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JELD-WEN**
**DEFENDANTS' MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF**
**<u>DR. STEVEN FEINSTEIN</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 1

I.     Feinstein's Loss Causation Opinion Is Unreliable and Should Be Excluded ..................... 2

       A.     Feinstein's Subjective Loss Causation Conclusions Are Inadmissible ................. 2

              1.     Feinstein Has No Support for His Opinion the Market was
                     "Stunned" by the Litigation Contingency .................................................. 4

              2.     Feinstein Has No Support for His Conclusion that the Litigation
                     Contingency Informed the Market the Antitrust Allegations Had
                     Merit ....................................................................................................... 7

       B.     Feinstein Failed to Apply a Reliable Loss Causation Methodology ...................... 9

II.    Feinstein's Damages Opinion is Unreliable and Should Be Excluded ............................. 12

       A.     Feinstein's Subjective Damages Conclusions Are Inadmissible ......................... 13

       B.     Feinstein Failed to Use a Reliable Methodology in Formulating His
              Damages Opinion .............................................................................................. 16

III.   Feinstein's Declaration and Supplemental Report Should Be Struck .............................. 18

CONCLUSION ...................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Attard Indus., Inc. v. United States Fire Ins. Co.*,
2010 WL 4670704 (E.D. Va. Nov. 9, 2010)...........................................................................13

*In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*,
2009 WL 2750462 (D.S.C. Aug. 26, 2009)................................................................................8

*Belville v. Ford Motor Co.*,
919 F.3d 224 (4th Cir. 2019) ..............................................................................................2, 7

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*,
853 F. Supp. 2d 181 (D. Mass. 2012), *aff'd*, 752 F. 3d 82 (1st Cir. 2014)..................12, 13, 15

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ...........................................................................................13

*Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*,
769 F. Supp. 2d 269 (S.D.N.Y. 2011).....................................................................................18

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*,
827 F. Supp. 2d 559 (D.S.C. 2011).........................................................................................11

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009).............................................................................................13

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................................. *passim*

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ....................................................................................................6

*Finkelstein v. Liberty Digital, Inc.*,
2005 WL 1074364 (Del. Ch. Apr. 25, 2005)...............................................................1, 15, 17

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997).............................................................................................................3, 14

*Harris v. Q&A Assocs., Inc.*,
2018 WL 3084709 (N.D.W. Va. June 22, 2018) ......................................................................4

*Hauser v. Powell*,
2021 WL 409745 (D. Md. Feb. 5, 2021) ..................................................................................6

i

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Herndon v. Huntington Ingalls Indus.*,
   2020 WL 5809965 (E.D. Va. Aug. 28, 2020)............................................................................8

*Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc.*,
   2019 WL 1756292 (W.D. Va. Apr. 19, 2019) ...........................................................................6

*Koenig v. Johnson*,
   2020 WL 2308305 (D.S.C. May 8, 2020)..................................................................................6

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1993)..................................................................................................................3

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   923 F. Supp. 2d 511 (S.D.N.Y. 2013).....................................................................................12

*Limelight Networks Inc. v. XO Commc'ns, LLC*,
   2018 WL 678245 (E.D. Va. Feb. 2, 2018)...............................................................................16

*In re Lipitor (Atorvastatin Calcium) Mktg.,*
   *Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*,
   892 F.3d 624 (4th Cir. 2018) ..................................................................................................16

*Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC*,
   423 F. App'x 274 (4th Cir. 2011) ...........................................................................................13

*Miller v. Asensio & Co., Inc.*,
   364 F.3d 223 (4th Cir. 2004) ..................................................................................................12

*Mitchell v. Gencorp Inc.*,
   165 F.3d 778 (10th Cir. 1999) ................................................................................................10

*Nationwide Mut. Fire Ins. Co. v. Bryant Thomas Heating & Cooling*,
   2020 WL 5415659 (E.D. Va. June 26, 2020) ...........................................................................6

*Nease v. Ford Motor Co.*,
   848 F.3d 219 (4th Cir. 2017) ....................................................................................................2

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   2018 WL 3861840 (N.D. Ohio Aug. 14, 2018)...................................................................1, 17

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010).........................................................................................18

*Price v. Mos Shipping Co., Ltd.*,
   740 F. App'x 781 (4th Cir. 2018) ..............................................................................................3

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010)................................................................................9, 11

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
   2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007).........................................................................18

*Smilovits v. First Solar, Inc.*,
   2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ..........................................................8, 10, 11, 14

*United States v. Berkeley Heartlab, Inc.*,
   2017 WL 2831254 (D.S.C. June 29, 2017)................................................................................3

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ................................................................................................6

*United States v. Rushing*,
   388 F.3d 1153 (8th Cir. 2004) ..................................................................................................4

*In re Vivendi Universal, S.A. Sec. Litig.*,
   634 F. Supp. 2d 352 (S.D.N.Y. 2009)......................................................................................13

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000).................................................................................................................1

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) ...................................................................................................2

