**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| | ) | |
| IN RE: JELD-WEN HOLDING, INC. | ) | Civil Action No. 3:20-cv-00112-JAG |
| SECURITIES LITIGATION | ) | |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |
| | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION TO EXCLUDE SECTIONS V, VI and VII.D OF**
**THE EXPERT REPORT AND TESTIMONY OF JOHN H. JOHNSON, IV**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT............................................................................................................. 2

      A.    Defendants' Attempts to Salvage Dr. Johnson's Opinions in Section VII.D
           of His Report Fail.......................................................................................... 2

           1.    Defendants' Self-Serving Characterization of the Complaint's
                 Allegations Should Be Rejected .................................................... 2

           2.    Dr. Johnson's Irrelevant and Confusing Opinions are Not
                 Admissible Simply Because He is a Rebuttal Expert ................................ 5

      B.    Defendants Fail to Address That Dr. Johnson Did Not Opine on the
           Doorskins Market Whatsoever ................................................................. 7

           1.    Defendants' Attempts to Conflate Dr. Lamb's Analyses with Dr.
                 Johnson's Flawed Criticisms Fail ................................................. 7

            2.    Defendants' Remaining Arguments Regarding Dr. Johnson's
                 Failure to Address Doorskins Should be Rejected .................................... 9

III.    CONCLUSION......................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Source Bank v. First Resource Federal Credit Union*,
  167 F.R.D. 61 (N.D. Ind. 1996) .....................................................................................11

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  829 F. Supp. 2d 802 (D. Minn. 2011) ...........................................................................11

*In re Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.*,
  2009 WL 2750462 (D.S.C. Aug. 26, 2009) ...................................................................12

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.*,
  2009 WL 1649773 (D. Kan. June 9, 2009).....................................................................11

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
  2005 WL 3263288 (W.D. Mo. Dec. 1, 2005).................................................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...............................................................................................1, 6, 10

*De Reyes v. Waples Mobile Home Park Ltd. P'ship*,
  2017 WL 4509869 (E.D. Va. Apr. 17, 2017) .......................................................7, 10, 13

*East West, LLC v. Rahman*,
  2012 WL 4105128 (E.D. Va. Sept. 17, 2012)................................................................13

*Emami v. Bolden*,
  2016 WL 8232235 (E.D. Va. Dec. 20, 2016) ...........................................................10, 13

*Equal Employment Opportunity Comm'n v. Performance Food Grp., Inc.*,
  2020 WL 1285502 (D. Md. Mar. 18, 2020)..................................................................5, 6

*Estate of Anthony Anderson v. Strohman*,
  2016 WL 4013638 (D. Md. July 27, 2016)....................................................................12

*Ford v. Torres*,
  2009 WL 10687787 (E.D. Va. Oct. 16, 2009).............................................................7, 10

*Funderburk v. S.C. Elec. & Gas Co.*,
  395 F. Supp. 3d 695 (D.S.C. 2019).................................................................................6

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997).......................................................................................................10

*Hughes v. Ester C Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016) .......................................................................................7

*James River Mgmt. Co., Inc. v. Kehoe*,
  2010 WL 431477 (E.D. Va. Feb. 5, 2010) (Payne, J.).......................................................5, 13

*Keystone Transportation Solutions, LLC v. Northwest Hardwoods, Inc.*,
  2019 WL 1770162 (W.D. Va. Apr. 22, 2019) .............................................................6, 7, 10, 13

*Leaks v. Target Corp.*,
  2015 WL 4092450 (S.D. Ga. July 6, 2015) ........................................................................9, 10

*Limelight Networks, Inc. v. XO Communications, LLC*,
  2018 WL 678245 (E.D. Va. Feb. 2, 2018) (Gibney, J.)............................................................12

*Nationwide Mutual Fire Insurance Co. v.*
  *Bryant Thomas Heating & Cooling, Inc.*,
  2020 WL 5415659 (E.D. Va. June 26, 2020) ........................................................................10

*Onyiah v. St. Cloud State Univ.*,
  684 F.3d 711 (8th Cir. 2012) .......................................................................................7

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
  2011 WL 2295269 (S.D. Fla. June 8, 2011) ...........................................................................11

*Quality Plus Services, Inc. v. National Union*
  *Fire Insurance Co. of Pittsburgh, PA.*,
  2020 WL 239598 (E.D. Va. Jan. 15, 2020) ........................................................................12, 13

