**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112-JAG <br><br> Judge John A. Gibney, Jr. |

**JELD-WEN DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THE MOTION TO EXCLUDE**
**REPORT AND TESTIMONY OF DR. RUSSELL LAMB**

## TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.     Lamb's Opinions Should Be Entirely Excluded As Irrelevant And Confusing To The Jury.................................................................................. 1

     A.     Lamb's IMD Analysis Is Untethered To Plaintiffs' Corrective Disclosures.......................................................................................... 1

     B.     Plaintiffs Concede That Lamb Cannot Distinguish Lawful Oligopoly Behavior From Anticompetitive Conduct ................................. 3

II.     Lamb's Qualitative Analysis Is Not Proper Expert Opinion........................... 5

     A.     Lamb's Analysis Of Communications Between JELD-WEN And Masonite Is Pure Speculation And Usurps The Role Of The Jury ............. 5

     B.     Lamb Improperly Opines On JELD-WEN's "Intent To Collude" ............. 7

     C.     Lamb's Analysis Of The Structure Of The IMD And Doorskins Markets And Parallel IMD Price Increase Announcements Is Incomplete.......................................................................................... 8

          1.     Lamb Failed To Consider Important Factors Undermining His Conclusions .............................................................................. 8

          2.     Lamb's Analysis Of Parallel IMD Price Increase Announcements Disregards Key Facts ......................................... 10

III.     Lamb's Regression Analysis Is Irrelevant And Unreliable............................. 12

     A.     Lamb's Overcharge Analysis Disregards Plaintiffs' Allegations And Fails To Study Doorskins Or IMDs .................................................... 12

     B.     Lamb's Regressions Are Inconsistent And Methodologically Unreliable.......................................................................................... 17

          1.     Lamb's Regressions Are Inconsistent.......................................... 17

          2.     Lamb's Model Is Unreliable ......................................................... 18

CONCLUSION ................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  829 F. Supp. 2d 802 (D. Minn. 2011)...................................................................................17

*Belville v. Ford Motor Co.*,
  919 F.3d 224 (4th Cir. 2019) ..............................................................................................12

*Bitler v. A.O. Smith Corp.*,
  400 F.3d 1227 (10th Cir. 2005) .............................................................................................3

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)...............................................................................................................4

*In re C.R. Bard, Inc.*,
  948 F. Supp. 2d 589 (S.D. W. Va. 2013)...............................................................................7

*In re Chocolate Confectionary Antitrust Litig.*,
  801 F.3d 383 (3d Cir. 2015)...................................................................................................4

*Coleman v. Tyson Farms, Inc.*,
  2011 WL 1833301 (E.D. Va. Apr. 13, 2011) .......................................................................20

*Colonna Shipyard, Inc. v. United States*,
  2015 WL 13047569 (E.D. Va. July 30, 2015) .......................................................................8

*Daubert v. Merrill Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..........................................................................................................8, 12

*Eghnayem v. Boston Sci. Corp.*,
  57 F. Supp. 3d 658 (S.D. W. Va. 2014)..................................................................................7

*ePlus, Inc. v. Lawson Software, Inc.*,
  764 F. Supp. 2d 807 (E.D. Va. 2011) .....................................................................................5

*In re Flat Glass Antitrust Litig.*,
  191 F.R.D. 472 (W.D. Pa. 1999) .........................................................................................16

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997).............................................................................................................12

*Holmes v. Wing Enterprises, Inc.*,
  WL 1809985 (E.D. Va. June 23, 2009) ..................................................................................7

*Limelight Networks Inc. v. XO Commc'ns, LLC*,
  2018 WL 678245 (E.D. Va. Feb. 2, 2018)................................................................19

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*
  *(No II) MDL 2502*,
  892 F.3d 624 (4th Cir. 2018) .................................................................................14

*Nease v. Ford Motor Co.*,
  848 F.3d 219 (4th Cir. 2017) ..............................................................................4, 14

*In re: Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices &*
  *Prods. Liab. Litig.*,
  214 F. Supp. 3d 478 (D.S.C. 2016)..........................................................................7

*SEC v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013).......................................................................8

*Slaby v. Holder*,
  2013 WL 12147698 (E.D. Va. July 24, 2013) ......................................................5, 7

*In re Text Messaging Antitrust Litig.*,
  782 F.3d 867 (7th Cir. 2015) ...................................................................................4

