**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112-JAG<br><br>Judge John A. Gibney, Jr. |

**THE JELD-WEN DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD BY THE JELD-WEN DEFENDANTS AS PRIVILEGED**

Defendants JELD-WEN Holding, Inc., Mark A. Beck, L. Brooks Mallard, Kirk S. Hachigian, and Gary S. Michel ("JELD-WEN Defendants"), oppose Plaintiffs' Motion to Compel ("Motion"). The JELD-WEN Defendants have significantly narrowed the scope of documents at issue—only 505, down from 2,986. Those remaining documents over which the JELD-WEN Defendants claim privilege merit protection from Plaintiffs' Motion. As discussed in greater detail using several examples below, Plaintiffs' "public disclosure" and "business document" arguments are inapplicable to these materials. Indeed, in some instances, Plaintiffs' case law actually supports the JELD-WEN Defendants' privilege claims. Should Plaintiffs continue to seek production of these remaining 505 documents, this Court should deny their Motion.

**BACKGROUND**

The JELD-WEN Defendants complied with this Court's order to provide Plaintiffs with a privilege log by March 19, 2021, identifying every email in a chain with a separate entry. (*See* Doc. 187 at 5 (explaining Plaintiffs' privilege log requests); Doc. 190 (order concerning production of privilege log to Plaintiffs).) That privilege log contained 4,457 entries.

The volume of documents is large for three reasons. First, Plaintiffs insisted that the JELD-WEN Defendants log every individual email for a particular chain as privileged. For example, an

email thread with twenty responses would be listed twenty times, not just once. The same is true where JELD-WEN redacted content on an individual message: Plaintiffs requested that the JELD-WEN Defendants include each and every email in the chain on the privilege log. Under other commonly used privilege log parameters, these communications would be logged only once.

Second, the JELD-WEN Defendants erred on the side of preserving privilege in the first instance, owing to the quick pace of discovery, the number of documents produced, and the myriad other phases of this litigation occurring concurrently with these efforts over the last two months— in excess of twenty depositions, contested class certification, other discovery disputes, and multiple *Daubert* motions. (*See* Doc. 112 (scheduling order); 120, 134 (motion for class certification and response in opposition to same); 183 (expedited hearing on discovery issues); 159, 165, 169, 171 (*Daubert* motions).) Plaintiffs—who confirmed that they have *no* privileged documents and therefore would not produce a privilege log—did not bear a similar burden.

Third, the allegations in this case involve, in part, the JELD-WEN Defendants' knowledge of and representations in connection with the *Steves* lawsuit. Given inside and outside counsel's involvement in the *Steves* case, the protections asserted here are more numerous than would be a typical case that is not fundamentally tied to another litigation.

On March 24, 2021, a few days before discovery closed, Plaintiffs requested an afternoon meet-and-confer to discuss their objections to 2,986 documents on the privilege log. The parties met and conferred on March 26, 2021. In light of the meet-and-confer, the JELD-WEN Defendants re-reviewed the challenged documents. On Monday, March 29, the JELD-WEN Defendants produced 949 of the 2,986 challenged documents to Plaintiffs. Similarly, on Monday, April 5, the JELD-WEN Defendants downgraded and produced an additional 1,532 documents as "not

2

privileged."  So the parties have resolved the dispute as to 2,481 of the 2,986[1] documents over which they have met and conferred.  The JELD-WEN Defendants have mooted all documents categorized by Plaintiffs as "media relations," "press interview," "customer relations," and "competition."  (*See* Doc. 239 at 15-16, 20-21.)  On March 29, 2021, Plaintiffs filed the instant motion to compel, seeking production of all of these documents.  (Doc. 238, 239.)

This leaves 505 documents remaining in dispute, which Plaintiffs categorize as "investor relations or investor communications," "SEC filings," "regulatory disclosures," "public relations," "press releases," "analyst communications," "pricing practices," "financial or accounting matters," "business," and "contract."  (*Id.* at 11-22.)  The JELD-WEN Defendants are submitting an updated privilege log as *In camera* Exhibit 1 (which they provided to Plaintiffs on April 5, 2021, and which contains the documents that remain in dispute for each category assigned by Plaintiffs) ("Privilege Log"), and will have all of these documents available for *in camera* review at the April 22, 2021 hearing on this Motion.

