UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | |
|---|---|
| In re JELD-WEN HOLDING, INC. SECURITIES LITIGATION | ) ) ) ) |
| | Civil Action No. 3:20-cv-00112-JAG |
| | CLASS ACTION |
| This Document Relates To: | ) ) ) |
| | REDACTED |
| ALL ACTIONS. | ) ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
THE JELD-WEN DEFENDANTS' MOTION TO STRIKE
THE NEW REPORT OF DR. STEVEN FEINSTEIN**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT..........................................................................................................3

    A.    Dr. Feinstein's Supplemental Report Complies with Rule 26(e) ...........................3

    B.    Dr. Feinstein Could Not Have Learned Until March 17, 2021 About the
        Information Contained in Documents the Jeld-Wen Defendants Withheld
        as Privileged.........................................................................................................5

    C.    Plaintiffs and Dr. Feinstein Learned for the First Time on March 9, 2021
        that the Susquehanna Research Note Was Disseminated Widely and Had
        Entered the Public Conversation Concerning Jeld-Wen...........................................6

        1.    Wellington Documents and Testimony Infer Susquehanna
             Research Note Was for Its Private Information...........................................6

        2.    The Susquehanna Research Note Was Buried in a 150,000 Page
             Document Dump Made by the Jeld-Wen Defendants on the Eve of
             Dr. Feinstein's Rebuttal Report Deadline.....................................................7

        3.    The Testimony of Jeld-Wen CFO John Linker Reveals for First
             Time Public Discussion of the Susquehanna Research Note.......................9

        4.    Within Days of Mr. Linker's Deposition, Plaintiffs Informed the
             Jeld-Wen Defendants that Rule 26 Required Dr. Feinstein to
             Supplement His Report ................................................................................11

    D.    The Jeld-Wen Defendants Cannot Show They Are Prejudiced by
        Dr. Feinstein's Supplemental Report....................................................................11

        1.    There Is No Legitimate "Surprise" to Defendants....................................12

        2.    Any "Surprise" Can Be Cured...................................................................14

        3.    Dr. Feinstein's Supplemental Report Will Not Disrupt the Trial..............15

        4.    The Information in Dr. Feinstein's Supplemental Report Is
             Important Evidence of the Jeld-Wen Defendants' Liability to the
             Class...........................................................................................................19

        5.    Plaintiffs' Explanation for the Timing of Dr. Feinstein's
             Supplemental Report Is Reasonable and "Substantially Justifiable".........19

III.  CONCLUSION.....................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Akeva L.L.C. v. Mizuno Corp.*,
212 F.R.D. 306 (M.D.N.C. 2002) ........................................................................................4

*Ash v. Wallenmeyer*,
879 F.2d 272 (7th Cir. 1989) ...........................................................................................17

*BlackRock Eng'rs, Inc. v. Duke Energy Progress, LLC*,
2018 U.S. Dist. LEXIS 159561
(E.D.N.C. Sept. 18, 2018) ................................................................................................19

*Bresler v. Wilmington Tr. Co.*,
855 F.3d 178 (4th Cir. 2017) ..................................................................................... *passim*

*Brownlee v. West Fraser, Inc.*
2015 U.S. Dist. LEXIS 17856
(D.S.C. Feb. 12, 2015) .....................................................................................................16

*Bryant Real Estate, Inc. v. Toll Bros., Inc.*,
106 F. Appx 182 (4th Cir. 2004).......................................................................................17

*Campbell v. United States*,
470 Fed. Appx. 153 (4th Cir. 2012).....................................................................................4

*Dale v. Jordan*,
2018 U.S. Dist. LEXIS 235132
(E.D. Va. May 11, 2018)......................................................................................................4

*Dugger v. Union Carbide Corp.*,
2019 U.S. Dist. LEXIS 171141
(D. Md. Sept. 9, 2019) ..................................................................................................4, 14

*EEOC v. Performance Food Grp., Inc.*,
2018 U.S. Dist. LEXIS 125756
(D. Md. July 27, 2018)......................................................................................................14

*Faulconer v. Centra Health, Inc.*,
808 Fed. Appx. 148 (4th Cir. 2020)..................................................................................16

*Gottesman v. J.H. Batten, Inc.*,
286 F. Supp. 2d 604 (M.D.N.C. 2003) .............................................................................16

*Kinlaw v. Nwaokocha*,
2019 U.S. Dist. LEXIS 90126
(E.D. Va. May 29, 2019)............................................................................................ *passim*

**Page**

*McKiver v. Murphy-Brown LLC*,
  2018 U.S. Dist. LEXIS 64608
  (E.D.N.C. Apr. 17, 2018)...................................................................................................4

*Okoro v. Ocwen Loan Servicing, LLC*,
  2016 U.S. Dist. LEXIS 57053
  (D. Md. Apr. 29, 2016) ....................................................................................................16

*Rockwell Int'l Corp. v. U.S.*,
  127 S. Ct. 1397 (2007)....................................................................................................17

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
  318 F. 3d 592 (4th Cir. 2003) ................................................................................... *passim*

*Scott v. Holz-Her*,
  2007 U.S. Dist. LEXIS 79552
  (W.D. Va. Oct. 26, 2007)..................................................................................................13

*Sharpe v. United States*
  230 F.R.D. 452 (E.D. Va. 2005) ....................................................................................4, 15

*Spencer Spirit Holdings, Inc. v. Sunrise Roofing, Inc.*,
  2020 U.S. Dist. LEXIS 149043
  (W.D.N.C. Aug. 17, 2020)..........................................................................................4, 8, 13

*State Treasurer of State of Mich. v. Barry*,
  168 F.3d 8 (11th Cir. 1999) ..............................................................................................17

*United States ex rel. Skibo v. Greer Labs., Inc.*,
  2019 U.S. Dist. LEXIS 75620
  (W.D.N.C. May 6, 2019) ........................................................................................4, 5, 6, 12

*Vir2us, Inc. v. Invincea, Inc.*,
  235 F. Supp. 3d 766 (E.D. Va. 2017) .................................................................................20

*Welch v. Sam's E., Inc.*,
  2020 U.S. Dist. LEXIS 182149
  (W.D. Va. Oct. 1, 2020)................................................................................................13, 15

*Weyerhaeuser Co. v. Brantley*,
  510 F.3d 1256 (10th Cir. 2007) .........................................................................................17

*Wilkins v. Wells Fargo Bank, N.A.*,
  320 F.R.D. 125 (E.D. Va. 2017) ........................................................................................17

**Page**

*Wiseman v. Walmart Stores, Inc.*,
    2017 U.S. Dist. LEXIS 103471
    (D. Md. July 5, 2017).......................................................................................................19

