**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| IN RE: JELD-WEN HOLDING, INC. SECURITIES LITIGATION | Civil Action No. 3:20-cv-00112 |
| | Judge John A. Gibney, Jr. |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
JELD-WEN DEFENDANTS' MOTION TO STRIKE THE
NEW REPORT OF DR. STEVEN FEINSTEIN**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.     INTRODUCTION OF A NEW LOSS CAUSATION EVENT THAT
       PLAINTIFFS CLAIM WOULD DOUBLE THEIR PURPORTED DAMAGES
       REQUIRES AMENDMENT OF THE COMPLAINT....................................................... 3

II.    FEINSTEIN'S NEW REPORT CONTAINS UNTIMELY NEW OPINIONS
       THAT SHOULD BE STRICKEN ...................................................................................... 6

       A.     Feinstein's New Report Contains New Opinions ..................................................... 6

       B.     Feinstein's New Opinions Are Based on Information That Has Been
              Available to Plaintiffs Since Before They Filed This Action ................................. 9

       C.     Feinstein's New Report Violates the Court's Scheduling Order .......................... 12

III.   FEINSTEIN'S NEW REPORT SHOULD BE EXCLUDED BECAUSE IT
       WOULD SIGNIFICANTLY PREJUDICE JELD-WEN DEFENDANTS,
       WASTE JUDICIAL RESOURCES, AND DELAY RESOLUTION OF THIS
       CASE ............................................................................................................................. 13

       A.     JELD-WEN Defendants Were Surprised by Feinstein's New Report
              Opining on an Unpled, Undisclosed, New Theory of Loss Causation,
              Which Purportedly More Than Doubled Plaintiffs' Damages ............................ 14

       B.     JELD-WEN Defendants' Surprise Cannot Be Cured .......................................... 15

       C.     Allowing Feinstein's New Report Would Significantly Disrupt This
              Litigation .............................................................................................................. 16

       D.     Plaintiffs Cannot Justify Their Failure to Timely Disclose Feinstein's New
              Opinions ............................................................................................................... 18

       E.     Feinstein's New Opinions Are Not Important to Plaintiffs' Claims as Pled ........ 19

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akeva L.L.C. v. Mizuno Corp.*,
212 F.R.D. 306 (M.D.N.C. 2002) ............................................................................. *passim*

*In re AT&T Sec. Litig.*,
2004 WL 6392120 (D.N.J. Apr. 7, 2004) ...........................................................16, 17

*BlackRock Eng'rs, Inc. v. Duke Energy Progress, LLC*,
2018 WL 4502009 (E.D.N.C. Sept. 18, 2018)............................................................19

*Bresler v. Wilmington Tr. Co.*,
855 F.3d 178 (4th Cir. 2017) ................................................................................8, 15

*Brownlee v. W. Fraser, Inc.*,
2015 WL 628179 (D.S.C. Feb. 12, 2015)..................................................................16

*Burt Hill, Inc. v. Hassan*,
2010 WL 419433 (W.D. Pa. Jan. 29, 2010)..............................................................12

*Campbell v. United States*,
470 F. App'x 153 (4th Cir. 2012) ...................................................................8, 13, 14

*In re Cmty. Health Sys., Inc.*,
2019 WL 5549319 (6th Cir. Oct. 23, 2019)................................................................9

*Cong. Air, Ltd. v. Beech Aircraft Corp.*,
176 F.R.D. 513 (D. Md. 1997)..................................................................................17

*Dugger v. Union Carbide Corp.*,
2019 WL 4754004 (D. Md. Sept. 30, 2019) ...............................................................8

*E.E.O.C. v. Performance Food Grp., Inc.*,
2018 WL 3608745 (D. Md. July 27, 2018)................................................................14

*Hill v. Coggins*,
867 F.3d 499 (4th Cir. 2017) ......................................................................................8

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) ......................................................................................4

*Kinlaw v. Nwaokocha*,
2019 WL 2288445 (E.D. Va. May 29, 2019) .........................................................8, 15

*New Jersey Carpenters Health Fund v. Residential Cap., LLC*,
   272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd sub nom.*
   *New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
   477 F. App'x 809 (2d Cir. 2012) .................................................................................9

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
   318 F.3d 592 (4th Cir. 2003) ...................................................................13, 14, 20

*Sharpe v. United States*,
   230 F.R.D. 452 (E.D. Va. 2005) ...........................................................................9, 13

*United States ex rel. Skibo v. Greer Lab'ys, Inc.*,
   2019 WL 1992139 (W.D.N.C. May 6, 2019) .......................................................8, 14

*Spencer Spirit Holdings, Inc. v. Sunrise Roofing, Inc.*,
   2020 WL 4757075 (W.D.N.C. Aug. 17, 2020)..........................................................8

*United States v. Dish Network L.L.C.*,
   954 F.3d 970 (7th Cir. 2020) ....................................................................................9

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   2018 WL 2958361 (S.D.N.Y. June 13, 2018) ..........................................................9

*Vir2us, Inc. v. Invincea, Inc.*,
   235 F. Supp. 3d 766 (E.D. Va. 2017) .....................................................................19

*Welch v. Sam's E., Inc.*,
   2020 WL 5868029 (W.D. Va. Oct. 1, 2020)...........................................................15

*Wilson v. Muckala*,
   303 F.3d 1207 (10th Cir. 2002) .............................................................................5, 6

*Yates v. Municipal Mortg. & Equity, LLC*,
   744 F.3d 874 (4th Cir. 2014) ....................................................................................3

**Rules**

Fed. R. Civ. P. 16(b)(4).................................................................................................13

