UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | | |
|---|---|---|
| In re JELD-WEN HOLDING, INC. SECURITIES LITIGATION | ) ) ) ) | Civil Action No. 3:20-cv-00112-JAG |
| This Document Relates To: | ) ) | <u>CLASS ACTION</u> |
| ALL ACTIONS. | ) ) ) ) | |

**CLASS REPRESENTATIVES' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT <u>AND APPROVAL OF NOTICE TO THE CLASS</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................3

I.     PROCEDURAL HISTORY ................................................................................................3

II.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE
PROPOSED SETTLEMENT .............................................................................................6

ARGUMENT....................................................................................................................................6

I.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
APPROVAL ........................................................................................................................6

    A.   Standards for Preliminary Approval of a Proposed Class Action
Settlement .................................................................................................................6

    B.   The Court Will Likely Be Able to Approve the Proposed Settlement
Under Rule 23(e)(2)..................................................................................................9

        1.   Class Representatives and Class Counsel Have Zealously
Represented the Class ...................................................................................9

        2.   The Settlement Is the Product of Good Faith, Informed, and
Arm's-Length Negotiations by Experienced Counsel ................................10

        3.   The Settlement Provides Significant and Certain Benefits and Is
Well Within the Range of Approval ...........................................................12

            (a)   The Effective Process for Distributing Relief to the Class ...........17

            (b)   The Settlement Does Not Excessively Compensate Class
Counsel .........................................................................................18

            (c)   The Relief Provided in the Settlement Is Adequate Taking
Into Account all Agreements Related to the Settlement................19

        4.   Class Members Are Treated Equitably Relative to One Another.......................20

    C.   Notice to the Class Should Be Approved .................................................................20

II.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS................................................22

CONCLUSION..............................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS 1031 Tax Deferred Exch. Litig.*), No. 03-0054, 2012 WL 13124593 (D.S.C. July 12, 2012) ..............................................................................................21

*In re BankAtlantic Bancorp, Inc.*, No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir. 2012).........................................................................15

*Beaulieu v. EQ Indus. Servs.*, No. 5:06–CV–00400, 2009 WL 2208131 (E.D.N.C. Apr. 20, 2009)................................20, 21

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)..............................................................................................................16

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)..................................................................................................13, 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)............................................................................................20, 21, 22

*In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................................19, 22

*In re Jeld-Wen Holding, Inc. Sec. Litig.*, No. 3:20-CV-112-JAG, 2021 WL 1186326 (E.D. Va. Mar. 29, 2021) .....................................9

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ...........................................................................8, 10, 11, 12

*Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955 (E.D. Va. June 23, 2009) .........................................7

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)..............................................17

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................20

*In re MicroStrategy Inc. Sec. Litig.*, 148 F. Supp. 2d 654 (E.D. Va. 2001) ...........................................................................12, 17

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ...............................................................................11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)....................................................................................................20

*In re Neustar Inc. Sec. Litig.*,
   No. 1:14CV885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015)..................................10, 12, 22

*In re NII Holdings, Inc. Sec. Litig.*,
   No. 1:14-cv-00227-LMB-JFA, 2016 WL 11660702 (E.D. Va. Sept. 16, 2016) ......................19

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .................................................................................15

*S. C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990)..................................................................................7

*Solomon v. Am. Web Loan, Inc*,
   No. 4:17CV145, 2020 WL 3490606 (E.D. Va. June 26, 2020).....................................9

*Winingear v. City of Norfolk*
   No. 2:12cv560, 2014 WL 3500996 (E.D. Va. July 14, 2014) ........................................8, 11, 17

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................................................20

15 U.S.C. § 78u-4(a)(7) ......................................................................................................21

**Rules**

Fed. R. Civ. P. 23.........................................................................................................1, 20, 21, 22

Fed. R. Civ. P. 23(e) .....................................................................................................2, 6, 7

Fed. R. Civ. P. 23(e)(1)...................................................................................................7

Fed. R. Civ. P. 23(e)(2)...................................................................................................7, 8, 9

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................9

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................10

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................7

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................12

Fed. R. Civ. P. 23 (e)(2)(C)(i).......................................................................................17, 18

Case 3:20-cv-00112-JAG    Document 269    Filed 06/04/21    Page 5 of 31 PageID# 8901

Fed. R. Civ. P. 23(e)(2)(C)(ii)........................................................................................18

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................................19

