IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


In Re: JELD-WEN Holding, Inc.

Securities Litigation

                          3:20 CV 112







         Before:  HONORABLE JOHN A. GIBNEY, JR.
              United States District Judge






                   July 27, 2021
                 Richmond, Virginia






              Gilbert F. Halasz, RMR
             Official Court Reporter
               U. S. Courthouse
              701 East Broad Street
            Richmond, Virginia 23219
                (804) 916-2248

APPEARANCES


COHEN MILSTEIN SELLERS & TOLL
by:  Steven Jeffrey Toll, Esq.


LABATON SUCHAROW LLP
by:  Michael Howard Rogers, Esq.
James Johnson, Esq.
Robert Rothman, Esq.


McGUIREWOODS LLP
by:  Brian Charles Riopelle, Esq.
Brian Emory Pumphrey, Esq.


CHRISTIAN & BARTON
by:  Roman Lifson, Esq.

THE CLERK:  Case number 3:20 C V 112.

In re: JELD-WEN Holdings, Inc. securities litigation.

Mr. Steven Toll, Mr. James Johnson, Mr. Michael Rogers and Mr. Robert Rothman represent the plaintiff.

Mr. Brian Riopelle, Mr. Brian Pumphrey and Mr. Roman Lifson represent the defendant.

Are counsel ready to proceed?

MR. TOLL:  Yes.

MR. RIOPELLE:  Yes, defendants are ready, Your Honor.

THE DEFENDANT:  All right.

So the out-of-town guys finally figured out that the local defense lawyers are more than capable of handling this kind of thing.

I am glad to see that.  All right.

Let's see.  We are here today on the motion, unopposed motion, to approve the settlement in this case.

So, do either of you want to say anything in support of it?  I have read the papers, and yesterday we set a record for approving a settlement.  I will quote again what I said yesterday, what Judge Richard L. Williams, formally

of the firm of McGuire, Woods and Battle used to say, and formally of this court.  "I have read your papers.  Do you want to address The Court on any deficiencies in your written submissions?

Do you have anything to add?

MR. ROGERS:  In light of that admonition I think we will rest on the papers unless you wanted us to speak.

THE COURT:  Let me just say, I have read the documents in this case.

And the standard, the old Jiffy Lube standard has sort of been condensed into hundreds, or at least dozens of factors into some broader categories in rule 23 E 2.  And in order to approve a proposed settlement, or a final settlement for that matter, the first thing I have got to conclude is that the class representatives and class counsel have adequately represented the class.  Obviously we have people who are very able here, and the work that I have seen in this case on both sides has been very good legal work, and obviously there has been no, you know, the plaintiffs' lawyers have not stinted at all in terms of their preparation.  They have done oodles of depositions, they have done voluminous written discovery.  There have been

experts that have had opinions in this case that were well thought out.  I think that the class, the class counsel, has adequately represented the class and the class representatives have claims that have allowed them to retain class counsel and made claims typical of the members of the class in this case.

The next factor, is whether the proposal was negotiated at arm's length.  It is my understanding that the parties had, I mean, obviously there has been no collusion in the case.  The lawyers have been litigating pretty vigorously the entire time I have had this case.

And the parties had a mediation with a well qualified mediator in which they reached the proposal in this case.  So I think it was negotiated at arm's length.

The next factor really asks whether this is a good settlement.  The relief requested of the class is adequate taking into account, first of all, the cost, risks, and delay of trial in the appeal. Well, the delay would just start at the back end of that.  The delay would go on forever.  If plaintiffs won this case the defendants would run the Batan Death March through the Fourth Circuit.  They would fight every inch of the way.

The cost of trial and appeal would be enormous to bring witnesses here, experts, and the risk. You know, the lawyers could probably front the money for the costs, but the risks to the plaintiffs in this case are enormous because, as they point out in their brief, there are just all kinds of defenses that can be raised in this.

The defendant I am sure would argue essentially that this has no -- this did not, the alleged fraudulent statements did not cause changes in the stock price, or that they were essentially released in the call and UCC class offerings. It was just awesome.

So, you know, and that is really the beginning of the defenses in this case. So there are a lot of ways in which the plaintiff could come up with no money in this case.

So I think that the cost, risk, and delay are adequately reflected in the settlement. The effectiveness of any proposed method of distributing the relief, including the method of processing the number of claims, essentially, it appears to me that they are going to try to find everybody that brought JELD-WEN stock, send them a notice, and let them respond. Ironically, I think JELD-WEN probably has

most of the information about who the buyers are in their stock records. They are also going to send notices to people who, brokers and so forth, who hold stock for others. So I think that will get the relief notice of the claim out and the relief will be on a pro rata basis.

