UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | |
|---|---|
| In re JELD-WEN HOLDING, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | ) ) ) ) ) ) ) ) ) ) | Civil Action No. 3:20-cv-00112-JAG<br><br>CLASS ACTION |

**CLASS REPRESENTATIVES' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT....................................................................................................................4

I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE, AND WARRANTS FINAL AAPPROVAL........................................4

      A.    The Law Favors and Encourages Settlement of Class Action Litigation ......................4

      B.    The Standards for Final Approval.....................................................................4

      C.    Application of Rule 23(e)(2) and *Jiffy Lube* Factors ......................................6

            1.    Class Representatives and Class Counsel Have Zealously
                  Represented the Class ..........................................................................6

            2.    The Settlement Is the Product of Good Faith, Informed, and
                  Arm's-Length Negotiations by Experienced Counsel ..........................8

            3.    The Relief Provided by the Settlement Is Adequate ...........................11

                  (a)    Risks of Establishing Liability and Damages Support
                         Approval of the Settlement .............................................................12

                  (b)    Costs and Delay of Continued Litigation Support Approval
                         of the Settlement ...........................................................................16

                  (c)    The Effective Process for Distributing Relief to the Class ............16

                  (d)    The Settlement Does Not Excessively Compensate Class
                         Counsel ...........................................................................................18

                  (e)    The Relief Provided in the Settlement Is Adequate Taking
                         Into Account all Agreements Related to the Settlement................18

            4.    Class Members Are Treated Equitably Relative to One Another.........18

            5.    Reaction of the Class to Date Supports Approval of the
                  Settlement ...........................................................................................19

II.   PLAN OF ALLOCATION IS FAIR AND REASONABLE .............................................19

III.  NOTICE SATISFIED RULE 23 AND DUE PROCESS .....................................................20

CONCLUSION...................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*,
   688 F.3d 713 (11th Cir. 2012) ........................................................................................16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..........................................................................................................15

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)........................................................................................................13

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ..........................................................................4, 5, 19

*In re Jeld-Wen Holding, Inc. Sec. Litig.*,
   No. 3:20-CV-112-JAG, 2021 WL 1186326 (E.D. Va. Mar. 29, 2021) ...................................7

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ................................................................................ *passim*

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
   No. 08-1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ....................................................4

*In re Lumber Liquidators Chines-Manufactured Flooring Prod. Mktg.*
   *Sales Practices & Prod. Liab. Litig.*,
   952 F.3d 471 (4th Cir. 2020) .............................................................................................6

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)............................................15

*In re MicroStrategy, Inc. Sec. Litig.*
   148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................................10, 15, 20

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) .................................................................................5, 9, 10, 20

*In re Neustar Inc. Sec. Litig.*,
   No. 1:14CV885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015).........................................8, 11

*In re Neustar, Inc. Sec. Litig.*,
   No. 1:14CV885, 2015 WL 8484438 (E.D. Va. Dec. 8, 2015)..............................................10

*In re NII Holdings, Inc. Sec. Litig.*,
    No. 1:14-cv-0027-LMB-JFA, 2016 WL 11660702 (E.D. Va. Sept. 16, 2016) ......................10

*In re Peanut Farmers Antitrust Litig.*,
    No. 19-cv-1963, 2021 WL 3174247 (E.D. Va. July 27, 2021)...................................................6

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................................................16

*S. C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)............................................................................................4

*Solomon v. Am. Web Loan, Inc*,
    No. 4:17CV145, 2020 WL 3490606 (E.D. Va. June 26, 2020)...................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................................21

*Winingear v. City of Norfolk Va.*
    No. 12-cv-560, 2014 WL 3500996 (E.D. Va. July 14, 2014)............................................9, 16

**Docketed Cases**

*In re Computer Sciences Corp. Sec. Litig.*,
    Civ. No. 11-610-TSE-IDD, ECF No. 335 (E.D. Va. Sept. 20, 2013)......................................10

*Knurr v. Orbital ATK, Inc., et al.*,
    No. 1:16-CV-01031-TSE-MSN, ECF No. 462 (E.D. Va. June 7, 2019)...............................10

**Statutes**

15 U.S.C. § 78u-4(a)(4) ....................................................................................................19

15 U.S.C. § 78u-4(a)(7) ....................................................................................................21

