UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | | |
|---|---|---|
| In re JELD-WEN HOLDING, INC. SECURITIES LITIGATION | ) ) ) | Civil Action No. 3:20-cv-00112-JAG |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | |
| ALL ACTIONS. | ) ) | |

**CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND
EXPENSES AND AWARDS TO CLASS REPRESENTATIVES
PURSUANT TO 15 U.S.C. §78u-(4)(a)(4)**

4849-3081-3435.v1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................1

II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.....................................4

    A.     The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate .......................................................4

    B.     Class Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Authority ...............................................................................................6

        1.     Class Counsel Obtained an Exceptional Result for the Class......................7

        2.     The Presence or Absence of Substantial Objections by Members of the Class ...............................................................................................9

        3.     Class Counsel Are Skilled and Efficient Litigators .....................................9

        4.     The Duration and Complexity of This Action Support the Requested Fee ...............................................................................................10

        5.     Class Counsel Faced the Significant Risk of Nonpayment .......................11

        6.     Plaintiffs' Counsel Necessarily Devoted Over 18,000 Hours to Prosecuting This Action.............................................................................12

        7.     Public Policy Considerations Support the Requested Fee .........................13

        8.     Twenty-Five Percent of the Settlement Amount Is a Reasonable Fee Award in Cases Such as This ............................................................14

    C.     A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request .......................................................15

III.   CLASS COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES AND CHARGES IS REASONABLE .......................................................18

IV.    THE REQUESTED PSLRA AWARDS TO THE CLASS REPRESENTATIVES ARE REASONABLE .............................................................................................20

V.     CONCLUSION.............................................................................................21

4849-3081-3435.v1

# TABLE OF AUTHORITIES

Page

## CASES

*Archbold v. Wells Fargo Bank, N.A.*,
 No. 3:13-CV-24599, 2015 WL 4276295
 (S.D.W. Va. July 14, 2015).................................................................................5

*Barber v. Kimbrell's, Inc.*,
 577 F.2d 216 (4th Cir. 1978) ...........................................................................6, 7

*Blum v. Stenson*,
 465 U.S. 886 (1984).............................................................................................4

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980).............................................................................................4

*Boyd v. Coventry Health Care Inc.*,
 299 F.R.D. 451 (D. Md. 2014).............................................................................7

*Brown v. Transurban USA, Inc.*,
 318 F.R.D. 560 (E.D. Va. 2016) ........................................................................16

*Camden I. Condo. Ass'n, Inc. v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) .............................................................................5

*Deem v. Ames True Temper, Inc.*,
 No. 6:10- CV-01339, 2013 WL 2285972
 (S.D.W. Va. May 23, 2013).................................................................................5

*Galloway v. Williams*,
 No. 3:19-CV-470, 2020 WL 7482191
 (E.D. Va. Dec. 18, 2020) ...............................................................................7, 16

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2nd Cir. 2000).........................................................................4, 6, 7

*Good v. W. Virginia-Am. Water Co.*,
 No. 14-1374, 2017 WL 2884535
 (S.D.W.Va. July 6, 2017)...................................................................................10

*Gottlieb v. Barry*,
 43 F.3d 474 (10th Cir. 1994) ...............................................................................5

*Gunter v. Ridgewood Energy Corp.*,
 223 F.3d 190 (3d Cir. 2000)............................................................................6, 7

Page

*Heien v. Archstone*,
    837 F.3d 97 (1st Cir. 2016)................................................................4

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................8

*In re Celebrex (Celecoxib) Antitrust Litig.*,
    No. 2:14-CV-00361, 2018 WL 2382091
    (E.D. Va. Apr. 18, 2018)...........................................................6, 14

*In re Comput. Sci. Corp. Sec. Litig.*,
    No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436
    (E.D. Va. Sept. 20, 2013)................................................................20

*In re Genworth Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) .............................................. *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3rd Cir. 1995) .............................................................4

*In re: Interior Molded Doors Antitrust Litig.*,
    No. 3:18-cv-00718-JAG, ECF No. 376
    (E.D. Va. June 3, 2021) ..................................................................14

*In re Linerboard Antitrust Litig.*,
    No. CIV.A. 98-5055, 2004 WL 1221350
    (E.D. Pa. June 2, 2004),
    *amended*, No. CIV.A. 98-5055, 2004 WL 1240775
    (E.D. Pa. June 4, 2004) ..................................................................10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484, 2007 WL 313474
    (S.D.N.Y. Feb. 1, 2007)....................................................................8

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................13

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) .................................................8

*In re MicroStrategy, Inc. Sec. Litig.*,
    172 F. Supp. 2d 778 (E.D. Va. 2001) ..............................13, 15, 16, 17

*In re Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ................................................ *passim*

- iii -

Page

*In re Mut. Funds Inv. Litig.*,
  No. 04-md-15863, 2011 WL 1102999 |
  (D. Md. Mar. 23, 2011) ................................................................................................16

*In re Neustar, Inc. Sec. Litig.*,
  No. 1:14CV885, 2015 WL 8484438
  (E.D. Va. Dec. 8, 2015) ...............................................................................................18

*In re NII Holdings, Inc. Sec. Litig.*,
  No. 1:14-cv-00227-LMB-JFA, ECF No. 266
  (E.D. Va. Sept. 16, 2016) ............................................................................................14

*In re Prudential Ins. Co. Am. Sales Litig.*,
  148 F.3d 283 (3d Cir. 1998) ..........................................................................................6

