UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

(Richmond Division)

| | | |
|---|---|---|
| In re JELD-WEN HOLDING, INC. SECURITIES LITIGATION | ) ) ) | Civil Action No. 3:20-cv-00112-JAG |
| | ) | CLASS ACTION |
| | ) | |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) | |
| | ) | |

**DECLARATION OF ROBERT M. ROTHMAN AND MICHAEL H. ROGERS IN SUPPORT OF (1) CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND (2) CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO CLASS REPRESENTATIVES PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

Robert M. Rothman and Michael H. Rogers, declare as follows pursuant to 28 U.S.C. §1746:

1.      I, Robert Rothman, am a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), and I, Michael H. Rogers, am a partner of the law firm of Labaton Sucharow LLP ("Labaton" and together with Robbins Geller, "Class Counsel").  Labaton, counsel for Court-appointed Class Representatives the Public Employees' Retirement System of Mississippi ("MPERS"), and the Class, and Robbins Geller, counsel for Plumbers and Pipefitters National Pension Fund ("PPNPF") and Wisconsin Laborers' Pension Fund ("WLPF" and together with MPERS and PPNPF, "Class Representatives" or "Plaintiffs"), and the Class in the above-captioned action (the "Action"), submit this Declaration in support of Class Representatives' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Class Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Class Representatives Pursuant to 15 U.S.C. §78u-4(a)(4).[1]  We each have personal knowledge of the matters set forth herein based on our active participation in all material aspects of the prosecution and settlement of this Action.  If called upon, we could and would competently testify that the following facts are true and correct.

I.      **INTRODUCTION AND OVERVIEW**

2.      The Parties have entered into a settlement of the Class's claims alleged in this securities class action against defendants JELD-WEN Holding Inc. ("JELD-WEN" or the "Company"), Mark A. Beck, L. Brooks Mallard, Kirk S. Hachigian, and Gary S. Michel (the "Individual Defendants" and together with JELD-WEN, the "JELD-WEN Defendants"), and Onex

---

[1]      Unless otherwise indicated, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 4, 2021 (the "Stipulation").  *See* ECF No. 270-1.

Corporation ("Onex"), Onex Partners Manager LP, Onex Partners III LP, Onex Partners III GP LP, Onex US Principals LP, Onex Partners III PV LP, Onex Partners III Select LP, Onex BP Co-Invest LP,  Onex Advisor Subco III LLC, Onex American Holdings II LLC, OAH Wind LLC, BP EI LLC and BP EI II LLC (the "Onex Defendants" and together with the JELD-WEN Defendants, "Defendants").

3.      The Settlement is a tremendous result for the Class.  The Stipulation provides for the non-reversionary payment of $40,000,000 in cash (the "Settlement Amount") to the Class in exchange for a release of the Released Claims (as defined in the Stipulation) against the Released Defendant Parties (the "Settlement").  The Settlement is the product of Class Representatives' and Class Counsel's careful analysis and vigorous litigation of the claims, as well as extensive arm's-length settlement negotiations between the parties, which took place during and after a mediation session supervised by an experienced mediator, Robert Meyer, Esq. of JAMS.

4.      The benefit to the Class must be weighed against the significant chance that it might obtain a much smaller recovery or none at all after months of protracted litigation followed by years of appellate review.  If at any stage of the Action Defendants were ultimately to prevail on their various arguments concerning falsity, scienter, loss causation, and damages, the Class would have been left with little or no recovery.  Based on the analysis of Class Representatives' damages expert, the Settlement Amount represents a recovery in the range of approximately 21%-33% of the Class's estimate of reasonably recoverable damages, assuming Plaintiffs were able to establish liability, or more if any of Defendants' arguments regarding damages had been successful, again assuming Plaintiffs were able to establish liability.  In sum, the Settlement represents a substantial percentage of damages and is an exceptional recovery in light of the significant risks involved in continued litigation.

4834-5117-4394.v5

5.      As detailed herein, the Settlement is the product of a comprehensive investigation, detailed analysis, and extensive arm's-length negotiations by experienced counsel, which involved the assistance of an experienced mediator.   Class Counsel, working closely with Class Representatives, negotiated the Settlement with a thorough understanding of the strengths and weaknesses of the claims asserted against each of the Defendants.  This understanding was based on Class Counsel's vigorous efforts, which included analyzing: (i) documents filed with the U.S. Securities and Exchange Commission ("SEC"); (ii) other publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company and the allegedly anticompetitive conduct; (v) orders and other case documents from the Antitrust Case and *Steves* Litigation; (vi) approximately 1,800,000 pages of documents produced by Defendants during discovery and approximately 1,500,000 pages of documents produced by third-parties; and (vii) the applicable law governing the claims and potential defenses.  Additionally, Class Counsel identified approximately 120 former JELD-WEN employees and other persons believed to have relevant knowledge, contacted 93, and interviewed 34 of them.  Class Counsel included six of these individuals in the Complaint as confidential witnesses.

6.      In addition to their comprehensive investigation, Class Counsel drafted a detailed amended complaint, successfully opposed Defendants' motions to dismiss, achieved certification of the Class, took or defended over 31 depositions, including the depositions of Plaintiffs, Plaintiffs' investment managers, current and former JELD-WEN and Onex employees, the Individual Defendants, and five experts, and exchanged nine expert reports.  In advance of mediation, Plaintiffs provided detailed mediation statements and exhibits to the mediator, which addressed issues of both liability and damages.  As a result of these efforts, Class Counsel and

- 3 -

Plaintiffs were fully informed regarding the strengths and weaknesses of the case against each of the Defendants before agreeing to the Settlement.

7.      In addition, the risks in this case were palpable.  Plaintiffs faced serious risks with respect to proving falsity, scienter, loss causation, or damages.  Additionally, Plaintiffs faced the risk that they would lose Defendants' Fourth Circuit appeal regarding class certification.  Accordingly, while Class Counsel believe that the Class's claims are strong, there was a significant chance that one or more of Defendants' defenses may have ultimately proved insurmountable – and the Class may have ended up with little or no recovery.  The significance of these risks was heightened by the prospect of years of protracted litigation through costly dispositive motion practice, a trial, and lengthy appeals, which the Court described at the hearing to consider Class Representatives' motion for preliminary approval of the Settlement as a likely "Bataan Death March."  The Settlement avoids these and other risks while providing a substantial and immediate monetary benefit to the Class.