*Wilhelm v. Ameristep Corp.*,
   2018 WL 6272911 (W.D. Va. Nov. 30, 2018) ..........................................................................4

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   644 F.3d 604 (8th Cir. 2011) ...................................................................................................2

**Rules**

Fed. R. Evid. 702 .......................................................................................................... *passim*

Rule 26 ....................................................................................................................................18

## PRELIMINARY STATEMENT

Dr. Steven Feinstein's Ivy League degree does not give him license to dress up subjective, unsupported opinions as "economic and financial analysis."  Plaintiffs argue that the myriad errors in Feinstein's opinions and testimony should be allowed into evidence because JELD-WEN Defendants can cross-examine him at trial.  But Feinstein's unreliable opinions and testimony are precisely the type of expert evidence that should be excluded so that he cannot confuse or mislead a jury.  Under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–94 (1993), an expert must base his testimony on sufficient facts, use reliable principles and methods, and reliably apply the principles and methods to the facts of the case.  Fed. R. Evid. 702.  Feinstein's testimony and opinions do not meet these "exacting" standards. *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000).

Feinstein's reports and testimony should be excluded here for the same reasons his opinions have been rejected by other courts:  Feinstein's "stubborn desire" to reach a certain result "regardless of the facts" "does not inspire confidence in Feinstein's objectivity."  *See Finkelstein v. Liberty Digital, Inc.*, 2005 WL 1074364, at *16–17 (Del. Ch. Apr. 25, 2005); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *7 (N.D. Ohio Aug. 14, 2018) ("*OPERS*") (concluding Feinstein's analysis "was entirely improper because you are supposed to hypothesize and then see your results.  You are not supposed to know your results in advance").  For these reasons, and those set forth in JELD-WEN Defendants' opening brief, Dkt. No. 170, Feinstein's reports and testimony should be excluded.

## ARGUMENT

Feinstein's loss causation and damages opinions are unreliable because they are based on his own subjective views, not scientific methodologies, and he applies the methodologies he purports to use inconsistently.  Plaintiffs argue Feinstein should be allowed to testify based on his

own *ipse dixit* because he attended Yale and can be cross-examined at trial.  This is insufficient under the Federal Rules.  Because Plaintiffs have failed to meet their burden of establishing Feinstein's testimony is reliable, *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (quoting *Daubert*, 509 U.S. at 597), the Court should exercise its critical gatekeeping function and prevent Feinstein from confusing or misleading a jury.  *See Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017) ("The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony.") (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (recognizing that "due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading'") (quoting *Daubert*, 509 U.S. at 595).

## I.    FEINSTEIN'S LOSS CAUSATION OPINION IS UNRELIABLE AND SHOULD BE EXCLUDED

Feinstein's loss causation opinion is unreliable because (1) his conclusions are based on his subjective views, which are contradicted by the evidence, and (2) he fails to apply a reliable loss causation methodology.

### A.    Feinstein's Subjective Loss Causation Conclusions Are Inadmissible

Plaintiffs argue Feinstein's loss causation opinion is supported by the evidence because his report included a "detailed listing of materials he considered" and a "detailed description of specific pieces of information informing and supporting his opinions."  Dkt. No. 197 at 11.  While the former is true—Feinstein does indeed have a long list of materials he purportedly considered— the latter is false:  Feinstein does not explain how any of these sources support his conclusions that

(1) the market was "stunned" by the Litigation Contingency[1] or (2) the Litigation Contingency informed the market that the antitrust allegations in the Steves Litigation had merit.  *See* Feinstein Rpt., Dkt. No. 122-1 ¶ 291.   Indeed, in attempting to defend these conclusions, which are ***contradicted*** by the long list of materials Feinstein purportedly considered, Plaintiffs themselves cite only Feinstein's testimony wherein he insists, without support, that his conclusions are true. *See* Dkt. No. 197 at 12–18.   That is literally an *ipse dixit*.   "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1993) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see* Fed. R. Evid. 702, Advisory Committee Notes (2000 Amends.) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'").

Plaintiffs contend that JELD-WEN Defendants' "criticisms" of Feinstein's opinions go to weight and not admissibility, such that cross-examination should suffice.  Dkt. No. 197 at 15. Plaintiffs are wrong, and the cases they cite are distinguishable.  *See, e.g.*, *Price v. Mos Shipping Co., Ltd.*, 740 F. App'x 781, 785 (4th Cir. 2018) (concluding expert's testimony ***did not*** directly conflict with uncontroverted record evidence).   While "[v]igorous cross-examination" is an "appropriate means of attacking shaky but ***admissible*** evidence," *Daubert*, 509 U.S. at 596 (emphasis added), where, as here, an expert's opinion is contradicted by the facts, it should be excluded. *See United States v. Berkeley Heartlab, Inc.*, 2017 WL 2831254, at *4 (D.S.C. June 29, 2017) (holding expert's opinion "inadmissible because it [was] not based on sufficient facts or

---

[1]     Capitalized terms used but not defined herein have the meaning ascribed to them in the Memorandum of Law in Support JELD-WEN Defendants' Motion to Exclude Report Testimony of Dr. Steven Feinstein, Dkt. No. 170. References to Ex. 1 and Ex. 2 refer to exhibits to the Declaration of Jacob M. Rae, dated March 26, 2021.

data"); *see also United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004) ("Expert testimony should not be admitted when it is speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable.").