*Reginald Martin Agency, Inc. v.*
  *Conseco Medical Insurance Co.*,
  2007 WL 831613 (S.D. Ind. Mar. 5, 2007).......................................................................11

*Roberts v. Sunbelt Rentals, Inc.*,
  2016 WL 1259414 (W.D. Va. Mar. 30, 2016)........................................................................12

*Samuel v. Ford Motor Co.*,
  112 F. Supp. 2d 460 (D. Md. 2000),
  *aff'd sub nom. Berger v. Ford Motor Co.*,
  95 F. App'x 520 (4th Cir. 2004) .......................................................................................6

*Sempowich v. Tactile Sys. Tech., Inc.*,
  2020 WL 6265076 (E.D.N.C. Oct. 23, 2020),
  *appeal filed*, No. 20-2245 (4th Cir. Nov. 20, 2020)...............................................................13

*Silicon Knights, Inc. v. Epic Games, Inc.*,
  2011 WL 6748518 (E.D.N.C. Dec. 22, 2011) ................................................................6, 13

*Smith v. Ray*,
  2015 WL 13855539 (E.D. Va. Aug. 5, 2015)...........................................................................13

*TecSec, Inc. v. Adobe Systems Inc.*,
  2018 WL 3649615 (E.D. Va. June 14, 2018) ......................................................................7, 10

*United States v. Ancient Coin Collectors Guild*,
  899 F.3d 295 (4th Cir. 2018) ................................................................................................6

*Whitaker v. Hyundai Motor Co.*,
  2018 WL 4926309 (W.D. Va. Oct. 10, 2018)........................................................................13

I.    **<u>INTRODUCTION</u>**

Defendants attempt to rescue Dr. Johnson's irrelevant, misleading, and unhelpful opinions by continuing to reframe and mischaracterize the Complaint's substantive allegations, and by setting forth a flawed legal conclusion that if the Court admits Dr. Lamb's (Plaintiffs' expert) opinions, then it ***must*** admit Dr. Johnson's opinions.  Both of Defendants' arguments fail.  As set forth in the Memorandum in Support of Plaintiffs' Motion to Exclude Sections V, VI, and VII.D of the Expert Report and Testimony of John H. Johnson, IV ("Motion to Exclude Dr. Johnson") (ECF No. 166), Dr. Johnson (1) misconstrues the Complaint's allegations and completely ignores key facts to suit his criticisms of Dr. Lamb's opinions and (2) fails to address and analyze critical aspects of this case, namely, Jeld-Wen's anticompetitive behavior in the doorskins market and the *Steves and Sons* litigation.

In an attempt to support their argument that the Complaint alleges that the anticompetitive conduct began in 2012 instead of 2014, Defendants point out times where Plaintiffs used the date "2012" in the Complaint when discussing steps that Jeld-Wen took to facilitate its anticompetitive behavior.  But not even Defendants' cherry-picked citations from the record help them in that regard because the Complaint's substantive allegations unequivocally state that Jeld-Wen did not engage in anticompetitive ***conduct*** until 2014.

Then in a last-ditch effort to salvage Dr. Johnson's opinions, Defendants fall back on the incorrect notion that if the Court finds that Dr. Lamb's opinions are admissible, then the Court must also automatically allow Dr. Johnson's critiques of those opinions into the record.  But doing so would directly contradict the standards the Supreme Court laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and would strip the Court of its gatekeeping function.  Indeed, courts regularly hold that rebuttal testimony must still be relevant and reliable on its own and is subject to the scrutiny of *Daubert*.

1

Defendants also raise a series of strawman arguments in an attempt to evade the fact that Dr. Johnson entirely failed to address and analyze Jeld-Wen's anticompetitive behavior in the doorskins market—one of the key aspects of the case. For example, Defendants argue that: (1) the Court must evaluate an opinion's underlying methodology, not the ultimate conclusion; (2) there is nothing inherently improper about Dr. Johnson's conclusions; and (3) Dr. Johnson was not required to undertake an independent analysis or offer alternative theories. However, none of these arguments address the fact that Dr. Johnson's opinions are based upon incomplete and misleading information when considered in the context of the facts of this case. Indeed, it is Dr. Johnson's failure to address this crucial aspect of Dr. Lamb's report that renders Dr. Johnson's opinions incomplete, inaccurate, misleading, and unhelpful to the jury. Accordingly, Dr. Johnson's opinions will lead a fact-finder to believe that the doorskins market is unimportant to this case, while the opposite is true. For these reasons, the Court should grant Plaintiffs' motion to exclude Section V, VI, and VII.D of Dr. Johnson's report.