*Valspar Corp. v. E.I. Du Pont De Nemours and Co.*,
  873 F.3d 185 (3d Cir. 2017)......................................................................................4

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) ...................................................................................7

*Zellars v. NexTech N.E., LLC*,
  895 F. Supp. 2d 734 (E.D. Va. 2012) ......................................................................7

*In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*,
  858 F.3d 787 (3d Cir. 2017)....................................................................................19

**Rules**

Fed. R. Evid. 403 ......................................................................................................4, 5

Fed. R. Evid. 702 ..............................................................................................5, 17, 19

## INTRODUCTION

Plaintiffs cannot rescue the opinions of their antitrust economist, Dr. Russell Lamb.  His opinions do not address the issues in this action, cannot distinguish between legal oligopoly conduct and unlawful anticompetitive conduct, and usurp the role of the fact-finder.  Lamb's econometric regressions .  The Court should exclude Lamb's testimony.[1]

## ARGUMENT

### I.  LAMB'S OPINIONS SHOULD BE ENTIRELY EXCLUDED AS IRRELEVANT AND CONFUSING TO THE JURY

Lamb's opinions should be excluded because they are irrelevant and unhelpful to the jury. Although Lamb's opinions ███████████████████████████, the alleged corrective disclosures on which Plaintiffs ground their case are about the ***doorskins*** market. ████████ ██████████████████████████████████.

#### A.  Lamb's IMD Analysis Is Untethered To Plaintiffs' Corrective Disclosures

The alleged corrective disclosures Plaintiffs have pleaded are about the doorskins market, not IMDs.  Plaintiffs' complaint describes two corrective disclosures: (1) Judge Payne's October 5, 2018 decision holding that divestiture of a JELD-WEN ***doorskins*** plant was an appropriate remedy based on findings that JELD-WEN engaged in anticompetitive conduct; and (2) an October 15, 2018 "pre-earnings release" in which JELD-WEN disclosed a litigation contingency related to

---

[1] Capitalized terms used but not defined herein have the same meaning as in the Memorandum of Law in Support JELD-WEN Defendants' Motion to Exclude Report Testimony of Dr. Russell Lamb (the "Opening Brief") (Dkt. 176 (sealed), Dkt. 176 (public)).  References to Exs. 2, 3, 5, 6, 7, 10, 11, and 15 refer to exhibits to the Declaration of Matthew S. Owen in Support of JELD-WEN Defendants' Motion to Exclude Report Testimony of Dr. Russell Lamb.  References to Exs. A and B refer to the exhibits attached to the Declaration of Matthew S. Owen dated March 26, 2021.

the Steves litigation, which concerns a ***doorskins*** supply agreement.  Am. Compl. ¶¶ 21–24, 245.

Neither involves IMDs.  Plaintiffs claim these disclosures corrected two kinds of alleged

misstatements by JELD-WEN: (1) that the company's commercial success was attributable to

"pricing optimization" and "pricing discipline" instead of anticompetitive conduct, *see* Opp. at 6–

7; Am. Compl. ¶¶ 16, 20, 82, and (2) that the company believed the Steves litigation was without

merit, *see* Opp. at 6–7; Am. Compl. ¶¶ 114–16.

Lamb's opinions, however, are completely divorced from the allegedly anticompetitive

conduct related to the alleged corrective disclosures.  ███████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████  Ex. 10, Lamb Dep. 307:10–18.  Those should be excluded as irrelevant.

Plaintiffs argue that Lamb's qualitative (*i.e.*, non-econometric) opinions "cover Jeld-Wen's

anticompetitive conduct with respect to doorskins," Opp. 6 n.1, but that does not help them.  ████

████████████████████████████████████████████████████████  *See generally*

Ex. 2, Section III.  ███████████████████████████████████████████████████████

██████████████████████████████████████████████  Judge Payne's ruling on

divestiture and JELD-WEN's subsequent announcement of a litigation contingency concern the

Steves litigation—in particular, allegations that JELD-WEN's merger with CMI had the effect of

substantially reducing competition for doorskins, including the prices it charged Steves & Sons.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████.  Am. Compl. ¶¶ 57–69.