**ARGUMENT**

I.      **The JELD-WEN Defendants' Privilege Log complies with federal requirements.**

Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party, when withholding information on grounds of privilege, expressly make such a claim and describe the nature of documents and communications not produced or disclosed without revealing information that is privileged or protected.  The description allows other parties to assess the claim.  *Id.*  In a footnote, Plaintiffs state that the JELD-WEN Defendants' privilege description is "entirely too repetitive and vague, [and] mak[es] it difficult for Plaintiffs to understand what is being withheld."  (Doc.

---

[1] The JELD-WEN Defendants downgraded Exhibits B, C, and D to Plaintiffs' Memorandum in Support of their Motion to Compel.  (*See* Docs. 240-2, 240-3, 240-4.)

3

239 at 9 n.5; *see also id.* at 9 (quoting *Maxtena, Inc. v. Marks*, 2014 WL 11462793, at *3 (D. Md. July 15, 2014) and *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 418 (D. Md. 2005)).)

But Plaintiffs know what is being withheld; indeed, they were able to come up with two categories and fourteen subcategories of documents to describe these materials in their Motion. Further, *Maxtena* and *Neuberger* are not similar to this case. In *Maxtena*, the defendant listed all 1,752 documents on his laptop as privileged using the same description, noting that the information in the "name" and "path" columns revealed the information to be privileged. 2014 WL 11462793, at *2–3. The district court held that this approach was too generic and inadequate. *Id.* That is not the case here, as a review of the Privilege Log reveals. And in *Neuberger*, the court noted that the initial privilege log was deficient because "[f]or each document withheld, the privilege asserted was 'Attorney/Client Work Product,'" and the "description of the document and the mere identification of the names of the parties to the communication did not 'enable [plaintiff] to assess the applicability of the privilege.'" 230 F.R.D. at 406. Plaintiffs can and have assessed the applicability of the privilege in this case, as their arguments and authorities in their Memorandum in Support of the Motion attest.

The Privilege Log is clear and compliant with the Rules. It contains detailed information regarding the names of individuals involved in communications, whether they are a lawyer for JELD-WEN (like its General Counsel at the time, Laura Doerre), the date of communications, the privilege assertion, a description of the basis for the privilege (which, again, Plaintiffs used in challenging over half of the entries on the privilege log), and the legal source from which the privilege arises. *See ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 252 (E.D. Va. 2012), *enforcement granted in part, denied in part*, No. 3:09CV620, 2012 WL 6562735 (E.D. Va. Dec.

14, 2012) (holding that descriptions such as "draft customer letter in anticipation of litigation drafted with assistance from Bruce McPheeters" were "enough to permit assessment of the claim of privilege and to support it"); *see also Adair v. EQT Prod. Co.*, 285 F.R.D. 376, 381 (W.D. Va. 2012) (explaining that descriptions on privilege logs that "clearly state that the documents relate to the giving or receiving of legal advice" do not waive the privilege—"[f]or instance, [an entry], which . . . states: 'Requesting Legal Opinion on Mineral Rights Classification'"); *compare In camera* Exhibit 1 at 2 (listing as description for privilege, "email chain providing information to counsel for the purpose of obtaining legal advice regarding potential business relationship.").

Plaintiffs' complaints about the privilege descriptions being "repetitive" and "vague" should fall on deaf ears.

## II.     Plaintiffs' "public disclosure" argument paints with too broad a brush.

Plaintiffs are exactly right: "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege." (Doc. 239 at 11 (quoting *In re Grand Jury Procs. v. Under Seal*, 33 F.3d 342, 354 (4th Cir. 1994)).) But the documents on the Privilege Log that Plaintiffs believe were later disseminated to the public contain legal advice that was *not* communicated with the understanding that it would be revealed to others, or that was revealed to others in any case.