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 26 ................................................................................................................ *passim*
    Rule 26(e)(2) ...............................................................................................................5
    Rule 26(e)(3) ...............................................................................................................5
    Rule 26(e) ............................................................................................................ *passim*

17 C.F.R.
    §243.100..................................................................................................................10

## I.    INTRODUCTION

A litigant is required by Rule 26(e) of the Federal Rules of Civil Procedure to supplement opinions provided by his expert witness "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not been made known to the other parties during the discovery process or in writing."  *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F. 3d 592, 595-96 (4th Cir. 2003) (Rule 26(e) "requires a party to supplement its experts' reports and deposition testimony when the party learns of new information.").  Here, Plaintiffs and Dr. Feinstein learned new information after Dr. Feinstein submitted his Rule 26 reports, and sat for his depositions, through:

> (1) 150,000 pages of documents produced by the Jeld-Wen Defendants between February 8-13, 2021 – weeks after Dr. Feinstein's initial Rule 26 report, and days before his rebuttal Rule 26 report, were served;
>
> (2) the March 9, 2021 deposition testimony of Mr. John Linker, Jeld-Wen's current Chief Financial Officer, evidencing the public nature of the Susquehanna research note, which prior to that date the evidence showed was private information, only shared with the internal personnel of Wellington Management Company LLP; and
>
> (3) documents previously withheld by the Jeld-Wen Defendants as privileged but ordered to be produced on March 17, 2021.

The Jeld-Wen Defendants' motion[1] entirely ignores the last two categories of new information which compelled Dr. Feinstein's Supplemental Report.[2]  Once this new information was learned, Plaintiffs and Dr. Feinstein moved expeditiously to inform the Jeld-Wen Defendants of the need to supplement Dr. Feinstein's opinions, informing them within 48 hours of Mr. Linker's deposition

---

[1] "Def. Br." refers to the Jeld-Wen Defendants' Memorandum of Law in Support of the Motion to Strike the New Report of Dr. Steven Feinstein.  ECF No. 215.  "Rae Decl. Ex. _" refers to the exhibits attached to the Declaration of Jacob M. Rae in support of the Jeld-Wen Defendants' motion.  ECF No. 217.

[2] The "Supplemental Report" or "Supp. Rpt." refers to the Supplemental Expert Report on Market Efficiency, Loss Causation and Damages of Professor Steven P, Feinstein, Ph.D., CFA, dated March 19, 2021.  ECF No. 199-3.

of the required supplementation, and providing them Dr. Feinstein's Supplemental Report one week later – two days after receiving the previously withheld documents ordered to be produced by this Court.

Plaintiffs and Dr. Feinstein have not sought to gain some unfair advantage through the submission of Dr. Feinstein's Supplemental Report.  While the Jeld-Wen Defendants produced over a million pages of documents prior to Dr. Feinstein's initial report, those documents were copies of the productions made in the *Steves* and IMD antitrust litigation, and were not documents specifically responsive to the document requests Plaintiffs here tendered.  Plaintiffs are cognizant of the burden the Jeld-Wen Defendants face with having to produce documents in a compressed discovery period and are not accusing them of deliberately holding back documents, but the fact remains that they produced 150,000 pages of documents months after Plaintiffs' discovery requests were served, after Dr. Feinstein tendered his initial report and on the eve of the deadline for his rebuttal report and merits deposition.  Plaintiffs trust that the Jeld-Wen Defendants likewise understand the burden Plaintiffs are under having to review all of those documents in such a short period of time and therefore Plaintiffs were surprised that the Jeld-Wen Defendants are taking the drastic of action of requesting the Court strike Dr. Feinstein's Supplemental Report.  This tactic is directly contrary to the Jeld-Wen Defendants' actions in the *Steves* case, where they agreed to the submission of supplemental reports by the plaintiff's experts following Jeld-Wen's belated production of documents.  ECF No. 185-2.

As discussed below, Dr. Feinstein's Supplemental Report is a proper supplementation of his opinions as required by Rule 26(e) and has been timely provided to the Jeld-Wen Defendants. Even if this Court finds that Dr. Feinstein's Supplemental Report is not timely, any failure on Plaintiffs' part to timely comply with Rule 26's disclosure requirements is harmless and has caused

no prejudice to the Jeld-Wen Defendants.  Therefore, the Jeld-Wen Defendants' motion to strike Dr. Feinstein's Supplemental Report should be denied.

## II.    ARGUMENT

### A.    Dr. Feinstein's Supplemental Report Complies with Rule 26(e)

The purpose of Dr. Feinstein's Supplemental Report is not "to try to fix Plaintiffs' case" as the Jeld-Wen Defendants smugly contend.  Def. Br. at 9.  Dr. Feinstein's Supplemental Report simply includes additional evidentiary support for the opinions Dr. Feinstein previously gave on loss causation and damages – that the information Plaintiffs allege the Jeld-Wen Defendants' concealed or misrepresented to investors was a substantial cause of the losses experienced in Jeld-Wen's stock price when the allegedly concealed information was disclosed to the market, causing damages to investors.  Supp. Rpt. ¶¶17-41.  Dr. Feinstein's Supplemental Report does not: (1) change the methodology used in arriving at the loss causation and damages opinions set forth in his January 4 and February 15, 2021 reports[3]; (2) contain new statistical analyses; (3) adopt a new theory of liability; (4) adopt a new theory of loss causation or damages; or (5) implicate previously unalleged false or misleading statements, or omissions made by the Jeld-Wen Defendants.  Supp. Rpt. ¶¶1-16.  And Dr. Feinstein's Supplemental Report concerns information not known to Dr. Feinstein, or Plaintiffs, before March 9, 2021, at the earliest – after Dr. Feinstein submitted his Rule 26 reports, and sat for his depositions.  As such, Dr. Feinstein's Supplemental Report in every way is an appropriate supplementation under Rule 26(e).  *See, e.g., Kinlaw v. Nwaokocha*, 2019 U.S. Dist. LEXIS 90126, at \*12-\*13 (E.D. Va. May 29, 2019) (finding supplemental report which added more detail to existing opinions complied with Rule 26(e));

---

[3] "Feinstein Rpt." refers to the Report of Steven P. Feinstein, Ph.D, CFA, dated January 4, 2021. ECF No. 122-1.  "Feinstein Rebuttal Rpt." refers to the Reply Report of Steven P. Feinstein, Ph.D, CFA, dated February 15, 2021.  ECF No. 170-12.