**Other Authorities**

Restatement (Third) of Agency § 5.03 ...........................................................................9

## PRELIMINARY STATEMENT

Plaintiffs want a do-over.  To satisfy the loss causation element of their securities claims, Plaintiffs alleged two corrective disclosures in the Complaint that purportedly revealed the truth of the prior alleged misrepresentations and caused a stock loss:  the October 5 Divestiture Decision and the October 15 Pre-Earnings Release.[1]  But Plaintiffs' own expert told them they could not prove the Divestiture Decision actually caused a stock loss.  So they put all their eggs in the Pre-Earnings Release basket.  But discovery has shown they will fail there too—if not at summary judgment, because the Court will exclude their loss causation and damages expert for his unreliable opinions, then at trial.  And so in an attempt to save their case, they asked their expert to come up with a new theory of loss causation and damages that was not previously pled, briefed, or tested through discovery.  This is prohibited by the Federal Rules of Civil Procedure and settled case law.

Feinstein's new report is not a proper supplement under Rule 26(e), nor does it comply with this Court's Scheduling Order.  It is instead an amended complaint, filed without leave, and without good cause, because Feinstein's new opinions are based on an email Plaintiffs have had access to, through multiple independent means, for months, if not years.  Plaintiffs cannot deny that:  (1) their own investment advisor (who acted as Lead Plaintiffs' agent and to whom Lead Plaintiffs delegated complete authority over their investment decisions) received the August 8, 2018 Susquehanna Email at issue the day it was sent; (2) their own investment advisor produced the August 8, 2018 Susquehanna Email on January 15, 2021 in this action; (3) the August 8, 2018 Susquehanna Email was introduced as an exhibit at the deposition of their own investment advisor on January 27, 2021, which Plaintiffs actively participated in; and (4) JELD-WEN Defendants

---

[1]    Capitalized terms used but not defined herein have the meaning ascribed to them in the Memorandum of Law in Support of JELD-WEN Defendants' Motion to Strike the New Report of Dr. Steven Feinstein, Dkt. No. 217.

produced additional copies of the Susquehanna Email on February 8, 2021, just twelve days after the parties agreed on a document discovery protocol and three weeks after the parties agreed on search terms. Yet Plaintiffs did not serve Feinstein's new report until March 19, 2021—after he served his reply report on February 15, 2021, was deposed on February 22, 2021, and JELD-WEN Defendants moved to exclude his testimony on March 5, 2021. Unable to deny these facts, Plaintiffs try to obscure them, by claiming they thought the Susquehanna Email was a private email until JELD-WEN produced its copies of the email on February 8, 2021. The evidence shows this claim does not pass the smell test, and, in any event, does not render Feinstein's new opinion, six weeks later, timely.

Plaintiffs' last-minute maneuver is neither substantially justified nor harmless. Permitting Plaintiffs to proceed with Feinstein's new report would disrupt this litigation and unfairly prejudice Defendants. At a minimum, Defendants are entitled to an opportunity to (1) move to dismiss these new theories, because they are legally insufficient as a matter of law, (2) re-oppose class certification, because Plaintiffs' new theories raise new typicality and predominance issues with the class, and (3) conduct additional fact and expert discovery on the new alleged corrective disclosure. Defendants would be highly prejudiced if the Court allowed Plaintiffs to reboot this case, after the parties have fully briefed motions to dismiss, for class certification, and to exclude one another's experts; taken 31 depositions; exchanged 6 expert reports; and completed exhaustive fact discovery. JELD-WEN Defendants alone have issued 11 non-party subpoenas for documents and testimony and produced nearly 400,000 pages of new documents.

For these reasons, as well as those discussed in JELD-WEN Defendants' opening brief and below, Feinstein's new report should be stricken and the opinions contained in it excluded.

2

**ARGUMENT**

Feinstein's new report should be stricken.  As Plaintiffs acknowledge, "a new expert report [is] untimely and improper under Rule 26(e)" where it "offer[s] new opinions rather than supplementation to account for the correction of an error or to incorporate new information" that was obtained after the expert disclosure deadlines.  Opp'n at 4 n.4 (citing *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)).  That is precisely what Feinstein's new report does: It introduces an entirely new theory of loss causation and damages and offers brand-new opinions, based on information Plaintiffs have had all along.  Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation."  *Akeva*, 212 F.R.D. at 310.  Beyond that, admitting Feinstein's new opinion would significantly prejudice Defendants, waste judicial resources, and delay resolution of this case.

**I.    INTRODUCTION OF A NEW LOSS CAUSATION EVENT THAT PLAINTIFFS CLAIM WOULD DOUBLE THEIR PURPORTED DAMAGES REQUIRES AMENDMENT OF THE COMPLAINT**

Contrary to Plaintiffs' repeated protestations, Opp'n at 3, 19, 20 n.19, Feinstein's new report does indeed adopt a new theory of recovery that has not been pled in this case.  *See also id.* at 13 (claiming none of "Plaintiffs' theories of liability, loss causation [or] damages" are changed by Feinstein's new opinions).  The relevant analysis begins with the elements of Plaintiffs' cause of action for securities fraud:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 884 (4th Cir. 2014).  To plead "loss causation," a plaintiff must plead either the existence of "corrective disclosures" or

3

that a concealed risk "materialized." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 473, 477 n.10 (4th Cir. 2011).[2]  Thus, a corrective disclosure is a fundamental element of Plaintiffs' claims.