Fed. R. Civ. P. 23(e)(2)(C)(iv).......................................................................................19

Fed. R. Civ. P. 23(e)(3).....................................................................................................8

Fed. R. Civ. P. 23(f)..............................................................................................2, 6, 10, 14

**Other Authorities**

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (5th Ed. 2015) .......................................7

- iv -

Class Representatives Public Employees' Retirement System of Mississippi, the Plumbers and Pipefitters National Pension Fund, and Wisconsin Laborers' Pension Fund (collectively, "Class Representatives")[1] on behalf of themselves and all other members of the Class, submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed settlement reached in the above-captioned class action (the "Action"), pursuant to Fed. R. Civ. P. 23 ("Rule 23"). The terms of the proposed settlement are set forth in the Stipulation, which was entered into by all Parties to the litigation.[2]

## PRELIMINARY STATEMENT

Pursuant to the proposed Settlement, Defendants have agreed to pay, or cause to be paid, the Settlement Amount of $40,000,000, comprised of $39,500,000 to be paid by the Jeld-Wen Defendants and $500,000 to be paid by Onex, for the benefit of the Class in exchange for the settlement of all claims asserted in the Action, the dismissal with prejudice of the Consolidated Class Action Complaint filed on June 22, 2020 (the "Complaint"), and the release of all Released Claims by Class Representatives and the other members of the Class as against Defendants and the other Released Defendant Parties. The Settlement does not contain any admissions by the Parties. Defendants have denied and continue to deny any and all allegations of wrongdoing or fault asserted in the Action, deny that they have committed any act or omission giving rise to any

---

[1]   All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of June 4, 2021 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of James W. Johnson ("Johnson Decl."), filed herewith.

[2]   Defendants are JELD-WEN Holding, Inc. ("JELD-WEN" or the "Company"), and Mark A. Beck, L. Brooks Mallard, Kirk S. Hachigian, Gary S. Michel (collectively with JELD-WEN, the "Jeld-Wen Defendants"), and Onex Corporation ("Onex") and its affiliated funds and entities, specifically Onex Partners Manager LP, Onex Partners III LP, Onex Partners III GP LP, Onex US Principals LP,  Onex Partners III PV LP, Onex Partners III Select LP, Onex BP Co-Invest LP, Onex Advisor Subco III LLC, Onex American Holdings II LLC, OAH Wind LLC, BP EI LLC and BP EI II LLC (together, the "Onex Defendants", and collectively with the Jeld-Wen Defendants, the "Defendants").

liability or violation of law, and deny that Class Representatives and the Class have suffered any loss attributable to Defendants' alleged actions or omissions.

The Settlement will bring to a close intense and hard-fought litigation, which included motion practice, certification of a litigation class, briefing of a Rule 23(f) appeal petition, the completion of fact and expert discovery, mediation, and robust arm's-length negotiations between counsel. As discussed below, the Settlement is the product of vigorous good-faith, arm's-length negotiations between experienced counsel, including significant mediation efforts by a nationally recognized mediator, and represents a very favorable recovery that falls well within the range of possible approval, and meets all of the approval factors required by Federal Rule of Civil Procedure 23(e) and Fourth Circuit precedent.

Through the Court's granting of preliminary approval, Class Representatives will be able to provide notice of the Settlement's terms and conditions to potential members of the Class. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties, and Class Members, may present arguments and evidence for, and against, the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Class Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release ("Claim Form"), and Summary Notice, attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iii) find that the procedures for distribution of the Notice and Claim Form and

2

publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Class Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Class Representatives pursuant to the PSLRA; and (v) appoint Epiq Class Action and Claims Solutions ("Epiq"), which was selected after a competitive bidding process, to administer the Settlement process.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    PROCEDURAL HISTORY

This is a securities class action brought on behalf of all persons and entities who or which, during the period from January 26, 2017 through October 15, 2018, inclusive, purchased the publicly traded common stock of JELD-WEN Holding, Inc. JELD-WEN, one of the world's largest door and window manufacturers, makes and sells interior molded doors. *See* Complaint at ¶¶44-52, ECF No. 73.   JELD-WEN also manufactures doorskins, which are the principal component of interior molded doors ("IMDs"). *Id*. at ¶¶3, 47.