In terms of any proposed award of attorney's fees, including the timely payment. Well, it looks like we are looking at something slightly in excess of 25 percent of the settlement is an estimated fee. Before I approve the settlement in this case we will see what the final request is. And I will ask that plaintiffs' counsel give me their hourly billings on the case so I can use that as a check of the legitimacy of the fees.

Finally, any agreement required to be identified under 23 E 2 -- and every time I do this I can't remember what the agreement under 23 E 2 is, even though I just looked at it an hour ago.

Can one of you remind me what it is?

MR. ROGERS: Your Honor, I think the statute doesn't necessarily go into detail. I know the relevant agreement in the case would be the term sheet between the parties and the supplemental agreement that was submitted under seal.

THE COURT:  So we do have a supplemental agreement here, but I don't think that that unfairly affects the agreement here, and it allows JELD-WEN to back out if there is something that appears untoward.

And finally, does the proposed class members adequately represent them all the same way on a pro rata basis?

So I will approve -- I have read the notice, I will approve -- I will preliminary approve the class action and settlement in this case.

I have read the notice.  And it is pretty close to plain English.  So I think people who bought the stock will be able to understand it and submit their claim.  And I think that the way of getting it out is outlined in the papers that protects everybody's due process rights in this case.

Now, let's see.  Let's set a deadline, a date to come back.  You all wanted to do this at least a hundred days from now.  Well, that puts us probably in November.

Let's see.  You are coming down from Washington, Mr. Toll, right?

MR. TOLL:  Correct, Your Honor.

THE COURT:  You are coming from Washington or

New York?

MR. ROGERS:  Have three of us coming from New York.

THE COURT:  Okay.

Well, how about November 22nd?  That is the first Monday of Thanksgiving week.

MR. ROGERS:  I don't have my calendar.  I don't see any problems with that date for my side.

THE COURT:  Our friends on the defense side?

MR. RIOPELLE:  I think that will be fine.

THE COURT:  Mr. Cullen will be up here at 9:00 that morning for another matter.

Let's do it at noon.  So that may be give you a little extra time.  Sorry.  Let's do it at 1:30.

Okay.  Now, I have got the proposed order here, which is fine.  Could you all take the proposed order, please, turn it into a -- send it to us as a Word document with the date for the various actions that have to occur filled in.  Send it to my law clerk, who will give his e-mail after we are done. And red line the changes that you make so we can take a look at it, and then we will print it out.  I will enter it and get it out.  Okay?

MR. ROGERS:  Thank you, Your Honor.

THE COURT:  So it looks like -- when do you

think you can do that?

MR. ROGERS:  Tomorrow, Thursday.

THE COURT:  Let me just say, tomorrow, after tomorrow I am going out of town to see my grand child, new grand child.  So I will be gone until next week.

So if you want a date, do it tomorrow and start the days running from tomorrow and get to us tomorrow.  I will enter it tomorrow.  Otherwise, it will have to be Wednesday a week from now.

MR. ROGERS:  First of all, congratulations, Your Honor.  Secondly, we will --

THE COURT:  I had nothing to do with it.

MR. ROGERS:  Using the legal term of proximate cause.

THE COURT:  You talk about causation.  But, it is wonderful.

So, all right.  Let's we pick a date.  November 22nd.

The day that all of us are old enough to remember, except for Mr. Pumphrey over there.  He is not old enough.

How old are you, Mr. Pumphrey?

MR. PUMPHREY:  45, sir.

THE COURT:  You weren't even thought of.

How about you, Mr. Lifson.

MR. LIFSON:  Creeping up on 54, Your Honor.

THE COURT:  54.  Well, you weren't there either.

MR. LIFSON:  Not born yet either.

THE COURT:  November 22nd 1963 was a defining day in my life.

Okay.  Anything else, gentlemen?

MR. ROGERS:  Nothing more.

THE COURT:  All right.

MR. RIOPELLE:  No.

THE COURT:  Thank you all very much for a job well done resolving a difficult case.

And I am sure that our friends at JELD-WEN are happy to see the Eastern District of Virginia in their rear-view mirror.

Adjourn court.

                    HEARING ADJOURNED


THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

                 GILBERT FRANK HALASZ, RMR

                   Official Court Reporter