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................21

Fed. R. Civ. P. 23(e) ......................................................................................................1, 4

Fed. R. Civ. P. 23(e)(1).....................................................................................................21

Fed. R. Civ. P. 23(e)(2)..................................................................................................4, 5, 6

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................6

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................................8

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................11, 16, 17

Fed. R. Civ. P. 23(e)(2)(C)(i)........................................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(ii).......................................................................................17

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................................18

Fed. R. Civ. P. 23(e)(2)(C)(iv).......................................................................................18

Fed. R. Civ. P. 23(e)(3)...................................................................................................5

Fed. R. Civ. P. 23(f)........................................................................................................7

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Representatives Public Employees' Retirement System of Mississippi, the Plumbers and Pipefitters National Pension Fund, and Wisconsin Laborers' Pension Fund (collectively, "Class Representatives")[1] on behalf of themselves and all other members of the certified Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") and approval of the proposed plan of allocation for the proceeds of the Settlement (the "Plan of Allocation").

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Class Representatives and Defendants[2] have agreed to a settlement of the claims in the Action, and the release of all Released Claims, in exchange for a payment of $40,000,000 in cash, comprised of $39,500,000 to be paid by the Jeld-Wen Defendants and $500,000 to be paid by Onex. The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court. ECF No. 270-1.

As detailed in the accompanying Declaration of Robert M. Rothman and Michael H. Rogers in Support of (1) Class Representatives' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (2) Class Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Class Representatives Pursuant to §15 U.S.C.

---

[1]    All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 4, 2021(the "Stipulation"), previously filed with the Court (ECF No. 270-1).

[2]    Defendants are JELD-WEN Holding, Inc. ("JELD-WEN" or the "Company"), and Mark A. Beck, L. Brooks Mallard, Kirk S. Hachigian, Gary S. Michel (collectively with JELD-WEN, the "Jeld-Wen Defendants"), and Onex Corporation ("Onex") and its affiliated funds and entities, specifically Onex Partners Manager LP, Onex Partners III LP, Onex Partners III GP LP, Onex US Principals LP, Onex Partners III PV LP, Onex Partners III Select LP, Onex BP Co-Invest LP, Onex Advisor Subco III LLC, Onex American Holdings II LLC, OAH Wind LLC, BP EI LLC and BP EI II LLC (together, the "Onex Defendants", and collectively with the Jeld-Wen Defendants, the "Defendants").

78u-4(a)(4) (the "Joint Declaration"), filed herewith,[3] Class Counsel have: (i) conducted a robust investigation concerning the allegedly fraudulent misrepresentations and omissions; (ii) prepared and filed a detailed amended class action complaint; (iii) researched and drafted an opposition to Defendants' comprehensive motions to dismiss the amended complaint, after which the Court entered an Opinion and Order denying Defendants' motions in their entirety; (iv) achieved class certification; (v) completed extensive fact discovery that included analyzing approximately 1,800,000 pages of documents produced by Defendants and approximately 1,500,000 pages of documents produced by third-parties, taking or defending 31 depositions, including the depositions of Plaintiffs, Plaintiffs' investment managers, current and former JELD-WEN and Onex employees, and the Individual Defendants, and motions to compel discovery; and (vi) completed extensive expert discovery that included taking or defending five expert depositions and exchanging nine expert reports. At the time the Settlement was reached, Class Counsel had a keen understanding of the strengths and weaknesses of the claims and defenses. *See generally*, ¶¶14-81.

The Settlement is the product of extensive arm's-length negotiations between the Parties, which included a 14-hour mediation session under the auspices of a respected and experienced mediator, Robert Meyer Esq. of JAMS. Following the mediation, the Parties agreed, in principle, to the terms of the Settlement, subject to the negotiation of a mutually acceptable long form stipulation of settlement. ¶¶60-63.

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation; among other things. Citations to "¶" in this memorandum refer to paragraphs in the Joint Declaration. All exhibits referenced below are attached to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

2

The Settlement is a very favorable result in light of the risks of continued litigation. While Class Representatives and Class Counsel believe that the claims asserted against Defendants are strong, they recognize that the Action presented a number of obstacles, including the challenges posed by summary judgment given Defendants' arguments that Class Representatives could not prove falsity and scienter, and loss causation, among other things. While Class Representatives would advance credible counter arguments to Defendants' liability defenses, they nonetheless recognize that there were credible risks that Defendants' anticipated summary judgment and *Daubert* motions might be granted. These risks are in addition to the genuine risk of a much smaller recovery, or no recovery at all, at the conclusion of trial.