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. CIV.03-0085 FSH, 2005 WL 3008808
  (D.N.J. Nov. 9, 2005) ..................................................................................................15

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) .........................................................................12

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  461 F. Supp. 2d 383 (D. Md. 2006) ............................................................................17

*Johnson v. Georgia Highway Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) .........................................................................................7

*Jones v. Dominion Res. Servs., Inc.*,
  601 F. Supp. 2d 756 (S.D.W. Va. 2009) .......................................................5, 11, 13, 15

*Knurr v. Orbital ATK, Inc., et al.*,
  No. 1:16-CV-01031-TSE-MSN, ECF No. 462
  (E.D. Va. June 7, 2019) ...............................................................................................14

*Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*,
  No. 1:16-md-2743 (AJT/TRJ), 2020 WL 5757504
  (E.D. Va. Sept. 4, 2020) ..............................................................................................16

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
  No. 3:14CV238 (DJN), 2016 WL 1070819
  (E.D. Va. Mar. 15, 2016) ...............................................................................................5

- iv -

Page

*Orman v. Am. Online, Inc.*,
    CIV. A. No. 97-264-A, 1998 WL 1969646
    (E.D. Va. Dec. 14, 1998) ................................................................................................8

*Phillips v. Triad Guar. Inc.*,
    No. 1:09CV71, 2016 WL 2636289
    (M.D.N.C. May 9, 2016) ...............................................................................................12

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ..........................................................................................5

*Rawlings v. Prudential- Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) ...............................................................................................4

*Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*,
    No. 1:18-CV-423, 2020 WL 92092
    (M.D.N.C. Jan. 8, 2020)................................................................................................19

*Seaman v. Duke Univ.*,
    No. 1:15-CV-462, 2019 WL 4674758
    (M.D.N.C. Sept. 25, 2019)................................................................................13, 16, 18

*Singleton v. Domino's Pizza, LLC*,
    976 F. Supp. 2d 665 (D. Md. 2013).......................................................................17, 18, 19

*Smith v. Krispy Kreme Doughnut Corp.*,
    No. 1:05cv00187, 2007 WL 119157
    (M.D.N.C. Jan. 10, 2007)..............................................................................................10

*Spell v. McDaniel*,
    852 F.2d 762 (4th Cir. 1988) .........................................................................................18

*Sponn v. Emergent Biosolutions, Inc.*,
    No. 8:16-cv-02625-RWT, 2019 WL 11731087
    (D. Md. Jan. 25, 2019) ..................................................................................................20

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
    890 F. Supp. 499 (E.D. Va. 1995) ...................................................................................5

*Swedish Hosp. Corp v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)...........................................................................................5

- v -

Page

*Thomas v. FTS USA, LLC*,
   No. 3:13cv825(REP), 2017 WL 1148283
   (E.D. Va. Jan. 9, 2017)
   *report and recommendation adopted*, No. 3:13cv825, 2017 WL 1147460
   (E.D. Va. Mar. 27, 2017) ...............................................................................................5, 7, 15

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ........................................................................................4

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ......................................................................................5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78(u)-4(a)(4) ...............................................................................................................1

Federal Rules of Civil Procedure
   Rule 23(h) .....................................................................................................................4

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA 2021).........8

Class Counsel respectfully submit this application for an Order: (1) awarding Plaintiffs' Counsel[1] attorneys' fees of 25% of the Settlement Amount and litigation expenses of $1,241,263.63, and (2) awarding the Class Representatives[2] $28,540, in the aggregate, pursuant to 15 U.S.C. §78(u)-4(a)(4) in connection with their representation of the Class, to be paid from the Settlement Fund.

## I.    INTRODUCTION

In awarding fees, courts consider several factors, including the quality and quantity of work as reflected in the results obtained.  Here, Plaintiffs' Counsel devoted over 18,000 hours in order to obtain a very favorable Settlement for the Class.  The Settlement Fund consists of $40 million, plus any interest thereon.  For all the reasons set forth herein and in the accompanying Class Representatives' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, the Settlement is an outstanding result.

The $40 million all-cash recovery was achieved through the skill, experience, and effective advocacy in the face of considerable risk and an aggressive defense mounted by Defendants represented by four of the largest and most sought-after defense firms in the country.  The Settlement was reached only after Class Counsel achieved several notable litigation successes that included: (i) overcoming Defendants' motions to dismiss; (ii) prevailing on Plaintiffs' motion to compel discovery of key documents that were withheld as purportedly privileged; and (iii) achieving class certification.  These successes were made possible by the conducting of an extensive investigation

---

[1]    "Plaintiffs' Counsel" means Robbins Geller Rudman & Dowd LLP, Labaton Sucharow LLP, Cohen Milstein Sellers & Toll LLP, O'Donoghue & O'Donoghue LLP, Phelan Perry, and Neville Law LLC.  All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 4, 2021 (the "Stipulation"), previously filed with the Court (ECF No. 270-1).  Emphasis is added and citations are omitted throughout unless otherwise noted.