8.      The other terms of the Settlement are the product of careful negotiations between the parties and are set forth in the Stipulation.  For all of the reasons stated herein, Class Counsel believe that the Settlement is fair, reasonable and adequate, is in the best interests of the Class, and should be approved.  The Settlement has the full support of the Class Representatives.  *See* Declaration of Ta'Shia S. Gordon on Behalf of MPERS ("MPERS Decl."), Exhibit 1 hereto, Declaration of John J. Schmitt on Behalf of WLPF ("WLPF Decl."), Exhibit 2 hereto, and Declaration of Toni Inscoe on Behalf of PPNPF ("PPNPF Decl."), Exhibit 3 hereto.

9.      Class Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, plus their litigation expenses of $1,241,263.63, with interest thereon earned at the same rate as the Settlement Fund.  The fee request is pursuant to fee agreements with Class Representatives, and has their full support.  As discussed below (*see* ¶¶92-94), the requested fee amounts to a 0.94

- 4 -

multiple of Plaintiffs' Counsel's collective "lodestar" (*i.e.*, Plaintiffs' Counsel's hourly rates multiplied by the hours spent on prosecuting and settling this Action).[2]

10.     Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement dated July 28, 2021 (ECF No. 286) (the "Preliminary Approval Order"), the Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Notice") and the Proof of Claim and Release form ("Proof of Claim," and together with the Notice, the "Notice Packet") were mailed to all Class Members who could be identified with reasonable effort, and summary notice of the proposed Settlement was published in *The Wall Street Journal* and transmitted over the *PR Newswire*.

11.     The Notice advised all recipients of, among other things: (i) the terms of the Settlement; (ii) the definition of the Class; (iii) their right to exclude themselves from the Class; (iv) their right to object to any aspect of the Settlement, including the Plan of Allocation and Class Counsel's request for attorneys' fees and expenses; and (v) the procedures and deadline for submitting a Proof of Claim in order to be eligible for a payment from the proceeds of the Settlement.

12.     The Court-ordered deadline for filing objections to the Settlement or requesting exclusion from the Class is November 1, 2021.  To date, no objections to any aspect of the Settlement have been filed and only one request for exclusion has been received.  If any objections or additional requests for exclusion are received, Class Representatives will address them in a reply submission to be filed on or before November 15, 2021.

13.     Epiq Class Action & Claims Solutions, Inc. ("Epiq"), which has been retained by Class Counsel and approved by the Court as Claims Administrator, has advised that as of October

---

[2] Plaintiffs' Counsel are Class Counsel, Cohen Milstein Sellers & Toll LLP, O'Donoghue & O'Donoghue LLP, Phelan Petty, and Neville Law LLC.

13, 2021, a total of 30,561 copies of the Notice Packet have been mailed to potential Class Members and nominees. *See* Declaration of Matthew Mulvihill Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Mailing Decl."), at ¶11, attached hereto as Exhibit 4. Additionally, the Notice Packet, Stipulation, and Preliminary Approval Order have been posted on the website established for the Settlement: www.jeld-wensecuritiessettlement.com.

## II.   THE NATURE AND HISTORY OF THE LITIGATION

### A.   The Commencement of the Action and Appointment of Lead Plaintiffs and Lead Counsel

14.     On February 19, 2020, Cambridge Retirement System initiated this Action in the United States District Court for the Eastern District of Virginia, Richmond Division, as a class action arising under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5. ECF No. 1.

15.     In an Order filed May 8, 2020, following briefing, the Court appointed MPERS and PPNPF as Lead Plaintiffs and approved their selection of Robbins Geller and Labaton as Lead Counsel. ECF No. 57. Thereafter, the parties agreed to a briefing schedule for the filing of an amended complaint and responses thereto, which the Court approved on May 22, 2020. *See* ECF Nos. 65 and 66.

16.     On June 22, 2020, MPERS, PPNPF and WLPF filed an Amended Complaint (the "Complaint") on behalf of themselves and all persons and entities, other than Defendants named therein and other excluded individuals and entities, who purchased the publicly traded common stock of JELD-WEN during the period from January 26, 2017 through October 15, 2018, inclusive (the "Class Period"). ECF No. 73.

**B.**   **The Complaint and a Summary of the Class's Allegations**

17.   The Complaint asserts claims against the JELD-WEN Defendants under §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against the Individual Defendants and the Onex Defendants under §20(a) of the Exchange Act.  Plaintiffs allege that Defendants made materially false and misleading statements and omissions to investors concerning JELD-WEN's allegedly anticompetitive conduct, financial results in the doorskins and interior molded door market and the merit of a lawsuit filed against JELD-WEN by an interior door manufacturer challenging its pricing.  The Complaint further alleges that the price of JELD-WEN publicly traded common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and material omissions, and declined when the truth was allegedly revealed.

18.    Plaintiffs contend that the truth behind JELD-WEN's financial success began to emerge on August 8, 2018, when an analyst privately distributed a research note that summarized a hearing held in the interior door manufacturer's litigation, which provided previously unknown details about Defendants' alleged conduct and the ramifications therefrom.  Following this report, JELD-WEN's stock price fell 10.48%.  On October 5, 2018, Judge Payne, who presided over the interior door manufacturer's litigation, issued an order which, among other things outlined certain anticompetitive conduct.  On October 15, 2018, JELD-WEN announced that it would take a litigation contingency charge of $76.5 million related to the interior door manufacturer's litigation and that it was lowering its profitability guidance, resulting in an additional 19% stock drop.

19.   Defendants continue to deny any and all allegations of wrongdoing, and deny that they have committed any act or omission giving rise to any liability or violation of law.

**C.**   **The Motion to Dismiss**

20.   On July 29, 2020, the JELD-WEN Defendants and the Onex Defendants filed separate motions to dismiss the Complaint.  ECF Nos. 75-79.  The JELD-WEN Defendants argued,

- 7 -

among other things, that the Complaint failed to plead: (i) falsity because the statements regarding pricing, competitiveness and quality, were not false and statements regarding the *Steves* Litigation were inactionable opinion statements; (ii) scienter; and (iii) loss causation. The JELD-WEN Defendants also argued that Plaintiffs' claims are barred by the statute of limitations. The Onex Defendants' motion to dismiss alleged that the Complaint failed to plead §20(a) control person liability against the Onex Defendants.