Because Feinstein's loss causation opinions are not based upon sufficient facts, and as explained further below, the product of methods applied in an unreliable manner, they are inadmissible. *Wilhelm v. Ameristep Corp.*, 2018 WL 6272911, at *5 (W.D. Va. Nov. 30, 2018) ("Indeed, '[v]igorous cross examination, presentation of contrary evidence and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence.' Nonetheless, '[t]he main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony.'") (internal citations omitted); *Harris v. Q&A Assocs., Inc.*, 2018 WL 3084709, at *5 (N.D.W. Va. June 22, 2018) (noting that "trial judges are to act as gatekeepers to unreliable or irrelevant expert testimony").

### 1.    Feinstein Has No Support for His Opinion the Market was "Stunned" by the Litigation Contingency

In his report, Feinstein concluded the market was "stunned" by the Litigation Contingency, but cited no authority for that pronouncement. Feinstein Rpt. ¶¶ 22, 291. As explained in JELD-WEN Defendants' opening brief, this conclusion is the lynchpin of Feinstein's loss causation opinion, but it is contradicted by the record. Dkt. No. 170 at 17.

Plaintiffs fail to address the problems with Feinstein's conclusion. *See* Dkt. 170 at 17–18. Plaintiffs do not address Feinstein's testimony at his first deposition that his conclusion that the market was "stunned" was based on "***explicit commentary in the analyst reports and in news articles***," along with the fact the stock dropped the following day. Feinstein Dep. 29:5–30:3 (emphasis added); Dkt. No. 170 at 17. Nor do they address Feinstein's reversal at his second deposition when he conceded he actually came to this conclusion based on his subjective

4

assessment that it was a "stunning announcement."  *See* Dkt. No. 170 at 17; Feinstein Dep. 269:25–275:15 ("Q: This report does not say that the market was stunned by the Steves litigation contingency, right?  A: ***I never said that any analyst said that explicitly.  I said that it was my conclusion*** that analysts, ***because it was a stunning announcement***, it would stun the market and it did stun the market.") (emphasis added).  Nor do Plaintiffs address Feinstein's circular reasoning in relying on the drop in the stock price on October 16, 2018 to conclude the market was stunned by the announcement of the Litigation Contingency.  *See* Dkt. No. 170 at 18 (explaining Feinstein "assume[d] what he set[] out to prove" by using the stock drop to conclude the Litigation Contingency stunned the market and then concluding because the Litigation Contingency stunned the market it caused the stock drop).

Instead, Plaintiffs respond the only way they can:  by citing Feinstein's testimony, in which he reiterates his subjective view that the market was stunned.  Dkt. No. 197 at 12–15.[2]  Plaintiffs argue the Court should allow Feinstein to share his subjective views because he is "a Yale-trained economist, a Chartered Financial Analyst, has 25 years of experience studying and analyzing market reactions to various types of information, and has published articles in peer-reviewed

---

[2]    Plaintiffs argue that Feinstein's conclusion that the market was "stunned" by the Litigation Contingency was based "on a variety of factors," Dkt. No. 197 at 12, but point only to Feinstein's characterization of the Company's prior statements about the Steves Litigation to conclude the announcement of the Litigation Contingency was "stunning." *Id.* at 12–15.  Although they claim Feinstein's conclusion was supported by certain analyst reports—such as a Deutsche Bank report—the testimony they cite shows Feinstein trying to explain why that analyst report contradicted his conclusion. *Id.* at 14–15.

5

journal [*sic*] on the subject." Dkt. No. 197 at 14.[3]  But Plaintiffs do not explain how Feinstein's experience **supports** his conclusion the market was stunned. *Id.* at 12–15.  "If the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (internal marks and citations omitted).  An expert's academic qualifications are not license to issue opinions that are unsupported or worse, contradicted, by facts. *See id.* ("Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express."); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*") ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability.  Under *Daubert*, that's not enough.").  Regardless of his education or experience, Feinstein is still required under Rule 702 to base his opinions on sufficient facts and reliable analysis. *Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc.*, 2019 WL 1756292, at *7 (W.D. Va. Apr. 19, 2019) (excluding expert whose opinions were based upon subjective belief and "merely [Plaintiff's] narrative of the events at issue offered in the guise of expert testimony").