## II.    ARGUMENT

### A.    Defendants' Attempts to Salvage Dr. Johnson's Opinions in Section VII.D of His Report Fail

#### 1.    Defendants' Self-Serving Characterization of the Complaint's Allegations Should Be Rejected

As explained in Plaintiffs' Motion to Exclude Dr. Johnson, Dr. Johnson's opinions in Section VII.D of his report do not fit the facts of the case because he misconstrues the Complaint's allegations. In Section VII.D, Dr. Johnson incorrectly opines that Dr. Lamb's regression analysis is unreliable because his "empirical analysis of 'anticompetitive behavior' focuses on alleged conduct beginning in March 2014." Ex. B ("Johnson Rpt.") ¶¶19, 22, 98–100, ECF No. 166-2. However, Dr. Johnson's reasoning behind his assertion is based on the flawed premise that the Complaint alleges that the anticompetitive behavior began in 2012, not

2014.  Dr. Johnson's reasoning and opinions should be excluded because they do not comport with the allegations set forth in the Complaint—which explicitly state that Jeld-Wen did not begin to engage in anticompetitive behavior until 2014.[1]

In opposing Plaintiffs' request to exclude Dr. Johnson's testimony on these grounds, Defendants double down on their assertion that exclusion is inappropriate because Plaintiffs supposedly do allege that the anticompetitive behavior began in 2012.  But this is simply not true.  For example, Defendants cite to paragraph 5 of the Complaint for the proposition that the Complaint alleges that Jeld-Wen began its anticompetitive behavior in 2012.  Johnson Opp. at 7.  But the relevant portion of paragraph 5 merely states, "In October 2012, Jeld-Wen sought to acquire CMI."  Nowhere does paragraph 5 support the notion that Jeld-Wen's anticompetitive conduct began in 2012.  Compl. ¶5

Defendants misleadingly try to conflate the Complaint's allegations regarding the necessary steps Jeld-Wen took in order to be able to engage in anticompetitive behavior with the anticompetitive behavior itself.  Indeed, because Defendants may have had the ability to engage in anticompetitive behavior in 2012, does not necessarily mean that they did so even if certain of Jeld-Wen's actions—such as entering into long term supply agreements with doorskin customers to assuage the DOJ—could fairly be characterized as "anticompetitive."  *Id.* ¶¶9–11; 83–84.

---

[1] Realizing that the substantive allegations in the Complaint actually cut against their arguments, Defendants resort to relying on a single, unnumbered sub-heading in the Complaint, motion to dismiss opposition, and class certification motion, entitled "Beginning in 2012, Jeld-Wen Has Been Engaging in Anticompetitive Conduct."  Johnson Opp. at 7–8.  But as discussed above, Defendants began taking the steps to engage in anticompetitive behavior prior to actually engaging in such behavior in 2014.  Tellingly, Defendants' very own expert, Dr. Johnson, did not even rely on the citations from the Complaint, motion to dismiss opposition, and class certification motion that Defendants now argue support their argument that the Complaint alleges the anticompetitive behavior began in 2012.  Instead, Dr. Johnson only cited to paragraphs 9–11 of the Complaint, which clearly set forth that the anticompetitive behavior began in 2014.

Critically, Defendants' argument also ignores the fact that, in addition to the Complaint's allegations, Dr. Lamb's analysis also relies on the fact that Defendant Hachigian communicated directly with Masonite's CEO, Fred Lynch, in the beginning of 2014, supporting the finding of a conspiracy. This further supports the reliability of Dr. Lamb's use of 2014 as the start of the anticompetitive period and highlights why Dr. Johnson's use of 2012 as the start of the anticompetitive period is irrelevant and misleading. Ex. A ("Lamb Rpt.") ¶¶70–71, ECF No. 166-1.