Lamb's long detour into IMD price-fixing allegations is a side show.  This securities case

is about whether Plaintiffs did or did not realize a loss because particular ***corrective*** statements to

the market revealed the truth of previous *misleading* statements.  Neither Lamb's qualitative nor quantitative opinions are about the conduct Plaintiffs say was revealed to the market through the corrective disclosures they point to.  His testimony is therefore irrelevant to the case at hand, fails to fit its facts, and will serve to confuse the jury and prejudice JELD-WEN.  At a minimum, the Court should exclude Lamb's opinions, analysis, and regressions ████████████████. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) ("A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant fit.").

**B.      Plaintiffs Concede That Lamb Cannot Distinguish Lawful Oligopoly Behavior From Anticompetitive Conduct**

Lamb's opinions are also irrelevant, confusing, and prejudicial because they cannot



████████████.  Op. Br. at 8–11.  ████████████████████

████████████████████████████ Ex. 5, Lamb Reply Rpt. ¶ 3 ██████

(emphasis added).  But if JELD-WEN ████████████████████████, then it cannot have misled the market by attributing its commercial success to its ████████████████.

3

███████████████████████████████████████████████████, it follows he cannot help the jury decide whether JELD-WEN's statements about pricing and competitiveness were misleading or not. ██████████████████████████ ████████████████████████████████████ Ex. 10, Lamb Dep. 44:18–21, 44:24–46:11, 46:23–47:6, 67:10–13; *see also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993). The Rules of Evidence do not permit expert testimony that is incapable of helping the jury decide the questions before it. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017). The effect of offering such testimony would be to confuse the jury into thinking that "tacit collusion" is somehow illegal or what the courts mean by anticompetitive conduct—an easy mistake for a lay jury to make—and thereby prejudice JELD-WEN. Fed. R. Evid. 403; *see also In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015) ("Tacit collusion, also known as conscious parallelism, does not violate section 1 of the Sherman Act. Collusion is illegal only when based on agreement.").

Plaintiffs cannot get around that problem. They first argue that the presence of "plus factors" can cause tacit collusion to be illegal, Opp. at 7–8, but that is legally and factually confused. In price-fixing cases involving concentrated markets, courts "deemphasize" plus factors that look like oligopolistic behavior and instead rely on "traditional non-economic evidence of a conspiracy." *Valspar Corp. v. E.I. Du Pont De Nemours and Co.*, 873 F.3d 185, 193, 196 (3d Cir. 2017); *see also Text Messaging*, 782 F.3d at 877. To win at trial, Plaintiffs must point to evidence of **actual agreement**. *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 398 (3d Cir. 2015). In any case, ████████████████████████████████████████ ███████████████████████ he cannot say one way or the other. Next, ████████ ████████████████████████████████████████████████████

4

████████████████████████ Opp. at 9. ████████████████████

████████████████████████████████████████ Ex. 10,

Lamb Dep. 78:25–82:25, 209:18–218:22.  Lamb's opinions are inadmissible.

## II.    LAMB'S QUALITATIVE ANALYSIS IS NOT PROPER EXPERT OPINION

Even if it were relevant to the case and not barred by Rule 403, Lamb's "qualitative" economic analysis still would not qualify as admissible expert opinion.  Plaintiffs spill much ink in defense of Lamb's qualitative analysis of "structure, conduct, and performance," Opp. at 9–18, but they cannot obscure that Lamb is acting as a judge or juror rather than an economist.  Lamb's analysis relies on his own speculation, interpretation of documents, and subjective assessment of the credibility of witnesses—directly contradicting these witnesses' testimony.  None of that has anything to do with economic expertise or any expert methodology.  The jury can canvass the evidentiary record and make findings of fact for itself.  Beyond that, Lamb improperly opines on Defendants' intent and ignores important factors undermining his conclusions.

### A.    Lamb's Analysis Of Communications Between JELD-WEN And Masonite Is Pure Speculation And Usurps The Role Of The Jury

Expert opinion must "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  It cannot usurp the role of the jury.  *Slaby v. Holder*, 2013 WL 12147698, at *2 (E.D. Va. July 24, 2013) (excluding expert testimony that "would risk usurping the jury's role").  Expert testimony is inadmissible when it assumes the role of advocates, summarizes record evidence, or puts a patina of science over easy-to-understand facts.  *Id.* (excluding expert testimony that was a "summary of the evidence . . . followed by [] factual commentary, observations, inferences, arguments and conclusions that are not based on or do not require any particular expertise and are equally within the capabilities and kin of the jury"); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 815 (E.D. Va. 2011).  ████████████

5

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████    Ex. 10, Lamb Dep. 20:25–22:25, 71:13–74:4, 78:25–82:25, 209:18–218:22.  But

Lamb's subjective interpretation of these communications is not expert testimony.