For example, MALLBRO_11450_00001515 is described as an "email providing legal advice regarding ongoing litigation" that Plaintiffs listed in their "investor relations" category. (*In camera* Ex. 2.) While there is reference to a communications plan, this email does not contain any information that was ultimately communicated to the public. In fact, it contains specific discussion points about counsel's advice on the legal viability of certain motions, the consequences of various

5

decisions on those motions, JELD-WEN's internal strategy following rulings on those motions, and the status of ongoing legal research related to the litigation.  None of this information was provided in any investor relations or related disclosure materials.

LINKJOH_11450_00007452 is also privileged.  (*In camera* Ex. 3.)  The description reads, "email chain providing legal advice regarding ongoing litigation."  (*In camera* Ex. 1 at 13.)  That is precisely what the document contains: JELD-WEN's in-house counsel's insight into the verdict in favor of JELD-WEN for its trade secrets claims against Steves, including fee consequences, the future course of litigation between the parties, and Ms. Doerre's communication of legally significant developments during closing arguments.  JELD-WEN never made any of these opinions public or otherwise used the information in investor relations materials.

As part of their re-review, the JELD-WEN Defendants also took the least restrictive measures to ensure they preserved their privilege claims.  MALLBRO_11450_00040982 is described as an e-mail chain providing legal advice regarding draft investor relation materials and SEC disclosure requirements.  (*In camera* Ex. 1 at 19.)  The redacted version removes information the JELD-WEN Defendants claim as privileged.  (Ex. 1.)  As *in camera* Exhibit 4 shows, JELD-WEN's in-house counsel is providing legal advice in response to an inquiry from JELD-WEN management concerning whether JELD-WEN is obligated to take certain regulatory action in response to developments in the *Steves* litigation.  This legal advice is unrelated to any press release, and does not contain content that was ever publicly disclosed.

Finally, MICHGAR_11450_00008452 is properly protected.  (*In camera* Ex. 5.)  It is described as an email chain seeking/requesting legal advice regarding analyst communications. (*In camera* Ex. 1 at 25.)  The privileged content in this email is not reflected on any analyst communication itself—as Plaintiffs contend—but instead concerns advice from JELD-WEN's in-

house counsel concerning *removal* of information from a document related to those communications.  (*In camera* Ex. 5.)  As a result, that content was not shared outside of JELD-WEN.  Cumulatively, these examples show that the remaining disputed documents do not contain publicly disclosed information, as the JELD-WEN Defendants will be prepared to discuss for any document at the hearing on this Motion.

That the privileged information was not revealed to others distinguishes these documents from those in *In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1984) and *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 437 (D. Md. 2005), cited by Plaintiffs (Doc. 239 at 12.) In *In re Grand Jury Proceedings*, "[t]he significant fact is that the information given the petitioner was to assist in preparing [a prospectus] which was to be published to others and was not intended to be kept in confidence."  727 F.2d at 1358.  The examples above, in contrast, included JELD-WEN's in-house counsel and were not communicated to others.   And the substance and information conveyed in these materials were not "offensively . . . disclosed" to the public, unlike in *In re Royal Ahold*.  230 F.R.D. at 437.  Similarly, JELD-WEN has "taken steps to preserve the confidentiality of its opinion work product" sufficient to protect those materials, also unlike in *In re Royal Ahold*.  *Id.* at 438.

For these reasons, the documents Plaintiffs categorize as based in "public disclosure" and over which the JELD-WEN Defendants maintain their privilege claims are properly protected.

**III.    Plaintiffs' "business documents" argument rests on cases with facts distinguishable from those here, and the disputed materials are privileged in any event.**

The documents challenged by Plaintiffs do not involve situations where "legal advice is merely incidental to business advice." (Doc. 239 at 17 (quotation and citation omitted).)  In *United States v. Cohn*, 303 F. Supp. 2d 672, 683-84 (D. Md. 2003), for example, the district court explained that an attorney's review of telemarketing scripts was for a business purpose, not legal,

in part because the telemarketing representatives strayed from the legal advice contained in the provided scripts—and the attorney and management were aware of this fact. *Id.* at 684.