*United States ex rel. Skibo v. Greer Labs., Inc.*, 2019 U.S. Dist. LEXIS 75620, at \*13 (W.D.N.C. May 6, 2019) (holding that supplemental report that incorporated new information received after initial report complied with Rule 26(e)); *Spencer Spirit Holdings, Inc. v. Sunrise Roofing, Inc.*, 2020 U.S. Dist. LEXIS 149043, at \*8-\*9 (W.D.N.C. Aug. 17, 2020) (supplemental report incorporating newly learned information was "properly admissible"); *Dugger v. Union Carbide Corp.*, 2019 U.S. Dist. LEXIS 171141, at \*39 (D. Md. Sept. 9, 2019) (same); *Dale v. Jordan*, 2018 U.S. Dist. LEXIS 235132, at \*6-\*7 (E.D. Va. May 11, 2018) (same); *McKiver v. Murphy-Brown LLC*, 2018 U.S. Dist. LEXIS 64608, at \*6-\*7 (E.D.N.C. Apr. 17, 2018) (same).[4]

Dr. Feinstein's Supplemental Report is also not a violation of this Court's Scheduling Order as the Jeld-Wen Defendants contend (Def. Br. at 3-4), because the Scheduling Order does not contain a deadline for supplementing expert evidence pursuant to Rule 26(e).  ECF No. 152. The Fourth Circuit has noted that "[u]less the court orders otherwise, a party must supplement or correct such information regarding the expert witness' opinion and report at least thirty days before

---

[4] The Jeld-Wen Defendants cited authority is readily distinguishable.  Def. Br. at 7-9.  In *Campbell v. United States*, the court excluded the testimony of Campbell's expert witness because Campbell had filed her expert designation five days after the court's explicit deadline and because the late-filed report "failed to delineate the applicable standard of care, discuss the issue of causation, explain the factual basis for [the expert's] conclusions, or reveal the records [the expert] reviewed," and rejected Campbell's attempt to supplement the expert's initial report because the supplement "attempted to recast [the expert's] initial opinions so as to comply with the requirements of Rule 26(a)."  470 Fed. Appx. 153, 156-57 (4th Cir. 2012).  Likewise in *Sharpe v. United States*, the court rejected the plaintiff's attempt to supplement its' experts' reports one month before trial because the initial reports did not set forth opinions "supported by the required basis and reasons," and through the supplements, plaintiff sought to "recast and rework [the initial opinions] so as to comply with the requirements of Rule 26(a)(2)(B) and withstand summary judgment."  230 F.R.D. 452, 458, 463 (E.D. Va. 2005).  Finally, in *Akeva L.L.C. v. Mizuno Corp.*, the court rejected a new expert report as untimely and improper under Rule 26(e) because the rule "does not cover failures of omission because the expert did an inadequate or incomplete preparation," and because it offered new opinions rather than supplementation to account for the correction of an error or to incorporate new information provided after the expert's initial report.  212 F.R.D. 306, 310 (M.D.N.C. 2002).

trial."  *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017).[5]  Thus, under Rule

26(e)(3), supplemental expert disclosures are due thirty days before trial – or June 11, 2021 given

the July 12, 2021 trial date here.  Plaintiffs provided Dr. Feinstein's Supplemental Report to the

Jeld-Wen Defendants nearly two months ahead of this deadline – nearly four months before the

July 2021 trial date, before the discovery cut-off and within ten days of first learning information

that compelled supplementation under Rule 26(e).

      **B.**      **Dr. Feinstein Could Not Have Learned Until March 17, 2021 About the Information Contained in Documents the Jeld-Wen Defendants Withheld as Privileged**

It speaks volumes that ***entirely absent from the Jeld-Wen Defendants' motion is any***

***mention of the improperly withheld "privileged" documents first produced to Plaintiffs on***

***March 17, 2021*** that provide additional factual support for Dr. Feinstein's loss causation opinions

as explained in his Supplemental Report.  Supp. Rpt. ¶¶18-22, 27-32.  It is indisputable that neither

Dr. Feinstein nor Plaintiffs could have learned this information prior to March 17, 2021 when the

Jeld-Wen Defendants produced previously withheld documents in compliance with this Court's

March 17, 2021 Order.  Even so, Plaintiffs and Dr. Feinstein provided his Supplemental Report

incorporating this new information to the Jeld-Wen Defendants ***on March 19, 2021 – only two***

***days after receiving these documents***.  No credible argument can be made that Dr. Feinstein's

supplementation of his Report to include this new information somehow runs afoul of Rule 26(e).

Indeed, the court in *Skibo*, denied a motion to strike the supplemental report of a damages expert,

holding that the supplemental report complied with Rule 26(e) because it "merely incorporates

new information received since the December 28 Report into [the expert's] existing methodology

---

[5] *See also Skibo*, 2019 U.S. Dist. LEXIS 75620, at *12-*13 ("Where, as here, the Pretrial Order does not establish a specific deadline for Rule 26(e) supplementation, Rule 26(e)(2) requires that supplemental expert disclosures be made by the time pretrial disclosures are due under Rule 26(e)(3).").

and damages model." 2019 U.S. Dist. LEXIS 75620, at *13.  The same is true of Dr. Feinstein's Supplemental Report.

> **C.**  **Plaintiffs and Dr. Feinstein Learned for the First Time on March 9, 2021 that the Susquehanna Research Note Was Disseminated Widely and Had Entered the Public Conversation Concerning Jeld-Wen**

The Jeld-Wen Defendants' assertions that Plaintiffs and Dr. Feinstein failed in their investigation of their claims, and sat on evidence that materially impacts their damages, is misguided at best.  Def. Br. at 7-9.  The fact of the matter is that neither Plaintiffs, nor Dr. Feinstein, were able to confirm that the information in a research note dated August 8, 2018 from Susquehanna Financial Group, LLP that summarized the oral argument from the divestiture hearing in the *Steves* litigation and previewed for the market Judge Robert E. Payne's likely ruling (Rae Decl. Ex. 9[6]), was publicly available until the March 9, 2021 deposition of Jeld-Wen's current Chief Financial Officer, and previous Senior Vice President, Investor Relations, John Linker.

> **1.**  **Wellington Documents and Testimony Infer Susquehanna Research Note Was for Its Private Information**

The Jeld-Wen Defendants' contention that Plaintiffs knew of the Susquehanna research note in January 2021 because one of Plaintiffs' outside investment managers produced an email purportedly containing the note is misleading.  Def. Br. at 8.[7]  Although Wellington Management Company, LLP may have had a copy of the research note, the email containing the research note produced by the investment manager *was addressed only to its internal personnel*.  Rae Decl.