It is neither a secret nor a matter of interpretation that, until Feinstein's new report, Plaintiffs alleged that two, and only two, corrective disclosures revealed the truth of prior misrepresentations and caused a stock drop:  Judge Payne's October 5, 2018 Divestiture Decision and JELD-WEN's announcement of a litigation contingency on October 15, 2018.  *See* Compl. ¶¶ 243–66; Ex. 1 at 5 (Interrogatory No. 7); Ex. 2 at 11–12 (same); Ex. 3 at 11–12 (same).[3]  The Court allowed the case to proceed based on these two corrective disclosures, Dkt. No. 103 at 17–18, Plaintiffs based their motion for class certification on these two corrective disclosures, Dkt. No. 121 at 8–9, the parties' timely expert reports opined on these two corrective disclosures, Dkt. No. 122-1 ¶ 291; Dkt. No. 161-1 ¶¶ 14–17, and the parties conducted fact discovery on that basis.

Feinstein's new report purports to add a new, unpled theory of loss causation and damages to this case.  It includes a new alleged corrective disclosure, Dkt. No. 199-3 ¶ 38, which Feinstein claims would ***more than double*** Plaintiffs' purported damages, *id.* ¶ 40–41.  That is not a "supplement" to an expert disclosure about Plaintiffs' allegations as pled; it is a ***new*** allegation Plaintiffs have not pled at all.  Fed. R. Civ. P. 26(e).  Plaintiffs are therefore wrong to pretend they "have not added claims or altered their theory of liability, loss causation or damages" and therefore do not need this Court's leave to amend their pleadings to add the allegations Feinstein has

---

[2]  As the Court explained in its opinion on the Defendants' motions to dismiss, the "ultimate loss causation inquiry . . . is the same" under either a corrective disclosure or materialization of the risk theory.  Dkt. No. 103 at 17.  Feinstein calls the Susquehanna Email a corrective disclosure, which is how this brief also refers to it.  *See* Dkt. No. 199-3 ¶ 38.

[3]  References to Ex. __ are either to the exhibits attached to the Declaration of Jacob M. Rae in support of the JELD-WEN Defendants' motion to strike or to the Declaration of Jacob M. Rae in further support of the JELD-WEN Defendants' motion to strike, submitted herewith.

introduced. Opp'n at 20 n.19. Plaintiffs contend that they gave Defendants "detailed notice of each of the corrective disclosure events," *id.*, ignoring that they provided no notice at all until March 19, 2021 that they intended to argue a third, unpled corrective disclosure. To avoid this precise situation, JELD-WEN Defendants served an interrogatory on Plaintiffs seeking identification of "each disclosure that Plaintiffs claim represented a corrective disclosure and/or the materialization of an undisclosed risk, whether complete or partial, related to any JELD-WEN Security and for which Plaintiffs are seeking, or intends to seek, any monetary recovery in this Action." *See* Ex. 1 at 5 (Interrogatory No. 7). Each Plaintiff responded by referring JELD-WEN Defendants to the Complaint, which alleges only the October 5, 2018 and October 15, 2018 corrective disclosures. *Id.*; Ex. 2 at 11–12 (Interrogatory No. 7); Ex. 3 at 11–12 (same). Plaintiffs only updated their responses on April 5, 2021, a week after the close of discovery, ten days after JELD-WEN Defendants filed this motion, and one day before they filed their opposition.

Plaintiffs also argue they need not amend their Complaint because "the pretrial order is the controlling document" once it is issued. Opp'n at 17. But Plaintiffs, again, are wrong. Courts "do not normally expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). That is because "[s]uch a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice." *Id.* at 1215–16. "The laudable purpose of Fed. R. Civ. P. 16 is to avoid surprise, not foment it." *Id.* at 1216.

Plaintiffs' approach seeks to turn that process on its head. In a remarkable passage from their opposition brief, Plaintiffs argue that: there is no need for amendment, no need to provide JELD-WEN Defendants an opportunity to move to dismiss their new claims, and no need to

5

provide JELD-WEN Defendants an opportunity to raise new defenses introduced by those claims with respect to class certification; JELD-WEN Defendants should be denied the fact discovery they need to defend themselves; and JELD-WEN Defendants should not be permitted an opportunity to move to exclude Feinstein's new opinions. Opp'n 17–18. In short, Plaintiffs think the parties should just show up and litigate claims that have not been tested through discovery or motion practice. Rule 16's provision for a pretrial order is not the tool of abuse Plaintiffs imagine. It does not exist to deprive defendants of the ability to defend themselves. *See Wilson*, 303 F.3d at 1215–16.

## II.    FEINSTEIN'S NEW REPORT CONTAINS UNTIMELY NEW OPINIONS THAT SHOULD BE STRICKEN

Feinstein's new report is untimely because it contains new opinions, and therefore violates both this Court's Scheduling Order and Rule 26(e)'s limitations on supplemental disclosures.

### A.    Feinstein's New Report Contains New Opinions

Plaintiffs know that if Feinstein's new opinions are new, they are untimely. Opp'n at 4 n.4 (conceding that "a new expert report [is] untimely and improper under Rule 26(e)" where it "offer[s] new opinions rather than supplementation to account for the correction of an error or to incorporate new information"); *Akeva*, 212 F.R.D. at 310 (striking new, untimely opinions). So Plaintiffs try to pretend Feinstein's new report "simply includes additional evidentiary support for the opinions Dr. Feinstein previously gave on loss causation and damages." Opp'n at 3. Not so.

Feinstein's new report, which identifies a new, unpled corrective disclosure that Feinstein claims would ***more than double*** Plaintiffs' purported damages plainly contains new opinions. As Feinstein admitted in his new report, his original report did not consider August 8, 2018 to be a corrective disclosure date and did not purport to measure damages from any stock decline on that day, but his new report "***revisit[s]***" that prior assessment and offers a new opinion: "that all of the

6

$2.38 per share residual stock price decline on 8 August 2018 was caused by the 8 August 2018 corrective disclosure." Dkt. No. 199-3 ¶¶ 34, 40 (emphasis added). That is not, as Plaintiffs claim, "simply . . . additional evidentiary support" for his previously disclosed loss causation and damages opinions. Opp'n at 3.