The operative Complaint, filed on June 22, 2020, principally asserts claims against the Jeld-Wen Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants and the Onex Defendants under Section 20(a) of the Exchange Act.   Among other things, the Complaint alleges that Defendants made materially false and misleading statements and omissions to investors concerning: (1) JELD-WEN's allegedly anticompetitive conduct; (2) its financial results in the doorskins and interior molded door markets; and (3) the merit of a lawsuit filed against JELD-WEN by an interior door manufacturer challenging its pricing.   The Complaint alleges that the

3

price of JELD-WEN publicly traded common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and material omissions, and declined when the truth was allegedly revealed. Class Representatives allege that the truth began to emerge on August 8, 2018, when an analyst privately distributed a research note that summarized a hearing held in the interior door manufacturer's litigation, which provided previously unknown details about Defendants' alleged conduct and the ramifications therefrom. They also allege that on October 15, 2018, JELD-WEN reported that the Company would be taking a litigation contingency charge related to the interior door manufacturer's litigation and announced that it was lowering its profitability guidance going forward, resulting in an additional significant stock drop. Defendants deny any and all allegations of wrongdoing, and deny that they have committed any act or omission giving rise to any liability or violation of law.

On July 29, 2020, Defendants filed their motions to dismiss the Complaint. ECF Nos. 75-79. On August 28, 2020, Lead Plaintiffs filed and served their omnibus memorandum of law in opposition to the motions to dismiss and, on September 11, 2020, Defendants filed and served their reply papers. ECF Nos. 86-87, 90-91. Oral argument on Defendants' motions to dismiss was held on September 25, 2020, and on October 26, 2020, the Court entered its Opinion and Order denying Defendants' motions in full. ECF No. 103.

Before reaching the agreement in principle to settle the Action, Class Counsel conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action and completed voluminous class, fact, and expert discovery. This process included, among other things, analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the

4

Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company and the allegedly anticompetitive conduct; (v) approximately 1,800,000 pages of documents produced by Defendants during discovery and approximately 1,500,000 pages of documents produced by third-parties; and (vi) the applicable law governing the claims and potential defenses. Class Counsel identified approximately 120 former JELD-WEN employees and other persons believed to possibly have with relevant knowledge, contacted 93, and interviewed 34 of them (6 of whom were cited in the Complaint as confidential witnesses). Class Counsel also took or defended 31 depositions, including the depositions of Plaintiffs, Plaintiffs' investment managers, current and former JELD-WEN and Onex employees (including the six confidential witnesses cited in the Complaint), the Individual Defendants, and five experts. The Parties also exchanged nine expert reports addressing JELD-WEN's anticompetitive behavior, Generally Accepted Accounting Principles, market efficiency, loss causation, and damages. Additionally, the Parties filed motions to exclude the opinions and testimony of opposing experts, which were fully briefed and pending when the Settlement was reached.

While fact discovery was ongoing, the Parties concurrently briefed Plaintiffs' motion for class certification. On January 18, 2021, Plaintiffs filed their motion to certify the Action as a class action. ECF No. 120. On February 2, 2021, the Jeld-Wen Defendants filed their opposition, and on February 8, 2021, Plaintiffs filed their reply. ECF Nos. 133-142. A hearing was held on March 4, 2021, and on March 29, 2021, the Court granted Plaintiffs' motion, certifying the Class. ECF No. 233. The Court also appointed Plaintiffs as "Class Representatives" and Co-Lead Counsel as "Class Counsel."

On April 12, 2021, the Jeld-Wen Defendants filed a petition with the United States Court

of Appeals for the Fourth Circuit, pursuant to Federal Rule of Civil Procedure 23(f), seeking leave to appeal the Court's certification of the Class.  That appeal was captioned *In re JELD-WEN Holding, Inc. Securities Litigation*, No. 21-159 (4th Cir.).  On April 23, 2021, Plaintiffs filed their opposition to that petition.  On May 21, 2021, the Court of Appeals dismissed the petition/appeal upon the request of Defendants.

## II.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE PROPOSED SETTLEMENT

On April 20, 2021, Class Counsel and Defendants' Counsel participated in a full-day mediation session before Robert Meyer, Esq. of JAMS.  In advance of that session, the Parties provided detailed mediation statements and exhibits to the mediator, which addressed issues of both liability and damages.  At the end of the mediation, following extensive arm's-length negotiations, as well as additional efforts by the mediator, the Parties reached an agreement-in-principle to settle the Action for $40,000,000, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers.  The Stipulation (together with its exhibits) constitutes the final and binding agreement between the Parties.