In light of the recovery for the Class and the risks to continued litigation, as discussed further below and in the Joint Declaration, Class Representatives respectfully submit that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. *See* Declaration of Ta'Shia S. Gordon on Behalf of MPERS, Ex. 1; Declaration of John J. Schmitt on Behalf of WLPF, Ex. 2, and Declaration of Toni Inscoe on Behalf of PPNPF, Ex. 3.

Additionally, Class Representatives request that the Court approve the proposed Plan of Allocation, which was set forth in full in the Notice sent to Class Members. The Plan of Allocation, which was developed by Class Counsel in consultation with Class Representatives' damages expert, provides a reasonable and equitable method for allocating the Net Settlement Fund among Class Members who submit valid claims. The Plan of Allocation is fair and reasonable and should likewise be approved.

**ARGUMENT**

I. **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL AAPPROVAL**

A. **The Law Favors and Encourages Settlement of Class Action Litigation**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2*); In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016). Courts have long recognized that public and judicial policy favor the settlement of disputed claims among private litigations, particularly in class actions. *See S. C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions."); *see also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) ("There is an overriding public interest in favor of settlement, particularly in class action suits.").[4]

B. **The Standards for Final Approval**

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)     class representatives and counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[4]     Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

4

> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The Rule 23 amendments, which became effective in December 2018, have not changed the overall standard for approving a class action settlement, *i.e.,* whether or not the settlement is fundamentally fair, adequate, and reasonable.

Historically, the Fourth Circuit has held that district courts should consider the factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991) when evaluating a class action settlement.  *See*, *e.g.*, *Genworth*, 210 F. Supp. 3d at 839-41; *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).  The *Jiffy Lube* factors are consistent with the Rule 23(e)(2) factors.  Under *Jiffy Lube*, to assess the threshold factor of the fairness of a settlement, courts consider, "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." *Jiffy Lube,* 927 F.2d at 159.  Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion . . . ." *Id.*

Under the second *Jiffy Lube* threshold factor of the adequacy of the proposed settlement, courts consider: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.  *Jiffy Lube*, 927 F.2d at 159.

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil

5

Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the court of appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Committee Notes to 2018 Amendments. Class Representatives will primarily discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2), since these factors largely overlap with the *Jiffy Lube* factors. *See In re Lumber Liquidators Chines-Manufactured Flooring Prod. Mktg. Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020) (noting that the *Jiffy Lube* "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors"); *In re Peanut Farmers Antitrust Litig.*, No. 19-cv-1963, 2021 WL 3174247, at *2 (E.D. Va. July 27, 2021) ("Taking this substantial overlap into consideration, the Court will examine Plaintiffs' Motion for Settlement based upon the Rule 23(e)(2) factors."). However, each of the Rule 23(e)(2) and *Jiffy Lube* factors readily support approval of the proposed Settlement.

### C.    Application of Rule 23(e)(2) and *Jiffy Lube* Factors

#### 1.    Class Representatives and Class Counsel Have Zealously Represented the Class

In determining whether to approve a class action settlement, the Court should consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This requirement is "met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation." *Solomon v. Am. Web Loan, Inc*, No. 4:17CV145, 2020 WL 3490606, at *2 (E.D. Va. June 26, 2020) (quoting *In re Neustar Inc. Sec. Litig.,* No. 1:14CV885 (JCC/TRJ), 2015 WL 5674798, at *4 (E.D. Va. Sept. 23, 2015)).

In granting class certification, the Court found that Plaintiffs were adequate to serve as class representatives, and Co-Lead Counsel was fit to serve as class counsel. *See In re Jeld-Wen Holding, Inc. Sec. Litig.*, No. 3:20-CV-112-JAG, 2021 WL 1186326, at *4 (E.D. Va. Mar. 29, 2021). Class Representatives and Class Counsel have continued to adequately represent the Class in both their vigorous prosecution of the Action and in their negotiation and achievement of the Settlement. The Court previously noted, at the preliminary approval hearing, that the work the Court has seen "in this case on both sides has been very good legal work" and "class counsel [] has adequately represented the class." *See* ECF No. 287, Preliminary Approval Hearing Tr., July 27, 2021 at 4. Class Counsel have also been assisted by able and experienced Liaison Counsel, Cohen Milstein Sellers & Toll PLLC. Class Representatives have been active and informed participants in the litigation efforts and were consulted on, and approved, the terms of the Settlement. *See generally*, Exs. 1 – 3.