[2]    "Class Representatives" or "Plaintiffs" means Lead Plaintiffs Public Employees' Retirement System of Mississippi and the Plumbers and Pipefitters National Pension Fund and plaintiff Wisconsin Laborers' Pension Fund.

and the drafting of a detailed amended complaint. *See* Declaration of Robert M. Rothman and Michael H. Rogers in Support of (1) Class Representatives' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (2) Class Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Class Representatives Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Declaration"), ¶¶5-6, submitted herewith.[3]   Class Counsel analyzed approximately 1,800,000 pages of documents produced by Defendants during discovery and approximately 1,500,000 pages of documents produced by third-parties. *Id.*, ¶5. Additionally, Class Counsel identified approximately 120 former JELD-WEN employees and other persons believed to have relevant knowledge, contacted 93, and interviewed 34 of them. *Id.* Class Counsel took or defended 31 depositions. *Id.*, ¶6. This dedication of effort resulted in a very favorable and significant cash recovery for the Class.

As compensation for their efforts, Class Counsel respectfully request an award of attorneys' fees of 25% of the Settlement Amount and payment of litigation expenses of $1,241,263.63, plus interest on both amounts at the same rate and for the same period of time as that earned on the Settlement Fund. Class Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Through Class Counsel's significant amount of work, they demonstrated that they were prepared to take this case through trial if Defendants failed to agree to a resolution that provided fair, reasonable, and adequate relief to the Class.

Since fee awards are designed to encourage counsel to achieve the best possible result for the class, the amount requested in this case is warranted, if not modest, given the exceptional recovery

---

[3]   All exhibits referenced below are attached to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

obtained and the significant obstacles and risks Class Counsel faced in bringing and prosecuting this case. As discussed herein, this recovery of 21% to 33%, or more, of estimated damages is many times greater than recoveries in similar cases, yet the requested 25% fee is below the 28%–33-1/3% fees regularly awarded in the Fourth Circuit. Although the recovery is far above average, the resulting lodestar multiplier of 0.94x is significantly lower than the 2-3x multipliers approved by this Court and other courts in the Fourth Circuit.

In addition, Class Representatives – three institutional investors who have overseen the Action – approve of and endorse the requested fee.[4] This endorsement is particularly significant because the PSLRA was enacted to encourage sophisticated institutional investors to seek lead plaintiff status and oversee securities class actions. Class Counsel respectfully request that this Court approve the requested amount of fees and litigation expenses as justified under the particular facts of this case.

Separately, Class Representatives Public Employees' Retirement System of Mississippi ("MPERS") and Wisconsin Laborers' Pension Fund ("WLPF") seek awards of $23,350, and $5,190, respectively, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. Class Representatives support their applications with declarations setting forth the basis for the awards. *See* MPERS Decl., ¶¶8-10, Ex. 1; WLPF Decl., ¶¶7-9, Ex. 2. Class Representatives respectfully request that the Court approve the requested awards.

---

[4]    *See* Declaration of Ta'Shia S. Gordon on Behalf of MPERS ("MPERS Decl."), ¶7, Ex. 1; Declaration of John J. Schmitt on Behalf of WLPF ("WLPF Decl."), ¶6, Ex. 2, and Declaration of Toni Inscoe on Behalf of Plumbers and Pipefitters National Pension Fund ("PPNPF Decl."), ¶7, Ex. 3.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.

### A.     The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the Supreme Court recognized, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common fund doctrine is based on the inherent powers of the federal court to "prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*

The two methods of calculating attorneys' fees in class actions are the percentage-of-the-fund method and the lodestar method. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009). The percentage-of-the-fund method involves an award based on a percentage of the Class's recovery, set by the court based on several factors. *Id.* The lodestar method requires multiplying the number of hours worked by a reasonable hourly rate, the product of which the Court can then adjust by employing a "multiplier." *Id.*

The Supreme Court has suggested that percentage-of-recovery is the appropriate method for awarding fees under the common fund doctrine. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ."). Most federal courts of appeals have also endorsed the percentage-of-recovery method as an appropriate method for determining an award of attorneys' fees in common fund cases.[5]

---

[5]    *See, e.g.*, *Heien v. Archstone*, 837 F.3d 97, 100 (1st Cir. 2016); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3rd Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential- Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993);

"While the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases." *Mills*, 265 F.R.D. at 260; *see, e.g.*, *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *5 (E.D. Va. Mar. 15, 2016) ("District Courts within this Circuit have also favored the percentage method."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 4276295, at *5 (S.D.W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases."); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.").

These courts recognize that the percentage-of-the-fund method is "more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang*, 890 F. Supp. at 503. It also better aligns the interests of class counsel and class members because it ties the attorneys' fee award to the overall result achieved, rather than hours expended by the attorneys. *Thomas v. FTS USA, LLC*, No. 3:13cv825(REP), 2017 WL 1148283, at *3 (E.D. Va. Jan. 9, 2017), *report and recommendation adopted*, No. 3:13cv825, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017); *see also Deem v. Ames True*

---

*Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993).

*Temper, Inc.*, No. 6:10- CV-01339, 2013 WL 2285972, at *5 (S.D.W. Va. May 23, 2013) ("The percentage method 'is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.'" (quoting *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998))).

Class Counsel's application based on the percentage-of-fund method is therefore consistent with the law in this and other circuits.   As explained below, the factors courts consider when assessing percentage-of-fund requests demonstrate the reasonableness of Class Counsel's requested fee, which is further confirmed by cross-checking the requested amount against Plaintiffs' Counsel's calculated lodestar.

### B.   Class Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Authority

"In determining the reasonableness of attorneys' fees, courts look at the following factors: (1) the result obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by the plaintiffs' counsel; and (7) awards in similar cases." *In re Genworth Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016) (Gibney, J.).   Certain district courts in this Circuit have applied a slightly different version of this standard, replacing the sixth factor with public policy considerations. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at *4 (E.D. Va. Apr. 18, 2018); *Mills*, 265 F.R.D. at 261 (citing, *inter alia*, *Goldberger*, 209 F.3d at 50).