21.     On August 28, 2020, Plaintiffs filed and served their Omnibus Memorandum of Law in Opposition to the motions to dismiss. ECF Nos. 86-87. Plaintiffs argued that the Complaint pled material omissions because Defendants' statements regarding competition and pricing were misleading since they failed to disclose JELD-WEN's alleged anticompetitive conduct. The opposition also explained that the Complaint pled a strong inference of scienter by alleging that the JELD-WEN Defendants pursued an intentional scheme and that the Individual Defendants made many misleading statements regarding JELD-WEN's pricing strategies and downplayed the outcome of the *Steves* Litigation. Plaintiffs also argued that they sufficiently pled loss causation and control person claims against the Onex Defendants and Individual Defendants.

22.     On September 11, 2020, Defendants filed and served their reply papers. ECF Nos. 90-91.

23.     Oral argument on the motions to dismiss was held on September 25, 2020, and on October 26, 2020, the Court entered its Opinion and Order denying Defendants' motions to dismiss in full. ECF No. 103. The Court explained that Plaintiffs adequately pled that JELD-WEN made a material misrepresentation or omission by alleging that it failed to disclose its alleged anticompetitive behavior. ECF No. 103 at 7. The Court also found that JELD-WEN's arguments regarding falsity failed with respect to statements about pricing strategy and competitiveness because Defendants had an obligation to disclose that the Company's alleged anticompetitive

- 8 -

behavior was what artificially inflated prices.  *Id.* at 9-10.   The Court held that Plaintiffs sufficiently pled scienter by specifically identifying false or misleading statements made by Defendants, alleged that Defendants made those statements to bolster JELD-WEN's stock price to mislead investors, and that the Individual Defendants knew about these statements' false or misleading nature because of their positions and because they implemented and oversaw the alleged anticompetitive scheme.  *Id.* at 12.  Finally, the Court rejected Defendants' arguments concerning loss causation, statute of limitations and §20(a).  *Id.* at 20, 22, 26.

24.     On November 5, 2020, Defendants filed their answers to the Complaint.  ECF Nos. 106-107.

**D.     Fact Discovery**

25.     Following the Court's Order denying Defendants' motion to dismiss, Class Counsel immediately began discovery efforts that were completed by the time the parties resolved the Action.

26.     On September 25, 2020, the Court entered an Initial Pretrial Order setting dates for fact discovery deadlines, expert discovery deadlines and trial.  ECF No. 93.

27.     On November 12, 2020, the Court entered a scheduling order amending its Initial Pretrial Order ("Amended Scheduling Order").  ECF No. 112.  The Amended Scheduling Order set a July 12, 2021 date for trial, eight months following the entry of the Order.  *See id*.

28.     Following the Court's Amended Scheduling Order, Plaintiffs, aware of the accelerated schedule set by the Court, conducted extensive formal discovery into JELD-WEN, its statements concerning pricing, quality and the result of the *Steves* Litigation, as well as the Company's alleged anticompetitive conduct, ownership and management, and interior molded doorskin business.

29.     To further build their case, Plaintiffs served multiple sets of discovery requests on Defendants.  Specifically, Plaintiffs' requests focused on Defendants' alleged anticompetitive conduct, JELD-WEN's long term supply agreements, and certain pricing strategies.

30.     Plaintiffs served document requests on the JELD-WEN Defendants on October 29, 2020, November 13, 2020, and on February 25, 2021.  Additionally, Plaintiffs served document requests on the Onex Defendants on December 15, 2020.  In response, Defendants made 26 productions of documents that totaled approximately 1,800,000 pages of documents, which Class Counsel carefully analyzed.

31.     Plaintiffs also subpoenaed documents from various third parties, including Masonite Corporation, T.M. Cobb, Co. (f/k/a Haley Bros., Inc.), Lynden Door, Inc., Steves and Sons, Inc., Woodgrain Millwork Transportation, Inc., AT&T Wireless, KKR & Co. Inc., Edward Steves and Sam Steves in an effort to further develop their claims against Defendants.  These third parties produced over 1,500,000 pages of documents during the course of fact discovery, which Class Counsel also analyzed.

32.     To facilitate the cost and time efficient nature of the document review process, all of the documents were placed in an electronic database, known as Relativity, maintained in-house by Robbins Geller, for significantly less than an outside vendor would charge.  This database allowed Class Counsel to more efficiently search for and code documents through the use of various categories, such as author, custodian, recipient, type of document, date, and Bates number.

33.     Plaintiffs also diligently responded to Defendants' numerous requests for documents and interrogatories and provided supplemental responses when necessary.

34.     On January 20, 2021, the parties jointly moved to amend the Initial Pretrial Order concerning the deposition limit to increase the number of depositions each side could take.  ECF No. 126.  The Court granted the parties' motion on January 25, 2021.  ECF No. 129.

35. To further develop their case, the parties took 31 depositions of the following individuals, entities and experts with relevant information:

(i)    John Schmitt from WLPF on January 8, 2021;

(ii)    Toni Inscoe from PPNPF on January 19, 2021;

(iii)    Robert Clark and Ta'Shia Gordon from MPERS on January 22, 2021;

(iv)    Jeffrey Paulis from Segall Bryant & Hamill (WLPF's investment manager) on January 26, 2021;

(v)    Nathan Kieffer from Wellington Management Company, LLP (PPNPF and MPERS's investment manager) on January 27, 2021;

(vi)    Steven P. Feinstein (Plaintiffs' loss causation and damages expert) on January 30, 2021 and February 22, 2021;

(vii)    Jason S. Flemmons (Defendants' accounting expert) on February 5, 2021;

(viii)    John H. Johnson, IV (Defendants' antitrust expert) on February 17, 2021;

(ix)    Christopher Mercier (former JELD-WEN employee) on February 19, 2021;

(x)    Daniel R. Fischel (Defendants' economic expert) on February 26, 2021;

(xi)    Russell Lamb (Plaintiffs' antitrust expert) on February 26, 2021;

(xii)    Stephen Fancher (former JELD-WEN employee) on March 2, 2021;

(xiii)    Jennifer Raimey (former JELD-WEN employee) on March 4, 2021;

(xiv)    Tim Kirk (former JELD-WEN employee) on March 9, 2021;

(xv)    John Linker (CFO and former Head of Investor Relations at JELD-WEN) on March 9, 2021 and March 29, 2021;

(xvi)    Wyatt H. McNairy, III (former JELD-WEN employee) on March 10, 2021;

(xvii)    Scott Vining (Chief Accounting Officer and SVP of Finance at JELD-WEN) on March 11, 2021;

(xviii)    Curtis Hicks (SAP Implementation Manager at JELD-WEN) on March 12, 2021;

(xix)    Laura Branham (former JELD-WEN employee) on March 15, 2021;