---

[3]     Notably, the cases Plaintiffs cite do not support their position. *See Nationwide Mut. Fire Ins. Co. v. Bryant Thomas Heating & Cooling*, 2020 WL 5415659, at *3 (E.D. Va. June 26, 2020) (finding plaintiff's expert's conclusion was not based on "conjecture" because it was based on facts at the time); *Koenig v. Johnson*, 2020 WL 2308305, at *10 (D.S.C. May 8, 2020) ("The record . . . establishes th[at] [the expert's] experience merely provided the lens through which he analyzed the objective medical data to arrive at his opinions."); *Hauser v. Powell*, 2021 WL 409745, at *6 (D. Md. Feb. 5, 2021) (merely noting that how an expert "emphasizes or incorporates certain data points" can be dealt with on cross-examination).

Feinstein's subjective conclusion is also contradicted by the facts. Dkt. No. 170 at 17. For example, in characterizing the market's reaction to the Litigation Contingency, Feinstein opined that the Company included the disappointing Q3 results and downgraded FY18 guidance in the Pre-Earnings Release as an "intentional distraction" because the Pre-Earnings Release was designed to disclose the Litigation Contingency, and that context itself was "corrective." *See, e.g.*, Ex. 1, Feinstein Dep. 171:20–173:20; *id.* at 167:25–169:13 ("[T]hese other bullet points that they add to the announcement, which aren't really all that unusual or all that important, places emphasis on that paragraph that you pointed out as being the key to why this was -- why this pre-release was felt to be necessary by the company."). But Feinstein is just wrong. The first draft of the Pre-Earnings Release was drafted *before* the Divestiture Decision and included *only* information about JELD-WEN's disappointing Q3 results and downgraded FY18 guidance. *See, e.g.*, Ex. 2, JW-SEC-01256705 (Oct. 1, 2018 Email attaching draft press release dated October 15, 2018, with no mention of the Litigation Contingency). These "questionable assumptions" which lack "evidentiary foundations" should be excluded. *Belville*, 919 F.3d at 229–30, 236.

In short, Feinstein does not base his conclusion that the market was "stunned" by the Litigation Contingency on sufficient facts, as Rule 702 requires.

### 2.    Feinstein Has No Support for His Conclusion that the Litigation Contingency Informed the Market the Antitrust Allegations Had Merit

Feinstein's characterization of the Litigation Contingency similarly lacked any factual basis. Feinstein opined that when JELD-WEN announced the Litigation Contingency, "investors and analysts were now informed that the allegations of illegal anticompetitive behavior had merit and that there would be negative repercussions from that behavior." Feinstein Rpt. ¶ 23. Again, while Plaintiffs claim this conclusion is "well-supported," they do not cite anything other than Feinstein's testimony espousing his subjective conclusion. *See* Dkt. No. 197 at 16–18. But to

7

reach that conclusion, Feinstein ignored the plain language of the Litigation Contingency announcement and fundamentally mischaracterized the *nature* of a litigation contingency. Besides that, his conclusion is directly contradicted by the testimony of Plaintiffs' own representatives.

*First*, as discussed in JELD-WEN Defendants' opening brief, Dkt. No. 170 at 18–20, to reach his conclusion Feinstein had to ignore the plain language of the announcement of the Litigation Contingency, which unequivocally stated, "the Company continues to maintain that it has not violated any antitrust laws." Dkt. No. 79-35 at 1; App'x A. Plaintiffs cannot deny that despite placing great weight on the Company's *prior* denial of liability following the Divestiture Decision, Feinstein does not cite, reference, or even acknowledge the Company's denial made in the same paragraph as the Litigation Contingency *anywhere* in his report. Feinstein Dep. 131:10– 134:6; *see* App'x A. So instead, Plaintiffs cite to Feinstein's deposition testimony, in which he tried to justify his failure to consider the plain language of the announcement, and claim JELD-WEN Defendants "merely disagree" with his conclusion. Dkt. No. 197 at 16. But, unlike the cases Plaintiffs cite, this is not simply a matter of disagreement between two parties' experts. *See Herndon v. Huntington Ingalls Indus.*, 2020 WL 5809965, *9 (E.D. Va. Aug. 28, 2020) (denying motion to dismiss where experts disagreed on which mortality table should apply). Instead, Feinstein's "failure to address" facts that conflict with his conclusions renders his opinion unreliable. *In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*, 2009 WL 2750462, at *14 (D.S.C. Aug. 26, 2009) (excluding expert who failed to address contradictory studies).

*Second*, Feinstein's characterization of a litigation contingency would be unsupportable even if JELD-WEN had not accompanied it with an express denial. Dkt. No. 170 at 19 (explaining a litigation contingency is not an admission of ultimate liability or certain loss). Contrary to Plaintiffs' argument, JELD-WEN Defendants did not offer an accountant to refute Feinstein's

8

"empirical, *economic* analysis," Dkt. No. 197 at 17; rather, JELD-WEN Defendants offered an accountant to refute Feinstein's mischaracterization of an accounting decision, Dkt. No. 170 at 19–20. Plaintiffs claim that "whether under GAAP, a litigation contingency is an admission of liability is irrelevant to an assessment of how the market understands and reacts to that information." Dkt. No. 197 at 17. But Feinstein cannot just mischaracterize the accounting treatment announced by the Company and ask the judge and jury to take his word for it that others in the market did the same.