Defendants also cite to paragraph 8 of the Complaint in an attempt to show that the Complaint alleges the anticompetitive conduct began in 2012. But paragraph 8 alleges that Jeld-Wen entered into long-term supply agreements with customers to prevent the customers from objecting to the CMI Acquisition. Compl. ¶8. Again, entering into the supply agreements was a necessarily step for Defendants to acquire CMI, thereby increasing their market power and then eventually using that increased market power to engage in anticompetitive conduct. *Id.* ¶¶9–11; 83–84. The Complaint makes clear that Defendants did not actually begin engaging in anticompetitive behavior until after Defendant Hachigian took over as CEO and after CMI exited from the doorskins market—which the Complaint explicitly alleges did not happen until *2014*. *Id.* Additionally, paragraphs 68, 71, and 81 (which Defendants also cited to show the Complaint alleges the anticompetitive behavior began in 2012), merely state that Jeld-Wen announced in 2012 its intent to merge with CMI and that the DOJ approved the merger only after Jeld-Wen entered into the long term supply agreements. *Id.* ¶¶68, 71, 81. Indeed, while Defendants cited to paragraph 81 as support, the very next two paragraphs allege that the anticompetitive behavior did not start until 2014. *Id.* ¶¶82–83. And while the Complaint contains allegations regarding Jeld-Wen's price increases prior to 2014 (*id.* ¶¶13, 92, 95), that does not change the fact that the

Complaint repeatedly and explicitly alleges that Jeld-Wen's anticompetitive behavior did not start until 2014, consistent with Dr. Lamb's analysis.

Defendants further argue that "not even Dr. Lamb claims that the March 2014 date he used comes from Plaintiffs' allegations." Johnson Opp. at 8. But Dr. Lamb's explanation is entirely consistent with the Complaint's allegations. Dr. Lamb explained that the anticompetitive conduct "did not begin until Mr. Hachigian assumed the leadership position at JELD-WEN and implemented a series of unilateral and coordinated actions to raise IMD prices." Lamb Rpt. ¶107. The Complaint likewise alleged that the anticompetitive conduct did not occur until Defendant Hachigian became CEO. Compl. ¶11. Therefore, Dr. Lamb's analysis is entirely consistent with the Complaint's allegations.

For the reasons stated above, Dr. Johnson's criticisms of Dr. Lamb's analysis for beginning the Anticompetitive Period in 2014 is not tied to the Complaint's allegations and should be excluded. *James River Mgmt. Co., Inc. v. Kehoe*, 2010 WL 431477, at \*4 (E.D. Va. Feb. 5, 2010) (Payne, J.) ("[T]he opinion also fails the 'fit' requirement because the theory posited by [the expert] is not tethered to the facts of th[e] case.").

### 2.    Dr. Johnson's Irrelevant and Confusing Opinions are Not Admissible Simply Because He is a Rebuttal Expert

Defendants argue that if "Dr. Lamb's opinions are admissible, then Dr. Johnson's critiques of those opinions will be admissible too" because Dr. Johnson was supposedly critiquing Dr. Lamb's analysis "on its own terms." Johnson Opp. at 9–10. Defendants' argument is nonsensical. The fact that Plaintiffs' expert's opinions were properly tied to the facts of the case and should be considered, does not automatically render any critiques of those opinions likewise admissible as Defendants contend. Instead, Dr. Johnson's opinions must themselves be relevant and helpful to the fact-finder. *Equal Emp't Opportunity Comm'n v.*

*Performance Food Grp., Inc.*, 2020 WL 1285502, at *7 (D. Md. Mar. 18, 2020) ("*EEOC*")

("Although '[t]he court's function is more limited when evaluating rebuttal expert testimony

offered by the defendant,' it must still 'determine threshold admissibility.'"); *Samuel v. Ford*

*Motor Co.*, 112 F. Supp. 2d 460, 469 (D. Md. 2000) (same), *aff'd sub nom. Berger v. Ford Motor*

*Co.*, 95 F. App'x 520 (4th Cir. 2004).  Indeed, Dr. Johnson's rebuttal opinion on its own must

"fit" the facts of the case, *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 319 (4th

Cir. 2018), and "is still subject to the scrutiny of *Daubert* and must offer both relevant and

reliable opinions." *EEOC*, 2020 WL 1285502, at *7; *Funderburk v. S.C. Elec. & Gas Co.*, 395 F.