Plaintiffs say in response that it is within Lamb's purview "to consider the conduct and

communications" relevant to his qualitative analysis, Opp. at 10, but that is not what Lamb did.

███████████████████████████████████████████████████████████

█████████████████████████████████    Ex. 10, Lamb Dep. at 83:2–18.    █████████████████████

█████████████████████████████████████████    Ex. 6,  Hachigian  IMD  Dep.

166:20–167:7; Ex. 15 Lynch IMD Dep. 172:7–173:10, 187:23–188:9.    █████████████████

████████████████████████████████████    Ex. 11, Lamb Dep. Ex. 5 (JW-SEC-01083438).    ██

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████    ██████████████████████████████████████

█████████████████████████████████████████    Ex. 2, Lamb Rpt. ¶ 70.    ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████    Ex. 10,

Lamb Dep. 97:2–12, 99:10–100:7, 119:25–120:14, 131:9–132:14.  In short,    ██████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

Plaintiffs claim these flaws in Lamb's testimony go to its weight rather than admissibility.

Opp. at 11–13.  Not so.    ████████████████████████████████████████

6

██████████████████████████████████████████████████

████████████████████████ [2] That is not expert testimony. *Slaby*, 2013 WL 12147698,

at *2 (excluding expert opinions "not based on sufficient scientific, technical or specialized

knowledge but rather subjective assessments, opinions and arguments concerning whether the

facts of the case prove" plaintiff's case); *Zellars v. NexTech N.E., LLC*, 895 F. Supp. 2d 734, 741

(E.D. Va. 2012); *Holmes v. Wing Enterprises, Inc.*, WL 1809985, at *7 (E.D. Va. June 23, 2009).

### B.    Lamb Improperly Opines On JELD-WEN's "Intent To Collude"

As Defendants' Opening Brief explained, Lamb improperly opined on JELD-WEN's intent

to collude.  Op. Br. 16–17.  In response, Plaintiffs claim Lamb merely opined on whether certain

conduct and communications were "consistent with anticompetitive conduct."  Opp. at 14.  ████

██████████████████████████████████████████████████ Ex. 2, Lamb

Rpt. ¶ 32 ████████████████████████████████████████

██████████████████████████████████████ Plaintiffs cannot

simply ignore the second half of that sentence.  JELD-WEN's state of mind, knowledge, and intent

"are not appropriate subjects of expert testimony because opinions on these matters will not assist

the jury."  *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 611 (S.D. W. Va. 2013); *see also Eghnayem*

*v. Boston Sci. Corp.*, 57 F. Supp. 3d 658, 699 (S.D. W. Va. 2014).  Lamb's opinions regarding

these subjects should be excluded.

---

[2]    Plaintiffs' citation to *In re: Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 484 (D.S.C. 2016), is perplexing because the court excluded multiple experts for, among other reasons, "analytical gaps," "logical inconsistencies," and general unreliability.  Similarly, *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 266 (4th Cir. 1999) is inapposite because there, unlike here, the expert actually considered and excluded alternative theories.

**C.      Lamb's Analysis Of The Structure Of The IMD And Doorskins Markets And Parallel IMD Price Increase Announcements Is Incomplete**

As Defendants' Opening Brief explained, Lamb's analysis of the structure of the IMD and doorskins markets and parallel IMD price increase announcements suffers from his failure to conduct a complete analysis of those markets and his failure to consider readily observable facts. Plaintiffs have no real response. They instead argue that Lamb's *ipse dixit* opinions were necessary to put his conclusions in context. Opp. at 14–15. But Lamb's unreliable narration of his view of the facts should be excluded. *Colonna Shipyard, Inc. v. United States*, 2015 WL 13047569, at *2 (E.D. Va. July 30, 2015) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013).

**1.      Lamb Failed To Consider Important Factors Undermining His Conclusions**

Lamb's analysis of the structure of the IMD and doorskins markets, ███████████ ███████████████████████████████████████████, is fundamentally flawed. His failure to consider readily observable characteristics of those markets renders his analysis unreliable, and Plaintiffs' defenses of Lamb's oversights are unavailing.