Here, however, as illustrated by *in camera* Exhibit 6, MICHGAR_11450_00001854 and -1855, JELD-WEN management is following the legal advice sought from and provided by its counsel with respect to settlement discussions. So, this is not an example of a situation where legal advice is incidental to business advice—rather, it is squarely legal advice (in this instance, the acceptable parameters of a settlement agreement with Steves). *See Krueger v. Ameriprise Fin., Inc., LLC*, No. CV 11-2781 (SRN/JSM), 2014 WL 12597432, at *10 (D. Minn. May 7, 2014) ("For the attorney-client privilege to apply, the legal advice must predominate over the business advice").

Plaintiffs' other authorities do not support their argument. In *Ledo Pizza Sys., Inc. v. Ledo Rest., Inc.,* 2007 WL 9780683, at *3 (D. Md. Apr. 26, 2007), the evidence did not support the plaintiffs' assertion of an attorney-client relationship because the attorney had "not entered his appearance to represent Plaintiffs in th[e] litigation," and he testified that a different attorney was "general counsel to the firm and perform[ed] services as needed" and that "he was not retained personally to represent Plaintiffs in this matter." In other words, no attorney-client relationship existed between the plaintiffs and the attorney, and the attorney was not acting in a legal capacity in any event. *Id.* at *3–4.

By contrast, Plaintiffs do not challenge the existence of an attorney-client relationship here. Moreover, a sample from the Privilege Log shows that the facts from *Ledo* do not apply. *In camera* Exhibit 7, MALLBRO_11450_00025048, is from Andrew Rink, in-house counsel for JELD-WEN. The description for this document on *in camera* Exhibit 1 reads, "email chain providing information to counsel for the purpose of obtaining legal advice regarding pricing practices." (*In*

8

*camera* Ex. 1 at 6.)  Specifically, Mr. Rink informs Ms. Doerre and JELD-WEN management about the legal implications of certain production and price-related developments in JELD-WEN's doorskin business.  (*In camera* Ex. 7.)  Like other protected materials, this correspondence clearly bears the label, "attorney-client privileged information," because it is a communication intended to solicit legal advice with respect to contracts executed by JELD-WEN.  (*Id.*)  Moreover, Mr. Rink is obviously acting in his capacity as an attorney for JELD-WEN.  *In camera* Exhibit 7 is privileged.

Plaintiffs' other authorities on this topic also miss the mark.  In *Neuberger*, the attorney/advisor at issue acknowledged that he acted as officer or director for the various entities, and also "functioned like an 'in-house counsel' to the entities."  230 F.R.D. at 411.  Whereas here, neither Ms. Doerre or Mr. Rink held multiple roles as a legal advisor, director, or officer of JELD-WEN.  And unlike in *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 293-94 (D.D.C. 2000), the primary purpose of the communication in *in camera* Exhibit 7 is not terminating an employee, but instead the provision of legal advice related to contractual commitments and then-present market conditions affecting JELD-WEN's doorskin business.  *Compare id.* with *in camera* Ex. 7.  Simply put, and with respect to the 505 documents remaining at issue, the facts in Plaintiffs' cases do not match those here.

Plaintiffs actually provide authority supporting the JELD-WEN Defendants' argument.  (*See* Doc. 239 at 17 (citing *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993)).)  In *Great Plains*, the court held that the information at issue *was* protected.  *Id.*  It explained that the protected material "appear[s] to directly relate to legal advice rendered by [the company's] attorney in his capacity as legal advisor."  *Id.*  "While it is possible that the advice rendered by Great Plains' attorney could conceivably affect Great Plains' success

(or failure) as an ongoing entity, this possibility does not convert the legal advice rendered by its attorney into discoverable 'business advice'—such a construction of the attorney-client privilege would eviscerate the privilege and essentially render it a nullity in this factual context." *Id.* Here, the information reflected in *in camera* Exhibit 7 directly relates to legal advice stemming from production and market constraints in the doorskin sector. While that communication could affect JELD-WEN's business, it does not mean that the communication is not privileged.