---

[6] Rae Decl Ex. 9 (ECF No. 217-10) refers to Exhibit 109 marked at the Deposition of John Linker, taken on March 9, 2021.  "Linker Ex. __" refers to exhibits marked at the Deposition of John Linker, taken on March 9, 2021.

[7] Utterly preposterous is the Jeld-Wen Defendants' bald assertion that Plaintiffs, or Plaintiffs' counsel, had access to Wellington's documents in 2018.  Def. Br. at 8.  Wellington is not under the control of Plaintiffs, or their counsel, neither who had no access to any information from Wellington's personnel or files prior to Wellington's production of documents in this case, and deposition testimony in January 2021.

Ex. 11.  This document indicated in no way that the research note was more widely distributed. Furthermore, Wellington testified that it had hired Susquehanna to act as a legal analyst to follow the *Steves* litigation, underscoring that the research note that Wellington received was for its private information.  Wellington Tr. at 35:19-37:7.[8]  And the Jeld-Wen Defendants have not offered evidence that this research note was available from any public source.  Indeed, the Jeld-Wen Defendants seem to contend that the Susquehanna research note is not "public" information at all.  Def. Br. at 13.  Unable to confirm that the Susquehanna research note entered the public realm, Dr. Feinstein did not, and could not, attribute the statistically significant stock price decline his event study showed occurred on August 8, 2018 to information in the Susquehanna research note, in either his opening Rule 26 report dated January 4, 2021, or his rebuttal Rule 26 report dated February 15, 2021.[9]

### 2. The Susquehanna Research Note Was Buried in a 150,000 Page Document Dump Made by the Jeld-Wen Defendants on the Eve of Dr. Feinstein's Rebuttal Report Deadline

While the Jeld-Wen Defendants contend that they produced to Plaintiffs the Susquehanna research note on February 8, 2021, (Def. Br. at 8), that is not the entire story.  Between February 8-13, 2021, *after* the completion of Dr. Feinstein's opening expert report and his initial deposition related to class certification issues, and days before his rebuttal report was due, the Jeld-Wen Defendants produced ***more than 150,000 pages of documents*** to Plaintiffs.  Among those 150,000

---

[8] "Wellington Tr." refers to the Deposition Transcript of Nathan Kieffer, representative of Wellington Management Company, LLP, dated January 27, 2021, attached hereto as Ex. A to the Declaration of Debra J. Wyman, dated April 6, 2021.

[9] Dr. Feinstein did include in his reports, and at his deposition, a caution to the Jeld-Wen Defendants that because discovery was on-going he may need to supplement his opinions to account for newly identified corrective disclosures should additional information bearing on his work be discovered – which is precisely what has occurred.  Supp. Rpt. ¶5 n.14 citing Feinstein Rpt. ¶¶5-6, 347; Feinstein Rebuttal Rpt. ¶¶7, 67; Deposition Transcripts of Steven P. Feinstein, dated January 30, 2021 and February 22, 2021 ("Feinstein Tr.") at 120:8-22 (ECF No. 198-2).

pages was a two-page email received by John Linker forwarding the Susquehanna research note. Rae Decl Ex. 9 (Linker Ex. 109). Thus, it is incorrect that Dr. Feinstein "learned" of this document the moment the Jeld-Wen Defendants provided it to Plaintiffs, and somehow delayed incorporating it into either his February 15, 2021 rebuttal report, or mention it at his February 22, 2021 deposition. Def. Br. at 7-9.

Indeed, even crediting the Jeld-Wen Defendants' incorrect assertions that the Susquehanna research note was "available" to Plaintiffs and Dr. Feinstein on February 8, 2021, the Fourth Circuit has held that it was not error for the trial court to admit a supplemental expert report that included a new method for calculating damages that could have been included in the expert's initial report *provided 18-months earlier*. *Bresler*, 855 F.3d at 193. Likewise, the court in *Spencer Spirit*, permitted the plaintiff's expert to supplement his report, rejecting the defendant's contention that the supplement was merely an attempt to "bolster his original opinions" with additional analysis to save a defective report. 2020 U.S. Dist. LEXIS 149043, at *8. In that case, the expert supplemented his report to include analysis correcting the "misidentification" of a piece of equipment that the defendant contended was improper because the information was "readily available" to the expert during his original inspection and would have been discovered if the expert had conducted a "thorough review of the building in question." *Id.* at *9. Rejecting this contention, the court noted that Rule 26(e) requires a party to supplement a report if it "learns" that a prior disclosure was "incomplete or incorrect" and that duty extends to "information that was not originally provided [even if] it was available at the time of the initial disclosure or response." *Id.* Thus, even if the Jeld-Wen Defendants are correct that the Susquehanna research note was "available" to Plaintiffs and Dr. Feinstein the instant it was produced on February 8, 2021 – theoretically in time for inclusion in Dr. Feinstein's February 15, 2021 rebuttal report, and

February 22, 2021 deposition testimony – neither Plaintiffs nor Dr. Feinstein "learned" that the Susquehanna research note was disseminated outside of Wellington's orbit, and was in the public conversation about Jeld-Wen, until March 9, 2021 – after Dr. Feinstein's rebuttal report was due and after his February 22, 2021 deposition.

### 3. The Testimony of Jeld-Wen CFO John Linker Reveals for First Time Public Discussion of the Susquehanna Research Note

Importantly, the Jeld-Wen Defendants' motion *ignores the critical piece of information not available to Plaintiffs or Dr. Feinstein* prior to either of his Rule 26 reports, or his depositions – Mr. Linker's March 9, 2021 testimony.  Mr. Linker testified ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████[10]███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Linker

Ex. 110, attached hereto as Ex. C.  ██████████████████████████

████████████████████████████████████████████████████████

Dr. Feinstein is now in a position to explain how this new information impacts his assessment of loss causation and the damages that resulted following statistically significant price declines on

---

[10] "Linker Tr." refers to excerpts of the Deposition Transcript of John Linker, dated March 9, 2021, attached hereto as Ex. B.

August 8, 2018.  Supp. Rpt. ¶¶33-41.  Indeed, Plaintiffs informed the Jeld-Wen Defendants on March 11, 2021 – *two days after Mr. Linker's testimony* – that because of the information learned in Mr. Linker's deposition, Dr. Feinstein was required to supplement his report.