Plaintiffs try to get around this problem by conflating *methodologies* with *opinions*. They admit that Feinstein's new report "added a new corrective disclosure" but claim that Feinstein's "theories" remain unchanged because he "utilizes the same methodology." Opp'n at 11–13.[4] But (quite obviously) experts can use the same methods to reach new opinions about different facts. A radiologist may always use the same method in reading X-ray images to detect bone fractures; but if a radiologist expert in litigation served a last-minute report opining that the plaintiff suffered additional injuries, on a different day, based on a different X-ray image than he previously examined, that would be a new opinion. So too here. Feinstein's new opinion analyzes a new purported corrective disclosure, on a new date, containing different information (conjecture as to Judge Payne's thought process about the legality of divestiture as a remedy), resulting in different damages. *See* Dkt. No. 199-3 ¶¶ 33–41.[5]

---

[4]  Plaintiffs cannot keep their story straight. At times, they argue that Feinstein's new opinions are not new because he used the same methodology. Opp'n at 13. At others, they argue that use of a "new method for calculating damages" is not a basis for exclusion. *Id.* at 8.

[5]  In fact, Feinstein's damages methodology is not even the same. In his original report, Feinstein "calculated" the majority of Plaintiffs' purported damages by apportioning the stock drop to JELD-WEN's various business segments based on EBITDA and proclaiming all of the stock drop purportedly attributable to North American doors was also attributable to the alleged fraud. *See* Dkt. No. 170 at 26–28 (explaining the unreliable nature of his "methodology"). In his new report, Feinstein instead measures damages based on the full amount by which the stock dropped the day of the purported corrective disclosure, Dkt. No. 199-3 ¶ 40, ignoring the fact that half of the decline on August 8, 2018 took place before the Susquehanna Email was sent. *See* Ex. 9 (email sent after 2:45 pm). Feinstein does not explain how the Susquehanna Email travelled backwards in time to cause JELD-WEN's stock to drop before it was even sent.

It should come as no surprise, then, that Plaintiffs can identify no case law supporting their extraordinary argument that an expert who identifies additional damages based on different facts is not offering a new opinion. And the cases Plaintiffs do cite do not support their position. For example, in *Bresler v. Wilmington Trust Co.*, 855 F.3d 178 (4th Cir. 2017), the Fourth Circuit held that it was not error to permit plaintiff's expert merely to incorporate new facts where, "decisively, the collective result of these changes was a *decrease* in the amount of damages calculated" by plaintiff's expert. *Id.* at 193. Plaintiffs' other cases primarily involve supplements of timely disclosed opinions.[6] Those do not apply here, where Plaintiffs admit that Feinstein opined on a new corrective disclosure and additional damages. Opp'n at 12–13.

Plaintiffs also attempt to use the parties' privilege dispute as a smokescreen to mask Feinstein's new and untimely opinions. Plaintiffs' opposition brief spills considerable ink arguing about documents obtained following the Court's resolution of that dispute. *See* Opp'n at 1, 5, 11, 20. This is nothing but a red herring: the Susquehanna Email was not part of that privilege dispute, and merely including documents that were in dispute in Feinstein's new report to bolster his prior opinions does not render Feinstein's new opinions based on the Susquehanna Email timely. While Feinstein's bolstering analysis is also improper and should also be stricken, *see Campbell v. United*

---

[6] *See Spencer Spirit Holdings, Inc. v. Sunrise Roofing, Inc.*, 2020 WL 4757075, at *3 (W.D.N.C. Aug. 17, 2020) ("Notably, the supplemental report does not go beyond the issues previously identified by [both sides' experts]. Nor does the supplemental report 'interject an additional, and considerably complex, legal theory' or factual theory which would 'substantially change the character of the case.'" (quoting *Hill v. Coggins*, 867 F.3d 499, 508 (4th Cir. 2017))); *Dugger v. Union Carbide Corp.*, 2019 WL 4754004, at *2 (D. Md. Sept. 30, 2019) ("[N]one of the experts changed their opinions based on the new materials."); *Kinlaw v. Nwaokocha*, 2019 WL 2288445, at *4 (E.D. Va. May 29, 2019) ("Kinlaw is correct that the first report, although not a picture of clarity, did contain the opinions that the Defendants contend were added in the second report."); *United States ex rel. Skibo v. Greer Lab'ys, Inc.*, 2019 WL 1992139, at *4 (W.D.N.C. May 6, 2019) ("Mr. Haney's only opinion in the Supplemental Report—'Opinion #1'—is the same opinion verbatim as the December 28 Report" except for changes to the dollar amount of damages and number of false claims).

*States*, 470 F. App'x 153, 157 (4th Cir. 2012) (Rule 26(e) does not permit mere bolstering); *Sharpe v. United States*, 230 F.R.D. 452, 462 (E.D. Va. 2005) (same); *Akeva*, 212 F.R.D. at 310 (same), JELD-WEN Defendants never argued that using those disputed documents to bolster (in Plaintiffs' view) Feinstein's prior opinions constituted a new opinion.

**B.      Feinstein's New Opinions Are Based on Information That Has Been Available to Plaintiffs Since Before They Filed This Action**

Plaintiffs argue that they could not "confirm that the information in [the Susquehanna Email] . . . was publicly available until the March 9, 2021 deposition of . . . John Linker." Opp'n at 6. That is demonstrably false for at least four reasons.