In light of the substantial benefit of the $40 million achieved for the Class, the significant costs and risks of continuing litigation, summary judgment, *in limine* motions, trial, and appeals, and the fact that the proposed Settlement is the result of thorough arm's-length negotiations by experienced counsel and a well-respected mediator, Class Representatives respectfully submit that the Settlement warrants preliminary approval so that notice may be provided to the Class.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement

must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions." *S. C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990); *see also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. June 23, 2009) ("There is an overriding public interest in favor of settlement, particularly in class action suits.").[3]

District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th Ed. 2015). The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Id*. at §13:13; Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to actually approve the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class after considering the likelihood that the court will be able to finally approve the settlement, given the factors enumerated in Rule 23(e)(2), and be able to certify the class. Rule 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A)     class representatives and counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

---

[3]     Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The Rule 23 amendment, which became effective in December 2018, has not changed the overall standard for approving a settlement, *i.e.* whether or not the settlement is fundamentally fair, adequate, and reasonable.

"Once the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing to determine if the proposed settlement is fair, reasonable, and adequate." *Winingear v. City of Norfolk*  No. 2:12cv560, 2014 WL 3500996, at *2 (E.D. Va. July 14, 2014).  At final approval, the Court will also consider the Fourth Circuit's traditional fairness and adequacy factors set forth in *In re: Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991), which are consistent with the Rule 23(e)(2) factors.[4]

---

[4]     Under *Jiffy Lube*, to assess the threshold factor of the fairness of a settlement, courts consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation."  927 F.2d at 159. Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion . . . ." *Id.*  Under the second *Jiffy Lube* threshold factor of the adequacy of the proposed settlement, courts consider: (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159.

**B.    The Court Will Likely Be Able to Approve the Proposed Settlement Under Rule 23(e)(2)**

      **1.    Class Representatives and Class Counsel Have Zealously Represented the Class**

In determining whether to approve a class action settlement, the Court should consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This requirement is "met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation." *Solomon v. Am. Web Loan, Inc*, No. 4:17CV145, 2020 WL 3490606, at \*2 (E.D. Va. June 26, 2020) (quoting *In re Neustar Inc. Sec. Litig.,* No. 1:14CV885 (JCC/TRJ), 2015 WL 5674798, at \*4 (E.D. Va. Sept. 23, 2015)).

In granting class certification, the Court found that Plaintiffs were adequate to serve as Class Representatives, and Co-Lead Counsel was fit to serve as Class Counsel. *See In re Jeld-Wen Holding, Inc. Sec. Litig.*, No. 3:20-CV-112-JAG, 2021 WL 1186326, at \*4 (E.D. Va. Mar. 29, 2021). Class Representatives and Class Counsel have adequately represented the Class in both their vigorous prosecution of the Action and in the negotiation and achievement of the Settlement. Class Counsel have also been assisted by able and experienced Liaison Counsel, Cohen Milstein Sellers & Toll PLLC. Class Representatives have been active and informed participants in the litigation and were consulted on, and approved, the terms of the Settlement.

Likewise, Class Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company and interviews with 34 former JELD-WEN employees and other persons with potentially relevant knowledge (six of whom were cited in the Complaint as confidential witnesses); (ii) briefing on Defendants' motions to dismiss; (iii) engaging in extensive discovery efforts that included taking or defending 31 depositions,

including the depositions of Plaintiffs, Plaintiffs' investment managers, current and former JELD-WEN and Onex employees (including the six confidential witnesses cited in the Complaint), the Individual Defendants, and five experts; (iv) briefing on class certification; (v) opposing Defendants' petition for Rule 23(f) review; and (vi) briefing, and opposing, motions to exclude the opinions and testimony of the expert witnesses designated by the Parties. In consultation with its damages expert, Class Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $40 million recovery. Accordingly, as previously found in certifying the Class and in appointing Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel, Class Representatives and the Class Counsel have adequately represented the Class.

**2.      The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

In weighing a class action settlement at final approval, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Similarly, under the *Jiffy Lube* "fairness factors, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering the following four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area pf securities class actions litigation."' *Neustar*, 2015 WL 5674798, at *10 (quoting *Jiffy Lube*, 927 F.2d at 159). Consideration of all of these factors demonstrates that the Settlement here was reached through arm's length negotiations after vigorous litigation and with no hint of collusion.