Consistent with their obligations, Class Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company and interviews with 34 former JELD-WEN employees and other persons with potentially relevant knowledge (six of whom were cited in the Complaint as confidential witnesses); (ii) briefing on Defendants' motions to dismiss; (iii) engaging in extensive discovery efforts that included moving to compel certain discovery and taking or defending 31 depositions, including the depositions of Plaintiffs, Plaintiffs' investment managers, current and former JELD-WEN and Onex employees (including the six confidential witnesses cited in the Complaint), the Individual Defendants, and five experts; (iv) briefing on class certification; (v) opposing Defendants' petition for Rule 23(f) review of the Court's certification of the Class; and (vi) briefing, and opposing, motions to exclude

the opinions and testimony of the expert witnesses designated by the Parties.  In consultation with its damages expert, Class Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $40 million recovery.  Accordingly, as previously found in certifying the Class and in appointing Plaintiffs as class representatives and Co-Lead Counsel as class counsel, Class Representatives and the Class Counsel have adequately represented the Class.

**2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

In weighing a class action settlement at final approval, the Court must consider whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Similarly, under the *Jiffy Lube* "fairness factors, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering the following four factors: '(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class actions litigation.'"  *Neustar*, 2015 WL 5674798, at *10 (quoting *Jiffy Lube*, 927 F.2d at 159).  Consideration of all of these factors demonstrates that the Settlement here was reached through arm's-length negotiations after vigorous litigation and with no hint of collusion.

In particular, the advanced posture of this case and the significant amount of discovery that was conducted before the Parties' agreement in principle dispel any concerns of possible collusion. *See Jiffy Lube*, 927 F.2d at 159 (acknowledging that a settlement reached "at a very early stage in the litigation and prior to any formal discovery, rais[es] questions of possible collusion.").  Here, as detailed in the Joint Declaration, the Settlement was not reached until after rigorous litigation, which included an extensive investigation before filing the Complaint, overcoming Defendants'

8

motions to dismiss the Complaint, achieving certification of the Class, engaging in thorough fact and expert discovery, and preparing for the July 2021 trial.  *See* ¶¶14-59.

Notably, the Parties completed both fact and expert discovery, which involved taking or defending 31 depositions (both fact and expert) and the production and exchange of approximately 1,800,000 pages of documents produced by Defendants and approximately 1,500,000 pages of documents produced by third-parties.  ¶¶25-53; *see Winingear v. City of Norfolk Va.* No. 12-cv-560, 2014 WL 3500996, at *2 (E.D. Va. July 14, 2014) ("When discovery has been largely completed, this factor weighs in favor of approving the settlement.").  The Parties exchanged nine expert reports in connection with expert discovery.  Class Representatives submitted expert reports from two highly qualified experts, Steven P. Feinstein, Ph.D., CFA, who was retained to provide an expert opinion on market efficiency, loss causation, and damages, and Russell L. Lamb, Ph.D., who was retained to provide an expert opinion on JELD-WEN's alleged anticompetitive conduct. ¶¶40-44.  Defendants responded to the reports of these experts with three experts of their own. ¶45.

As noted above, at the time of settlement, the Parties had already litigated Defendants' motions to dismiss and Plaintiffs' motion for class certification.  When "several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement."  *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 254.  The extensive discovery and motion practice in this case provided each side with further insight to evaluate the merits and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

The settlement negotiations were conducted at arm's-length by experienced class-action litigators with the assistance of an experienced mediator.  In April 2021, Class Counsel and Defendants' Counsel, among others, participated in a full-day mediation session before the

mediator.  In advance of the mediation, the Parties provided detailed mediation statements and exhibits to Mr. Meyer, which addressed issues of both liability and damages.  An agreement to resolve the Action was reached, subject to the negotiation of a formal settlement agreement. ¶¶60-63.