There is some disagreement as to whether to apply these seven factors, which were adopted from the Third Circuit, *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000), or the 12-factor test from the Fifth Circuit adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th

Cir. 1978) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).[6]   *See Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at \*5 (E.D. Va. Dec. 18, 2020) (Payne, J.); 5 Newberg on Class Actions §15:82 (5th ed.) ("The Fourth Circuit utilized the Fifth Circuit's *Johnson* factors in a statutory fee-shifting case, so some district courts have utilized those factors in setting a percentage in common fund cases, while other district courts have used the Second Circuit's *Goldberger* factors and/or the Third Circuit's *Gunter* factors.").   However, many of the *Johnson/Barber* factors overlap with the *Gunter* factors or are "subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate."   *Galloway*, 2020 WL 7482191, at \*6, \*10-\*11; *see also Genworth*, 210 F. Supp. 3d at 843 (using the 7-factor Third Circuit test in evaluating the reasonableness of the requested fee and incorporating the *Johnson*/*Barber* factors into the lodestar cross-check).   Notably, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'"   *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014).   Given the overlap in the factors, a consideration of the relevant factors under any standard supports Class Counsel's requested fee.

### 1.   Class Counsel Obtained an Exceptional Result for the Class

"The first and most important factor for a court to consider when making a fee award is the result achieved."   *Genworth*, 210 F. Supp. 3d at 843; *see also Thomas*, 2017 WL 1148283, at \*3

---

[6]     The *Johnson/Barber* factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."   *Barber*, 577 F.2d at 226 n.28.

("[T]he Court gives the most weight to the results obtained." (citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

The Settlement provides $40 million in cash for the benefit of the Class. As previously explained in Class Representatives' motion for preliminary approval of the Settlement, the $40 million recovery reflects between 21%[7] and 33%[8] of Class Representatives' reasonably recoverable damages (and even as high as 120% if certain of Defendants' arguments had been accepted at summary judgment and/or trial), a significantly higher percentage of estimated damages than in many other approved securities settlements. Mem. in Support of Mot. for Prelim. App. (ECF No. 269) at 16. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 n.22 (E.D. Va. 2001) (citing *Orman v. Am. Online, Inc.*, CIV. A. No. 97-264-A, 1998 WL 1969646 (E.D. Va. Dec. 14, 1998), which approved a $35 million settlement amounting to approximately 5% of the maximum potential recovery); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The [over $40 million] settlement . . . represents a recovery of approximately 6.25% of estimated damages. This is at the higher end of the range of reasonableness of recovery in class action securities litigations."). The $40 million Settlement is also well above the median and average reported settlement amounts in securities class actions in 2020, $13 million and $30 million, respectively (excluding merger objection settlements, settlements for $0 to the class, and settlements of $1 billion or greater). *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at 1-2 (NERA 2021), Ex. 9.

---

[7]   Class Representatives' damages expert estimated class-wide damages of approximately $189.5 million. Mem. in Support of Mot. for Prelim. App. (ECF No. 269) at 15.

[8]   Class Representatives' damages could have been reduced to approximately $120 million if Defendants were successful in striking the supplemental expert report of Class Representatives' damages expert. Mem. in Support of Mot. for Prelim. App. (ECF No. 269) at 15.

Class Counsel obtained this recovery as a result of their effective advocacy on behalf of the Class and efficient prosecution of this case through completion of fact and expert discovery and certification of the Class, as well as in the face of the numerous and thorny challenges that lay ahead concerning Defendants' impending summary judgment and *Daubert* motions, and trial and potentially post-trial appeals. For example, in addition to Defendants' arguments regarding falsity and scienter, Defendants challenged Class Representatives' damages calculations arguing that: (i) there was no statistically significant stock drop following either the jury verdict or Judge Payne's Divestiture Decision in the *Steves* Litigation which, among other things, outlined JELD-WEN's anticompetitive conduct; (ii) the litigation contingency charge announcement was not a corrective disclosure; and (iii) the October 16, 2018 stock decline was caused by negative earnings news. Joint Decl., ¶72.

Balanced against the many significant challenges of continued litigation and compared to the results achieved in many other securities class action settlements, the Settlement provides an exceptional result for the Class and supports Class Counsel's request for attorneys' fees.

## 2. The Presence or Absence of Substantial Objections by Members of the Class

"A lack of objections by class members as to fees requested by counsel weighs in favor of the reasonableness of the fees." *Genworth*, 210 F. Supp. 3d at 844. Significantly, to date, not a single Class Member has objected to the Settlement or Class Counsel's fee request. However, the deadline for objections is November 1, 2021, and Class Counsel will advise the Court as to this factor in their reply papers, which are due on November 15, 2021.

## 3. Class Counsel Are Skilled and Efficient Litigators

The quality of the representation is another significant factor supporting Class Counsel's fee request. *See id.* ("The skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial

attorneys' fees award in this case."). Class Counsel have substantial experience litigating securities class action cases. *See* Joint Decl., ¶¶96-98; rgrdlaw.com and labaton.com. Additionally, "the result achieved is the clearest reflection of petitioners' skill and expertise." *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), *amended*, No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).[9]

Further, courts often evaluate the quality of the work performed by the plaintiff's counsel in light of the quality of the opposition's representation. *See, e.g.*, *Mills*, 265 F.R.D. at 262 (noting that counsel reached a favorable settlement against "experienced and sophisticated defense attorneys"); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."). Defendants are represented by highly skilled and experienced securities litigators from some of the leading defense law firms in the United States. It was in the face of such skilled and vigorous opposition that Class Counsel were able to obtain the benefits for the Class that they did. This factor weighs in favor of the requested fee award.