(xx)     Robert Merrill (former EVP and Chief Marketing Officer at JELD-WEN) on March 17, 2021;

(xxi)    Matt Ross (Chairman of the Board of Directors at JELD-WEN and Managing Director at Onex) on March 18, 2021;

(xxii)   John Monfore (former JELD-WEN employee) on March 19, 2021;

(xxiii)  James U. Morrison, III (former Exec. VP and COO of JELD-WEN) on March 19, 2021;

(xxiv)  L. Brooks Mallard (Individual Defendant and former Exec. VP and CFO of JELD-WEN) on March 22, 2021;

(xxv)   Gary S. Michel (Individual Defendant and President and CEO of JELD-WEN) on March 23, 2021;

(xxvi)  Katrina McLaughlin Beat (former JELD-WEN employee) on March 24, 2021;

(xxvii) Mark A. Beck (Individual Defendant and former President and CEO of JELD-WEN) on March 26, 2021; and

(xxviii) Kirk S. Hachigian (Individual Defendant and former CEO of JELD-WEN) on March 26, 2021.

36.     In preparing for these depositions, Class Counsel undertook extensive efforts by carefully reviewing documents produced by Defendants and third-parties and prior testimony given by witnesses to analyze the complex factual and legal issues that were integral to Plaintiffs' claims and Defendants' potential defenses.  The depositions, and the documents discussed therein, provided Class Counsel with a solid foundation from which to understand the risks and strengths of the case.

37.     In addition to reviewing documents produced by Defendants and third-parties, Class Counsel vigorously advocated for the Class by litigating and requesting Court intervention on various discovery issues.  For example, on March 15, 2021, Class Counsel filed a motion challenging, among other things, Defendants' privilege assertions.  ECF Nos. 183-185. Defendants, following the Court's Order dated March 16, 2021 (ECF No. 186), filed an opposition on March 16, 2021.  ECF No. 187.  The Court heard the motion on March 17, 2021, and in an

4834-5117-4394.v5

Order, dated the same day, granted Plaintiffs' motion in part finding that certain exhibits attached to Plaintiffs' motion were not privileged and directing Defendants to produce a privilege log.  ECF No. 190.

38.     On March 29, 2021, Plaintiffs again moved to compel the production of additional documents withheld by the JELD-WEN Defendants.  ECF Nos. 238-242.  Defendants filed their opposition to Plaintiffs' motion on April 6, 2021 (ECF No. 246), and Plaintiffs filed their reply on April 9, 2021.  ECF No. 262.  Following Plaintiffs' withdrawal of the motion, given the mediation efforts, the Court denied the motion without prejudice as moot.  ECF No. 263.

39.     By vigorously pursuing discovery, Class Counsel adduced the evidence necessary to establish, they believe, the elements of each of Plaintiffs' claims and fully evaluate a negotiated resolution.

### E.     Expert Discovery

40.     The parties undertook considerable expert discovery throughout the Action.

41.     On January 4, 2021, Plaintiffs designated and served expert reports by Steven P. Feinstein, Ph.D., CFA and Russell L. Lamb, Ph.D.  Dr. Feinstein was retained to provide an expert opinion on market efficiency, loss causation and damages, and Dr. Lamb was retained to provide an expert opinion on JELD-WEN's alleged anticompetitive conduct.

42.     Dr. Feinstein's 121-page report (plus exhibits) discussed market efficiency, loss causation and damages.  In his report, Dr. Feinstein analyzed both the *Cammer* and *Krogman* factors, which courts have relied upon as dispositive indicators of market efficiency, and concluded that JELD-WEN common stock traded in an efficient market over the course of the Class Period. Additionally, Dr. Feinstein determined that the alleged misrepresentations and omissions alleged by Plaintiffs, including the allegations that JELD-WEN concealed from investors that it had engaged in anticompetitive behavior, and that the conduct was instrumental in the Company

- 13 -

achieving high profit margins, and caused the price of JELD-WEN stock to be artificially inflated over the course of the Class Period.  He opined that the Company misled the market by denying the validity of the antitrust allegations against it even after a jury had rendered a verdict against JELD-WEN.  Dr. Feinstein concluded that the Company's corrective disclosures following the jury verdict in the antitrust litigation dissipated the artificial inflation and caused JELD-WEN stock price to decline.

43.    In Dr. Lamb's 62-page report (plus exhibits) he opined that JELD-WEN's acquisition of CMI increased its market power in the upstream molded doorskins and downstream interior molded door markets, which it was able to allegedly leverage to control pricing.

44.    Following the submission of Plaintiffs' experts' reports, Defendants deposed Dr. Feinstein on January 30, 2021 and February 22, 2021, and Dr. Lamb on February 26, 2021.  Class Counsel worked extensively with both experts to prepare them for their depositions.  Class Counsel prepared their experts for Defendants' anticipated attacks on each expert's qualifications to provide expert testimony under *Daubert* and Federal Rule of Evidence Rule 701.  Class Counsel also prepared for potential attacks on Dr. Feinstein's conclusions concerning market efficiency, his findings that JELD-WEN's allegedly misleading statements and omissions regarding its allegedly anticompetitive conduct caused the decline in JELD-WEN stock price, and his methodology for calculating damaged shares and damages per share.  Regarding Dr. Lamb's deposition, Class Counsel prepared for any attempts to undermine his findings regarding JELD-WEN's allegedly anticompetitive conduct.

45.    On February 1, 2021, Defendants designated and served expert reports by Daniel R. Fischel, Jason S. Flemmons, and John H. Johnson, IV.  Mr. Fischel prepared a 30-page report (plus exhibits) and Mr. Flemmons prepared a 34-page report (plus exhibits) in opposition to Dr.

Feinstein's report.  Mr. Johnson prepared a 53-page report (plus exhibits) in opposition to Dr. Lamb's report.

46.     Plaintiffs took Mr. Flemmons' deposition on February 5, 2021, Mr. Johnson's deposition on February 17, 2021, and Mr. Fischel's deposition on February 26, 2021.

47.     On February 15, 2021, Drs. Feinstein and Lamb submitted their reply expert reports.

48.     On March 19, 2021, Dr. Feinstein submitted a supplemental expert report on market efficiency, loss causation, and damages.

49.     The parties' expert reports demonstrated a significant disagreement between them as to liability, damages, loss causation and JELD-WEN's alleged anticompetitive behavior.