To the contrary, the evidence shows that the market understood the nature and significance of the Litigation Contingency. For example, Plaintiffs' own investment advisors, who had full authority to trade JELD-WEN stock on Plaintiffs' behalf, did not believe JELD-WEN admitted antitrust liability by disclosing the Litigation Contingency. *See* Dkt. No. 134-3, Segall Dep. 157:21–159:8; Dkt. No. 134-4, Wellington Dep. 140:6–14. Rather, the market saw the Litigation Contingency as a *non-event*: Both investment advisors testified that they understood the Litigation Contingency reflected the accounting impact of the Divestiture Decision, issued ten days prior. *See* Dkt. No. 134-4, Wellington Dep. 140:15–141:5 (describing the Litigation Contingency as an "accounting change" and not a corrective statement); Dkt. No. 134-3, Segall Dep. 168:6–12 (agreeing that the Litigation Contingency would not affect Segall's investment in JELD-WEN).

For these reasons, Feinstein's loss causation opinion should be excluded. *See In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–75 (S.D. Cal. 2010) (striking loss causation opinion based on flawed identification of corrective disclosures).

### B.    Feinstein Failed to Apply a Reliable Loss Causation Methodology

Feinstein failed to apply a reliable loss causation methodology in two ways: (1) he treated the two alleged corrective disclosures differently, accounting for the Company's denial of liability

with regard to one but not the other, and (2) he failed to disaggregate confounding information before finding loss causation, despite recognizing the need to do so.

*First*, as set forth in JELD-WEN Defendants' opening brief, Feinstein's loss causation opinion is unreliable because he treated inconsistently the two corrective disclosures he identified. Dkt. No. 170 at 20–21.  Although Feinstein testified that the Steves Litigation jury verdict and Divestiture Decision were both economically material pieces of information, he concluded they did not result in statistically significant stock price declines because the Company denied liability each time.  *See* Feinstein Dep. 200:21–201:12; *id.* at 335:19–336:20.  But when considering the Litigation Contingency, he entirely ***ignored*** the Company's denial of liability in the same paragraph as its announcement.  Feinstein Rpt. ¶ 291; *compare* Dkt. No. 79-34 at 4, *with* Dkt. No. 79-35 at 1.  Although Plaintiffs argue "[n]ot so," Dkt. No. 197 at 6, they cannot point to anywhere in Feinstein's report where he considered whether the Company's denial in the Pre-Earnings Release had the same effect he said it had with respect to the Divestiture Decision.  If Feinstein had followed his own reasoning, he would have concluded the Litigation Contingency did not cause the decline in JELD-WEN's stock price on October 16, 2018.

*Second*, Feinstein failed to take the necessary step of disaggregating confounding factors in his loss causation analysis, despite recognizing the need to do so.  Dkt. No. 170 at 21–23; *see Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) ("Under *Daubert*, 'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.  This is true whether the step completely changes a reliable methodology or merely ***misapplies*** that methodology.'")

(emphasis added) (citation omitted).[4]  Plaintiffs essentially admit Feinstein failed to disaggregate by arguing he determined the October 15, 2018 corrective disclosure "impacted the price of Jeld-Wen stock," based on "his event study and statistical analysis."  Dkt. No. 197 at 9.  As Feinstein himself conceded, his event study alone ***cannot determine*** which Company-specific news on October 15, 2018 caused the statistically significant price drop.  *See* Feinstein Dep. 189:8–191:4.

Perhaps to try to justify his failure to disaggregate, Feinstein tried to broaden how he defined the supposed October 15, 2018 corrective disclosure to include the entire Pre-Earnings Release, which contained the announcements of both the Litigation Contingency and the disappointing Q3 results and downgraded FY18 guidance.  *Id.* at 167:16–170:17.  But Feinstein himself classified the disappointing Q3 results and downgraded FY18 guidance included in the Pre-Earnings Release as confounding information, unrelated to the alleged fraud.  *See* Feinstein Rpt. ¶ 317.  So although Feinstein acknowledged that it is necessary to control for confounding information to properly assess whether a corrective disclosure caused an investor loss, *id.* ¶ 268, under Feinstein's definition, the corrective disclosure itself contained confounding information. *See* App'x A.  Feinstein is not excused from disaggregation simply because two pieces of Company-specific information are included in the same press release.  To the contrary, in these circumstances, disaggregation is vital.  *See REMEC*, 702 F. Supp. 2d at 1273–74 (excluding expert in part for failure to disaggregate multiple pieces of Company-specific information in one press

---

[4]     JELD-WEN Defendants do not attack Feinstein's stated methodology—which recognized the need to disaggregate—but his failure to follow that methodology and ***actually*** disaggregate. The cases Plaintiffs cite in support of Feinstein's stated methodology are therefore irrelevant.  *See City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 827 F. Supp. 2d 559, 571 (D.S.C. 2011) (concluding expert performed a "quantitative analysis on the impact of the isolated negative information found in the press releases"); *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *9 (D. Ariz. Dec. 27, 2019) (denying motion to exclude Feinstein's testimony where the court concluded he accounted for confounding information).