Supp. 3d 695, 716 (D.S.C. 2019) (same, collecting cases).

Because Dr. Johnson bases his opinions on an alternative and inaccurate set of "facts"

unsupported by the Complaint's substantive allegations or the discovery record, his opinions are

irrelevant, unhelpful, and will undoubtedly mislead the jury.  *Silicon Knights, Inc. v. Epic*

*Games, Inc.*, 2011 WL 6748518, at *16–17 (E.D.N.C. Dec. 22, 2011) (where expert testimony is

"inconsistent with the facts of the case" or "not supported by the evidence," such "testimony is

not relevant and inadmissible").

Defendants rely on *Keystone Transportation Solutions, LLC v. Northwest Hardwoods,*

*Inc.*, 2019 WL 1770162 (W.D. Va. Apr. 22, 2019) for the definition of "rebuttal evidence" and

for the proposition that Dr. Johnson's opinions should be allowed if Dr. Lamb's is allowed;

however, this decision is unavailing.  The definition of "rebuttal evidence" is not in dispute, and

*Keystone* does not hold that rebuttal testimony is automatically admissible if the opposing

expert's opinion is admissible.  *Id.* at *6.  In fact, the court in *Keystone* stated that "[e]xpert

reports that simply address the same general subject matter as a previously-submitted report, but

do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper

6

rebuttal or reply reports." *Id.* By completely omitting a key aspect of both the Complaint and Dr. Lamb's analysis, Dr. Johnson's opinions in fact did not "directly contradict or rebut the actual contents" of Dr. Lamb's report. *Id.*[2] Nor does Defendants' affirmative attack on Dr. Lamb's testimony claiming he "flunked the 'fit the facts' requirement" (Johnson Opp. at 9) save Dr. Johnson's flawed opinions. *See* ECF. No. 207.

### B. Defendants Fail to Address That Dr. Johnson Did Not Opine on the Doorskins Market Whatsoever

#### 1. Defendants' Attempts to Conflate Dr. Lamb's Analyses with Dr. Johnson's Flawed Criticisms Fail

As explained in Plaintiffs' Motion to Exclude Dr. Johnson, Sections V and VI of Dr. Johnson's criticisms of Dr. Lamb's analysis of the doorskins and IMD markets should also be excluded because they fail to address and analyze Jeld-Wen's unilateral anticompetitive conduct in the doorskins market—a key aspect of the case. Indeed, while Dr. Johnson critiqued Dr. Lamb's opinions of the IMD markets, he failed to address the doorskins market in his analysis, which was required to properly form an opinion critiquing Dr. Lamb. *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (affirming exclusion of expert report where the expert failed to consider the facts that were essential to the formation of his opinion).

---

[2] Defendants' reliance on *Hughes v. Ester C Company* is also inapposite because at issue in *Hughes* was not whether an expert failed to consider a key aspect of the case. 317 F.R.D. 333, 341–43 (E.D.N.Y. 2016). Instead, the principal objection to the expert opinion in *Hughes* concerned whether a certain methodology could be used to calculate class-wide damages, and the court only allowed the evidence in "for the narrow purpose of determining whether [p]laintiffs have met their class certification burden." *Id.* at 343. Similarly, Defendants' reliance on *TecSec, Inc. v. Adobe Systems Inc.*, 2018 WL 3649615 (E.D. Va. June 14, 2018); *De Reyes v. Waples Mobile Home Park Ltd. Partnership*, 2017 WL 4509869 (E.D. Va. Apr. 17, 2017); and *Ford v. Torres*, 2009 WL 10687787 (E.D. Va. Oct. 16, 2009) for the proposition that factual disputes go to the weight, not admissibility is irrelevant here because the issue with Dr. Johnson's opinions is not a simple factual dispute.