████████████████████████████████████

████████████████████████████████████

██████████████████████████████ Op. Br. at 18. ████████

████████████████████████████████████

████████████████████████████████████

█████████████████ Opp. at 15–16. ████████

████████████████████████████████████

Ex. 3, Johnson Rpt. ¶ 71. ████████████████████████

8

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Opp. at 16. ███████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████ Ex. 10,

Lamb Dep. 167:7–9, ████████████████████████████████████████████████

██████████████████████████████. *See* Section III.A.

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████ There is no allegation that value-added products were the subject of a price-fixing

conspiracy. Plaintiffs do not say otherwise; indeed, ██████████████████████████████████

█████████████████████████████████████ Opp. at 16. ███████████████

██████████████████████████████████████████████ ██████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████ Ex. B, Johnson Dep. 110:20–112:2. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Plaintiffs cannot

defend that failure. ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████ Opp. at 16. That misses the point. █████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 3, Johnson Rpt. ¶ 71. ██████████████

███████████████████████████████████████████████████████████████████

9

**2. Lamb's Analysis Of Parallel IMD Price Increase Announcements Disregards Key Facts**

Lamb's analysis of JELD-WEN's and Masonite's alleged parallel IMD price increase announcements is also unreliable in several respects.

***First***, as the Opening Brief discussed, ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

Op. Br. at 19. Plaintiffs cannot dispute that, so they manipulate the data. Plaintiffs argue that the "proper time period" to compare to the alleged conspiracy period should be 2010 to 2014 instead of 2012 to 2014. But that is no answer at all. ***Everyone including Plaintiffs and Lamb agrees*** that JELD-WEN's IMD price increase announcements from 2012 to March 2014 were not coordinated with Masonite. ████████████████████████████████████████ ████████████████████████. ██████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████. He does not have one.

***Second***, the Opening Brief also pointed out that ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████ Op. Br. at 20. Plaintiffs' opposition brief claims that Steves just had to follow along or else risk a price war. Opp. at 17. ██████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████.

Oligopoly firms can rationally avoid price wars by following a competitor's pricing upward, and

this is true of JELD-WEN and Masonite no less than Steves.

***Third***, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████. █

████████████████████████████████████████████████

████████████████████ Ex. 5, Lamb Reply Rpt. ¶ 31. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ *Id.* at 17. ████████████████

████████████████████████████████████████████████

████ Ex. 10, Lamb Dep. 309:11–20, 311:5–17. ████████████

████████████████████████████████████████████████

████████████████ Ex. A, Lamb Dep. 154:20–156:5 ████████████

████████████████████████. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████. It is

inadmissible guesswork.

***Finally***, ████████████████████████████████████

██████████████████████████. In response, ████████████████

████████████████████████████████████████████████

████████████████████ Opp. at 18. But as described in Section III.A., that is not what

Lamb's regression measured at all. ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████    ██████████████

███████████████████████████████████████████████████████

█████████████████████████  Ex. 10, Lamb Dep. 353:3–24.  Accordingly, Plaintiffs cannot

use the regression to make up for ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████.

The regression does not consider that either.

For all those reasons, Lamb's qualitative analysis should be excluded.

## III.    LAMB'S REGRESSION ANALYSIS IS IRRELEVANT AND UNRELIABLE

Lamb's regression analysis is not admissible.  As explained in the Opening Brief, expert

opinions must be excluded when they "manifestly do not fit the facts of the case," *General Elec.*

*Co. v. Joiner*, 522, U.S. 136, 152 (1997), and expert testimony must be "relevant to the task at

hand," *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (quoting *Daubert v. Merrill*

*Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  Plaintiffs have no legitimate explanation for

█████████████████████████████████████████████████.  Nor can they

explain away the glaring problem with Lamb's analysis:  █████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████  An overcharge founded on unreliable

methodologies and a gerrymandered regression is worthless.  Lamb's analysis should be excluded.

### A.    Lamb's Overcharge Analysis Disregards Plaintiffs' Allegations And Fails To Study Doorskins Or IMDs

Lamb's regression analysis does not measure the things relevant to this case.  ███████

████████████████████████████  Op. Br. at 23; Ex. 3, Johnson Rpt. ¶ 99.  █████

12



Op. Br. at 24; Ex. 10, Lamb Dep. 307:10–18.