Finally, Plaintiffs overreach in asserting that, based on the *Steves* outcome, pricing documents are not privileged because of the crime fraud exception to the attorney client privilege. (Doc. 239 at 18-19.) "The crime-fraud exception to the attorney-client privilege provides that otherwise privileged attorney-client communications made 'for the purpose of committing or furthering a crime or fraud' are not protected." *Navient Solutions, LLC v. Law Offices of Jeffrey Lohman*, No. 1:19-cv-461, 2020 WL 1917837, at *4 (E.D. Va. Apr. 20, 2020) (quoting *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 n.15 (4th Cir. 2019)).

Importantly, *Steves did not concern an antitrust ruling on pricing practices.* It was a case, in relevant part here and as Plaintiffs should know (given the *Steves* rulings form the basis for the instant lawsuit), about claims (1) specific to the contract between Steves and JELD-WEN and (2) the CMI merger, a "'transaction [that led] to *undue concentration in the American doorskin market.*" *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 704 (4th Cir. 2021) (emphasis added); *see id.* at 702 ("The [Clayton] Act forbids mergers whose effect may be substantially to lessen competition'") (internal quotations omitted). Plaintiffs' careless conflation of what was at issue in *Steves* to JELD-WEN's enterprise-wide pricing practices does not effect the crime fraud exception here.

Once again, Plaintiffs' authorities actually go the other way. (*See* Doc. 239 at 18 (citing *In re Grand Jury Procs. #5 Empaneled Jan. 28, 2004 v. Under Seal*, 401 F.3d 247, 251 (4th Cir. 2005)).) In *In re Grand Jury Procs. #5*, the Fourth Circuit vacated the district court's ruling and remanded so that the district court could examine whether the allegedly privileged communications fell under the crime-fraud exception. 401 F.3d at 256. In doing so, the Fourth Circuit stated that it was "unclear" whether the communications bore a close relationship to the client's fraudulent scheme because while "the attorney was present at meetings in which the alleged criminal conduct could have been discussed," the evidence was "not persuasive." *Id.* Similarly, in this case, Plaintiffs have put forth no evidence that JELD-WEN's in-house counsel was present at meetings or participated in any conduct that would make underlying communications subject to the crime fraud exception, even if *Steves* involved a ruling that JELD-WEN's enterprise-wide pricing practices were fraudulent or criminal (it did not). This Court should reject Plaintiffs' argument.

## CONCLUSION

After re-reviewing all 2,986 documents at issue, the JELD-WEN Defendants have resolved challenges to 83% of the materials disputed by Plaintiffs. The volume of "not privileged" downgrades owes to Plaintiffs' demand that the JELD-WEN Defendants log each email in a privileged chain and the complexities of litigating this case on schedule. The 505 documents remaining on the Privilege Log are sufficiently described and contain privileged information under the Federal Rules and case law. This Court should deny Plaintiffs' Motion.

Dated: April 6, 2021                    Respectfully submitted,

                                        /s/ Brian C. Riopelle
                                        Brian C. Riopelle (Va. Bar No. 36454)
                                        Brian E. Pumphrey (Va. Bar No. 47312)
                                        Brian D. Schmalzbach (Va. Bar No. 88544)
                                        Garrett H. Hooe (Va. Bar No. 83983)

11

**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com
ghooe@mcguirewoods.com

Sandra C. Goldstein, P.C. (*pro hac vice*)
Rachel M. Fritzler (*pro hac vice*)
Lindsey Weiss Harris (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
lindsey.harris@kirkland.com
jacob.rae@kirkland.com

*Attorney for Defendants JELD-WEN*
*Holding, Inc., Mark A. Beck, L. Brooks*
*Mallard, Kirk S. Hachigian, and Gary S.*
*Michel*

12

## CERTIFICATE OF SERVICE

I certify that on the 6th day of April, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all

counsel of record in this case.

/s/ Brian C. Riopelle
Brian C. Riopelle (Va. Bar No. 36454)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com

13