Moreover, reviewing Mr. Linker's testimony and internal company documents, all either previously withheld as privileged or produced too late by the Jeld-Wen Defendants to reasonably allow Dr. Feinstein to incorporate into his Rule 26 reports and depositions, now enables Dr. Feinstein to explain why the price of Jeld-Wen stock did not immediately experience a statistically significant decline upon the publication of Judge Payne's divestiture ruling on October 5, 2018.  Because much of the information contained in that opinion was previewed to the market, discussed among institutional investors and the Company at the Barclay's conference, it was incorporated into Jeld-Wen's stock price on August 8, 2018.  Supp. Rpt. ¶¶33-41.  And to boot, in violation of applicable federal law and regulations, Jeld-Wen undertook "surreptitious interventions to influence analysts and the market" by ghost-writing "portions of an article about [Jeld-Wen] for *SeekingAlpha*," in which "the Company's editing of the *SeekingAlpha* article produced a more positive narrative regarding the *Steves* litigation," and assisted in getting the article published by shopping it to *The Wall Street Journal* and *Forbes*.  Supp. Rpt. ¶¶27-28.  Thus, to the extent the information in Judge Payne's opinion was merely confirmatory to what several market participants previously knew, one would not expect a statistically significant price reaction in response to Judge Payne's opinion, particularly with Jeld-Wen working behind the scenes ghost-writing articles to downplay the possibility that Judge Payne would order divestiture of the Towanda plant.  Supp. Rpt. ¶¶23-32.[11]

---

[11] Jeld-Wen's actions appear to violate SEC Regulation FD, 17 CFR 243.100, which requires public companies to disclose public statements it drafts or pays someone to publish to avoid misleading investors by disguising paid promotions as objective and independent analyses.  And the public relations firm working with Jeld-Wen, DCI Group, and Mr. Linker, in particular, appear

**4.      Within Days of Mr. Linker's Deposition, Plaintiffs Informed the Jeld-Wen Defendants that Rule 26 Required Dr. Feinstein to Supplement His Report**

As is abundantly clear from the above, the Jeld-Wen Defendants' protests that Plaintiffs sat on this information "for months" is plainly wrong.  Def. Br. at 7.  Plaintiffs notified the Jeld-Wen Defendants within days of learning from Mr. Linker's deposition new information that required Dr. Feinstein to supplement his report, and provided the Jeld-Wen Defendants the Supplemental Report a week later – two days after receiving previously withheld documents this Court determined were not privileged (and are not mentioned in the Jeld-Wen Defendants' motion), before the discovery cut-off, nearly four months before trial, and well before the deadline imposed by Rule 26(e).

**D.      The Jeld-Wen Defendants Cannot Show They Are Prejudiced by Dr. Feinstein's Supplemental Report**

The Jeld-Wen Defendants list a parade of horribles they claim will befall this case if Dr. Feinstein's Supplemental Report is not stricken.  Def. Br. at 9-15.  They are wrong, and the Jeld-Wen Defendants have failed to articulate any prejudice they will suffer from permitting Dr. Feinstein's Supplemental Report which incorporates information he did not learn until March 9, 2021, and in large part could not have learned sooner than March 17, 2021 given that the Jeld-Wen Defendants hid evidence from Plaintiffs through bogus assertions of privilege.

Even assuming that Dr. Feinstein's Supplemental Report does not comply with Rule 26 (which it does), the factors outlined in *Southern States* (Def. Br. at 10), weigh in favor of ***not excluding*** Dr. Feinstein's Supplemental Report, and support a finding that any non-disclosure was

---

to understand this limitation and acknowledge that the Company should not share the *SeekingAlpha* article prior to its publication because the Company "would not have knowledge" about an article being written by an "independent" journalist.  Supp. Rpt. ¶29.

"harmless" and "substantially justified," something this Court enjoys "broad discretion" in determining. *Bresler*, 855 F.3d at 190.

### 1.    There Is No Legitimate "Surprise" to Defendants

The first *Southern States* factor considers the "surprise" the Jeld-Wen Defendants claim they suffered as a result of Dr. Feinstein's Supplemental Report. 318 F.3d at 597. Firstly, Plaintiffs in no way sought out to "surprise" the Jeld-Wen Defendants with a supplemental expert report. However, given that the Jeld-Wen Defendants have produced over a half million pages of documents since Dr. Feinstein's initial report was served on January 4, 2021, and every fact witness was also deposed after that report was issued, it should not have come as a "serious surprise" to them that Dr. Feinstein may need to supplement his opinions with new information. Def. Br. at 10. Indeed, Dr. Feinstein warned them of that very possibility in his January 30, 2021 deposition:

> Q. In your report you identify two corrective disclosures, correct?
>
> *       *       *
>
> A. No. No. The complaint identifies two corrective disclosures. I examined those corrective disclosures, those two alleged purported corrective disclosures, but I also point out that there might have been more, which depending on what might come up as the record in this case develops or discovery continues, there may have been additional corrective disclosures, but you're right. So for my analysis I worked with two corrective disclosures.

Feinstein Tr. at 120:8-22. Dr. Feinstein's caution could not have been more clear, and the Jeld-Wen Defendants cannot now feign "surprise" that new information they produced too late to reasonably be considered in his reports or depositions compelled Dr. Feinstein to supplement his report. *Skibo*, 2019 U.S. Dist. LEXIS 75620, at *15 (no prejudice as plaintiff and their expert "made it clear" that they intended to supplement the expert's opinions to incorporate "new information" once it "became available").

Still, the Jeld-Wen Defendants claim they were "surprised" by Dr. Feinstein's

Supplemental Report because it added a new corrective disclosure date that increases Plaintiffs' damages. Def. Br. at 10. While it is true that the new disclosure date increases the overall damages Dr. Feinstein has opined the class suffered, Dr. Feinstein's inclusion of August 8, 2018 as a corrective disclosure event is entirely consistent with Plaintiffs' theories of liability, loss causation and damages, ***none of which are changed by Dr. Feinstein's Supplemental Report***. Plaintiffs still contend that the Jeld-Wen Defendants concealed or misrepresented material information – adding no new allegedly false or misleading statements into the case as a result of Dr. Feinstein's Supplemental Report – and that when the allegedly misrepresented or concealed information was revealed to the market, it was the substantial cause of the price of Jeld-Wen stock falling, causing investors damages.[12] Dr. Feinstein utilizes the same methodology articulated in his initial report to arrive at his conclusion that August 8, 2018 is a corrective disclosure date, relies on statistical analysis he provided in his initial report to support that conclusion, and discusses ***only*** the new information that informed his conclusion. Supp. Rpt. ¶¶3, 7-9, 11, 14-16, 33-41. "[I]t cannot be truly said that the Defendants were surprised by anything in the second report because the second report did not add new opinions or theories of liability." *Kinlaw*, 2019 US. Dist. LEXIS 90126, at *18. *See also Spencer Spirit*, 2020 U.S. Dist. LEXIS 149043, at *11 (no "surprise or prejudice" because "the supplemental report does not go beyond the issues previously identified by [the