***First***, Plaintiffs have had constructive knowledge of the Susquehanna Email since August 8, 2018, when it was sent, because it was in possession of Lead Plaintiffs' own agent (who understood it was sent through a distribution list, and not privately) ***the entire time***. Br. at 9. It is blackletter law that "notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal." *In re Cmty. Health Sys., Inc.*, 2019 WL 5549319, at *1 (6th Cir. Oct. 23, 2019) (quoting Restatement (Third) of Agency § 5.03); *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020) ("The knowledge of the agent is imputed to the principal."). Thus, courts "imput[e] an investment adviser's knowledge to institutional plaintiffs." *Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361, at *5 & n.4 (S.D.N.Y. June 13, 2018) (collecting cases); *see also New Jersey Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 169 (S.D.N.Y. 2011) (imputing knowledge of a plaintiff's "investment advisor [that] had complete discretion over its investments" to the plaintiff), *aff'd sub nom. New Jersey Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809 (2d Cir. 2012). Plaintiffs cannot contest that their investment advisors, who managed their investments on their behalf, and to whom they fully delegated buying and selling

9

authority, acted as their agents and fiduciaries.  *See, e.g.*, Ex. 14 at 100:7–9, PPNPF Dep. ("Again, we give fiduciary responsibility to the investment managers, so we rely on them to make those decisions.").  Because Wellington received the Susquehanna Email, within the scope of its delegated duties of researching and managing Plaintiffs' investments, ███████████████ ████████████████████████████████████████████████, Plaintiffs are imputed to have known this information.  *See* Ex. 11 (showing Wellington's receipt of the Susquehanna Email).  Calling this argument "[u]tterly preposterous," Opp'n at 6 n.7, does not overcome established law.

**Second**, the versions of the Susquehanna Email produced by Plaintiffs' own investment advisor on January 15, 2021 show it was not a private email.  *See* Opp'n at 7.  ███████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████        Ex. 11 at WMC-JELD-0002435.[7]

██████████████████████████████████████████████████████████████████

███████████████████████████████████        Ex. 15 at WMC-JELD-0000371;

*see also* Ex. 16; Ex. 17.[8]  This is all the information Plaintiffs needed for Feinstein's new opinions, and, again, this information has been available to Plaintiffs since August 8, 2018.  Even if they

---

[7]  Although Feinstein ignores confounding information in his new report, Bank of America downgraded JELD-WEN's rating on the morning of August 8, 2018, ████████████████ ████████████████████████████.  Ex. 11 at WMC-JELD-0002435.

[8]  ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████  *Compare* Ex. 16, *with* Ex. 17.

10

failed to conduct an adequate investigation to learn of it sooner, the email was produced in this litigation by their own investment advisor on January 15, 2021. They have no excuse for waiting over two months—after the completion of class certification briefing and argument, expert discovery, and *Daubert* motions—to serve Feinstein's new opinions.

*Third*, if Plaintiffs were unclear about whether the Susquehanna Email was privately commissioned, they could have asked their own agent at its Rule 30(b)(6) deposition on January 27, 2021. While Plaintiffs claim "Wellington testified that it had hired Susquehanna to act as a legal analyst to follow the *Steves* litigation," Opp'n at 7, that testimony does not exist. Instead, the testimony cited by Plaintiffs shows that Wellington understood Susquehanna was "a sell side research [firm] that provides analyst reports and researches." Dkt. No. 251-1 at 35:19–36:2, Wellington Dep. In fact, Wellington did not remember how it came to receive Susquehanna's research updates on the Steves litigation. *Id.* at 36:16–18. And when asked if Wellington knew whether Susquehanna provided its research to "other investment firms," the answer was "I would assume so." *Id.* at 37:4–87. Thus, by January 15, 2021, when Wellington produced the Susquehanna email, Br. at 8—and certainly by January 27, 2021, when Wellington was deposed, *id.*—Plaintiffs knew every fact they claim they could not have known until six weeks later, on March 9, 2021.

*Finally*, JELD-WEN Defendants produced multiple copies of the Susquehanna Email on February 8, 2018, which showed Linker also believed that the market reacted to it. Plaintiffs argue they were unable to find these emails before March 9, 2021 because JELD-WEN Defendants sandbagged them with a "150,000 page document dump." Opp'n at 7–8. Nothing could be further from the truth. The Court is already aware of the history of JELD-WEN Defendants' diligent discovery efforts. *See* Dkt. No. 187 at 1–3 (setting forth discovery timeline). To briefly

11

summarize, JELD-WEN Defendants expeditiously proposed search terms and custodians at the same time as they served their responses to Plaintiffs' second set of document requests on December 14, 2020. *Id.* at 2. After several weeks of delay, Plaintiffs demanded a dramatically broader scope of discovery. *Id.* JELD-WEN Defendants repeatedly asked Plaintiffs to narrow their requests to keep them proportional to the discovery they actually needed, but Plaintiffs largely refused. *See id.* at 2–3. To avoid further delay, JELD-WEN Defendants ultimately agreed to Plaintiffs' demanded custodians and search terms (which increased the total number of documents JELD-WEN needed to review by over 100,000), then expeditiously began producing documents on a rolling basis in response to those requests, including by producing several versions of the Susquehanna Email in their second production on February 8, 2021, just 3 weeks after the parties agreed on search terms. *Id.*; Br. at 8.