In particular, the advanced posture of this case and the significant amount of discovery that was conducted before the Parties' agreement in principle dispel any concerns of possible collusion. *See Jiffy Lube*, 927 F.2d at 159 (acknowledging that a settlement reached "at a very early stage in

10

the litigation and prior to any formal discovery, rais[es] questions of possible collusion.").  Here, the Settlement was not reached until after rigorous litigation, which included an extensive investigation before filing the Complaint, overcoming Defendants' motions to dismiss the Complaint, achieving certification of the Class, engaging in thorough fact and expert discovery, and preparing for the July 2021 trial.  The Parties have completed fact and expert discovery, including taking or defending 31 depositions and the production and exchange of approximately 1,800,000 pages of documents produced by Defendants and approximately 1,500,000 pages of documents produced by third-parties.  *See Winingear*, 2014 WL 3500996, at *12 ("When discovery has been largely completed, this factor weighs in favor of approving the settlement."). Moreover, as discussed above, the Parties had already litigated Defendants' motions to dismiss and Plaintiffs' motion for class certification.  When "several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).  The extensive discovery and motion practice in this case provided each side with the necessary insight to evaluate the merits and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

The settlement negotiations were conducted at arm's-length by experienced class-action litigators with the assistance of an experienced mediator.  In April 2021, Class Counsel and Defendants' Counsel participated in a full-day mediation session before the mediator.  The Parties provided detailed mediation statements and exhibits to Mr. Meyer, prior to the mediation, which addressed issues of both liability and damages.  During the mediation session, counsel for Class Representatives and Defendants zealously negotiated on behalf of their clients' best interests. Class Counsel, who are very experienced in prosecuting complex class actions, ECF No. 122-3, had a clear view of the strengths and risks of their case and were in a strong position to make an

11

informed decision regarding the reasonableness of a potential settlement.  As recognized by the Court when they were appointed, Class Counsel are experienced in securities class-action litigation.  ECF No. 233.  Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate.  *See In re MicroStrategy*, *Inc. Sec. Litig.* 148 F. Supp. 2d 654, 665 (E.D. Va. 2001).  Moreover, Class Representatives, which are sophisticated institutional investors of the type favored by Congress when passing the PSLRA, supervised this litigation and recommended that the Settlement be approved.

These factors favor preliminary approval.

### 3.     The Settlement Provides Significant and Certain Benefits and Is Well Within the Range of Approval

The proposed Settlement would readily satisfy Rule 23(e)(2)(C).  To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement.  *See, e.g., Neustar*, 2015 WL 5674798, at *11 (the *Jiffy Lube* adequacy analysis "weighs the likelihood of the plaintiff's recovery on the merits against the amount offered in the settlement.")  Because the $40 million Settlement represents an excellent recovery for the Class, particularly in light of the risks of litigation and potential outcomes at trial, Class Representatives believe that the Settlement falls well within the range of possible approval.  Assuming that this Action were to continue to be litigated, the hurdles faced by Class Representatives would be substantial.  While Class Representatives believe that the claims asserted against Defendants were strong and that substantial evidence to support the allegations has been adduced, they recognize that the Action presented a number of risks to establishing both liability and damages.

As an initial matter, Class Representatives would have faced challenges in proving to the ultimate finder of fact that the statements made by Defendants were materially false and misleading and that Defendants acted with scienter.  Defendants strenuously argued at the motion to dismiss and class certification stages, and they would have continued to maintain at trial (among other things), that Class Representatives would not be able to prove that Defendants' statements about JELD-WEN's pricing strategies, competitiveness, and the merit of the interior door manufacturer's litigation were false and misleading.  For example, Defendants would likely seek to present evidence that the market understood that Defendants' statements concerning the Company's pricing strategy and competitiveness truthfully described JELD-WEN's high-level approach to pricing and the market as a whole and are therefore not actionable.  Defendants also would have likely vigorously argued that the allegedly omitted information about pricing and competitiveness was fully disclosed when the jury in the interior door manufacturer's litigation rendered a verdict against JELD-WEN or, at the very latest, when the court in that action issued the divestiture order.  Also, Defendants would have argued that the alleged statements regarding the merits of the interior door manufacturer's litigation are not actionable because the statements legitimately reflected their genuinely held legal position in an ongoing litigation that was still pending appeal.

Defendants would have also likely argued that even if the alleged misstatements were found to be misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter). Defendants would likely seek to present testimonial evidence that the Individual Defendants did not believe that JELD-WEN had engaged in any wrongful conduct.