Regarding the experience of counsel, Class Counsel are among the most highly qualified securities class actions firms in the country (*see* Exs. 5-F, 6-F).  "The final *Jiffy Lube* 'fairness' factor looks to the experience of Class Counsel in this particular field of law."  *Mills*, 265 F.R.D. at 255-56.  Counsel's experience was previously recognized by the Court when they were appointed Class Counsel.  *See* ECF No. 233. Indeed, Class Counsel have a wealth of experience litigating and resolving securities class actions in the Eastern District of Virginia.  *See, e.g.*, *Knurr v. Orbital ATK, Inc., et al.*, No. 1:16-CV-01031-TSE-MSN, ECF No. 462 (E.D. Va. June 7, 2019); *In re NII Holdings, Inc. Sec. Litig.*, No. 1:14-cv-0027-LMB-JFA, 2016 WL 11660702, at *1 (E.D. Va. Sept. 16, 2016); *In re Neustar, Inc. Sec. Litig.*, No. 1:14CV885 (JCC/TRJ), 2015 WL 8484438, at *10 (E.D. Va. Dec. 8, 2015); and *In re Computer Sciences Corp. Sec. Litig.*, Civ. No. 11-610-TSE-IDD, ECF No. 335 (E.D. Va. Sept. 20, 2013).  Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate.  *See In re MicroStrategy*, *Inc. Sec. Litig.* 148 F. Supp. 2d 654, 665 (E.D. Va. 2001).

Moreover, Class Representatives are sophisticated institutional investors.  *See, e.g.,* ECF Nos. 123-125.  Class Representatives closely supervised, carefully monitored, and were actively involved in all material aspects of the prosecution and settlement of the Action.  For example, Class Representatives regularly communicated with Class Counsel regarding the progress of the case; reviewed court filings and other material documents throughout the case; participated in

discussions regarding litigation strategy and significant developments in the Action; worked with counsel to respond to discovery requests, including producing documents and providing deposition testimony; and participated in the mediation session that preceded the proposed Settlement.  *See* Ex. 1, ¶¶4-5; Ex. 2, ¶¶2-4; Ex. 3, ¶¶3-5.

### 3.      The Relief Provided by the Settlement Is Adequate

The proposed Settlement readily satisfies Rule 23(e)(2)(C) (and the *Jiffy Lube* adequacy factors).[5]   Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors.  Fed. R. Civ. P.  23(e)(2)(C).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement.  *See, e.g., Neustar*, 2015 WL 5674798, at *11 (the *Jiffy Lube* adequacy analysis "weighs the likelihood of the plaintiff's recovery on the merits against the amount offered in the settlement.").  Because the $40 million Settlement represents a very good recovery for the Class, particularly in light of the risks of litigation and potential outcomes at trial, Class Representatives believe that the Settlement provides adequate relief to the Class.  As discussed below and in the Joint Declaration, assuming that this Action were to continue to be litigated, the hurdles faced by Class Representatives would be substantial.  While Class Representatives believe that the claims asserted against Defendants were strong and that substantial evidence to support the allegations

---

[5]      This factor under Rule 23(e)(2)(C) encompasses four of the five factors of the traditional *Jiffy Lube* adequacy analysis: "(1) The relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, [and] (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment." *Jiffy Lube*, 927 F.2d at 159.

11

has been adduced, they recognize that the Action presented a number of risks to establishing both liability and damages.

### (a)    Risks of Establishing Liability and Damages Support Approval of the Settlement

Class Representatives would have faced challenges in proving to the ultimate finder of fact that the statements made by Defendants were materially false and misleading. *See* Joint Decl. ¶70. Defendants strenuously argued at the motion to dismiss and class certification stages, and they would have continued to maintain at trial (among other things), that Class Representatives could not prove that Defendants' statements about JELD-WEN's pricing strategies, competitiveness, and the merit of the interior door manufacturer's litigation (the "*Steves* Litigation") were false and misleading.  For example, Defendants would likely seek to present evidence that the market understood that Defendants' statements concerning the Company's pricing strategy and competitiveness truthfully described JELD-WEN's high-level approach to pricing and the market as a whole and are therefore not actionable.  Defendants also would have likely continued to argue that the allegedly omitted information about pricing and competitiveness was fully disclosed when the jury in the *Steves* Litigation rendered a verdict against JELD-WEN or, at the very latest, when the court in that action issued the divestiture order.  Also, Defendants would have argued that the alleged statements regarding the merits of the *Steves* Litigation are not actionable because the statements legitimately reflected their genuinely held legal position in an ongoing litigation that was still pending appeal.  *Id*.