### 4. The Duration and Complexity of This Action Support the Requested Fee

Courts recognize that "there are good reasons to award higher-than-typical fees when the issues in a case are particularly 'novel and complex.'" *Good v. W. Virginia-Am. Water Co.*, No. 14-1374, 2017 WL 2884535, at *25 (S.D.W.Va. July 6, 2017). Securities cases are routinely found to be complex as they "require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish.'" *Genworth*, 210 F. Supp. 3d at 844 (quoting *Mills*, 265 F.R.D. at 263).

---

[9]   At the July 27, 2021 preliminary approval hearing, the Court stated, "Obviously we have people who are very able here, and the work that I have seen in this case on both sides has been very good legal work, and obviously there has been no, you know, the plaintiffs' lawyers have not stinted at all in terms of their preparation." Preliminary Approval Hearing Tr. 4:18-23 (July 27, 2021).

- 10 -

"In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement and the amount and nature of discovery." *Jones*, 601 F. Supp. 2d at 761.  Class Counsel efficiently achieved the Settlement after vigorous, hard-fought litigation.  Since this case was filed on this "rocket docket," and during the emerging COVID-19 pandemic, Class Counsel: (1) conducted a rigorous factual investigation, including interviewing scores of former JELD-WEN employees; (2) drafted an 87-page, 325-paragraph consolidated complaint; (3) fully and successfully briefed Defendants' motions to dismiss; (4) fully and successfully briefed and argued Plaintiffs' motion for class certification; (5) completed significant class, fact, and expert discovery under an aggressive schedule, including analyzing approximately 1.8 million pages of documents produced by Defendants and approximately 1.5 million pages produced by third parties and taking or defending 31 depositions; (6) fully briefed and argued discovery motions compelling the production of material; (7) exchanged expert reports; (8) fully briefed motions to exclude expert testimony; and (9) were in the process of briefing summary judgment and preparing for trial. Joint Decl., ¶¶5-6.[10]  This case's complexity and duration strongly support the reasonableness of Class Counsel's request.

### 5.     Class Counsel Faced the Significant Risk of Nonpayment

Class Counsel undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever.  As the Court recognized at preliminary approval, "the risks to the plaintiffs in this case are enormous. . . . [T]here are a lot of ways in which the plaintiff could come up with no money in this case." Preliminary Approval Hearing Tr. at 6:4-17.  The risk of receiving little or no recovery is a factor courts in this Circuit recognize when considering an award of attorneys' fees. *See, e.g.*, *Mills*, 265 F.R.D. at 263 ("'[C]ounsel bore a substantial risk of nonpayment . . . [t]he

---

[10]   At the hearing on July 27, 2021, the Court stated, "The lawyers have been litigating pretty vigorously the entire time I have had this case."  Preliminary Approval Hearing Tr. at 5:10-12.

outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation.'"); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at \*6 (M.D.N.C. May 9, 2016) (finding fee award justified where, "[l]ead [c]ounsel bore the risks involved with surviving dispositive motions, obtaining class certification, proving liability, causation, and damages, prevailing with experts, and litigating through trial and possible appeals" knowing "'that the only way [they] would be compensated was to achieve a successful result'"). In addition to the risk of non-recovery at trial, "any victory at trial in this case would have to withstand appeals which could reverse or limit any award by a jury." *Genworth*, 210 F. Supp. 3d at 844.

Additionally, Plaintiffs' Counsel incurred $1,241,263.63 in litigation expenses and charges to prosecute the litigation, which would not have been awarded absent a successful result. *See Mills*, 265 F.R.D. at 263 (noting uncertainty of the case outcome, defendants' rigorous defense, and that "[l]ead [c]ounsel devoted thousands of hours on the case and fronted nearly $3 million in costs in the process" to conclude that factor weighed in favor of awarding the requested fee); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money . . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). The risk of nonpayment weighs in favor of the requested fee award.

### 6.   Plaintiffs' Counsel Necessarily Devoted Over 18,000 Hours to Prosecuting This Action

Plaintiffs' Counsel devoted considerable time and effort researching, investigating, and litigating this case. *See, e.g.*, Joint Decl., ¶¶5-6. As set forth in the Joint Declaration and Plaintiffs' Counsel's Fee and Expense Declarations,[11] Plaintiffs' Counsel devoted 18,189 hours to prosecuting

---

[11]   Plaintiffs' Counsel's Fee and Expense Declarations include the following: Declaration of Robert M. Rothman Filed on Behalf of Robbins Geller Rudman & Dowd LLP ("Robbins Geller Fee

this case, resulting in a total lodestar of $10,672,222.25.  Plaintiffs' Counsel could have spent those attorney hours litigating other matters, which weighs in favor of awarding the requested fees.  *See, e.g.*, *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *4 (M.D.N.C. Sept. 25, 2019) (highlighting that the "attorneys and staff have worked over 12,500 hours since it began" and "spent over $3 million from their own pockets litigating this case," which "was time and money the attorneys could have directed to other simpler and less risky opportunities" supported the fee request); *Genworth*, 210 F. Supp. 3d at 844-45 (finding that "counsel for plaintiffs devoted an enormous amount of time and effort into this case, totaling more than 66,000 hours and investing more than three million dollars in fees towards consulting experts" to be among the considerations that "support the attorneys' fees award").  The extensive time and resources Plaintiffs' Counsel committed to this case similarly weigh in favor of the requested fee.