50.     Plaintiffs also continued to consult with their experts in anticipation of the mediation process.

51.     Additionally, prior to, and during the mediation process, the parties were engaged in *Daubert* briefing.  On March 5, 2021, the parties filed their opening briefs.  Plaintiffs moved to exclude the testimony and opinions of Mr. Fischel and Mr. Johnson.  ECF Nos. 159-168. Defendants moved to exclude the testimony and opinions of Dr. Feinstein and Dr. Lamb.  ECF Nos. 169-176.  The parties filed oppositions on March 19, 2021 (ECF Nos. 193-210) and replies on March 26, 2021 (ECF Nos. 218-232).

52.     Defendants also moved to strike Dr. Feinstein's supplemental report on March 25, 2021.  ECF Nos. 216-217.  Plaintiffs opposed this motion on April 6, 2021.  ECF Nos. 250-253. Defendants filed their reply on April 9, 2021.  ECF Nos. 261-262.

53.     The parties were prepared to argue these motions before the Court on April 22, 2021, two days after the mediation.

### F.    Plaintiffs' Motion to Certify the Class

54.    On January 19, 2021, Plaintiffs filed a Motion for Class Certification and Appointment of Class Representatives and Class Counsel.  ECF Nos. 120-125.  In support of their motion, Plaintiffs submitted a report by Dr. Feinstein on market efficiency, loss causation, and damages.  ECF No. 122-1.  Dr. Feinstein's report concluded that the market for JELD-WEN common stock was efficient during the Class Period and that the alleged misrepresentations and omissions caused the price of the JELD-WEN stock to be artificially inflated over the Class Period.

55.    Defendants opposed the motion, and moved to seal their opposition, on February 2, 2021, arguing, among other things, that Plaintiffs had no common proof of damages and failed to establish a common method of proving reliance.  ECF Nos. 132-136.  Defendants also submitted a report by Mr. Flemmons in opposition to Dr. Feinstein's report.  ECF No. 134-1.

56.    Plaintiffs filed their reply, and motion to seal that reply, on February 8, 2021.  ECF Nos. 138-142.  In addition to their reply memorandum, Plaintiffs submitted a declaration by Dr. Feinstein which rebutted Mr. Flemmons' assertions and further explained his analysis and conclusions.  ECF No. 142-2.

57.    The Court held oral argument on Plaintiffs' motion for class certification on March 4, 2021.  ECF No. 158.

58.    On March 29, 2021, the Court granted Plaintiffs' motion for class certification, appointed MPERS, PPNPF, and WLPF as Class Representatives; Robbins Geller and Labaton as Class Counsel and Cohen Milstein Sellers & Toll PLLC as liaison Counsel.  ECF No. 233.

59.    On April 12, 2021, the JELD-WEN Defendants filed a petition with the Fourth Circuit, pursuant to Federal Rule of Civil Procedure 23(f), seeking leave to appeal the Court's certification of the Class.  On April 23, 2021, Class Representatives filed their opposition to that petition.

### G.    The Mediation

60.    The Settlement is the product of intense and hard-fought negotiations, which were conducted at arm's-length between experienced counsel and supervised by Robert Meyer, Esq. of JAMS, who has extensive experience in mediating securities class actions.

61.    Prior to the mediation, on April 17, 2021, the parties submitted detailed mediation statements to Mr. Meyer explaining their positions on JELD-WEN's allegedly false and misleading statements and issues concerning loss causation and damages.

62.    The parties engaged in a full-day mediation session on April 20, 2021.  During the course of that 14-hour mediation, Class Counsel vigorously advocated Class Representatives' positions, strengthened by the facts learned through discovery.  Class Counsel also explained how they would establish Class Representatives' case, supported by documents and testimony obtained through discovery, particularly with respect to pricing, competition, quality, and the *Steves* Litigation.  Class Counsel also provided extensive information to Mr. Meyer concerning their theories of damages.

63.    Following many discussions with Mr. Meyer throughout the day, and as a result of offers and counter-offers, the parties ultimately agreed to settle the litigation for $40 million, subject to the negotiation of a formal settlement agreement.

### H.    Preliminary Approval of the Settlement

64.    On June 4, 2021, Class Representatives filed their motion for preliminary approval of the Settlement.  In connection therewith, Class Representatives requested that the Court approve the proposed forms of notice, which, among other things, described the terms of the Settlement, advised Class Members of their rights, set forth the proposed Plan of Allocation of Settlement proceeds, the maximum amount of attorneys' fees and the expenses that Class Counsel would request, and the procedure for submitting Proofs of Claim.  ECF Nos. 268-270.

65.     On July 28, 2021, the Court preliminarily approved the terms of the Settlement, and scheduled a settlement hearing for final approval on November 22, 2021, at 1:30 p.m. ECF No. 286.

**I.     The Factors Affecting Settlement Weigh in Favor of Approval of the Settlement**

66.     The Settlement avoids the hurdles Class Representatives would have to clear, not only with respect to proving the full amount of the Class's damages but liability as well, and avoids the significant costs associated with further litigation of this complex securities action, particularly summary judgment and trial.  In view of the significant risks and additional time and expense involved in continuing to litigate this Action, we respectfully submit that the Settlement is fair, reasonable and adequate.

67.     In light of Class Representatives' extensive discovery efforts, the advice of their experts, and the discussions that occurred during the mediation, Class Counsel were able to identify the issues that are critical to the outcome of this case.  Class Counsel have considered the risks of continued litigation, the likelihood of getting past summary judgment and, if successful, the risk, expense, and length of time to prosecute the litigation through trial and appeals.  Class Counsel have also considered the substantial monetary benefit provided by the Settlement in light of such risks.  Class Representatives were participants in this assessment and were consulted, and kept apprised, concerning the negotiations.

68.     Class Counsel have been, and currently are actively engaged in complex federal civil litigation, particularly the litigation of securities class actions.  Our reputations as attorneys who are willing to zealously carry a meritorious case through trial and appeals gave us a strong negotiating position, even under the difficult and challenging circumstances presented here, including the impending summary judgment motion and ongoing expert discovery challenges and the uncertainty and expense of a trial.  Class Counsel and Class Representatives also faced the

- 18 -

risks that Defendants would succeed on their various arguments regarding falsity, scienter, loss causation, and damages, which could have completely eliminated or significantly diminished any recovery for the Class.

69.     Although we believe that Class Representatives would have ultimately prevailed on the merits at trial, Class Counsel understand that a number of risks made the outcome of this litigation uncertain.