11

release).[5] Similarly, Plaintiffs argue that the Pre-Earnings Release was corrective in part because "the Company disclosed that profitability going forward would be less than what was previously achievable and expected." Dkt. No. 197 at 8–9 (quoting Feinstein Rpt. ¶ 291). But Feinstein himself testified this referred to the "2018 component . . . they said that the rest of 2018, which at that point had two months left, the company would not be as profitable as it previously had been." Ex. 1, Feinstein Dep. 171:20–175:15. Feinstein cannot have it both ways and say the FY18 announcements are both corrective and confounding.

For these reasons, Feinstein's loss causation opinion should be excluded.

## II.    FEINSTEIN'S DAMAGES OPINION IS UNRELIABLE AND SHOULD BE EXCLUDED

Feinstein's damages opinion is also unreliable because it is not based on sufficient facts, and his methodology is both unreliable and unreliably applied. Dkt. No. 170 at 23–30. In response, Plaintiffs argue Feinstein is not required to show damages with "absolute certainty." Dkt. No. 197 at 18–19. But JELD-WEN Defendants never suggested Plaintiffs must prove their losses with "mathematical precision," *Liberty Media Corp. v. Vivendi Universal, S.A.*, 923 F. Supp. 2d 511, 532 (S.D.N.Y. 2013), as Plaintiffs claim. Instead, JELD-WEN Defendants argued Feinstein was not entitled to "calculate" damages by reading the news released on October 15, 2018 and

---

[5]    Plaintiffs argue the JELD-WEN Defendants ignored that Feinstein needed to only identify a "substantial cause" of JELD-WEN's stock price decline. Dkt. No. 197 at 10 (citing *Miller v. Asensio & Co., Inc.*, 364 F.3d 223 (4th Cir. 2004)). But *Miller* does not change that "[t]o establish a causal link between stock price movement and misrepresentations or corrective disclosures, an economist must control for confounding factors, i.e., other industry- or company-specific information released to the market unrelated to the alleged fraud." *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 190 (D. Mass. 2012) (citation omitted), *aff'd*, 752 F. 3d 82 (1st Cir. 2014). Because Feinstein failed to disaggregate, a step ***he himself recognized was necessary***, Feinstein Rpt. ¶ 268, he failed to identify the Litigation Contingency as a substantial cause of JELD-WEN's stock price decline. *Miller*, which did not address the disaggregation of confounding Company-specific information, is irrelevant. 364 F.3d at 233 (noting expert "examined other market factors that might have borne 'upon the decline in the value of stock at the point in time' and found none").

12

"mak[ing] subjective judgments about which news impacted the stock price." *Bricklayers*, 853 F. Supp. 2d at 190. None of the cases Plaintiffs cite excuse Feinstein from Rule 702's requirements.[6]

While Plaintiffs concede "Feinstein's methodology required a certain level of subjectivity," they argue this subjectivity "does not render his approach speculative or unreliable." Dkt. No. 197 at 18.[7] As an initial matter, the "more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." Fed. R. Evid. 702, Advisory Committee Notes (2000 Amends). But the fact that certain *reliable* methodologies involve some subjectivity, *see In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 618 (C.D. Cal. 2009) (explaining that while event studies "require some subjectivity . . . such subjectivity should be minimized"), does not allow Feinstein to issue damages opinions based on pure speculation or excuse him from using a reliable methodology or applying it reliably to the facts of the case.

### A.    Feinstein's Subjective Damages Conclusions Are Inadmissible

Feinstein arbitrarily and selectively attributed losses to the Company-specific news released on October 15, 2018. "[N]othing in either *Daubert* or the Federal Rules of Evidence

---

[6] Plaintiffs' cases are generally inapposite because they do not address the admissibility of expert testimony, or excuse experts from satisfying Rule 702. *See Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC*, 423 F. App'x 274, 285 (4th Cir. 2011) (explaining standard for showing lost profits under North Carolina law); *Attard Indus., Inc. v. United States Fire Ins. Co.*, 2010 WL 4670704, at *3 (E.D. Va. Nov. 9, 2010) (explaining damages standard in context of motion for judgment as a matter of law in non-securities case); *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 365 (S.D.N.Y. 2009) (explaining loss causation standard in context of summary judgment).