In response, Defendants argue that Dr. Lamb's regression analysis does not analyze the doorskins market, and as such, Plaintiffs should withdraw, or the Court should exclude, Dr. Lamb's regression analysis.  Johnson Opp. at 11–12.  However, Defendants' arguments fall short because they improperly try to apply Plaintiffs' bases for excluding *part* of Dr. Johnson's opinions to all of Dr. Lamb's opinions.  *Id.*  Dr. Lamb's opinions regarding the IMD and doorskins markets and Jeld-Wen's conduct and performance in those markets are distinct from his regression analyses.  *See* Lamb Rpt. Sections III.A–F.1.  Accordingly, Plaintiffs objected to Dr. Johnson's criticisms of Dr. Lamb's *quantitative regression analysis in Section VII.D of his report* because he based his opinions in that section on an inaccurate and misleading set of facts not tied to the Complaint's allegations.  *See* Section II.A.1, *supra*.  Separately, Plaintiffs moved to exclude Dr. Johnson's criticisms of Dr. Lamb's qualitative opinions on the *structure, conduct and performance in the IMD and doorskins markets in Sections V and VI* because Dr. Johnson's omission of the doorskins market renders his opinions unhelpful and confusing.  *See* Motion to Exclude Dr. Johnson, Section IV.B.  And while Defendants chose to take the kitchen-sink approach in their motion to exclude Dr. Lamb (*see* ECF No. 174), Plaintiffs did not assert that Dr. Johnson's criticisms of Dr. Lamb's regression analysis were improper because they did not include an analysis of the doorskins market.  Thus, the fact that Dr. Lamb's regression analysis did not address the doorskins market is irrelevant because Dr. Lamb was never asked to include such a discussion in his regression analysis.

Indeed, there was no reason for Dr. Lamb to perform such an analysis of the doorskins market in his regression analysis because Dr. Lamb had already included a robust analysis of the doorskins market separate and apart from his regression analysis.  For example, Dr. Lamb opined, *inter alia*: (1) that the structural characteristics of the molded doorskins and IMD market

8

made it susceptible to anticompetitive behavior; (2) that Jeld-Wen's conduct prior to and during

the Class Period related to doorskins was consistent with Plaintiffs' allegations (and the findings

of the Judge and Jury in the *Steves* litigation) of anticompetitive conduct; and (3) that the price of

doorskins increased by 11% from 2014 through the end of the Class Period despite only

moderately increasing demand, excess capacity, stable or declining costs, and significant quality

issues. Lamb Rpt. ¶¶10, 59, 91–101, 112; Ex. F ("Lamb Dep.") 35:15–36:20, 144:14–145:13,

314:3– 6. The fact that Dr. Lamb performed a regression analysis serves as *additional* evidence,

not the *only* evidence to support his opinions. In contrast, Dr. Johnson's failure to analyze the

doorskins market affects the admissibility of his opinions in Sections V and VI of his report,

which are unrelated to his critiques of Dr. Lamb's regression analysis, and renders Dr. Johnson's

opinions misleading to a jury.

**2.     Defendants' Remaining Arguments Regarding Dr. Johnson's Failure
to Address Doorskins Should be Rejected**

Defendants further assert the uncontroverted proposition that rebuttal evidence is

evidence that explains, repels, counteracts, or disproves facts included in an opposing expert's

report. Johnson Opp. at 12. But Defendants' point undercuts their own arguments. According

to Defendants, Dr. Johnson's opinions should be admissible simply because his report explained,

repelled, counteracted, or disproved the opinions that Dr. Lamb set forth in his report. Johnson

Opp. at 12–13. However, one of the most critical aspects and factual underpinnings of Dr.

Lamb's opinions (because it was paramount to the Complaint's allegations) was an analysis of

the doorskins market. Yet, Dr. Johnson's opinion is void of any such analysis, rendering his

opinion confusing and therefore excludable regardless of his status as a rebuttal witness. *See*

*Leaks v. Target Corp.*, 2015 WL 4092450, at *4 (S.D. Ga. July 6, 2015) (excluding opinion

9

because "report simply [did] not address the factual underpinnings of [other expert's report] and so cannot constitute a rebuttal within the meaning of Rule 26(a)(2)(A)(ii)").[3]

Similarly, Defendants urge the Court not to evaluate Dr. Johnson's conclusions themselves, but instead to only evaluate how Dr. Johnson reached his conclusions. Johnson Opp. at 12. However, Plaintiffs do not contend that Dr. Johnson's opinions should be excluded solely because of his ultimate conclusions. Instead, Plaintiffs contend that Dr. Johnson's underlying analyses were equally as flawed and incomplete as his conclusions because they failed to address a critical aspect of Dr. Lamb's analyses—Jeld-Wen's anticompetitive conduct in the doorskins market.[4] Even if Plaintiffs did specifically object to Dr. Johnson's conclusions as a reason for exclusion, the Supreme Court has explained that "conclusions and methodology are not entirely distinct from one another," and in fact instructed that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" and that "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Accordingly, Defendants' argument fails.