Op. Br. at 24–26; Ex. 3, Johnson Rpt. ¶ 87.   That unhelpful

analysis does not fit the facts of this case and should be excluded.

*First*, ████████████████████████.   Plaintiffs cannot

deny that their own submissions to this Court repeatedly state that, "***Beginning in 2012***, Jeld-Wen

Has Been Engaging in Anticompetitive Conduct." *See* Am. Compl., Section I.A (emphasis added);

*see also* Dkt. 86 at 4 (similar); Dkt. 121 at 4 (similar).

. Opp. at 19–21.

Ex. 3, Johnson Rpt. ¶ 99.

In an attempt to salvage Lamb's opinions, Plaintiffs seek to reframe their own allegations.

They claim that the complaint actually alleges that JELD-WEN's anticompetitive conduct began

in 2014, when Hachigian was named CEO.  Opp. at 20–21.  But that is not consistent with the

numerous filings that expressly argue that such anticompetitive conduct began in 2012.  *See* Am.

Compl., Section I.A; Dkt. 86 at 4; Dkt. 121 at 4.

Ex. 3, Johnson

Rpt. ¶ 99.  This sort of "[r]esult-driven analysis" is inappropriate, "undermines principles of the

scientific method and is a quintessential example of applying methodologies (valid or otherwise)

in an unreliable fashion."  *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod.*

*Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 634 (4th Cir. 2018).  Lamb's analysis does not fit

13

the facts of the case and should be excluded.

**Second**, despite Plaintiffs' allegations that they were injured when corrective disclosures about a doorskins lawsuit revealed fraudulently-concealed anticompetitive conduct in that market, ███████████████████████████████████████████████. Plaintiffs' response is that Lamb was not "required to perform an econometric regression analysis . . . with respect to doorskins." Opp. at 22. That is no response at all. Plaintiffs may believe that Lamb was not required to offer an opinion about the actual allegations in this case; but neither is the Court required to admit into evidence a regression analysis that does not bear on those allegations.

In any event, Plaintiffs' own opposition brief underscores why Lamb's regression should have focused on doorskins. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Opp. at 9, 16, 18. Those tactical retreats recognize that qualitative analysis alone is insufficient to show the existence of anticompetitive conduct as Lamb has defined it—or at least that an econometric regression bears on those qualitative findings. *Nease*, 848 F.3d at 232 (excluding expert testimony that "presented a hypothesis only" and "failed to validate it with testing"). Yet, ████████████████████████████████████████████████████████. Instead, he hurriedly prepared a facsimile of his previous opinion on IMDs in a different case involving JELD-WEN, without considering the factual differences between them. ████████████████████████████████████████████ discussed in the corrective disclosures will not aid the jury in **this** case.

**Third**, ████████████████████████████████████████████████████████████. Plaintiffs have no choice but to concede this, ████████████████████████████████████████

14

████████████. Instead, he relied on something called ████████████ ████████████████████████████████████████████. Opp. at 22–24. Plaintiffs argue that the Wood Door PPI is good enough for this case because according to a JELD-WEN document "IMDs represent over 70% of Jeld-Wen's sales of doors by unit and 50% of door sales by value and that, according to the Company's own internal analyses, IMDs accounted for approximately 67% of the door slabs produced annually." Opp. at 23. Plaintiffs therefore argue that "the Wood Door PPI *primarily* measures the prices of IMDs, which renders it as a reliable measure to show Jeld-Wen's anticompetitive behavior with respect to doorskins and IMDs." Opp. at 23 (emphasis added).

Plaintiffs' argument is meritless but remarkable. Quite obviously, there is no force to Plaintiffs' suggestion that, because IMDs are the majority of wood doors, Wood Door PPI is therefore "a reliable measure . . . with respect to *doorskins*." *Id.* (emphasis added). Not even Lamb thinks that. ████████████████████████████████████ ████████████████ Ex. 10, Lamb Dep. 307:10–18, ████████████████████ ██████████████████████████████████. ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ Ex. 3, Johnson Rpt. ¶ 85. Thus, Plaintiffs' argument highlights the precise danger posed by admitting Lamb's regressions: ████████████████████████████████████████████ ████████████████████████████████████████████.