---

[12] Indeed, courts have held that a supplemental report does not constitute an "unfair surprise" where the defendants should have anticipated some form of testimony on an issue central to the case. *See Welch v. Sam's E., Inc.*, 2020 U.S. Dist. LEXIS 182149, at *7 (W.D. Va. Oct. 1, 2020) (in case where plaintiff challenged lack of warning sign in parking lot, "the defendants should have anticipated some form of testimony regarding the advisability of the parking lot design"); *Scott v. Holz-Her*, 2007 U.S. Dist. LEXIS 79552, at *5 (W.D. Va. Oct. 26, 2007) (no surprise from new content in expert report because "[i]t does not require great powers of foresight to guess that the defendant in a product liability case will contest the feasibility of an alternate design"). Here, the Jeld-Wen Defendants were not left to "anticipate" or "guess" what Plaintiffs' loss causation theory was – it was stated clearly in the Complaint (ECF No. 73) and in Dr. Feinstein's initial report. And that theory has not changed.

plaintiff and expert witness]"); *Dugger*, 2019 U.S. Dist. LEXIS 171141, at *39 ("minimal surprise" where expert did not change their opinions but "concluded that the materials further supported their original conclusions"); *EEOC v. Performance Food Grp., Inc.*, 2018 U.S. Dist. LEXIS 125756, at *9 (D. Md. July 27, 2018) (no surprise where defendants' supplemental report was "consistent with defendants' litigation position").[13]

### 2.  Any "Surprise" Can Be Cured

The second *Southern States* factor considers whether the "surprised" party – here the Jeld-Wen Defendants – can cure their surprise.  318 F. 3d at 597.  Plaintiffs have suggested to the Jeld-Wen Defendants that their expert Mr. Fischel be permitted to provide a second supplemental report to address Dr. Feinstein's Supplemental Report and that the parties take mutual depositions of Dr. Feinstein and Mr. Fischel on the information in the Supplemental Report and Mr. Fischel's response to it.[14]  There is ample time for the Jeld-Wen Defendants to cure any purported "surprise" they have from Dr. Feinstein's Supplemental Report, if they chose to do so.[15]

---

[13] Nor have Plaintiffs been dilatory in supplementing their responses to the Jeld-Wen Defendants' interrogatories.  Def. Br. at 10-11.  These interrogatories were served on November 9, 2020 and required Plaintiffs to respond before discovery in this case had meaningfully begun.  Indeed, Plaintiffs' original Responses were due on December 9, 2020, just over two weeks after Defendants' November 24, 2020 production of over one million pages of documents – copies of documents produced in the *Steves* and IMD antitrust actions – months before Defendants' production of one half million additional pages of documents in February and March 2021 responsive to Plaintiffs' request for documents, before expert witness discovery was commenced and before any fact witness depositions were taken.  While Plaintiffs were preparing to serve supplemental responses to account for the opinions and conclusions in Dr. Feinstein's Supplemental Report, the Jeld-Wen Defendants produced an additional 43,334 pages of documents on March 29, 2021 that needed to be reviewed to insure no additional new information was relevant to Plaintiffs' responses.  Plaintiffs' served their Supplemental Responses to the Jeld-Wen Defendants' First Set of Interrogatories on April 5, 2021.  Ex. D.

[14] Plaintiffs also suggested to the Jeld-Wen Defendants that the parties contact the Court to apprise it of the need for Dr. Feinstein to issue a Supplemental Report, and ask that *Daubert* briefing be briefly suspended to allow for Mr. Fischel's response to Dr. Feinstein's Supplemental Report, and the follow-up depositions to occur.  The Jeld-Wen Defendants rejected Plaintiffs' suggestion.

[15] The Jeld-Wen Defendants misstate the law by contending that it would be "improper" for Dr. Feinstein to "bolster his prior opinions with new evidence."  Def. Br. at 11.  As discussed

Plaintiffs informed the Jeld-Wen Defendants that Rule 26 required Dr. Feinstein to supplement his report within days of learning of new information impacting his opinions, and provided that report a week later – all before discovery ended in this case, more than one month before summary judgment motions are due, and four months before the July 12, 2021 trial date in this case. The Fourth Circuit has held that two months between a late-filed expert report and trial date did not affect the defendant's "ability to conduct its defense in any material respect." *Bresler*, 855 F.3d at 194. *See also Welch*, 2020 U.S. Dist. LEXIS 182149, at *7 (supplemental report served four months before trial, and one month before summary judgment motion deadline provided defendant "ample opportunity to review the report and, if necessary, develop a strategy to respond"); *Kinlaw*, 2019 U. S. Dist. LEXIS 90126, at *18 (discovery regarding supplemental report two months before trial cured any surprise).

### 3. Dr. Feinstein's Supplemental Report Will Not Disrupt the Trial

The third *Southern States* factor looks at "the extent to which allowing the evidence would disrupt the trial." 318 F.3d at 597. While the Jeld-Wen Defendants contend that Dr. Feinstein's Supplemental Report will upend this litigation, Def. Br. at 11-14, that is simply not the case.

First, amendment of the Complaint is not required because Plaintiffs' claims that the Jeld-Wen Defendants concealed or withheld material information from investors, that when revealed caused Jeld-Wen's stock price to fall, causing investors damage – remain unchanged.

---

above in §II.A, this is exactly what Rule 26(e) requires. And their reliance on *Sharpe* does not help their arguments here. In *Sharpe*, the court denied an oral motion to supplement expert reports made during a motion for summary judgment hearing – one month before trial. 230 F.R.D. at 462. More importantly, unlike here, the supplement sought in *Sharpe* "is not simply attempting to add additional or corrective information, which would trigger her duty to supplement under Rule 26(e)(1). Fed. R. Civ. P. 26(e)(1). Rather, the plaintiff is requesting additional time for [the experts] recast and rework their initial opinions so as to comply with the requirements of Rule 26(a)(2)(B) and withstand summary judgment. As indicated above, such an effort is not contemplated by Rule 26(e)(1)." *Id.* at 462-63.