JELD-WEN Defendants' productions were not a "document dump" but a good faith effort to provide the overbroad discovery Plaintiffs demanded. Plaintiffs cannot use their own unreasonable document demands, *see* Dkt. No. 187-1, Dkt. No. 187-4, Dkt. No. 187-18, as an excuse for their failure to diligently investigate and prepare their case. *Burt Hill, Inc. v. Hassan*, 2010 WL 419433, at *8 & n.10 (W.D. Pa. Jan. 29, 2010) (finding that plaintiff's production of thousands of responsive documents could not be characterized as a "document dump" because that was "exactly what [defendants'] overbroad discovery request contemplates").

### C. Feinstein's New Report Violates the Court's Scheduling Order

Plaintiffs next argue that Feinstein's new report does not violate the Scheduling Order because the Scheduling Order does not explicitly set deadlines for supplemental expert reports. Opp'n at 4–5. As discussed above, Feinstein's new report is not a supplemental report. It contains undisclosed, new opinions, *see supra* § II(B), that Plaintiffs were required to have disclosed pursuant to Rule 26(a)(2) on January 4, 2021. Dkt. No. 112; *see Akeva*, 212 F.R.D. at 310 (holding

that the submission of "additional expert opinions" after the disclosure deadline is "not supplementation, but merely an out-of-time disclosure").

But even setting that fundamental problem aside, Plaintiffs are still wrong. The Scheduling Order contemplates that all expert opinions would be introduced into the case *before* March 5, 2021, the deadline for the filing of *Daubert* motions. Dkt. No. 152. Any new opinion after that date, like Feinstein's new report, would require modification of the Scheduling Order to permit additional *Daubert* motions (or supplemental briefing on existing motions). Fed. R. Civ. P. 16(b)(4) (requiring that *any* modification of a scheduling order requires both a showing of good cause and judicial consent). Because Plaintiffs cannot make a showing of good cause for their failure to timely disclose Feinstein's new opinions, *see supra* § II(B), and because they did not request modification of the Scheduling Order to permit them to introduce new opinions but instead *filed* the new report in opposition to JELD-WEN Defendants' *Daubert* motion, Feinstein's new report should be stricken and his new opinions should be excluded. *Campbell*, 470 F. App'x at 157 ("To construe [Rule 26(e)] supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." (quoting *Sharpe*, 230 F.R.D. at 462) (alterations in original)); *accord Akeva*, 212 F.R.D. at 310 (Rule 26(e) does not permit "unlimited bolstering of expert opinions.").

III. **FEINSTEIN'S NEW REPORT SHOULD BE EXCLUDED BECAUSE IT WOULD SIGNIFICANTLY PREJUDICE JELD-WEN DEFENDANTS, WASTE JUDICIAL RESOURCES, AND DELAY RESOLUTION OF THIS CASE**

For the reasons discussed above, Feinstein's new report is untimely and violates the Court's Scheduling Order. Plaintiffs agree that exclusion of an untimely report is appropriate unless the untimely disclosure is either "substantially justified" or "harmless." Opp'n at 11–12; *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003); *see also Sharpe*, 230 F.R.D. at 456. Whether nondisclosure is substantially justified or harmless is determined by

13

reference to the five-factor test set out in *Southern States*. *See* Br. at 10 (setting out factors) (quoting *S. States*, 318 F.3d at 596). Because Plaintiffs' failure to timely disclose Feinstein's new expert opinions is neither substantially justified nor harmless, exclusion is warranted.

### A. JELD-WEN Defendants Were Surprised by Feinstein's New Report Opining on an Unpled, Undisclosed, New Theory of Loss Causation, Which Purportedly More Than Doubled Plaintiffs' Damages

Plaintiffs argue that JELD-WEN Defendants could not have been surprised because "Feinstein warned" that he might offer new, undisclosed opinions during the course of his deposition. Opp'n at 12. But a vague disclaimer does not vitiate the surprise caused by the introduction of new opinions. If it did, experts would be able to "submit additional expert reports" whenever they desired, which is contrary to the law of the Fourth Circuit. *Campbell*, 470 F. App'x at 157.

This is not a case like *Skibo*, where a damages expert offered an opinion that calculated damages based on certain sets of sales data, and "made it clear" that as more detailed data became available they would need to update those calculations, and later did so. 2019 WL 1992139, at *5. Feinstein did not simply update his existing damages calculations based on new data (for example, if he had provided a total damages figure based on outstanding shares) but otherwise provide "the same opinion verbatim" as his original report. *Id.* at *4. Nor did his change result in a modest 10% change to his damages calculation. *Id.* Instead, Feinstein identified an entirely new, unpled corrective disclosure that he claims ***more than doubles*** the damages Plaintiffs are entitled to. Plaintiffs' own case law shows these "new expert opinions," submitted on the eve of the close of discovery, are surprising. *See, e.g.*, *E.E.O.C. v. Performance Food Grp., Inc.*, 2018 WL 3608745, at *2 (D. Md. July 27, 2018) ("[P]laintiff was presumably surprised when defendants submitted the supplemental report on the final day of discovery, given that it contained new expert opinions."). Thus, the first *Southern States* factor supports exclusion.

14

### B.    JELD-WEN Defendants' Surprise Cannot Be Cured

Nor can Defendants' surprise be cured without rebooting the entire case.  When a plaintiff brings securities claims and alleges class-wide damages from a purported corrective disclosure, the Federal Rules of Civil Procedure allow the defendant to take fact and expert discovery about that theory before trial.  As previously explained, Br. at 12-14, JELD-WEN Defendants would need opportunities to move to dismiss Plaintiffs' new theory; re-brief class certification because of new predominance and typicality issues raised by the new purported corrective disclosure; conduct additional document discovery and depositions from Susquehanna, among others; conduct additional expert discovery; and file a new *Daubert* motion.