Class Representatives would also have continued to confront considerable challenges in establishing loss causation and damages.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused

13

the loss for which the plaintiff seeks to recover'"). Defendants likely would have asserted that Class Representatives cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused JELD-WEN's stock price to decline. In particular, Defendants would have continued to argue that the announcement on October 15, 2018 that JELD-WEN would be taking a charge in connection with the interior door manufacturer's litigation did not disclose any new facts that were previously unknown to the market. Defendants likely would have also argued that JELD-WEN's stock price decline on October 16, 2018 was caused by new inactionable information announced the day before: poor third quarter earnings and significantly downgraded FY18 guidance.

Furthermore, Defendants would have continued to argue, as they did in their pending motion to strike Class Representatives' damages expert's supplemental expert report, that adding a new corrective disclosure of August 8, 2018 (when an analyst issued a research note summarizing a hearing in the interior door manufacturer's litigation) is improper and the disclosure should be excluded because it merely reports the analyst's conjecture about how the judge in the interior door manufacturer's litigation might rule and was not corrective of any alleged misrepresentation. Overall, the Parties held extremely disparate views with respect to loss causation and damages. Had Defendants' arguments been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited any potential recovery.

The fact that Class Representatives prevailed with respect to Defendants' motions to dismiss and class certification, to date, was not a guarantee of ultimate success. Class Representatives faced ongoing substantial burdens of Defendants' Rule 23(f) petition, summary-judgment motions, *in limine* motions, trial, and likely appeals, a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, even prevailing at

14

trial would not have guaranteed a recovery larger than the $40 million Settlement. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict for plaintiffs on liability, district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

In contrast, the Settlement avoids the potential impact of each of these challenges and other risks and achieves a fair and certain result. Indeed, the Settlement would be a very favorable guaranteed recovery. Class Representatives' damages expert, Dr. Steven Feinstein, has estimated that if liability were established, a reasonable estimate of aggregate damages likely recoverable at trial would not exceed approximately $189.5 million, which takes into account "disaggregation," or the parsing out, of price decreases unrelated to any of the alleged misstatements or omissions on certain of the corrective disclosures. The Settlement recovers approximately 21% of damages under this scenario.

However, this estimate does not take into account challenges the Defendants would have raised if the case proceeded. As an initial matter, this damages estimate assumes that Class Representatives would have succeeded in opposing Defendants' motion to strike Dr. Feinstein's supplemental expert report that added a corrective disclosure on August 8, 2018 and was pending at the time of settlement. *See* ECF No. 217. If Defendants were successful in striking Dr. Feinstein's supplemental report, the August 8 disclosure would not have been presented at trial and aggregate damages would be reduced to approximately $120 million. The Settlement represents a recovery of approximately 33% of this estimate.

15

Defendants would have also strenuously argued at summary judgment and at trial that the only portion of the stock decline following the October 15, 2018 alleged corrective disclosure attributable to Class Representatives' theory of liability was the Company's announcement of a litigation contingency charge related to the interior door manufacturer's litigation. Defendants have argued, and would continue to argue, that the other information disclosed on that date was not related to any of the alleged misstatements or omissions and therefore should be disaggregated from the assessment of damages. Specifically, Defendants would have argued that JELD-WEN's announcement that it was lowering its financial outlook (and the reason why) was unrelated to any of the alleged misstatements or omissions and, in any event, it was already disclosed to the market by the jury verdict and divestiture decision in the interior door manufacturer's litigation. If successful, Defendants' argument would have substantially reduced damages to between approximately $102.7 and $33.2 million, depending on whether the impact of the August 8, 2018 corrective disclosure is included. With respect to this range, the Settlement would represent between 39% and 120% of estimated aggregate damages.

In addition to these challenges, following the Court's order certifying the Class, Defendants filed a 23(f) petition to the Fourth Circuit Court of Appeals challenging the efficiency of the IPO market and Class Representatives' damages model and theory of damages under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). If Defendants' petition had been granted, and they had been permitted to appeal the order certifying the Class and succeeded on either stated grounds for reversal, damages would have been significantly reduced and the Class could have been decertified.

The Settlement, therefore, represents an excellent recovery in light of the risks of continued litigation and the recovery compares very favorably to other securities class action settlements.