Defendants would have also strenuously argued that even if the alleged misstatements were found to be materially misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter).  Defendants would seek to present testimonial and documentary evidence that the

12

Individual Defendants did not believe that JELD-WEN had engaged in the antitrust violations alleged in the *Steves* Litigation. ¶71.

Even if Class Representatives succeeded in overcoming these arguments to establish liability, they would also have continued to confront considerable challenges in establishing loss causation and damages, both at summary judgment and trial. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants likely would have asserted that Class Representatives cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused JELD-WEN's stock price to decline. In particular, Defendants would have continued to argue that: (i) there was no statistically significant stock drop following either the jury verdict or Judge Payne's Divestiture Decision in the *Steves* Litigation, which, among other things, outlined JELD-WEN's anticompetitive conduct; (ii) the litigation contingency charge announcement was not a corrective disclosure; and (iii) the October 16, 2018 stock decline was caused by negative third quarter earnings news concerning foreign and other divisions of the Company, and downgraded FY18 guidance, totally unrelated to any alleged anticompetitive activities. ¶72.

Defendants would have continued to argue, as they did in their pending motion to strike Class Representatives' damages expert's supplemental expert report, pending at the time the Parties agreed to resolve the Action, that adding an additional corrective disclosure of August 8, 2018 (when an analyst issued a research note summarizing a hearing in the interior door manufacturer's litigation) was improper and the disclosure should be excluded because it merely reports the analyst's conjecture about how the judge in the litigation might rule and was not

corrective of any alleged misrepresentation. ¶74. The loss of this disclosure would reduce likely recoverable aggregate damages, as detailed below.

In contrast, the Settlement avoids the potential impact of each of these challenges and other risks and achieves a fair and certain result. Indeed, the Settlement would be a very favorable guaranteed recovery. Class Representatives' damages expert, Dr. Steven Feinstein, has estimated that if liability were established, a reasonable estimate of aggregate damages likely recoverable at trial would not exceed approximately $189.5 million. ¶74. The Settlement recovers approximately 21% of damages under this scenario.

However, this estimate does not take into account challenges the Defendants would have raised if the case proceeded. As an initial matter, this damages estimate assumes that Class Representatives would have succeeded in opposing Defendants' motion to strike Dr. Feinstein's supplemental expert report that added a corrective disclosure on August 8, 2018, which was pending at the time of settlement. *See* ECF No. 217. If Defendants were successful in striking Dr. Feinstein's supplemental report, the August 8, 2018 disclosure would not have been presented at trial and aggregate damages would be reduced to approximately $120 million. ¶74. The Settlement represents a recovery of approximately 33% of this estimate.

Defendants would have also strenuously argued at summary judgment and at trial that the only portion of the stock decline following the October 15, 2018 alleged corrective disclosure attributable to Class Representatives' theory of liability was the Company's announcement of the litigation contingency charge related to the *Steves* Litigation. Defendants have argued, and would continue to argue, that the other information disclosed on that date was not related to any of the alleged misstatements or omissions and therefore should be disaggregated from the assessment of damages. Specifically, Defendants would have argued that JELD-WEN's announcement that it

14

was lowering its financial outlook (and the reason why) was unrelated to any of the alleged misstatements or omissions and, in any event, it was already disclosed to the market by the jury verdict and divestiture decision in the interior door manufacturer's litigation. If successful, Defendants' argument would have substantially reduced damages to between approximately $102.7 and $33.2 million, depending on whether the impact of the August 8, 2018 corrective disclosure is included. With respect to this range, the Settlement would represent between 39% and 120% of estimated aggregate damages. *Id*.

In addition to these challenges, following the Court's order certifying the Class, Defendants filed a 23(f) petition to the Fourth Circuit Court of Appeals challenging the efficiency of the IPO market and Class Representatives' damages model and theory of damages under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). If Defendants' petition had been granted, and they had been permitted to appeal the order certifying the Class and succeeded on either stated grounds for reversal, damages would have been significantly reduced and the Class could have been decertified. ¶76.