### 7.    Public Policy Considerations Support the Requested Fee

A "central factor in fixing the amount of attorneys' fees is 'to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class.*"  *Mills*, 265 F.R.D. at 260.  In complex securities cases, fee awards have been enhanced by courts "to provide an incentive for competent lawyers to pursue such actions in the future."  *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001).  Public policy "generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions."  *Jones*, 601 F. Supp. 2d at 765 (citing *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y. 2008); *MicroStrategy*, 172 F. Supp. 2d at 789 n.36).  "The cost and difficulty [of bringing

---

Decl."), Ex. 5; Declaration of Michael H. Rogers Filed on Behalf of Labaton Sucharow LLP ("Labaton Fee Decl."), Ex. 6; Declaration of Steven J. Toll Filed on Behalf of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein Fee Decl."), Ex. 7; Declaration of George W. Neville Filed on Behalf of Neville Law, LLC ("Neville Fee Decl."), Ex. 8.

a meritorious complex class action] naturally stands as a deterrent from doing so, and one object of an award of attorneys' fees should be to counteract this deterrence and incentivize competent attorneys to pursue these cases when necessary." *Mills*, 265 F.R.D. at 263. Public policy considerations support awarding the requested fee.

### 8. Twenty-Five Percent of the Settlement Amount Is a Reasonable Fee Award in Cases Such as This

In *Genworth*, the Court held that the "award of 28% to the Plaintiffs' Counsel is fair and reasonable when compared to other securities fraud claims," and noted that plaintiffs had cited several cases "in which courts grant attorneys' fees varying from 25% to 33.3% of the total Settlement amount." 210 F. Supp. 3d at 845 & n.4 (citing settlements ranging from $165 million to $325 million where attorneys' fees of 25% to 33.3% were awarded); *see also In re: Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-00718-JAG, ECF No. 376 at ¶4 (E.D. Va. June 3, 2021) (awarding 33-1/3% of $20.5 million recovery in antitrust action); *Knurr v. Orbital ATK, Inc., et al.*, No. 1:16-CV-01031-TSE-MSN, ECF No. 462 at ¶4 (E.D. Va. June 7, 2019) (awarding 28% of $108 million recovery in securities class action). Here, the recovery of between 21% and 33% of estimated damages is better than most cases (*see* §II.B.1.), yet Class Counsel's requested 25% fee is at or below fees for comparable complex litigation settlements in this District:

| Cases in the Fourth Circuit | Settlement | Fee % |
|---|---|---|
| *In re: Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-00718-JAG, ECF No. 376 (E.D. Va. June 3, 2021) | $20,533,333.33 | 33-1/3% |
| *Knurr v. Orbital ATK, Inc., et al.*, No. 1:16-CV-01031-TSE-MSN, ECF No. 462 (E.D. Va. June 7, 2019) | $108,000,000 | 28% |
| *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) | $94,000,000 | 33% |
| *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837 (E.D. Va. 2016) | $219,000,000 | 28% |

| Cases in the Fourth Circuit | Settlement | Fee % |
|---|---|---|
| *In re NII Holdings, Inc. Sec. Litig.*, No. 1:14-cv-00227-LMB-JFA, ECF No. 266 (E.D. Va. Sept. 16, 2016) | $41,500,000 | 25% |

Additionally, "[t]he percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering his or her services in the private marketplace." *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *Id.*; *see also Thomas*, 2017 WL 1148283, at *5 ("[A]ny discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements."). Consideration of the awards in similar cases strongly supports the requested award of 25% of the Settlement Amount.

### C.     A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request

Courts often supplement their analysis of the percentage-of-fund method with the lodestar cross-check. "A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case," and "then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier." *Genworth*, 210 F. Supp. 3d at 845. When using the lodestar as a cross-check, courts "take a somewhat truncated approach to the lodestar analysis" and "generally do not apply the same scrutiny in a lodestar cross-check as they do when using the lodestar method to calculate the fee." *Thomas*, 2017 WL 1148283, at *6; *see also Jones*, 601 F. Supp. 2d at 765 (explaining that when "using the lodestar method as a cross-check," the court "need not apply the 'exhaustive scrutiny' normally required by that method").

- 15 -

This Court has recognized that reviewing counsel's lodestar as a "cross-check" can assist in assessing the reasonableness of a percentage fee. *See Genworth*, 210 F. Supp. 3d at 845; *MicroStrategy*, 172 F. Supp. 2d at 787 (stating that a fee should "adequately compensate lead counsel for the time expended on the case"). Since fee awards are designed to encourage efficient litigation and great results, courts recognize that the fee award should "include a reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *Id.* Multipliers are appropriate to encourage efficiency and to compensate for the delay in payment and additional risks because, unlike defense firms who are guaranteed payment win or lose and paid immediately, Class Counsel are only paid at the end of the case and only if the case is successful. *See, e.g.*, *id.* at 788 (noting because PSLRA cases are essentially contingent fee cases, "there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery").