70.     One of Defendants' main liability defenses was their argument that Class Representatives could not prove falsity because the alleged misstatements were true.  In particular, Defendants argued that JELD-WEN's statements throughout the Class Period accurately described the Company's pricing strategy and its competitors in both the doors and windows markets. Defendants would also likely argue that the market understood that Defendants' statements concerning the Company's pricing strategy and competitiveness truthfully described JELD-WEN's high-level approach to pricing and the market as a whole.  Defendants also would have likely continued to argue that the allegedly omitted information was fully disclosed when the jury in the *Steves* Litigation rendered a verdict against JELD-WEN or, at the very latest, when the court in that action issued the divestiture order.  Additionally, Defendants argued that their statements regarding the various rulings in the *Steves* Litigation were honestly held opinions about ongoing litigation that was still pending appeal and, therefore, were inactionable.

71.     Defendants also argued that Class Representatives would not be able to prove scienter because they would be unable to show that anyone at JELD-WEN thought they were doing anything wrong.  On the contrary, Defendants claim that deposition and document discovery had shown that the Individual Defendants did not believe that JELD-WEN had engaged in the antitrust violations alleged in the *Steves* Litigation.

- 19 -

72.     Even if Class Representatives succeeded in overcoming these arguments to establish liability, a significant risk of further litigation was Defendants' arguments and defenses relating to loss causation and damages.  In particular, Defendants argued that Class Representatives cannot prove damages because: (i) there was no statistically significant stock drop following either the jury verdict or Judge Payne's Divestiture Decision in the *Steves* Litigation, which, among other things, outlined JELD-WEN's anticompetitive conduct; (ii) the litigation contingency charge announcement was not a corrective disclosure; and (iii) the October 16, 2018 stock decline was caused by negative third quarter earnings news concerning foreign and other divisions of the Company, and downgraded FY18 guidance, totally unrelated to any alleged anticompetitive activities.

73.     Further heightening the risks of reduced damages is the fact that at the time of mediation, the parties were actively engaged in *Daubert* briefing regarding their individual damages and antitrust experts.  On March 5, 2021, Plaintiffs moved to exclude the testimony and opinions of Daniel R. Fischel (ECF Nos. 159-161) and sections of John H. Johnson's expert report (ECF Nos. 165-168).  On the same date, Defendants moved to exclude the reports and testimony of Plaintiffs' experts Steven Feinstein and Russel Lamb (ECF Nos. 169-171,174).  The parties were prepared to argue these issues before the Court on April 22, 2021, two days after the mediation.  The risk of exclusion or limitation of any of Plaintiffs' experts – specifically the opinions and damages calculations of Plaintiffs' damages expert, Dr. Feinstein – could have significantly impacted potential recovery to the Class.

74.     For example, if Defendants were successful in striking Dr. Feinstein's supplemental report, based on the arguments that adding an additional corrective disclosure of August 8, 2018 (when an analyst issued a research note summarizing a hearing in the *Steves* Litigation) was improper and that the disclosure merely reports the analyst's conjecture about how the judge might

- 20 -

rule and was not corrective of any alleged misrepresentation, the August 8 disclosure would not have been presented at trial.  The loss of the disclosure would reduce likely recoverable aggregate damages from approximately $189.5 million to approximately $120 million.   Additionally, damages would have been reduced to between approximately $102.7 and $33.2 million if Defendants succeeded in their arguments that the Company's October 15 announcement lowering its financial outlook, and the reason for it, were unrelated to any alleged misstatements or omissions and that any actionable information was already disclosed to the market following the jury's verdict in the interior door manufacturer's litigation.  (Damages could have been reduced even further depending on whether the impact of the August 8, 2018 corrective disclosure should be included in the damages analysis.)

75.     Further, although Class Representatives firmly believe that the documentary and testimonial evidence they would offer at summary judgment and trial fully substantiates their claims, there is no way of predicting with certainty which testimony, inferences, or interpretations the Court or jury would accept.

76.     Lastly, Defendants were unlikely to abandon their challenges to the Court's certification of the Class and their April 12, 2021 petition to the United States Court of Appeals for the Fourth Circuit, pursuant to Federal Rule of Civil Procedure 23(f), seeking leave to appeal the certification order, which was a live issue at the time of settlement.  In connection with the petition, Defendants challenged the Court's finding that Plaintiffs had sufficiently established: (1) market efficiency; and (2) a common class-wide theory of damages.  Specifically, with respect to market efficiency, Defendants argued that no new information was disclosed on October 15, 2018 when JELD-WEN disclosed that it was booking a litigation charge in connection with the *Steves* litigation.  Defendants also argued that Plaintiffs failed to establish that the market was efficient during and immediately following the IPO.  With respect to class-wide damages, Defendants

argued that Plaintiffs' theory of damages failed to match its theory of liability.  Regardless of whether the petition was granted, Defendants were likely to have continued to challenge class certification throughout trial and in a post-trial appeal.

77.    While Class Representatives remain confident in their ability to prove their claims and successfully counter all of Defendants' arguments, when weighed against the certain and substantial benefits of settlement, the risks of losing at trial or having the Action dismissed or materially narrowed prior to trial indicate that the Settlement is in the best interests of the Class.  There was certainly risk that Class Representatives would not prevail and the Class could recover nothing.  Class Counsel submit that these factors militate strongly in favor of the Settlement.

78.    Further, given the anticipated duration and expense of additional litigation, substantial resources would be expended to proceed through trial, as well as a likely post-trial appellate process, all without any guarantee of a better resolution for the Class.  These expenditures would result in a considerable expense to be borne by the Class out of any potential recovery at trial.  Securities class actions are inherently complex, time consuming, and expensive, which is magnified when such cases proceed through trial.  The Settlement avoids these expenditures and provides an immediate recovery for the Class.  Therefore, this factor favors the Settlement.

79.    The experience of Class Counsel also favors the Settlement.  Robbins Geller and Labaton, as well as counsel for Defendants, are nationally recognized for their experience and expertise in complex class action and securities litigation.  Included with Class Counsel's individual firm fee declarations are Robbins Geller's and Labaton's firm résumés.  *See* Fee Decl. of Robert M. Rothman on Behalf of Robbins Geller ("Robbins Geller Fee Decl.") and Fee Decl. of Michael H. Rogers on Behalf of Labaton ("Labaton Fee Decl."), attached hereto as Exs. 5 & 6. Recommendations from such qualified counsel further support this agreement.

80.     Finally, the lack of opposition to the Settlement also militates in favor of the Settlement.  As outlined below, notice has already been widely disseminated to potential Class Members.  The lack of any objections to the Settlement to date and the minimal requests to opt out of the Class weigh in favor of the Settlement.  Any objections and additional requests to opt out will be presented with Class Representatives' reply papers.