[7] To support this argument, Plaintiffs cite to cases in which experts' opinions were "a product of reliable principles and methods which have been reliably applied to the facts of th[e] case." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 90 (S.D.N.Y. 2015). They are therefore distinguishable.

requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

**First**, Feinstein lacks any support for his remarkable conclusion that JELD-WEN's stock price did not ***in any way*** reflect publicly available information about the judgement JELD-WEN would likely face as a result of the Steves Litigation jury verdict or Divestiture Decision. Dkt. No. 170 at 23–24. Feinstein entirely ignored that the market knew about the damages awarded by the jury verdict and the Divestiture Decision's clarification that JELD-WEN would likely face a judgment that included the trebling of $12.2 million in past damages, plus divestiture of the Towanda doorskins facility and attorneys' fees. *See* Dkt. No. 79-25; Dkt. No. 79-34 at 4–6. Plaintiffs contend that Feinstein's per-share quantification of the Litigation Contingency is the same per-share stock price impact that analysts attributed to the charge. Dkt. No. 197 at 20 (citing Feinstein Rpt. ¶¶ 314–15). Although Feinstein claimed "analysts" attributed this same per-share stock price impact, he cited only one, Feinstein Rpt. ¶ 314 & n.309, and that analyst did not actually attribute any stock impact to the Litigation Contingency. *See* Dkt. No. 170-10. Instead, the analyst merely listed the accounting charge alongside other accounting information disclosed by the Company in a table that is devoid of any commentary. *Id.*

Contrary to Feinstein's own opinions that JELD-WEN's stock traded in an efficient market and that an efficient market will "rapidly reflect[] new information in price," Feinstein Rpt. ¶ 152, Plaintiffs argue that it is incumbent on JELD-WEN Defendants to explain "how something that took the Company ten days to analyze should have been understood by the market any time before that." Dkt. No. 197 at 25 n.15. But neither Plaintiffs nor Feinstein cite any authority that says the length of time it takes for a corporation to make a decision is the same length of time it takes for the market to digest information. "Plaintiffs may not at the same time presume an efficient market

14

to prove reliance and an inefficient market to prove loss causation. They may not have their cake and eat it too." *Bricklayers*, 853 F.2d at 190 (excluding expert report that attributed stock drop to defendants when the information released on the corrective disclosure date "was released nine days earlier without any corresponding impact").

*Second*, Feinstein's conclusion that the market believed that the disappointing Q3 results and downgraded FY18 guidance would *not* impact JELD-WEN's future performance is contradicted by the evidence. Dkt. No. 170 at 25–26. Feinstein claimed to divine this conclusion from JELD-WEN CEO Gary Michel's statement that "2018 financial performance headwinds [are] temporary in nature, and I am encouraged about our future." *See* Feinstein Rpt. ¶ 318; Dkt. No. 79-35 at 1. Feinstein pronounces that the market determined that "temporary" meant the final 11 weeks of FY18 only. *See id.* Plaintiffs do not have any support for Feinstein's reading other than his own say-so, Dkt. No. 197 at 25–26, and Plaintiffs ignore that Feinstein's conclusion is directly contradicted by analyst reports, which explicitly attributed their FY19 forecast reductions to the disappointing Q3 results and downgraded FY18 guidance. Dkt. No. 170 at 25.

Feinstein's conclusion also contradicts other portions of his analysis. Feinstein decided that the market believed FY18 performance issues *would not* impact FY19 when he sought to artificially limit the impact of the FY18 announcements, *id.*; but when he sought to justify his random apportionment of damages based on analyst downgrades, he decided that the market believed FY18 performance issues *would* impact FY19. *Id.* at 28–30. Plaintiffs fail to address Feinstein's inconsistent treatment of the exact same announcement, which demonstrates the unreliability of his ends-driven damages opinion. *See Finkelstein*, 2005 WL 1074364, at *15–17 (finding Feinstein's ends-driven valuation opinion unreliable for ten reasons "and other reasons too numerous to set forth").

15

Feinstein thus overestimated the impact of the Litigation Contingency and underestimated the impact of the disappointing Q3 results and downgraded FY18 guidance on JELD-WEN's stock price based on pure speculation. His damages opinion should be excluded on this basis alone. *See Limelight Networks Inc. v. XO Commc'ns, LLC*, 2018 WL 678245, at *3 (E.D. Va. Feb. 2, 2018) (excluding expert who failed to tie economic model to the facts of the case).

**B.      Feinstein Failed to Use a Reliable Methodology in Formulating His Damages Opinion**

Although Plaintiffs assert that Feinstein used a generally-accepted and reliable damages methodology, they do not demonstrate it. Instead, Plaintiffs merely provide a lengthy recitation of what Feinstein did, with no explanation of how his "methodology" is generally accepted or reliable. Dkt. No. 197 at 19–24. Unable to refute the specific deficiencies JELD-WEN Defendants' identified in Feinstein's damages methodology, *see* Dkt. No. 170 at 26–30, Plaintiffs try to recast them as "[d]ressed [u]p [c]hallenges" to Feinstein's conclusions and argue the Court should let the jury decide. Dkt. No. 197 at 26–29. Plaintiffs, again, are wrong. "Result-driven analysis, or cherry-picking, undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 634 (4th Cir. 2018). Feinstein's damages opinion should also be excluded because his "methodology" is "simply fancy guesswork." *Limelight*, 2018 WL 678245, at *3.