---

[3] Defendants' reliance on *Keystone* is misplaced. In *Keystone*, the court allowed rebuttal testimony where the rebuttal report included new information learned from additional discovery in order to rebut the opposing expert's report. 2019 WL 1770162, at *5–6. Not at issue there, however, was anything involving a rebuttal report omitting key facts of the case, as here, which would undoubtedly mislead the jury into thinking that such facts are unimportant.

[4] Because Plaintiffs do not seek to exclude Dr. Johnson's opinions based on his ultimate conclusions, but rather seek exclusion based on his incomplete analysis by omitting key facts, the cases that Defendants cite for this undisputed point are inapposite. *Nationwide Mut. Fire Ins. Co. v. Bryant Thomas Heating & Cooling, Inc.*, 2020 WL 5415659, at *2 (E.D. Va. June 26, 2020) (challenged expert opinion only on "ultimate conclusion"); *De Reyes*, 2017 WL 4509869, at *2 (does not address whether omitting key aspects of a case is admissible); *TecSec*, 2018 WL 3649615, at *1 (same); *Ford*, 2009 WL 10687787, at *4 (same); *Emami v. Bolden*, 2016 WL 8232235, at *6 (E.D. Va. Dec. 20, 2016) (expert opinion admissible where the facts that expert omitted from opinion were not necessary to form the opinion, and where similar information was already included in documents that expert did review to form opinion).

Defendants further argue that there is nothing inherently improper about Dr. Johnson's opinions concerning Dr. Lamb purportedly ignoring "implications of lawful interdependent oligopoly behavior" and "aspects of the structure of the IMD market that undermine his opinions of anticompetitive conduct." Johnson Opp. at 12. But Defendants miss the point again. When considered in context and in light of the Complaint's allegations, Dr. Johnson's opinions entirely ignore one of the key aspects of this case—the doorskins market. Allowing such opinions in the record will lead a jury to believe that the doorskins allegations are irrelevant or unimportant to this action when the opposite is true, and may mislead jurors to believe that Dr. Johnson's criticisms (which are entirely limited to the IMD market) apply to Dr. Lamb's assessment of the doorskins industry, when, by his own admission, they do not.

Defendants also argue that Dr. Johnson was not obligated to put forth an independent or alternative theory, or to respond to every sentence in Dr. Lamb's report. Johnson Opp. at 13. But this is nothing more than a strawman argument. Dr. Johnson's opinion in Sections V and VI should be excluded not because they simply did not address one fact from Dr. Lamb's report, but because Dr. Johnson's opinions failed to address a key element of the case as alleged in the Complaint. And Defendants' point about whether Dr. Johnson was required to offer alternative theories is misplaced as Plaintiffs have never argued that was the case.[5]

Defendants further argue that Dr. Johnson's opinions cannot mislead a jury into thinking that the doorskins market is irrelevant in this case because Plaintiffs could remedy any confusion

---

[5] As such, Defendants' cited cases for this argument—*In re Cessna 208 Series Aircraft Products Liability Litigation*, 2009 WL 1649773 (D. Kan. June 9, 2009); *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802 (D. Minn. 2011); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269 (S.D. Fla. June 8, 2011); *Reginald Martin Agency, Inc. v. Conseco Medical Insurance Co.*, 2007 WL 831613 (S.D. Ind. Mar. 5, 2007); and *1st Source Bank v. First Resource Federal Credit Union*, 167 F.R.D. 61 (N.D. Ind. 1996)—are inapposite.