15

In any case, Plaintiffs cannot dismiss the difference between IMD prices and the Wood Door PPI by saying the two things are ***mostly*** the same thing—anecdotally, 67%.  Opp. at 23.  It is the whole function of econometrics to account for such marginal differences, not simply to assume them away.  A regression analysis is a mathematical way to determine what variables have an effect on the phenomenon one is attempting to study.  *See, e.g.*, *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999) ("Multiple regression analysis is a statistical technique designed to determine the effect that two or more explanatory independent variables have on a single dependent variable." (citing Daniel L. Rubinfeld, Reference Guide on Multiple  Regression, Reference Manual on Scientific Evidence at 419 (Federal Judicial Center 1994))).  For Lamb's regression analysis to be valid, it must control for the differences between IMDs and the other ten products included in the Wood Door PPI.

███████████████████████████████████████████████████

█████████████████████████████████████ Ex. 3, Johnson  Rpt. ████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████ *Id.*

Plaintiffs respond that Lamb "used cost and demand control variables that controlled for any price movements in non-IMD wood doors that are also largely manufactured from identical cost inputs as IMDs and derive their demand from the exact same source as IMDs."  Opp. at 23–24.  Here again, the word "largely" does all the work, and it is not based on any scientific inquiry.  ██████

███████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 5,

Lamb Reply Rpt. ¶ 64; Ex. 10, Lamb Dep. 224:25–225:3, 226:5–22.  Plaintiffs meekly reply that the remaining 87% of the costs are the same, Opp. at 22–23, but they cannot say those remaining

cost inputs are combined *in the same proportions* in constructing IMDs versus other kinds of doors. ████████████████████████████████████████████████████

*See* Ex. 5, Lamb Reply Rpt. ¶ 64; Ex. 10, Lamb Dep. 224:25–225:3; Opp. at 22–23. ██████████

████████████████████████████████████████ Ex. 2, Lamb Rpt. ¶ 102 (emphasis added), and his regression analysis does not do that.  It should be excluded.[3]

## B.    Lamb's Regressions Are Inconsistent And Methodologically Unreliable

To be admissible, expert opinions must be "reliably applied . . . to the facts of the case." Fed. R. Evid. 702.  Lamb's regression analysis is not. ████████████████████████████

████████████████████████████████████████.  The regression analyses in Lamb's reply report prove only that his model is unstable and unreliable.

### 1.    Lamb's Regressions Are Inconsistent

Methodological inconsistencies between Lamb's regression analysis in the IMD litigation and his regression analysis here—both of which concerned the same industry, same conduct, same time period, same participants, ████████████████████████████████

████████████████ Op. Br. at 27–28.  And when the methodologies Lamb used in the IMD litigation are applied here, ██████████████████████ *Id.* at 27.

Plaintiffs' defenses of Lamb's flawed model, Opp. at 24–25, cannot rescue his testimony. In response to the criticism that Lamb failed to adjust IMD prices for lagged demand and cost effects, Plaintiffs claim that adjusting the prices was unnecessary because "the demand variables in [Lamb's opening report] are seasonally adjusted whereas the demand variables in the [Lamb's IMD report] were not."  *Id.* at 25.  But demand changes can be both *seasonal* (varying with the

---

[3]    Plaintiffs argue that "Dr. Johnson failed to perform any analysis whatsoever to establish that the cost measure Dr. Lamb used was unreliable."  Opp. at 23.  But as a rebuttal expert, Johnson can identify flaws in Lamb's analysis without performing his own analysis.  *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011).

time of the year) and ***lagged*** (having a delayed effect on prices charged by manufacturers).

████████ Op. Br. at 28; Ex. 9, 3/4/20 Lamb IMD Dep. 273:6–274:11. ████████

████████ Ex. 3, Johnson Rpt. ¶¶ 93, 95. ████████

████████ Ex. 3, Johnson Rpt. ¶ 96.  Seasonal variation has nothing to do with that.

In response, Plaintiffs attempt to argue that Johnson's reconstruction of Lamb's demand and cost variables was incomplete, since Johnson adds back only some of the controls that Lamb utilized in the IMD litigation.  Opp. at 25.  That is a red herring. ████████

████ Ex. 7, Johnson Dep. 23:23–24:7.  Either demand for IMDs has a delayed effect on price or it does not; ████████████████████.