Dr. Feinstein's Supplemental Report does not introduce new allegedly false or misleading statements by the Jeld-Wen Defendants nor does not it articulate a new theory of liability, loss causation or damages. Dr. Feinstein's Supplemental Report simply puts the Jeld-Wen Defendants on notice of an additional corrective disclosure date, based on new information uncovered in discovery, that within the framework of his original methodology and Plaintiffs' allegations, compelled a supplemental report pursuant to Rule 26(e). Therefore, the Jeld-Wen Defendants' contention that Plaintiffs are required to amend their Complaint to account for a "new theory of recovery" is baseless. Def. Br. at 11-13. Indeed, the Fourth Circuit case the Jeld-Wen Defendants cite, (Def. Br. at 12), acknowledges that, "[i]t is true, as [plaintiff] argues, that a plaintiff does not have to allege in his complaint every fact on which he will rely at summary judgment. *Faulconer v. Centra Health, Inc.*, 808 Fed. Appx. 148, 154 (4th Cir. 2020) citing *Gottesman v. J.H. Batten, Inc.*, 286 F. Supp. 2d 604, 612 (M.D.N.C. 2003) ("Not every fact that a plaintiff will eventually base his claim upon must be listed in his complaint."). There, unlike here, the plaintiff went too far by pleading "one theory and one set of facts in his complaint, and then proceed[ing] to trial on an entirely different theory supported by entirely different facts." *Faulconer*, 808 Fed. Appx. at 154.[16]

---

[16] The Jeld-Wen Defendants other authority is similarly inapposite. Def. Br. at 11-12. In *Brownlee v. West Fraser, Inc.*, the plaintiff presented new theories of liability and recovery as to how the defendant was negligent. The defendant claimed that the plaintiff had first pled – and the case had been litigated – on the theory that plaintiff had slipped on defendant's wet lumber, not a different theory that it was defendant's inadequate lighting that caused him to fall, a theory plaintiff first introduced at summary judgment. The court agreed with defendant that plaintiff's new claims involved "new factual assertions and theories of recovery," because defendants had no reason to believe when case began that these new facts and recovery theory would even be an issue in the case. 2015 U.S. Dist. LEXIS 17856, at *10 (D.S.C. Feb. 12, 2015). In *Okoro v. Ocwen Loan Servicing, LLC*, the plaintiff in a breach of contract case sought leave to amend his first complaint to add a fraud allegation. The court denied amendment because the new fraud claim was not meaningfully related to the breach of contract allegation and the "discovery burdens imposed by adding this new theory of liability only days before the . . . discovery deadline." 2016 U.S. Dist. LEXIS 57053, at *11 (D. Md. Apr. 29, 2016). And, finally, should the Court determine that it is

Moreover, discovery is closed and trial is scheduled in this matter in a little over three months time on July 12, 2021. Because it is well settled that the pretrial order is the controlling document for trial, there is no need for Plaintiffs to amend their Complaint like the Jeld-Wen Defendants assert (Def. Br. at 11-12). *Rockwell Int'l Corp. v. U.S.*, 127 S. Ct. 1397, 1409 (2007) (noting that a final pretrial order supercedes all prior pleadings and "controll[ed] the subsequent course of the action"); *see also Bryant Real Estate, Inc. v. Toll Bros., Inc.*, 106 F. Appx 182, 187 n.8 (4th Cir. 2004) (pretrial order "supersedes the pleadings and sets the issues for trial").[17] Thus, because the pre-trial order supersedes the pleadings, and will control the claims presented at trial, an amendment to the Complaint is unnecessary, and accordingly there will also be no need for the parties to "re-brief" the motions to dismiss, as the Jeld-Wen Defendants contend. Def. Br. at 12.[18]

Nor would the parties have to re-brief class certification. There are no "new predominance and typicality problems for Plaintiffs" because Wellington possessed a copy of the Susquehanna research note. Def. Br. at 13. Wellington did not sell stock on behalf of any Plaintiff on August 8,

---

appropriate for Plaintiffs to amend their Complaint, such an amendment would cause no burden to the Jeld-Wen Defendants. *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 128 (E.D. Va. 2017) (breach of contract claim where plaintiff sought to amend complaint after discovering additional facts related to claim – court granted plaintiff's leave to amend because the additional facts raised no new legal theories, did not seek to remedy repeated pleading deficiencies, and were not being used for an improper purpose). Moreover, because it would not add any new theory of liability, loss causation or damages, such an amendment by Plaintiffs would relate back to the filing of the operative complaint. Def. Br. at 12-13.

[17] *See also Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) ("The subsequent pretrial order supersedes the pleadings."); *State Treasurer of State of Mich. v. Barry*, 168 F.3d 8, 9-10 (11th Cir. 1999) (same); *Ash v. Wallenmeyer*, 879 F.2d 272, 274 (7th Cir. 1989) ("[t]he federal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process. The information is to be reflected in the framing of issues in the pretrial order, which supersedes the complaint").

[18] The Jeld-Wen Defendants contend that they have "multiple viable arguments" to move dismiss an amendment to the Complaint. Def. Br. at 12. Each of the arguments they list is a factual argument, inappropriate on a motion to dismiss, and that can be more properly made as part of a motion for summary judgment.

2018.  And the Jeld-Wen Defendants knew that Wellington had the Susquehanna research note before their opposition to class certification was filed, and could have raised the arguments they allude to at that time, but chose not to do so.  The case law the Jeld-Wen Defendants cite (*see id.*) is simply inapplicable here.

Furthermore, no disruption to the trial will occur due to any "additional fact discovery" the Jeld-Wen Defendants failed to undertake.  Def. Br. at 13-14.  There was nothing to prevent the Jeld-Wen Defendants from undertaking the discovery related to the Susquehanna research note they describe or asking "detailed questions" (*id*. at 14 n.3) of Wellington about the research note – during the time allotted for discovery in this case – except for maybe risking tipping Plaintiffs off sooner that the information was disseminated publicly.  They chose not to do so and cannot now use their inaction as a basis to strike Dr. Feinstein's Supplemental Report.

Neither will the parties need to "re-brief" their *Daubert* motions.  Def. Br. at 14.  The conclusions offered in Dr. Feinstein's Supplemental Report use the same methodology outlined in his initial report.  The Jeld-Wen Defendants have already filed a motion purportedly attacking that methodology.  ECF No. 169.  As discussed at length in Plaintiffs' opposition to the Jeld-Wen's Defendants' motion to exclude Dr. Feinstein's opinions and testimony, that the Jeld-Wen Defendants disagree with Dr. Feinstein's conclusions in his Supplemental Report, is no basis for excluding his opinions.  *See* ECF No. 197.

Finally, Plaintiffs agree (consistent with their offer to the Jeld-Wen Defendants) that limited discovery is appropriate to give the Jeld-Wen Defendants an opportunity to have their expert respond to Dr. Feinstein's Supplemental Report, and the parties an opportunity to depose the experts on these issues.  Given that trial is still more than three months away, there will be no disruption to its proceeding on schedule.  *Kinlaw*, 2019 U.S. Dist. LEXIS 90126, at *19 (no

disruption to trial where motion to strike supplemental report was denied two months before scheduled trial date allowing for follow-up discovery).