Plaintiffs say a mere opportunity to submit a rebuttal report and "mutual depositions" would cure the surprise.  Opp'n at 14–15.  That is wholly inadequate, as it offers only a small portion of the additional discovery JELD-WEN Defendants would require to prepare defenses to Plaintiffs' previously unpled and undisclosed loss causation theory.  None of Plaintiffs' cases support their attempt to introduce a new theory of recovery at the close of discovery, which purports to **double** their alleged damages.  *See Bresler*, 855 F.3d at 193–94 (holding that changes to expert's calculations based on evidence introduced by the other side at trial and that *decreased* the damages calculation was harmless); *Welch v. Sam's E., Inc.*, 2020 WL 5868029, at *2–3 (W.D. Va. Oct. 1, 2020) (finding exclusion was not warranted where theory was pled in complaint and where late disclosure was caused by the last minute withdrawal of the plaintiff's original expert); *Kinlaw*, 2019 WL 2288445, at *4–5 (holding report was a proper supplement that did not contain any new opinions).  Thus, the second *Southern States* factor supports exclusion.

15

C.    **Allowing Feinstein's New Report Would Significantly Disrupt This Litigation**

Contrary to Plaintiffs' contentions, Opp'n at 17–19, this case would be significantly disrupted by permitting Feinstein's new report, and that disruption cannot be avoided by simply denying Defendants an adequate opportunity to defend themselves.

Plaintiffs' effort to distinguish *Brownlee v. West Fraser, Inc.*, 2015 WL 628179 (D.S.C. Feb. 12, 2015), *see* Opp'n at 16 n.16, only serves to highlight the similarities to the situation here. *Brownlee* was a slip-and-fall case.  In that case, Brownlee consistently claimed that his slip was caused by "wet tarps and wet lumber." *Brownlee*, 2015 WL 628179, at *3.  Brownlee then changed his theory and claimed the cause of his fall was related to lumber stacking methods and lighting adequacy.  *Id.*  The court concluded asserting this new theory would require amendment of the complaint.  *Id.*  So too here.

Plaintiffs have consistently claimed two, and only two, corrective disclosures:  the Divestiture Decision and the Litigation Contingency.  A new recovery theory that an August 8, 2018 corrective disclosure caused a stock drop on that date would require amendment of the Complaint, which Defendants have a right to oppose, and an opportunity for Defendants to move to dismiss based on the legal insufficiency of Plaintiffs' new theory, if leave to amend is granted.  Br. at 11–13.  Any amendment would severely disrupt this litigation because "Defendants would have to examine each new claim and gather discovery to defend themselves against these new allegations" and amendment would "spark fresh rounds of motion practice further delaying the end of the case."  *See In re AT&T Sec. Litig.*, 2004 WL 6392120, at *7 (D.N.J. Apr. 7, 2004) (denying amendment).

Plaintiffs basically propose to avoid disruption by denying Defendants due process.  Their plan is to use the pretrial order process to effectuate a backdoor amendment of the Complaint, but without the need for pesky pretrial discovery.  *See* Opp'n at 17, 20 n.19.  Courts prohibit this type

16

of gamesmanship: "If parties are allowed to change the nature and scope of their expert's opinions after the Court has imposed deadlines and as late as the time of submission of the Pre–Trial Order, parties would in effect be encouraged to wait until such time to make known new theories, thereby minimizing the opportunity for the exploration of countervailing opinions. Such 'trial by ambush' is precisely what the 1993 revision of the Federal Rules is attempting to eliminate." *Cong. Air, Ltd. v. Beech Aircraft Corp.*, 176 F.R.D. 513, 516 (D. Md. 1997); *see also AT&T*, 2004 WL 6392120, at *7 (rejecting effort to amend securities claims through the pretrial order as untimely and prejudicial).

Relatedly, Plaintiffs cannot circumvent Federal Rule of Evidence 702 by waiting to submit a new opinion until after *Daubert* motion deadlines. *See* Opp'n at 18. Feinstein's analysis of a third purported "corrective disclosure" is replete with methodologic flaws which are new and different from his prior errors. For example, based on only a cursory review of his new report, Feinstein's new opinions appear to be unreliable, among other reasons, because: (1) Feinstein opined that an email that was sent after 2:45 pm on August 8, 2018 caused the ***entire*** stock drop that day, even though about half of that stock drop occurred before the email was sent, *compare* Dkt. No. 199-3, Figure-1, *with* Dkt. No. 122-1, at Ex. 8, p.190; (2) Feinstein ignored confounding information, opining that there was "no Company-specific news that would reasonably have contributed" to the stock drop on August 8, 2018, Dkt. No. 199-3 ¶ 39, despite the fact that JELD-WEN issued negative earnings news and guidance on August 7, 2018, which led to negative analyst reports and downgrades on August 8, 2018, *see* Ex. 11 at WMC-JELD-0002435 ██████████████████████████████████████████████████████████████; and (3) Feinstein ignored the substantial and statistically significant ***increase*** in JELD-WEN's stock price on August 9, 2018, *see* Dkt. No. 122-1, at Ex. 8, p.190. JELD-WEN Defendants

deserve an adequate opportunity to conduct further expert and fact discovery to demonstrate the unreliable nature of Feinstein's new opinion, and to move to exclude so that it cannot confuse or mislead a jury. Thus, the third *Southern States* factor supports exclusion.