16

*See, e.g.*, *MicroStrategy,* 148 F. Supp. 2d at 667 n.22  (citing *Orman v. Am. Online, Inc.*, Civ. A. No. 97-264-A, 1998 WL 1969646  (E.D. Va. Dec. 14, 1998), which approved a $35 million settlement amounting to approximately 5% of the maximum potential recovery); *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The [$40.3] settlement . . . represents a recovery of approximately 6.25% of estimated damages. This is at the higher end of the range of reasonableness of recovery in class action securities litigations."). The $40 million Settlement is also well above the median and average reported settlement amounts in securities class actions in 2020, $13 million and $30 million, respectively (excluding merger objection settlements, settlements for $0 to the class, and settlements of $1 billion or greater). *See*, Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at  1-2 (NERA 2021), Johnson Decl., Exhibit 2.

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming. The fact that the Settlement eliminates substantial delay and expense strongly weighs in favor of preliminary approval.  *See Winingear*, 2014 WL 3500996, at *2.  In sum, the proposed Settlement would satisfy Rule 23(e)(2)(C)(i).

### (a)　　The Effective Process for Distributing Relief to the Class

The Settlement, like the majority of securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator.  The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action.  Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other

17

things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶22. Class Representatives' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶28(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶37) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Any *de minimis* balance that still remains in the Net Settlement Fund will be donated to the Virginia Health Care Foundation and Central Virginia Legal Aid Society, or a non-profit and non-sectarian organization(s) chosen by the Court.[5] *Id*. Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

### (b)    The Settlement Does Not Excessively Compensate Class Counsel

The reasonableness of attorneys' fees will be decided by the Court after Class Counsel file a motion for attorneys' fees and expenses. The Settlement does not contemplate any specific

---

[5]    Information about the Virginia Health Care Foundation is available at https://www.vhcf.org/about/. "VHCF helps uninsured Virginians and those who live in underserved communities receive medical, dental and mental health care. VHCF support helps free clinics, community health centers and others to expand both the types of care offered and the number of patients cared for each year." *Id*. Information about Central Virginia Legal Aid Society is available at https://cvlas.org. "Central Virginia Legal Aid Society (CVLAS) is a non-profit law firm which provides free legal assistance to low income people in civil cases and preventive legal education in our communities." *Id*.

award.  Class Counsel will be compensated out of the Settlement Amount, under the common fund doctrine, and will not be compensated by Defendants.  In connection with Class Counsel's Fee and Expense Application, Class Counsel will seek no more than 25% of the Settlement Fund, an amount that is well-within, the percentages that courts in the Fourth Circuit have approved in class actions with comparable recoveries.  *See, e.g., In re NII Holdings, Inc. Sec. Litig.,* No. 1:14-cv-00227-LMB-JFA, 2016 WL 11660702, at *1 (E.D. Va. Sept. 16, 2016) (awarding 25% of $41.5 million settlement); *see also In re Genworth Fin. Sec. Litig.,* 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (awarding 28% of $219 million settlement).  Counsel will also seek payment of litigation expenses incurred during the prosecution of the Action, in an amount not to exceed $1,500,000.  Accordingly, the proposed Settlement would satisfy Rule 23(e)(2)(C)(iii).

**(c)   The Relief Provided in the Settlement Is Adequate Taking Into Account all Agreements Related to the Settlement**

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement.  On April 30, 2021 the Parties entered into a settlement term sheet and on June 4, 2021 they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement") and the Stipulation.  Stipulation at ¶39(a).  The Supplemental Agreement sets forth the conditions under which JELD-WEN has the option to terminate the Settlement in the event that requests for exclusion from the Class exceed a certain agreed-upon threshold.  As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Class.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

19

### 4.      Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to Class Representatives or any segment of the Class.  Rather, all members of the Class, including Class Representatives, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[6]  The proposed plan was created by Class Representatives' damages expert and is consistent with Class Representatives' theories of damages under the Exchange Act.  All Class Members that were allegedly harmed as a result of the alleged misstatements and omissions, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan.  Notice at ¶53.  *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

### C.      Notice to the Class Should Be Approved

The threshold requirement for the approval of class notice is whether the proposed notice program is reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt out of the Class or object.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The mechanics of the notice process are left to the discretion of the Court.  *See Beaulieu v. EQ Indus. Servs.*, No. 5:06–CV–00400, 2009 WL 2208131, at * 28 (E.D.N.C. Apr. 20, 2009) ("While [Rule 23] does not spell out the required contents of the settlement notice, it must

---

[6]      Class Representatives will seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment.  *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

20

'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'") (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975).