The Settlement also compares very favorably to other securities class action settlements. *See, e.g.*, *MicroStrategy,* 148 F. Supp. 2d at 667 n.22 (citing *Orman v. Am. Online, Inc.*, Civ. A. No. 97-264-A, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998), which approved a $35 million settlement amounting to approximately 5% of the maximum potential recovery); *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The [$40.3] settlement . . . represents a recovery of approximately 6.25% of estimated damages. This is at the higher end of the range of reasonableness of recovery in class action securities litigations."). The $40 million Settlement is well above the median and average reported settlement amounts in securities class actions in 2020, $13 million and $30 million,

15

respectively (excluding merger objection settlements, settlements for $0 to the class, and settlements of $1 billion or greater).  *See*, Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at 1-2 (NERA 2021), Ex. 9.

### (b)   Costs and Delay of Continued Litigation Support Approval of the Settlement

In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the certainty that further litigation would be expensive, complex, and time consuming. The fact that the Settlement eliminates the substantial delay and expense of summary judgment motions, *in limine* motions, trial, and likely appeals, a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all, strongly weighs in favor of approval. *See Winingear*, 2014 WL 3500996, at *2.[6]

In sum, the proposed Settlement would satisfy Rule 23(e)(2)(C)(i).

### (c)   The Effective Process for Distributing Relief to the Class

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  The Settlement, like the majority of securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator.  Here, the Court-appointed Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), is employing a well-tested protocol for the processing of claims in a securities class action.  Namely, a potential class member will submit, either by mail

---

[6]   Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $40 million Settlement.  *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict for plaintiffs on liability, district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

or online using the Settlement website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund.  *See* Stipulation at ¶22.  Class Representatives' claims will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶28(d)-(e).  Any claim disputes that cannot be resolved will be presented to the Court for a determination.  *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶37) and the claims process is completed, Authorized Claimants will be issued payments.  If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  Any *de minimis* balance that still remains in the Net Settlement Fund will be donated to the Virginia Health Care Foundation and Central Virginia Legal Aid Society, or a non-profit and non-sectarian organization(s) chosen by the Court.[7]  *Id*.  Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

---

[7]    Information about the Virginia Health Care Foundation ("VHCF") is available at https://www.vhcf.org/about/. "VHCF helps uninsured Virginians and those who live in underserved communities receive medical, dental and mental health care. VHCF support helps free clinics, community health centers and others to expand both the types of care offered and the number of patients cared for each year." *Id*. Information about Central Virginia Legal Aid Society ("CVLAS") is available at https://cvlas.org.  CVLAS is a non-profit law firm which provides free legal assistance to low income people in civil cases and preventive legal education in our communities." *Id*.

### (d)    The Settlement Does Not Excessively Compensate Class Counsel

As discussed in the accompanying Memorandum of Law in support of Class Counsel's Fee and Expense Application, the requested fee award of 25% of the Settlement Amount is an amount that is well-within the percentages that courts in the Fourth Circuit have approved in class actions with comparable recoveries.  Class Counsel is also seeking payment of litigation expenses incurred during the prosecution of the Action of less than the maximum reported in the Notice.  Accordingly, the proposed Settlement would satisfy Rule 23(e)(2)(C)(iii).

### (e)    The Relief Provided in the Settlement Is Adequate Taking Into Account all Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement.  On April 30, 2021 the Parties entered into a settlement term sheet and on June 4, 2021 they entered into the Stipulation and a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement").  Stipulation at ¶39(a).  The Supplemental Agreement sets forth the conditions under which JELD-WEN has the option to terminate the Settlement in the event that requests for exclusion from the Class exceed a certain agreed-upon threshold.  Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.  The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

### 4.    Class Members Are Treated Equitably Relative to One Another

The Settlement treats members of the Class equitably relative to one another.  As set forth above, eligible claimants will receive a distribution from the Net Settlement Fund pursuant to the

18

Plan of Allocation approved by the Court. Class Representatives will receive the same type of *pro rata* recovery under the Plan of Allocation as all Authorized Claimants. [8]

### 5.    Reaction of the Class to Date Supports Approval of the Settlement

"The degree of opposition to the settlement" should also be considered on final approval of a settlement. *See Genworth*, 210 F. Supp. 3d at 842 ("A lack of objections to settlement by class members and opt-outs from the class demonstrates low opposition and weighs in favor of approving a settlement."). Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq, mailed copies of the Notice Packet (consisting of the Notice and Claim Form) to record holders identified in the Company's transfer records and potential Class Members and their nominees. *See* Ex. 4 at ¶¶3-13. As of October 13, 2021, Epiq has mailed 30,561 copies of the Notice Packet to potential Class Members. *Id*. at ¶11. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire* on August 31, 2021. *Id*. at ¶14.