Plaintiffs' Counsel and their professionals have expended more than 18,000 hours in the prosecution of this Action with a resulting lodestar of approximately $10.6 million,[12] resulting in a 0.94x multiplier on Plaintiffs' Counsel's lodestar based on their 25% fee request – a "negative" multiplier, meaning Plaintiffs' Counsel are requesting less than their lodestar. *See* Robbins Geller Fee Decl., ¶4, Ex. 5; Labaton Fee Decl., ¶4, Ex. 6; Cohen Milstein Fee Decl., ¶4, Ex. 7; Neville Fee Decl., ¶3, Ex. 8; Summary of Time and Expenses, Ex. 10. This "negative" lodestar multiplier confirms the reasonableness of the requested 25% fee award, as it is within the range of reasonableness and well below the 2-3x multipliers regularly awarded in the Fourth Circuit. *See Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*, No. 1:16-md-2743 (AJT/TRJ), 2020 WL 5757504, at *3 (E.D. Va. Sept. 4, 2020) ("Given the negative multiplier, the

---

[12]   This lodestar is based on counsel's current rates, which is "appropriate to account for the delay in payment to counsel." *Seaman*, 2019 WL 4674758, at *5.

percentage awarded was significantly lower than what has been found reasonable in similar cases."); *see also Galloway*, 2020 WL 7482191, at *12; *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) (finding a negative multiplier of 0.77 "comfortably below the range of multipliers other courts have found to be reasonable"); *In re Mut. Funds Inv. Litig.*, No. 04-md-15863, 2011 WL 1102999, at *3 (D. Md. Mar. 23, 2011) ("the 25 percent fee sought, which creates a negative lodestar multiplier of 0.87, falls well within the range of a reasonable fee").

Although the lodestar multiplier here is "negative," "[d]istrict courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2-3 times lodestar multipliers." *Genworth*, 210 F. Supp. 3d at 845 & n.5 (citing cases approving lodestar multipliers of 2.6x to 2.9x).[13]

Further, as detailed in the Joint Declaration, the number of hours spent by Plaintiffs' Counsel was reasonable given their extensive investigation, aggressive discovery efforts and notable victories in overcoming Defendants' motions to dismiss, prevailing on Plaintiffs' motions to compel and achieving class certification. The complexity of the legal issues involved, and the intensity and skill of Defendants' Counsel also justify the number of hours spent by Plaintiffs' Counsel. Finally, Plaintiffs' Counsel anticipate expending additional time in connection with administering the Settlement, for which Plaintiffs' Counsel will not seek additional compensation.

Moreover, Plaintiffs' Counsel's hourly rates are "within the range of reasonableness for PSLRA cases, where the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials." *MicroStrategy*, 172 F. Supp. 2d at 788. The hourly rates of Plaintiffs' Counsel are based on periodic analyses of rates used by firms performing

---

[13]   *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006) (approving a 2.6 times lodestar multiplier); *MicroStrategy*, 172 F. Supp. 2d at 787-88 (approving a 2.6 times lodestar multiplier); *see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").

comparable work on both the plaintiffs and defense side. *See* Robbins Geller Fee Decl., ¶4, Ex. 5; Labaton Fee Decl., ¶4, Ex. 6; Cohen Milstein, ¶4, Ex. 7.[14] Considering the several factors discussed above, including the result achieved, the complexity and risk of the Action, and the skill and experience of counsel, Plaintiffs' Counsel's rates are reasonable and appropriate. A lodestar cross-check confirms the reasonableness of the requested fee.

For all the foregoing reasons, it is respectfully submitted that an award of the requested 25% fee would be reasonable under the circumstances of this case.

## III.   CLASS COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES AND CHARGES IS REASONABLE

Class Counsel also request an award of reasonable and necessary litigation expenses and charges incurred to prosecute this Action. Since the inception of the case, Plaintiffs' Counsel have incurred $1,241,263.63 in expenses and charges.[15]

"'It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award.'" *Singleton*,

---

[14]   Class Counsel recognize that in some instances, these rates may be higher than the prevailing rates in Richmond, Virginia. "When fees are awarded based on the lodestar, not as a comparison, a prevailing plaintiff may justify an award of extra-community hourly market rates if 'the complexity and specialized nature of the case . . . mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonably in making the choice.'" *Seaman*, 2019 WL 4674758, at *5. While there are experienced securities class action practitioners in Richmond, there are not many local firms both with the expertise and willingness to dedicate the resources necessary to bring a case of this magnitude on a purely contingent basis. *See id.* ("While antitrust lawyers exist locally, as noted above there are not many firms willing to handle a high-risk matter requiring the resources, time, and skill this case demanded."). Moreover, given that the lodestar multiplier is negative, even if all rates were significantly reduced, the lodestar multiplier would still be well within the acceptable range. *See In re Neustar, Inc. Sec. Litig.*, No. 1:14CV885 (JCC/TRJ), 2015 WL 8484438, at *10 (E.D. Va. Dec. 8, 2015) (noting that although counsel's rates were above local market rates, given the low multiplier "the fee request would remain reasonable if the Court were to discount the total lodestar figure by fifty percent"). Lastly, it is highly likely that Class Counsel's hourly rates compare favorably with those of Defendants' Counsel.

[15]   The total amount of the incurred expenses is far less than the amount stated in the Notice, *i.e.*, that Class Counsel would request up to $1,500,000 in litigation expenses. *See* Joint Decl., Ex. 4 – A, ¶¶4, 38.