81.     In light of the significant risks of establishing liability and damages, Class Counsel and Class Representatives respectfully submit that the Settlement represents a very favorable result for the Class.  It provides Class Members with a very substantial benefit now, where there is a significant likelihood of less recovery or no recovery at all following trial.

**J.     Mailing and Publication of Notice of Settlement**

82.     The Preliminary Approval Order, among other things, appointed Epiq as the Claims Administrator and directed it to cause the mailing of the Notice Packet to all potential Class Members identifiable with reasonable effort, no later than August 17, 2021.  ECF No. 286, ¶7.

83.     The Preliminary Approval Order also directed Class Counsel to cause the Summary Notice to be published once in the national edition of *The Wall Street Journal* and transmitted over *PR Newswire*, no later than August 31, 2021.  *Id.*, ¶11.

84.     The Mailing Declaration, submitted herewith, states that over 30,500 Notice Packets have been mailed to potential Class Members, banks, brokers and nominees to date, and that the Summary Notice was published on August 31, 2021, in compliance with the provisions of the Preliminary Approval Order.  Mailing Decl., ¶¶11, 14.

85.     To date, no objections to any aspect of the Settlement have been filed and only one request for exclusion has been received.  Mailing Decl., ¶¶19-20.

- 23 -

### III.    THE PLAN OF ALLOCATION

86.    The Plan of Allocation is set forth in the Notice and provides that the Net Settlement Fund will be distributed to members of the Class who timely submit valid Claim Forms that show a "Recognized Claim" according to the Court-approved Plan of Allocation ("Authorized Claimants"). Given the costs of distributing payments, the Net Settlement Fund will be allocated among all Authorized Claimants whose distribution amount is $10.00 or greater.

87.    The Plan of Allocation proposed by Class Representatives, which was prepared with the assistance of Class Representatives' damages expert, is designed to achieve an equitable and rational distribution of the Net Settlement Fund to eligible claimants, and is consistent with Plaintiffs' damages theories. Class Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.

88.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Proof of Claim and all required information no later than November 15, 2021. Claims may be submitted to the Claims Administrator through the mail, online using the case website or, for large investors with thousands of transactions, through email to Epiq's electronic filing team. (Neither the parties nor the Claims Administrator independently have claimants' transactional information.) As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Expenses, and applicable taxes and tax expenses, the Net Settlement Fund will be distributed according to the Court-approved Plan of Allocation.

89.    Epiq, as the Court-approved Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants, as calculated in accordance with the Plan of Allocation. The Plan of Allocation formulas consider

- 24 -

the amount of alleged artificial inflation in the prices of JELD-WEN publicly traded common stock, as estimated by Dr. Feinstein.  The calculations take into account several factors, including when the claimant's common stock was purchased and whether the stock was sold during the Class Period and, if so, when.  Class Representatives' losses will be calculated in the same manner.

90.     After the Effective Date of the Settlement, in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund will be distributed to Authorized Claimants whose distribution amount is $10.00 or more.  After the distribution, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable amount of time from the date of the initial distribution, and after payment of any outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, Epiq will, if feasible, reallocate (which reallocation may occur on multiple occasions) the balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.  Once it is no longer economical to make further distributions, any *de minimis* balance that still remains after re-distribution(s) and after payment of any outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, will be donated to the Virginia Health Care Foundation and Central Virginia Legal Aid Society, or a non-profit and non-sectarian organization chosen by the Court.

91.     To date, there have been no objections to the Plan of Allocation.  The Plan of Allocation is fair and reasonable, and should be approved.

## IV.   ATTORNEYS' FEES AND EXPENSES

92.     Class Counsel seek an award of attorneys' fees of 25% of the Settlement Fund. This percentage is well within the range of, and consistent with, the percentages of the common fund fees awarded to counsel in other comparable securities class actions.  *See* Janeen McIntosh

- 25 -

and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at 1-2 (NERA 2021), attached hereto as Exhibit 9.  Based on the quality of Class Counsel's work and the benefit obtained for Class Members in light of the risks discussed above, it is respectfully submitted that the requested fee is reasonable.

93.     Class Counsel have diligently worked over the past year and a half to develop this case in a well-organized fashion to ensure maximum efficiency and a favorable recovery.  Class Counsel devoted both substantial attorney and financial resources to the case.  In the time they litigated the case, Plaintiffs' Counsel accumulated a lodestar of $10,672,222.25 based on 18,189 hours of work, which is extremely reasonable in light of the length and complexity of this Action. *See* Robbins Geller Fee Decl.; Labaton Fee Decl.; Fee Decl. of Steven J. Toll on Behalf of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein Fee Decl."); Fee Decl. of George W. Neville on Behalf of Neville Law, LLC, attached hereto as Exs. 5 to 8; and Summary of Time and Expenses, attached hereto as Ex. 10.  The requested fee of 25% thus represents a ***negative*** multiplier of 0.94 on Plaintiffs' Counsel's lodestar, which means that the requested fee award is below the lodestar amount.

94.     Courts within this Circuit routinely approve positive multipliers.  *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("The fee awarded in this case, $61,320,000, results in a lodestar multiplier of 1.97.  District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."); *Berry v. Wells Fargo & Co.*, 2020 U.S. Dist. LEXIS 143893, at *39-*40 (D.S.C. July 29, 2020) ("The requested fee for 25% of the settlement fund or $19.75 million which produces a lodestar multiplier of 4.24 – well within the range routinely approved in this circuit."); *In re Massey Energy Co. Sec.*

*Litig.*, No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014) (approving a 2.9 times lodestar multiplier); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006) (approving a 2.57 times lodestar multiplier); *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 787-88 (E.D. Va. 2001) (approving a 2.6 times lodestar multiplier).

95.     As discussed above, Class Counsel faced significant risks in pursuing this Action. This was not a case where any recovery was assured.  Compounding the risk, Class Counsel's fees are totally contingent and dependent upon a successful result and an award by this Court.  From the outset, Class Counsel understood that they were embarking on complex, expensive, challenging, and lengthy litigation (with no guarantee of compensation for the investment of time, money, and effort the case would require).  In undertaking that responsibility, Class Counsel were obligated to assure that sufficient resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and pay for the considerable expenses in a case such as this.

96.     Attorneys from Robbins Geller and Labaton are among the most experienced securities lawyers in the country.  *See* Robbins Geller Fee Decl. and Labaton Fee Decl., Exs. 5 & 6.  Few lawyers have the experience, professionalism, and knowledge to develop a successful litigation plan, shepherd the case through massive discovery, prepare the case for trial, and negotiate a substantial settlement in a securities case as complex as this.