Plaintiffs have no response to the following fundamental errors in Feinstein's methodology, other than Feinstein's unilateral say-so, which renders his damages opinion unreliable:

- Feinstein did not even attempt to directly measure the impact of analysts' lowered FY19 EBITDA estimates and valuation multiples—even though he did so with the Litigation Contingency and disappointing FY18 disclosures. Dkt. No. 170 at 26–27.

16

- Feinstein lacked any basis to conclude, as he did, that analysts' decreased expectations for JELD-WEN's FY19 performance were attributable to JELD-WEN's business segments in Europe and North America—but not Australasia—in proportion to EBITDA. *Id.* at 27–28; *see* Feinstein Rpt. ¶¶ 329–37.

- Feinstein lacked any basis to conclude, as he did, that analysts thought the reasons for the disappointing Q3 results and downgraded FY18 guidance would affect all of JELD-WEN's European and North American businesses ***except*** for JELD-WEN's North American door business. *See* Feinstein Rpt. ¶ 337. Feinstein did not offer any reason analysts would believe the North American door business would be magically exempt from the causes of a disappointing Q3 and downgraded FY18 guidance. Nor did he explain why analysts would attribute ***all*** of the expected problems with JELD-WEN's North American door business to fraud instead. Dkt. No. 170 at 28–29.

- Feinstein inflated his damages figure by attributing all EBITDA generated by the North American door business to the alleged fraud, even though the North American door business comprises many business segments that are unrelated to the alleged fraud. Feinstein claimed these segments were "already excluded because [they were not] responsible for a stock price drop," Feinstein Dep. 362:10–13, but that makes no sense and is inconsistent with his stated methodology. Had Feinstein intended to exclude exterior doors and other types of interior doors from his analysis because they did not cause the stock drop, he should have excluded them at the same time he excluded Australasia for the same reason. Dkt. No. 170 at 29–30; *see* Feinstein Rpt. ¶ 331.

These are the same kinds of failures that have led courts to reject Feinstein's ends-driven opinions in the past. *Finkelstein*, 2005 WL 1074364, at *16 (concluding "Feinstein erroneously inflated the per subscriber revenue" because he included the revenues of another network that shared common ownership with the television channel he was analyzing); *see also OPERS*, 2018 WL 3861840, at *7 (concluding Feinstein's analysis "was entirely improper because you are supposed to hypothesize and then see your results. You are not supposed to know your results in advance").[8] Here, too, Feinstein's damages opinion should be excluded.

---

[8]   Plaintiffs tried to distinguish these cases by arguing that Feinstein was opposed by other experts in those cases, but he is not here. Dkt. No. 197 at 2 n.4. That, of course, is wrong— Feinstein is opposed by JELD-WEN Defendants' expert, Professor Daniel Fischel. Dkt. No. 170-4.

### III.    FEINSTEIN'S DECLARATION AND SUPPLEMENTAL REPORT SHOULD BE STRUCK

For the reasons stated in JELD-WEN Defendants' opening brief, Dkt. No. 170, and motion to strike, Dkt. No. 217, Plaintiffs' attempts to offer supplemental declarations and reports that "exceed[] the permissible scope of a supplemental disclosure" should be struck. *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *26 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010); *see also Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) ("If an expert's report 'does not rely [on] any information that was previously unknown or unavailable to him,' it is not an appropriate supplemental report under Rule 26.") (citation omitted). "Rule 26's expert disclosure requirements would be obviated if experts could continually refine their opinions in this manner." *Oracle*, 2009 WL 1709050, at *26; *see also Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007) ("[E]xperts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions.").

### CONCLUSION

For these reasons, the Court should exclude Feinstein's reports and testimony and strike his declaration and supplemental report.

18

March 26, 2021

Respectfully submitted,

JELD-WEN Holding, Inc.
By counsel
/s/ Brian C. Riopelle _____
Brian C. Riopelle (VSB #36454)
Brian E. Pumphrey (VSB #47312)
Brian D. Schmalzbach (VSB #88544)
Garrett H. Hooe (VSB #83983)
MCGUIREWOODS, LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com
ghooe@mcguirewoods.com

Sandra Goldstein (*pro hac vice*)
Rachel Fritzler (*pro hac vice*)
Lindsey Weiss Harris (*pro hac vice*)
Jeehyeon Jenny Lee (*pro hac vice*)
Jacob Rae (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
lindsey.harris@kirkland.com
jenny.lee@kirkland.com
jacob.rae@kirkland.com

Matthew S. Owen (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 389-5000
Fax: (202) 389-5200
matt.owen@kirkland.com

*Attorneys for Defendants JELD-WEN
Holding, Inc., Mark A. Beck, L. Brooks
Mallard, Kirk S. Hachigian, and
Gary S. Michel*

19

## CERTIFICATE OF SERVICE

I certify that on the 26th day of March, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all counsel of record in this case.

 */s/ Brian C. Riopelle*
Brian C. Riopelle (Va. Bar No. 36454)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax: (804) 698-2150
briopelle@mcguirewoods.com