11

through cross-examination, presentation of contrary evidence, or appropriate jury instructions. Johnson Opp. at 13.  While such remedies may prevent exclusion of expert testimony under some circumstances, such as when an expert does not cite to every single fact from the record, *Roberts v. Sunbelt Rentals, Inc.*, 2016 WL 1259414, at *8–9 (W.D. Va. Mar. 30, 2016), the same is not the case for when an expert ignores a key aspect of the case, as Dr. Johnson has done here. *Limelight Networks, Inc. v. XO Commc'ns, LLC*, 2018 WL 678245, at *7 (E.D. Va. Feb. 2, 2018) (Gibney, J.); *Estate of Anthony Anderson v. Strohman*, 2016 WL 4013638, at *8 (D. Md. July 27, 2016); *In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*, 2009 WL 2750462, at *14 (D.S.C. Aug. 26, 2009).  Indeed, when experts opining on issues relating to anticompetitive behavior fail to address a relevant market in the analysis, the court may properly exclude the opinions.  *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 2005 WL 3263288, at *6–8 (W.D. Mo. Dec. 1, 2005) (excluding opinion for "not perform[ing] necessary analysis of competition in a relevant market" because it "cannot 'assist the trier of fact to understand the evidence or to determine a fact in issue'").

In support for the proposition that the errors in Dr. Johnson's opinions could be corrected through cross-examination, Defendants cite *Quality Plus Services, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA.*, 2020 WL 239598 (E.D. Va. Jan. 15, 2020).  Johnson Opp. at 13.  However, at issue in *Quality Plus Services* was the reliability of the methods that the expert applied, entirely different than failing to address and analyze a major aspect of the case.  2020 WL 239598, at *16.  Notably, potential jury confusion was not even an issue in *Quality Plus Services* because the matter there was proceeding as a bench trial, which afforded the court more discretion in allowing expert testimony into the record since it could later easily exclude it

12

without any risk of confusing a jury.  *Id.* at \*13, \*16.[6]  Because Dr. Johnson did "not address a fact in issue," his opinion would thus "not help the fact-finder."  *Sempowich v. Tactile Sys. Tech., Inc.*, 2020 WL 6265076, at \*13 (E.D.N.C. Oct. 23, 2020), *appeal filed*, No. 20-2245 (4th Cir. Nov. 20, 2020); *James River Mgmt. Co., Inc.*, 2010 WL 431477, at \*4; *Silicon Knights, Inc.*, 2011 WL 6748518, at \*16–17.

## III.   <u>CONCLUSION</u>

For the reasons stated above and in Plaintiffs' Motion to Exclude Dr. Johnson, the Court should exclude all opinions and testimony related to Sections V, VI, and VII.D of the report of Dr. John H. Johnson, IV.

DATED: March 26, 2021                    Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (Admitted *pro hac vice*)

*/s/ Steven J. Toll*
Steven J. Toll

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstien.com
jhandelsman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

---

[6] Nor do the other cases that Defendants cite for this proposition compel a contrary conclusion. *Smith v. Ray*, 2015 WL 13855539, at \*2 (E.D. Va. Aug. 5, 2015) (expert opinion admissible because despite defendant objecting that plaintiff's expert failed to consider some facts, plaintiff argued that his expert did in fact consider such facts); *Emami*, 2016 WL 8232235, at \*6 (expert opinion admissible where the facts that expert omitted from opinion was not necessary to form the opinion, and where similar information was already included in documents that expert did review to form opinion); *E.W., LLC v. Rahman*, 2012 WL 4105128 (E.D. Va. Sept. 17, 2012) (does not address whether omitting key aspects of a case is admissible); *De Reyes*, 2017 WL 4509869 (same); *Keystone*, 2019 WL 1770162 (same); *Whitaker v. Hyundai Motor Co.*, 2018 WL 4926309 (W.D. Va. Oct. 10, 2018) (same).

LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Counsel for Co-Lead Plaintiff Public Employees'*
*Retirement System of Mississippi and the Class*


ROBBINS GELLER RUDMAN &
    DOWD LLP
ROBERT M. ROTHMAN (Admitted *pro hac vice*)
MARK T. MILLKEY (Admitted *pro hac vice*)
WILLIAM J. GEDDISH (Admitted *pro hac vice*)
VINCENT M. SERRA (New York Bar only)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
wgeddish@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
DEBRA J. WYMAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com

*Counsel for Co-Lead Plaintiff Plumbers and*
*Pipefitters National Pension Fund and additional*
*Plaintiff Wisconsin Laborers' Pension Fund, and*
*the Class*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2021, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF.

                                           _/s/ Steven J. Toll_

                                           Steven J. Toll
                                           VA Bar No. 15300
                                           stoll@cohenmilstein.com
                                           **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                           1100 New York Ave. NW, Suite 500
                                           Washington, DC 20005

                                           *Liaison Counsel for Lead Plaintiffs*

15