### 2.    Lamb's Model Is Unreliable

████████ Ex. 5, Lamb Reply Rpt. ¶¶ 74–76.  These

new variables demonstrate the instability and unreliability of Lamb's model.  Op. Br. at 28–30.[4]

　　　*First*, as the Opening Brief demonstrated, ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████  Op. Br. at 28–29.  Plaintiffs ask the Court to quickly move on from that problem, arguing

in a conclusory fashion that "it is unremarkable that a control variable might react differently when

applied to different data and volumes."  Opp. at 27.  Such hand-waving cannot help them.

Mortgage rates cannot have both a positive and negative effect on the price of IMDs.  ████████

███████████████████████████████████████████████████████

██████████████████.  Recognizing the inherent instability of Lamb's models, Plaintiffs

claim that these flaws go to credibility and are insufficient to exclude Lamb's regressions.  Opp.

at 27.  Not so.  Methodological unreliability is proper grounds to exclude an expert.  Fed. R. Evid.

702; *Limelight Networks Inc. v. XO Commc'ns, LLC*, 2018 WL 678245, at *1 (E.D. Va. Feb. 2,

2018) ("Under [Rule] 702, an expert must base his testimony on sufficient facts, use reliable

principles and methods, and reliably apply the principles and methods to the facts of the case.");

*In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858 F.3d 787, 795–97 (3d Cir. 2017).[5]

　　　*Second*, as Plaintiffs' own opposition brief demonstrates, Lamb's inclusion of a new

---

[4]　So too do Lamb's ever-shifting results.  In the IMD litigation, ██████████████████
████████████.  Opp. at 25.  ██████████████████████████████
　　　　　　　　　　　　　　　　　　*Id.*██████████████████████
████████████  Ex. 5, Lamb Reply Rpt. at 48, Table 3.  Lamb is simply searching for an overcharge of any kind and is willing to alter methodologies and techniques to do so.

[5]　Accordingly, Plaintiffs' reliance on *Coleman v. Tyson Farms, Inc*., 2011 WL 1833301, at *3 (E.D. Va. Apr. 13, 2011), and their argument that expert assumptions goes to weight and not admissibility, are misplaced.

control variable for the "Pre-CMI Period" shows the unreliability of his model. Plaintiffs argue that "the pre-CMI period control variable was necessary for his development of a robust and reliable regression model that accounts and controls for the macroeconomic and microeconomic conditions impacting the market during the January 2010–September 2012 part of the benchmark period." Opp. at 28. Yet Plaintiffs offer no explanation for why this "necessary" variable was not included in the model in Lamb's original report in this action. ██████████████████████

██████████████████████████████████████████████████████████████

Ex. A, Lamb Dep. at 344:4–24. So if indeed the pre-CMI variable is "necessary" for a "robust and reliable" model, ████████████████████████████████████████.[6]

In short, Lamb's regression analysis is unreliable and internally inconsistent. It cannot help the jury and should be excluded.

## CONCLUSION

The Court should exclude Lamb's opinions.

---

[6]    However in-the-weeds it may seem, the detail of the Pre-CMI Period variable is telling. █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████ That is, of course what the Steves litigation, and the corrective disclosures in this case, are supposedly about. ███████████ █████████████████████████████████████████████████████████████ ████████████████████████.

March 26, 2021

Respectfully submitted,

JELD-WEN Holding, Inc.
By counsel
*/s/ Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
Brian E. Pumphrey (VSB #47312)
Brian D. Schmalzbach (VSB #88544)
Garrett H. Hooe (VSB #83983)
MCGUIREWOODS, LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com
ghooe@mcguirewoods.com

Sandra Goldstein (*pro hac vice*)
Rachel Fritzler (*pro hac vice*)
Lindsey Weiss Harris (*pro hac vice*)
Jeehyeon Jenny Lee (*pro hac vice*)
Jacob Rae (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
lindsey.harris@kirkland.com
jenny.lee@kirkland.com
jacob.rae@kirkland.com

Matthew S. Owen (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 389-5000
Fax: (202) 389-5200
matt.owen@kirkland.com

*Attorneys for Defendants JELD-WEN
Holding, Inc., Mark A. Beck, L. Brooks
Mallard, Kirk S. Hachigian, and
Gary S. Michel*

21

**CERTIFICATE OF SERVICE**

I certify that on the 26th day of March, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to the following counsel of record in this case.

/s/ Brian C. Riopelle
Brian C. Riopelle (Va. Bar No. 36454)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax: (804) 698-2150
briopelle@mcguirewoods.com

22