### 4.    The Information in Dr. Feinstein's Supplemental Report Is Important Evidence of the Jeld-Wen Defendants' Liability to the Class

The fourth *Southern States* factor considers the importance of the evidence in the late disclosure.    318 F. 3d at 597.    The Jeld-Wen Defendants contend that the conclusions in Dr. Feinstein's Supplemental Report are not important because they relate to "unpled claims." Def. Br. at 15.    That contention is manifestly incorrect.

As discussed above in Section II.A, Dr. Feinstein's identification of an additional corrective disclosure date is not a "new claim" or "theory of recovery."    Plaintiffs' claims remain unchanged, as do their theories of liability, loss causation and damages.    And it is undeniable that "proving damages is important to [Plaintiffs'] case."    *BlackRock Eng'rs, Inc. v. Duke Energy Progress, LLC*, 2018 U.S. Dist. LEXIS 159561, at *9 (E.D.N.C. Sept. 18, 2018); *see also Bresler*, 855 F. 3d at 194 (testimony regarding damages "vital evidence").    Moreover, because any "harm" to the Jeld-Wen Defendants from Dr. Feinstein's Supplemental Report can be remedied, precluding Plaintiffs from presenting evidence of loss causation and damages is an "excessive sanction."    *BlackRock Eng'rs*, 2018 U.S. Dist. LEXIS 159561, at *9; *Wiseman v. Walmart Stores, Inc.*, 2017 U.S. Dist. LEXIS 103471, at *8 (D. Md. July 5, 2017) (same).

### 5.    Plaintiffs' Explanation for the Timing of Dr. Feinstein's Supplemental Report Is Reasonable and "Substantially Justifiable"

The last *Southern States* factor looks to the explanation for the late disclosure of the expert evidence.    318 F.3d at 597.    Like the other factors, this factor favors denial of the Jeld-Wen Defendants' motion.

The Jeld-Wen Defendants' assertion that Plaintiffs have offered no explanation for their "failure to timely disclose Feinstein's new loss causation and damages opinions," amend the

Complaint or supplement their interrogatory responses is absurd.  Def. Br. at 14-15.[19]  The Jeld-Wen Defendants' disclosure of information to Plaintiffs controlled the timing of Dr. Feinstein's Supplemental Report, and not a lack of diligence on Plaintiffs' part in investigating their claims.  *Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 778 (E.D. Va. 2017) ("[a] circumstance out of the nondisclosing party's control can be an adequate explanation for nondisclosure").

As discussed at length in §II.C, the Jeld-Wen Defendants did not produce documents in their possession bearing on matters outlined in Dr. Feinstein's Supplemental Report until ***weeks after his January 4, 2021 initial report.***  Nor could Plaintiffs or Dr. Feinstein be faulted for not considering documents ***withheld altogether on bogus claims of privilege until the Court compelled their production on March 17, 2021.***  Moreover, while the Jeld-Wen Defendants knew through the Company's current CFO Mr. Linker that the Susquehanna research note entered the public sphere of information on August 8, 2018, Plaintiffs and Dr. Feinstein did not learn this critical piece of information until March 9, 2021.  Still, upon learning this information, Plaintiffs and Dr. Feinstein immediately ascertained that Rule 26 required that a supplemental report be provided to the Jeld-Wen Defendants; Plaintiffs informed the Jeld-Wen Defendants of this determination 48 hours after Mr. Linker's deposition; and, ten days after first learning that the Susquehanna research note was public information, Dr. Feinstein provided his Supplemental Report to the Jeld-Wen Defendants.  No rational argument can be made that Plaintiffs failed to act

---

[19] As discussed in Section II.A, because Plaintiffs have not added claims or altered their theory of liability, loss causation or damages, formal amendment of the Complaint is unnecessary.  The Jeld-Wen Defendants have adequate, indeed, detailed notice of each of the corrective disclosure events that Plaintiffs claim caused investors damages.  No more is required.  And given that the parties have completed discovery and are gearing up for trial, the pre-trial order will control the claims and defenses presented to the jury so formal amendment of the Complaint is unnecessary.  Additionally, as noted in in Section II.D.1, on April 5, 2021, Plaintiffs served their supplemental responses to the Jeld-Wen Defendants' interrogatories after taking a few days to review the 43,334 pages of documents the Jeld-Wen Defendants produced on March 29, 2021 – the last day of discovery.

expeditiously upon learning this new information, and that the timing of Dr. Feinstein's Supplemental Report has caused prejudice to the Jeld-Wen Defendants. *Bresler*, 855 F.3d at 191-193 (no prejudice where supplemental damage calculation formula provided to defendants 18-months after initial report); *Kinlaw*, 2019 U.S. Dist. LEXIS 90126, at *4, *20 (no prejudice where supplemental report was provided six days after deposition of expert uncovered mistakes in initial report).

## III.    CONCLUSION

The Jeld-Wen Defendants have utterly failed to establish that Dr. Feinstein's Supplemental Report is not a proper supplementation under Rule 26(e), or is untimely.  Even if this Court determines that Dr. Feinstein's Supplemental Report violated Rule 26, any violation is harmless and substantially justified, causing no prejudice to the Jeld-Wen Defendants.  The Jeld-Wen Defendants' motion should be denied and the Court should allow the parties to conduct the limited discovery Plaintiffs suggested to the Jeld-Wen Defendants concerning the information in Dr. Feinstein's Supplemental Report.

DATED:  April 6, 2021                              Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (Admitted *pro hac vice*)


*/s/ Steven J. Toll*
STEVEN J. TOLL

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
jhandelsman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

ROBBINS GELLER RUDMAN
   & DOWD LLP
DEBRA J. WYMAN (Admitted *pro hac vice*)
JOHN R. RIGBY (Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
jrigby@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ROBERT M. ROTHMAN (Admitted *pro hac vice*)
WILLIAM J. GEDDISH (Admitted *pro hac vice*)
FRANCIS P. KARAM (Admitted *pro hac vice*)
MAGDALENE ECONOMOU (Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
wgeddish@rgrdlaw.com
fkaram@rgrdlaw.com
meconomou@rgrdlaw.com

*Co-Lead Counsel for Plaintiff Plumbers and*
*Pipefitters National Pension Fund, Additional Plaintiff*
*Wisconsin Laborers' Pension Fund, and the Class*

LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Co-Lead Counsel for Plaintiff Public Employees'*
*Retirement System of Mississippi and the Class*

- 22 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 6, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Steven J. Toll*

STEVEN J. TOLL (VSB No. 15300)

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com