### D.    Plaintiffs Cannot Justify Their Failure to Timely Disclose Feinstein's New Opinions

Plaintiffs try to justify their failure to timely disclose Feinstein's new report by blaming JELD-WEN Defendants. Opp'n at 19–20. As explained in Section II.B., as well as in JELD-WEN Defendants' opening brief, *see* Br. at 7–9, Plaintiffs cannot disclaim knowledge that Wellington, their investment advisor and agent, possessed.[9] Nor can Plaintiffs blame JELD-WEN Defendants for their own failure to diligently investigate their claims, *supra* § II.B; Ex. 11; review what their investment advisor produced on January 15, 2021; ask their investment advisor questions when it was introduced as an exhibit at their agent's January 27, 2021 deposition; or timely review JELD-WEN Defendants' productions. Moreover, as discussed above, JELD-WEN Defendants diligently produced documents in this litigation, despite Plaintiffs' unreasonable demands. *Supra* § II.B.

To the contrary, it appears Plaintiffs made a strategic decision not to provide Feinstein with documents produced in the litigation to consider in forming his opinions. By the time of Feinstein's initial report on January 4, 2021, JELD-WEN Defendants had reproduced over 365,000 documents from the prior litigations. Yet Feinstein included only a single produced document— a deposition from the IMD litigations—in his list of materials considered. *See* Dkt. No. 122-1, Ex.

---

[9]    Plaintiffs concede that an agent's knowledge can be imputed to the principal, *see* Opp'n at 20, and argue JELD-WEN Defendants could not have been surprised that Plaintiffs added a new corrective disclosure because they knew about the Susquehanna Email that John Linker received. But Plaintiffs totally miss the mark. The email, which includes one person's conjecture about how Judge Payne might rule on the legality of divestiture based on his review of a hearing transcript, is not corrective of any alleged misrepresentation. JELD-WEN Defendants had no reason to believe Plaintiffs would argue otherwise.

18

1. Similarly, by the time of Feinstein's reply report on February 15, 2021, JELD-WEN Defendants had produced another 20,000 new documents, but the only produced documents that Feinstein considered were backup data to the Fischel report, the deposition of JELD-WEN Defendants' accounting expert Jason Flemmons, and a document cited in Flemmons's report and discussed at his deposition. Dkt. No. 170-12, Ex. 1. Plaintiffs cannot blame Defendants for their choices. *See Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 779 (E.D. Va. 2017) (holding that a party's excuses for its own diligence failures did not "constitute a substantial justification for its failure to disclose"). Thus, the fourth *Southern States* factor supports exclusion.

## E.    Feinstein's New Opinions Are Not Important to Plaintiffs' Claims as Pled

Plaintiffs present no argument that Feinstein's new opinions are important to the case they actually pled—Plaintiffs have not pled a corrective disclosure on August 8, 2018 caused a stock drop resulting in damages to them. *See supra* § I. Despite pretending their "claims remain unchanged, as do their theories of liability, loss causation and damages," Opp'n at 19, Plaintiffs argue that Feinstein's new opinion should be allowed because "proving damages is important to [Plaintiffs'] case," *id.* (quoting *BlackRock Eng'rs, Inc. v. Duke Energy Progress, LLC*, 2018 WL 4502009, at *3 (E.D.N.C. Sept. 18, 2018)).

Plaintiffs cannot have it both ways. Either (1) their claims and Feinstein's opinions remain "unchanged," *id.*, in which case Feinstein's untimely new opinions are unimportant because the damages Plaintiffs alleged arise only from purported corrective disclosures on October 5 and 15, 2018, or (2) Feinstein's new report contains new opinions that would significantly alter their existing allegations by adding a new corrective disclosure and purportedly doubling their alleged damages, which would be highly prejudicial to JELD-WEN Defendants and disruptive to this litigation, *see supra* §§ III.A-D. In either event, Feinstein's new report should be stricken.

19

Because all of the *Southern States* factors weigh in favor of excluding Plaintiffs' untimely disclosure of Feinstein's new opinions, Feinstein's new report was neither substantially justified nor harmless. 318 F.3d at 596, 598–99. As a result, Exhibit G to Dkt. Nos. 198 and 199 should be stricken from the record, and Feinstein should be barred from offering any of the opinions contained therein at trial.

## CONCLUSION

For the foregoing reasons, as well as those set forth in JELD-WEN Defendants' opening brief, the Court should strike Feinstein's untimely and improper report, exclude the opinions contained therein, and grant such other and further relief as the Court deems just and proper.

20

Dated: April 9, 2021

Respectfully submitted,

*/s/ Brian C. Riopelle*
Brian C. Riopelle (Va. Bar No. 36454)
Brian E. Pumphrey (Va. Bar No. 47312)
Brian D. Schmalzbach (Va. Bar No. 88544)
Garrett H. Hooe (Va. Bar No. 83983)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com
bschmalzbach@mcguirewoods.com
ghooe@mcguirewoods.com

Sandra C. Goldstein, P.C. (*pro hac vice*)
Rachel M. Fritzler (*pro hac vice*)
Lindsey Weiss Harris (*pro hac vice*)
Jeehyeon Jenny Lee (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
sandra.goldstein@kirkland.com
rachel.fritzler@kirkland.com
lindsey.harris@kirkland.com
jenny.lee@kirkland.com
jacob.rae@kirkland.com

Matthew S. Owen (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 389-5000
Fax: (202) 389-5200
matt.owen@kirkland.com

*Attorneys for Defendants JELD-WEN*
*Holding, Inc., Mark A. Beck, L. Brooks*
*Mallard, Kirk S. Hachigian, and Gary S.*
*Michel*

21

**CERTIFICATE OF SERVICE**

I certify that on the 9th day of April, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which sends an electronic copy of the foregoing to all

counsel of record in this case.

/s/ Brian C. Riopelle

Brian C. Riopelle (Va. Bar No. 36454)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1084
Fax.: (804) 698-2150
briopelle@mcguirewoods.com

22