In terms of content, the notice should describe the settlement and class members' ability to seek exclusion "clearly and concisely . . . in plain, easily understood language . . . ." *Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS 1031 Tax Deferred Exch. Litig.)*, No. 03-0054, 2012 WL 13124593, at *7 (D.S.C. July 12, 2012). A long-form notice must also satisfy the requirements set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7).

The proposed long-form notice to the Class more than satisfies these requirements. The Notice is written in simple language and includes: (i) basic information about the lawsuit and the definition of the Class; (ii) a description of the benefits provided by the Settlement; (iii) an explanation that any claims against Defendants that could have been litigated in the Action will be released if the Class Member does not opt out and the Settlement is approved; (iv) the names and contact information for Class Counsel; (v) an explanation of how Class Members can obtain the Settlement benefits; (vi) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (vii) information regarding Class Counsel's application for attorneys' fees and expenses, specifically that they will seek no more than 25% of the Settlement Amount in attorneys' fees and no more than $1,500,000 in litigation expenses; (viii) the Settlement Hearing date; (ix) an explanation of how to submit a notice of appearance for the Settlement Hearing; and (x) the Settlement website and a toll-free number where additional information can be obtained. Thus, the Notice satisfies the content requirements of Rule 23 and the PSLRA.

Additionally, the proposed dissemination program for notice satisfies due process. *See Eisen*, 417 U.S. at 173 (finding notice program to be "best notice practicable under the

21

circumstances" where it includes "individual notice to all members who can be identified through reasonable effort."). As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator[7] will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Class Members who can be identified with reasonable effort, including through the Company's transfer records. The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *PR Newswire*.

This combination of individual first-class mailed notice to all potential Class Members who can be identified with reasonable effort and publication of notice in *The Wall Street Journal* and over the internet meets all the requirements of Rule 23 and due process. *See, e.g., Genworth*, 2016 WL 7177515, at *3; *Neustar*, 2015 WL 5674798, at *12.

Accordingly, Class Representatives respectfully submit that the proposed Notice and Summary Notice, and the related procedures, are appropriate and should be approved.

## II.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Class Representatives respectfully propose the schedule below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Class Representatives request that the Court schedule the Settlement Hearing for a date

---

[7]    Class Representatives request that the Court approve retention of Epiq Class Action and Claims Solutions ("Epiq") as the Claims Administrator for this case. Epiq was selected after a bidding process. It is a nationally recognized notice and claims administration firm and has extensive relevant experience. Its staff consists of experienced CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration. *See* Johnson Decl., Exhibit 3.

approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's

earliest convenience thereafter.

| **Event** | **Proposed Timing** |
| --- | --- |
| Deadline for mailing the Notice and Claim Form to Class Members (which date will be the "Notice Date") | On or before 14 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Within 14 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Class Counsel's application for attorneys' fees and expenses | 35 calendar days before the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days before the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 90 calendar days after the Notice Date |

23

## **CONCLUSION**

For the forgoing reasons, Class Representatives respectfully request that the Court grant the requested relief.  The Parties' agreed-upon form of proposed Preliminary Approval Order, with exhibits, is attached to the accompanying Motion.

DATED: June 4, 2021                    Respectfully submitted,


COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (Admitted *pro hac vice*)

                     */s/ Steven J. Toll*
                    Steven J. Toll

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstien.com
jhandelsman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*


LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Counsel for Co-Lead Plaintiff Public Employees'*
*Retirement System of Mississippi and the Class*

24

ROBBINS GELLER RUDMAN &
   DOWD LLP
ROBERT M. ROTHMAN (Admitted *pro hac vice*)
MARK T. MILLKEY (Admitted *pro hac vice*)
WILLIAM J. GEDDISH (Admitted *pro hac vice*)
VINCENT M. SERRA (New York Bar only)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
wgeddish@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
DEBRA J. WYMAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com

*Counsel for Co-Lead Plaintiff Plumbers and*
*Pipefitters National Pension Fund and additional*
*Plaintiff Wisconsin Laborers' Pension Fund, and*
*the Class*

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2021, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

   */s/ Steven J. Toll*                     

Steven J. Toll
VA Bar No. 15300
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005

*Liaison Counsel for Lead Plaintiffs*

26