While the deadline set by the Court for Class Members to object or request exclusion (November 1, 2021) has not yet passed, to date, no objections and only one request for exclusion has been received. Ex. 4-D. Class Representatives will file reply papers no later than November 15, 2021 addressing any objections and any other requests for exclusion.

## II.    PLAN OF ALLOCATION IS FAIR AND REASONABLE

In addition to seeking final approval of the Settlement, Class Representatives seek approval of the proposed Plan of Allocation for the Settlement proceeds. Approval of a plan of allocation

---

[8]    Class Representatives are seeking reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This does not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

for settlement proceeds is governed by the same standards of fairness and reasonableness applicable to the settlement as a whole. *See, e.g., MicroStrategy,* 148 F. Supp. 2d at 668 ("To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate."). "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Mills,* 265 F.R.D. at 258.

The proposed Plan of Allocation for the proceeds of the Settlement is set forth in ¶¶51-67 of the Notice (Ex. 4-A). The proposed plan was developed by Class Counsel in consultation with Class Representatives' damages expert. The Plan provides for the distribution of the Net Settlement Fund to Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on the extent of their alleged injuries attributable to the alleged fraud.

In developing the Plan of Allocation, Class Representatives' damages expert calculated the estimated amount of alleged artificial inflation in the per share prices of JELD-WEN common stock that allegedly was proximately caused by Defendants' false and misleading statements and omissions. Ex. 4-A at ¶54. The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of JELD-WEN common stock during the Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. *Id*. at ¶57.

Class Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members who suffered losses as result of the alleged misconduct. To date, no objections to the proposed Plan of Allocation have been received. ¶91.

## III.    NOTICE SATISFIED RULE 23 AND DUE PROCESS

The Notice to the Class satisfied the requirements of Rule 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all members who

20

can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005).

Both the substance of the Notice and the method of its dissemination to potential members of the Class satisfied these standards. The Notice included all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7). In accordance with the Preliminary Approval Order, Epiq began mailing copies of the Notice and Claim Form to potential Class Members on August 17, 2021. *See* Ex. 4 at ¶¶4-5. As of October 13, 2021, Epiq has disseminated 30,561 copies of the Notice Packet to potential Class Members and nominees. *See id*. at ¶11. In addition, Epiq caused the Summary Notice to be published in the *Wall Street Journal* and transmitted over the *PR Newswire* on August 31, 2021. *See id*. ¶14.

This combination of individual mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and transmitted over a newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

21

## CONCLUSION

For all of the foregoing reasons, Class Representatives respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate.  Proposed orders will be submitted with Class Representatives' reply papers, after the deadlines for objections and seeking exclusion have passed.

DATED: October 18, 2021

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (Admitted *pro hac vice*)

*/s/ Steven J. Toll*
Steven J. Toll

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstien.com
jhandelsman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

22

*Counsel for Co-Lead Plaintiff Public Employees'
Retirement System of Mississippi and the Class*

ROBBINS GELLER RUDMAN &
   DOWD LLP
ROBERT M. ROTHMAN (Admitted *pro hac vice*)
MARK T. MILLKEY (Admitted *pro hac vice*)
WILLIAM J. GEDDISH (Admitted *pro hac vice*)
VINCENT M. SERRA (New York Bar only)
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
wgeddish@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
DEBRA J. WYMAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com

*Counsel for Co-Lead Plaintiff Plumbers and
Pipefitters National Pension Fund and additional
Plaintiff Wisconsin Laborers' Pension Fund, and
the Class*

23

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

           */s/ Steven J. Toll*
           Steven J. Toll
           VA Bar No. 15300
           stoll@cohenmilstein.com
           **COHEN MILSTEIN SELLERS & TOLL PLLC**
           1100 New York Ave. NW, Suite 500
           Washington, DC 20005

           *Liaison Counsel for Lead Plaintiffs*