- 18 -

976 F. Supp. 2d at 689.  Such costs may include "'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'"  *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).

The amount requested is based on the declarations of Plaintiffs' Counsel.[16]  The expenses/charges are broken down in each declaration by type and amount.  The categories of expenses/charges for which an award is sought include expert costs, electronic discovery costs, travel, photocopying, overnight mail, deposition services and transcripts, and electronic research.[17]  These are precisely the type of expenses routinely charged to hourly clients in non-contingent private litigation.  *See, e.g.*, *Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020) (explaining that "mailing costs, online legal research, long-distance telephone use, expert and mediator fees, travel expenses for mediation and court proceedings, and court filing fees. . . . are 'reasonable out-of-pocket expenses . . . which are normally charged to a fee-paying client, in the course of providing legal services'") (quoting *Singleton*, 976 F. Supp. 2d at 689).

Class Counsel's request for the payment of $1,241,263.63 in expenses/charges from the common fund is reasonable and should be approved.

---

[16]   Robbins Geller Fee Decl., ¶¶5-6, Ex. 5; Labaton Fee Decl., ¶¶5-6, Ex. 6; Cohen Milstein Fee Decl., ¶¶5-6, Ex. 7.

[17]   Class Counsel's expenses include contributions to a common litigation fund, which was used to pay certain common expenses, including, among other things, expert costs, which usually constitute the largest type of expense incurred in securities cases.  These common, litigation fund expenses are detailed in Exhibit E of the Robbins Geller Fee Decl.

## IV.   THE REQUESTED PSLRA AWARDS TO THE CLASS REPRESENTATIVES ARE REASONABLE

Plaintiffs MPERS and WLPF also request approval of awards in the amount of $23,350 and $5,190, respectively, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).

District courts in the Fourth Circuit have approved such awards under 15 U.S.C. §78u-4(a)(4) to compensate institutional class representatives for the "hours of employee-time related to the supervision of this action."  *Genworth*, 210 F. Supp. 3d at 846; *In re Comput. Sci. Corp. Sec. Litig.*, No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436, at *2 (E.D. Va. Sept. 20, 2013) (awarding "[c]lass [r]epresentative reimbursement of its reasonable costs for the time devoted to the matter"); *Sponn v. Emergent Biosolutions, Inc.*, No. 8:16-cv-02625-RWT, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) (same).  Class Representatives request that their application be approved as well.

As set forth in their accompanying declarations, Plaintiffs MPERS and WLPF seek awards of $23,350 and $5,190, respectively, for the time their employees devoted to supervising and participating in the Action.  MPERS Decl., ¶¶8-10; WLPF Decl., ¶¶7-9.  The declarations identify the time spent on activities directly related to representing the Class, including: (a) consulting and corresponding with counsel regarding pleadings, briefs, discovery, court orders, mediations, and other case developments; (b) reviewing significant pleadings and briefs filed in the case and various orders entered by the Court; (c) gathering and producing documents to the Defendants; (d) providing

- 20 -

deposition testimony; and (e) discussing the parameters for an appropriate resolution of the case and ultimately agreeing to the Settlement. *Id.*

Like the expenses in this case, the requested awards of $23,350 for MPERS and $5,190 for WLPF are consistent with cost and expense awards in similar cases. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 846 (awarding $23,128 for time relating to supervision of the action); *Comput. Sci.*, 2013 WL 12155436, at *2 (awarding $28,881 for time and $32,024 for expenses). Plaintiffs MPERS and WLPF respectfully request the awards be approved.

## V.    CONCLUSION

For the reasons discussed above, Class Representatives respectfully request that the Court: (1) award Class Counsel 25% of the Settlement Amount as attorneys' fees, plus accrued interest; (2) order payment of litigation expenses incurred by Plaintiffs' Counsel in the amount of $1,241,263.63, plus accrued interest; and (3) award Plaintiffs MPERS and WLPF awards of $23,350 and $5,190, respectively.

DATED:  October 18, 2021                Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL (VSB No. 15300)
JOSHUA HANDELSMAN (Admitted *pro hac vice*)


                                        */s/ Steven J. Toll*
                                        Steven J. Toll

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
jhandelsman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

- 21 -

ROBBINS GELLER RUDMAN & DOWD LLP
DEBRA J. WYMAN (Admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
ROBERT M. ROTHMAN (Admitted *pro hac vice*)
WILLIAM J. GEDDISH (Admitted *pro hac vice*)
FRANCIS P. KARAM (Admitted *pro hac vice*)
MAGDALENE ECONOMOU (Admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com
wgeddish@rgrdlaw.com
fkaram@rgrdlaw.com
meconomou@rgrdlaw.com

*Co-Lead Counsel for Plaintiff Plumbers and Pipefitters*
*National Pension Fund, Additional Plaintiff Wisconsin*
*Laborers' Pension Fund, and the Class*

LABATON SUCHAROW LLP
JAMES W. JOHNSON (Admitted *pro hac vice*)
MICHAEL H. ROGERS (Admitted *pro hac vice*)
JAMES T. CHRISTIE (Admitted *pro hac vice*)
PHILIP J. LEGGIO (Admitted *pro hac vice*)
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com
pleggio@labaton.com

*Co-Lead Counsel for Plaintiff Public Employees'*
*Retirement System of Mississippi and the Class*

- 22 -

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

_/s/ Steven J. Toll_

Steven J. Toll
VA Bar No. 15300
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005

*Liaison Counsel for Lead Plaintiffs*