97.     Robbins Geller has successfully obtained some of the largest recoveries in history, including *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.) ($7.2 billion recovery, which is the largest ever in a securities class action); *Jaffe v. Household International, Inc.*, No. 02-C-05893 (N.D. Ill.) ($1.575 billion settlement, the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.) (approval of a $1.2 billion settlement);

*In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.) ($1.025 billion settlement); and *In re UnitedHealth Group Inc. PSLRA Litigation*, No. 06-cv-1691 (D. Minn.) ($925 million recovery, the largest stock option backdating settlement).

98.     Since the passage of the PSLRA, Labaton Sucharow has been appointed to serve as lead counsel in numerous notable securities class actions throughout the United States, and has taken three of the approximately two-dozen post-PSLRA securities class actions to trial.  *See, e.g., In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund and reaching settlements of $1 billion); *In re HealthSouth Corp. Sec. Litig.*, No. 03-1501 (N.D. Ala.) (together with Robbins Geller, representing the State of Michigan Retirement System, New Mexico State Investment Council, and the New Mexico Educational Retirement Board and securing settlements of more than $600 million); *In re Countrywide Sec. Litig.*, No. 07-5295 (C.D. Cal.) (representing the New York State and New York City Pension Funds and reaching settlements of more than $600 million); *In re Schering-Plough Corp. / ENHANCE Sec. Litig.*, No. 08-397 (D.N.J.) (representing Massachusetts Pension Reserves Investment Management Board and reaching a settlement of $473 million).  When Class Counsel undertook to represent Plaintiffs and the Class in this matter, it was with the knowledge that it was on a contingency basis and that their firms would spend many hours of hard work up against some of the best defense lawyers in the country with no assurance of ever obtaining any compensation for their efforts.  The only way Class Counsel would be compensated was to achieve a successful result for the Class.

99.     The JELD-WEN Defendants are represented by lawyers from Kirkland & Ellis, LLP and McGuire Woods LLP and the Onex Defendants are represented by lawyers from Fried, Frank, Harris, Shriver & Jacobson LLP and Christian & Barton LLP, all well-known and respected

- 28 -

law firms whose lawyers vigorously represented the interest of their clients throughout the entirety of this case. In the face of this experienced, formidable, and well-financed opposition, Robbins Geller and Labaton developed this case to the point where Defendants would settle the Action on a basis favorable to the Class.

100.    Public policy considerations also support the requested fee award. Class Counsel shouldered all of the risk of committing substantial resources to the prosecution of this Action, and of working long hours in a heavily contested matter, under an extremely accelerated schedule, notwithstanding significant uncertainty as to whether the Plaintiffs' claims would ultimately succeed.

101.    Class Counsel also request an award of the expenses incurred in connection with the prosecution of this Action. The requested expenses are reflected in the books and records maintained by Plaintiffs' Counsel and are an accurate recording of the expenses incurred. These expenses include: (a) the fees and expenses of consultants and experts whose services Class Counsel required to successfully prosecute and resolve the case; (b) the costs associated with conducting fact and expert witness depositions, which included remote deposition court reporter and videographer fees; (c) travel expenses; (d) photocopying, imaging, shipping and managing a database of millions of pages of documents; (e) online factual and legal research; and (f) mediation fees. In total, Plaintiffs' Counsel incurred expenses in the amount of $1,241,263.63. *See* Robbins Geller Fee Decl., Labaton Fee Decl., Cohen Milstein Fee Decl., Exs. 5 to 7.

102.    While the deadline set by the Court for Class Members to object to the requested fees and expenses has not yet passed, to date Class Counsel have received no objections to either the requested fees or expenses. Class Counsel will respond to any objections received by the November 1, 2021 deadline in their reply papers, on or before November 15, 2021.

## V.   PLAINTIFFS SEEK AWARDS PURSUANT TO 15 U.S.C. §78u-4(a)(4) BASED ON THEIR REPRESENTATION OF THE CLASS

103.   The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).

104.   Here, as explained in the MPERS and WLPF declarations, attached hereto as Exhibits 1 and 2, Class Representatives are seeking awards of $23,350 (MPERS) and $5,910 (WLPF) for their time related to their active participation in the Action.  *See* MPERS Decl., ¶¶8-10 and WLPF Decl., ¶¶7-9.

105.   Many courts, including those in this Circuit, have approved reasonable payments to compensate class representatives for the time and effort devoted by them on behalf of a class. In awarding $16,405 to one plaintiff and $6,723.73 to another, this Court in *Genworth Financial* noted "[t]hese plaintiffs have justified their requests through their dedication of hundreds of hours of employee-time related to the supervision of this action, communications with attorneys, travel related to discovery, efforts related to filing briefs, and attending mediations.  These reasonable and modest costs shall be reimbursed."  210 F. Supp. 3d at 846.  *See also In re Computer Sciences Corp. Sec. Litig.*, No. 1:11-cv-610-TSE-IDD, ECF No. 335, at ¶6 (E.D. Va. Sept. 20, 2013) (awarding $60,905 to lead plaintiff for the time it dedicated to the litigation and expenses it incurred); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (court awarded a total of $214,657 to the lead plaintiffs in the action "to compensate them for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and holding that the lead plaintiffs' efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives").

4834-5117-4394.v5

106.   Class Counsel respectfully submit that the amount sought here is eminently reasonable based on Class Representatives' active involvement in the Action from their consideration of appointment as Lead Plaintiffs to the Settlement, which included, among other things, searching for and producing numerous documents, sitting for depositions, participating in the mediation process and communicating with Class Counsel regarding the Action.  As such, this request should be granted in its entirety.

VI.   **CONCLUSION**

107.   For the reasons set forth above and in the accompanying Settlement and Fee Memoranda, we respectfully submit that: (i) the Settlement is fair, reasonable and adequate, and should be finally approved; (ii) the Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Authorized Claimants and should also be approved; and (iii) the application for an award of attorneys' fees of 25% of the Settlement Amount and expenses of $1,241,263.63, with interest thereon earned at the same rate as the Settlement Fund, plus awards of $23,350 and $5,190, respectively, to the Class Representatives MPERS and WLPF, should be granted in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Melville, New York this 18th day of October, 2021.

_____
ROBERT M. ROTHMAN

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Bayside, New York this 18th day of October, 2021.

_____
MICHAEL H. ROGERS

- 31 -